James A. Patten(1191)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN P.L.L.C.**
2817 2nd Avenue North, Ste. 300
Billings, MT 59101
Telephone (406) 252-8500
Facsimile (406) 294-9500
E-mail:japatten@ppbglaw.com

Attorney for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE:<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC,<br><br>Debtor. | Case No. 08-61570 |
| IN RE:<br><br>YELLOWSTONE DEVELOPMENT, LLC,<br><br>Debtor. | Case No. 08-61571 |
| BIG SKY RIDGE, LLC,<br><br>Debtor. | Case No. 08-61572 |
| YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC,<br><br>Debtor. | Case No. 08-61573 |

## DEBTORS' NOTICE OF LODGING ORDER

1

The above-named Debtors, YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC, YELLOWSTONE DEVELOPMENT, LLC, YELLOWSTONE MOUNTAIN CLUB, LLC, and BIG SKY RIDGE, LLC by and through their attorney James A. Patten hereby gives notice that the following documents have been lodged with the Court in connection with the motion for an order authorizing Debtors to obtain post-petition financing [Docket No. 6 for Yellowstone Mountain Club, Yellowstone Development, and Yellowstone Club Construction Co. and Docket No. 5 for Big Sky Ridge]:

(1) Revised Proposed Interim Order

(2) Revised Term sheet;

(3) Budget;

DATED this 12th day of November, 2008

By /s/ James A. Patten

James A. Patten
PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC
2817 2nd Avenue North, Suite 300
Billings, MT 59101
Attorney for Debtor

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

```
------------------------------------ x
                                     )   Bankr. Case No. 08-
IN RE:                               )
                                     )   Chapter 11
YELLOWSTONE MOUNTAIN CLUB, LLC, et al.,)
                                     )   Jointly Administered
                                     )
          Debtors.                   )   Doc. Ref. No.
------------------------------------ x
```

INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1) AND 364(e), AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11
U.S.C. §363; (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY
CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED
PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; AND (IV) SCHEDULING
A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 2002, 4001 AND 9014

Upon the motion (the "Motion") of Yellowstone Mountain Club, LLC, Yellowstone

Development, LLC and Big Sky Ridge, LLC, each as debtor and debtor-in-possession

(collectively, the "Debtors" or "Borrowers"), in the above-captioned cases (the "Cases")

seeking, pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1)

and 364(e) of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy

Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), this Court's authorization:

        (a)    for the Borrowers to obtain an initial 21 day superpriority
postpetition term loan financing facility pursuant to a DIP Term Loan Facility (the "DIP
Facility") in an aggregate principle amount of $4,450,000 on the terms set forth on the term
sheet attached hereto as Exhibit 1 (the "DIP Term Sheet"), and for each existing and
subsequently acquired or organized subsidiary of any Borrower (the "Subsidiary Guarantors")
to guaranty the Borrowers' obligations in connection with the DIP Facility from a syndicate of
banks, financial institutions and other institutional lenders that agree to make loans under the
DIP Facility (the "DIP Lenders") (with Credit Suisse acting as sole administrative agent and
collateral agent (the "DIP Agent"), and Credit Suisse Securities (USA) LLC, acting as sole
bookrunner and sole lead arranger), with such DIP Facility:

1

        (i)      having priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out (defined below);

        (ii)     being secured (subject to the Carve-Out), pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority security interests in and liens, not subject to subordination, upon all unencumbered prepetition and postpetition property of the Debtors including, but not limited to, Cash Collateral (defined below), inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, property, plants, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing, but excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "Avoidance Actions");[1]

        (iii)     being secured (subject to the Carve-Out), pursuant to Section 364(d)(1) of the Bankruptcy Code, by perfected first priority senior priming and security interests and liens on substantially all of the property of the Debtors and the Subsidiary Guarantors whether owned on the Closing Date (as defined in the DIP Term Sheet) or thereafter acquired (the "Collateral"), except for prepetition liens of third parties on the Collateral as to which such third parties have a valid, perfected and unavoidable existing lien (excluding any liens securing obligations relating to the Credit Agreement dated as of September 30, 2005, as amended, (the "Prepetition Credit Agreement") (the "*Prepetition Third Party Liens*"); and all existing liens, rights and interests granted to or for the benefit of the Prepetition Agent and Prepetition Lenders under the Prepetition Credit Agreement and other related documents (the "*Prepetition Credit Agreement Liens*") shall be primed and made subject to and subordinate to the perfected first priority senior liens to be granted to the DIP Agent, for the benefit of the DIP Lenders, which senior priming liens in favor of the DIP Agent (the "*Priming DIP Liens*") shall also prime any liens granted after the commencement of the Cases to provide adequate protection in respect of any of the Prepetition Credit Agreement Liens; and

        (iv)     being secured (subject to the Carve-Out), pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected second priority security interests in and liens, not subject to subordination, upon all Collateral that is subject to the Prepetition Third Party Liens (the "Second Priority DIP Liens");

        (b)     for the Debtors to use the Cash Collateral (as defined in the Prepetition Credit Agreement) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other collateral on which the Prepetition Lenders have a lien or security interest (together with the Cash Collateral, the "Prepetition Collateral") and provide adequate protection with respect to any diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral resulting from the implementation of the DIP Facility and the priming of the Prepetition Agent's liens on the Prepetition Collateral to secure the DIP Facility set forth herein, the use of the Cash Collateral and the use, sale or lease by the Debtors (or other decline in value)

---

[1]     Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)     to schedule, pursuant to Bankruptcy Rule 4001, an emergency interim hearing (the "**Interim Hearing**") on this Motion for this Court to consider entry of an interim order annexed to the Motion (the "**Interim Order**") (i) authorizing the Borrowers, on an interim basis, to forthwith borrow up to the aggregate amount of $4,450,000 from the DIP Lenders under the DIP Facility, (ii) authorizing the use by the Debtors of Cash Collateral, and (iii) granting the adequate protection hereinafter described; and

(d)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of a final order authorizing such additional postpetition financing for which the Debtors obtain commitment on a final basis and on such terms as shall be set forth in definitive debtor-in-possession loan documentation (the "**DIP Financing Documents**") and as set forth in the Motion; and

(e)     the granting of certain related relief.

The Interim Hearing having been held by this Court on November 12, 2008 and upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction.* This Court has core jurisdiction over the Case, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on their largest unsecured creditors, the Prepetition Agent, the United States Trustee for the District of Montana and certain other parties. Under the circumstances, such notice constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.     *Objections.* All objections to the entry of this Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4.      *Debtor's Stipulations.* Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 18 below), the Debtors admit, stipulate and agree that:

(a)      as of the Petition Date, (i) the Debtors were truly and justly indebted and liable to (i) the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $307,000,000 in respect of loans made by the Prepetition Lenders pursuant to, and in accordance with the terms of, the Prepetition Credit Agreement and related documents (the "Prepetition Credit Documents"), plus, accrued and unpaid interest thereon and fees, expenses and other obligations incurred in connection therewith as provided in the Prepetition Credit Documents (the "Prepetition Secured Obligations"), and

(b)      the Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(c)      no portion of the Prepetition Secured Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(d)      the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Agent, the Prepetition Lenders and their affiliates, agents, officers, directors, employees, attorneys and advisors with respect to the Prepetition Secured Obligations; and

(e)      the liens and security interests granted to the Prepetition Agent and the Prepetition Lenders pursuant to and in connection with the Prepetition Credit Documents

4

(including, without limitation, all security agreements, pledge agreements, mortgages, leasehold mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Lenders) are (i) valid, binding, perfected, enforceable first priority liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (x) after giving effect to this Order, the DIP Liens (as defined below), (y) after giving effect to this Order, the Carve Out (as defined below) and (z) valid, perfected and unavoidable liens permitted under the Prepetition Credit Documents to the extent such permitted liens are senior to or *pari passu* with the liens of the Prepetition Agent and the Prepetition Lenders on the Prepetition Collateral (the "Permitted Prepetition Liens").

    5.    *Findings Regarding the DIP Facility.*

        (a)    Good cause has been shown for the entry of this Order.

        (b)    The Debtors have an immediate need to obtain the DIP Facility and use the Prepetition Collateral, including the Cash Collateral, for the purposes and on the terms set forth in the DIP Term Sheet, in order to permit, among other things, the orderly continuation of the operation of their businesses to pay the expenses in respect of the "Project" as such term is defined in the Prepetition Credit Agreement, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs. As a condition to any postpetition lending, the Debtors' use of the Prepetition Collateral and access to the Cash Collateral are necessary in order to ensure that the Debtors have sufficient working capital and liquidity and can preserve and maintain the going concern value of the Debtors' estates.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or unsecured credit with the enhanced priority afforded by section 364(c)(1) of the . Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens and the Superpriority Claims (defined below) under the terms and conditions set forth in this Order and in the DIP Term Sheet.

(d)     The terms of the DIP Term Sheet and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Term Sheet and the use of Cash Collateral have been negotiated in good faith between the Debtors, the DIP Agent, the DIP Lenders and the Prepetition Agent, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility, including without limitation, all loans made to the Debtors pursuant to the DIP Facility (together with any other obligation arising under this Order or the DIP Term Sheet, collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lenders in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6

(f)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Order and the DIP Facility is therefore in the best interest of the Debtors' estates.

6.     *Authorization of the DIP Term Sheet.*

(a)     The DIP Documents are hereby approved as set forth in this Order and the Debtors are hereby authorized to borrow money pursuant to the DIP Term Sheet and this Order, up to an aggregate principal or face amount of $4,450,000, which shall be used for all purposes permitted under the DIP Term Sheet, including, without limitation, to pay interest, fees and expenses in accordance with this Order (including interest payments on advances under the DIP Facility), to pay amounts approved by other Orders of this Court and to provide working capital for the Debtors.

(b)     The DIP Term Sheet, as approved by this Order, shall constitute the valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms. No obligation, payment, transfer or grant of security under the DIP Term Sheet or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code, under section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.     *Superpriority Claims.*

7

(a)      Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP
Obligations shall constitute allowed claims against the Debtors with priority over any and all
administrative expenses, diminution claims (including all Adequate Protection Obligations
(defined below)) and all other claims against the Debtors, now existing or hereafter arising, of
any kind whatsoever, including, without limitation, all administrative expenses of the kind
specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all
administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b),
506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority
Claims"), whether or not such expenses or claims may become secured by a judgment lien or
other non-consensual lien, levy or attachment, which allowed claims shall be payable from and
have recourse to all pre and post-petition property of the Debtors and all proceeds thereof,
subject only to the payment of the Carve Out to the extent specifically provided for herein.

(b)      For purposes hereof, the "Carve Out" means (i) all fees, incurred during
the period prior to an Event of Default, required to be paid to the Clerk of the Bankruptcy Court
and to the Office of the United States Trustee under section 1930(a) of title 28 of the United
States Code and (ii) in the event of the occurrence and during the continuance of an Event of
Default, the payment of allowed and unpaid professional fees and disbursements incurred by the
Borrowers and Subsidiary Guarantors (excluding any incurred and unpaid professional fees and
expenses of the DIP Agent or DIP Lenders payable pursuant to the Interim Order or the Final
Order) in an aggregate amount not in excess of the sum of all budgeted unpaid professional fees
and disbursements of the Borrowers' and Subsidiary Guarantors' professionals incurred prior to
the occurrence of an Event of Default, to the extent proceeds of the DIP Loans in amounts
budgeted for such unpaid professional fees and disbursements are actually segregated and

8

earmarked by the Borrowers only for payment of such budgeted professional fees and disbursements, and to the extent such unpaid fees and disbursements are allowed by the Bankruptcy Court. Nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above.

8.    *DIP Liens.*

As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution and recordation of filings by the Debtors of security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the DIP Lenders, subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out (all such liens and security interests granted to the DIP Lenders, pursuant to this Order and the DIP Facility, the "DIP Liens"):

(a)    First Lien on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property"), including, without limitation, any unencumbered cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock or other

9

equity interests of subsidiaries, and the proceeds of all the foregoing. Unencumbered Property shall exclude the Avoidance Actions.

      (b)    Liens Priming Prepetition Secured Parties' Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock or other equity interests of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Prepetition Secured Obligations. Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Agent and the Prepetition Lenders arising from current and future liens of the Prepetition Agent and the Prepetition Lenders (including, without limitation, the Adequate Protection Liens (defined below)), but shall not be senior to the Prepetition Third Party Liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Agent and the Prepetition Lenders become or became subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

      (c)    Liens Junior to Certain Other Liens. Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected second priority security interests in and liens upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security

10

interests in favor of the DIP Lenders will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable Prepetition Third Party Liens which security interests and liens in favor of the DIP Lenders are junior to such valid, perfected and unavoidable liens of Prepetition Third Parties.

(d)     Liens Senior to Certain Other Liens. The DIP Liens and the Adequate Protection Liens (defined below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

9.     *Protection of DIP Lenders' Rights.*

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon the occurrence of an Event of Default and the giving of five (5) business days' written notice to the Debtors, the Prepetition Agent, the Committee and the United States Trustee as provided for in the DIP Term Sheet, all rights and remedies against the Collateral provided for in the DIP Term Sheet (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with or under the control of the DIP Agent or any DIP Lender or their affiliates, requiring the Debtors' best efforts to sell the Collateral at the request of the DIP Agent, foreclosing on the collateral or otherwise selling the collateral, and directing that the DIP Agent and its representatives be granted access to all locations during the continuance of and Event of

11

Default in support of the enforcement and exercise of such remedies). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and each of the Debtors hereby waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent and the DIP Lenders set forth in this Order or the DIP Term Sheet. ~~In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.~~ The DIP Agent's or the DIP Lenders' failure to seek relief or otherwise exercise its rights and remedies under the DIP Facility or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise.

(b)     Entry of this Order shall be without prejudice to the right of the Prepetition Agent and the Prepetition Lenders to seek relief in the Cases and to appear and be heard on matters before the Court.

10.     *Limitation on Charging Expenses Against Collateral.*

Subject to the entry of the Final Order and except as expressly permitted therein, except to the extent of the Carve Out, no expenses of administration of any of the Cases or any future proceeding that may result therefrom (including liquidation in bankruptcy, the commencement of any action adverse to the DIP Agent or any DIP Lender or their respective rights hereunder, under the DIP Term Sheet or under any other order, or other proceedings under the Bankruptcy Code) shall be charged against or recovered from the Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the DIP Lenders, the Prepetition Agent or the

12

Prepetition Lenders, as the case may be, and no such consent shall be implied from any other
action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agent or the
Prepetition Lenders.

11.    *Payments Free and Clear*. Any and all payments or proceeds remitted to the DIP
Agent on behalf of the DIP Lenders or Prepetition Agent on behalf of the Prepetition Lenders
pursuant to the provisions of this Order or any subsequent order of the Court shall be received
free and clear of any claim, charge, assessment or other liability including, without limitation,
any such claim or charge arising out of or based on, directly or indirectly, sections 506(c)
(whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the
Bankruptcy Code.

12.    *Interest on DIP Obligations*. Interest on the DIP Obligations shall accrue at the
rates and shall be paid at the times as provided in the DIP Term Sheet.

13.    *Use of Cash Collateral*. The Debtors' cash, including without limitation, all cash
and other amounts on deposit or maintained in any account or accounts by the Debtors, and any
amounts generated by the collection of accounts receivable, sale of inventory or other disposition
of the Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are
cash collateral of the Prepetition Lenders within the meaning of Section 363(a) of the
Bankruptcy Code (the "Cash Collateral"). The Debtors are hereby authorized to use the Cash
Collateral of the Prepetition Agent and the Prepetition Lenders, *provided* that the Prepetition
Lenders are granted adequate protection as hereinafter set forth. The Debtors' right to use Cash
Collateral under this Order shall terminate automatically on the Maturity Date (as defined in the
DIP Term Sheet). The Prepetition Lenders have consented to the use by the Debtors of the Cash
Collateral, subject to the terms of this Order.

13

*[handwritten at top:]* of the DIP Obligations plus any Cash Collateral actually utilized by Debtors ~~during~~ prior to the Maturity Date of the DIP Loan,

14.      *Adequate Protection*.  The Prepetition Lenders are entitled, pursuant to sections

361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their

interest in the Prepetition Collateral, in an amount equal to the aggregate diminution in value of

the Prepetition Lenders' Prepetition Collateral, including, without limitation, any such

diminution resulting from the implementation of the DIP Facility and the priming of the

Prepetition Agents' liens on the Prepetition Collateral, the sale, lease or use by the Debtors (or

other decline in value) of the Prepetition Collateral, and the imposition of the automatic stay

pursuant to section 362 of the Bankruptcy Code (collectively, the "**Adequate Protection**

**Obligations**").  As adequate protection, the Prepetition Agent and the Prepetition Lenders are

hereby granted the following:

(a)      Adequate Protection Liens.  The Prepetition Agent (for itself and for the

benefit of the Prepetition Secured Lenders) is hereby granted (effective and perfected upon the

date of this Order and without the necessity of the execution by the Debtors of security

agreements, pledge agreements, financing statements, control agreements or other agreements) a

valid, perfected replacement security interest in and lien upon all the Collateral (the "**Adequate** *[handwritten: Prepetition]* *[handwritten: with the same dignity, priority, scope and effect as the Permitted Prepetition Liens]*

**Protection Liens**"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the

Priming Liens and any liens on the Collateral to which such liens so granted to the DIP Agent are

junior and (iii) the Carve Out.

(b)      Section 507(b) Claim.  The Adequate Protection Obligations shall

constitute Superpriority Claims, subject and subordinate only to the payment of the Carve Out

and the Superpriority Claims granted with respect to the DIP Obligations.  Notwithstanding the

foregoing, the Prepetition Agent and the Prepetition Lenders shall not receive or retain any

payments, property or other amounts in respect of the Superpriority Claims under section 507(b) *[handwritten: in and lieu upon all Prepetition Collat]*

14

*[handwritten at bottom:]* Additionally, the Prepetition Lenders are hereby granted a valid, perfected replacement security interest, to secure the Prepetition Obligations ~~to the~~ in an amount equal to the aggregate diminution in value of the Prepetition Collateral prior to the Maturity Date of the DIP Loan.

of the Bankruptcy Code granted hereunder or under the Prepetition Credit Documents, but
excluding any amounts payable or paid pursuant to this Order, unless and until the DIP
Obligations have indefeasibly been paid in cash, in full.

(c)     Reporting and Right to Access. The Debtors shall provide the Prepetition
Agent and the Prepetition Lenders with copies of all non-privileged reports, information and
other materials reasonably requested by the Prepetition Agent. In addition, the Debtors shall
cooperate with and permit representatives of the Prepetition Agent to have access to their
premises, non-privileged records and management personnel and meetings. The CRO (as
defined in the DIP Term Sheet) shall make himself available to and cooperate reasonably with
the representatives of the Prepetition Agent and their reasonable information requests.

15.     *Sufficiency of Adequate Protection.*

The Court finds that the adequate protection provided herein is reasonable and
sufficient to protect the interests of the Prepetition Agent and the Prepetition Lenders.
Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition
Agent and the Prepetition Lenders pursuant hereto is without prejudice to the right of the
Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as
to provide different or additional adequate protection, and without prejudice to the right of the
Debtors or any other party in interest to contest any such modification. The consent of the
Prepetition Agent and the Prepetition Lenders to the priming of the Prepetition Agent's liens on
the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Facility authorized pursuant
to this Order, and shall not extend to any other post-petition financing or to any modified version
or replacement of the DIP Facility and (b) does not constitute, and shall not be construed as
constituting, an acknowledgement or stipulation by the Prepetition Agent or the Prepetition

15

Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

16.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders or Prepetition Agent on behalf of the Prepetition Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Order.

(b)     A copy of this Order authenticated by the certificate of the Clerk of the Bankruptcy Court pursuant to Mont. Code Ann. Section 70-21-205, in the discretion of the DIP Agent or the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

(c)     The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agent all such agreements, financing statements, instruments and other documents as the DIP

16

Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and Adequate Protection Liens granted pursuant hereto.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders or the Prepetition Lenders in accordance with the terms of the DIP Term Sheet or this Order.

17.     *Preservation of Rights Granted Under the Order.*

(a)     Unless all DIP Obligations and Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the DIP Agent and the Prepetition Agent (and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent), (ii) any order authorizing additional or different debtor-in-possession financing in these cases without the prior written consent of the DIP Agent (and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent), or (iii) an order dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and

17

349 of the Bankruptcy Code) that (x) the Superpriority Claims, priming liens, security interests

and replacement security interests granted to the DIP Agent or the DIP Lenders, and, as

applicable, the Prepetition Agent or the Prepetition Lenders pursuant to this Order, shall continue

in full force and effect and shall maintain their priorities as provided in this Order until all DIP

Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and

that such superpriority claims, priming liens and replacement security interests, shall,

notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall

retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens

and security interests referred to in clause (x) of this paragraph. Without the express written

consent of the DIP Lenders, if at any time prior to the repayment in full of all obligations arising

under the DIP Facility, including subsequent to the confirmation of any plan in these cases, any

of the Borrowers, any trustee, any examiner with enlarged powers or any responsible officer

subsequently appointed, shall obtain credit or incur debt pursuant to section 364(b), 364(c) or

364(d) of the Bankruptcy Code in violation of the terms of the Interim Order or the Final Order

or shall receive proceeds from a sale of Collateral pursuant to section 363(b) of the Bankruptcy

Code, or from a sale of any other Collateral after the satisfaction of liens that are senior to those

of the DIP Lenders, then all of the cash proceeds derived from such credit, debt, or sale shall

immediately be turned over to the DIP Agent for the *pro rata* reduction of the DIP Facility

    (b)    If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the

validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual

receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective

date of such reversal, modification, vacation or stay or (ii) the validity or enforceability of any

18

lien or priority authorized or created hereby or pursuant to the DIP Term Sheet with respect to any DIP Obligations or this Order with respect to any Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders prior to the actual receipt by the DIP Agent or the Prepetition Agent of written notice of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Facility with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(c)    Except as expressly provided in this Order or in the DIP Term Sheet, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders granted by the provisions of this Order and the DIP Term Sheet shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Order and the DIP Term Sheet shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superceding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the Adequate Protection Obligations and all other rights and remedies of the

19

DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders granted

by the provisions of this Order and the DIP Term Sheet shall continue in full force and effect

until the DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full.

18.    *Effect of Stipulations on Third Parties.* The stipulations and admissions contained

in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon

the Debtors in all circumstances. The stipulations and admissions contained in this Order,

including, without limitation, in paragraph 4 of this Order, shall be binding upon all other parties

in interest, including, without limitation, any Committee, unless (and only to the extent) (a) a

party in interest (including a trustee) has timely filed an adversary proceeding or contested matter

(subject to the limitations contained herein) by no later than the date that is the later of (i) 90

days after the entry of this Order, (ii) in the case of such an action being brought by a

Committee, 90 days after the appointment of the statutory committee of unsecured creditors

appointed in this Case, or (iii) such later date as has been agreed to, in writing, by the Prepetition

Agent in respect of challenges that may be initiated against the Prepetition Agent or the

Prepetition Lenders in the sole discretion of the Prepetition Agent and has been ordered by the

Court (A) challenging the validity, enforceability, priority or extent of the Prepetition Secured

Obligations or the Prepetition Liens on the Prepetition Collateral or (B) otherwise asserting or

prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action,

objections, contests or defenses (collectively, "**Claims and Defenses**") against the Prepetition

Agent or any of the Prepetition Lenders or their respective agents, affiliates, subsidiaries,

directors, officers, representatives, attorneys or advisors in connection with matters related to the

Prepetition Credit Documents, the Prepetition Secured Obligations, or the Prepetition Collateral),

and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in

20

any such timely filed adversary proceeding or contested matter, *provided* that as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding or contested matter is timely filed (or, if such proceeding or matter is filed, then to the extent not subject to successful Claims and Defenses asserted therein), (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the Prepetition Liens on the Prepetition Collateral shall be deemed to be legal, valid, binding, perfected, not subject to recharacterization, subordination, avoidance or reduction and (z) the Prepetition Secured Obligations, the Prepetition Liens on the Prepetition Collateral and the Prepetition Agent and the Prepetition Lenders shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of any of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition Liens or the Prepetition Secured Obligations.

19. *Waiver of Claims and Causes of Action Against the DIP Lenders*. Without prejudice to the rights of any other party, including any Committee (but subject to the limitations thereon in paragraphs 18 and 20), the Debtors have waived any and all claims and causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders

21

and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, directly related to the DIP Facility, this Order or the negotiation of the terms thereof.

20.   *Limitation on Use of DIP Facility Proceeds and Collateral.* The Debtors shall use the proceeds of the DIP Facility and the Cash Collateral solely as provided in this Order and in the DIP Term Sheet. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Prepetition Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Order, the DIP Term Sheet or the Prepetition Credit Documents, or the liens or claims granted under this Order, the DIP Documents or the Prepetition Credit Documents, (b) assert any Claims and Defenses or causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Facility, the Prepetition Credit Documents or this Order or (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders hereunder, under the DIP Facility or the Prepetition Secured Credit Documents, in each foregoing case without such party's prior written consent. Notwithstanding anything herein or the DIP Term Sheet, the Debtors shall be authorized to withdraw funds from any collateral account established or maintained for purposes of funding DIP Facility advances to the Debtors only to the extent of, and with, the Agent's express consent; and all funds in such collateral account shall be deemed Collateral and under the control of the Agent whether or not subject to any account control agreement in favor of the Agent.

22

21.    *Insurance.* Pursuant to this Order, (i) the DIP Agent and the DIP Lenders shall be and shall be deemed to be, without any further action or notice, named as an additional insured on each insurance policy maintained by any of the Debtors which in any way relates to the Collateral, and (ii) the Prepetition Agent and the Prepetition Lenders, to the extent of their Adequate Protection Liens, shall be and shall be deemed to be, without any further action or notice, named as additional insureds on each insurance policy maintained by any of the Debtors which in any way relates to the Collateral. The proceeds of any such insurance policy shall be applied to repay, first, the obligations owed to the DIP Lenders under the DIP Facility, and second, the Adequate Protection Obligations owed to the Prepetition Agent and the Prepetition Lenders.

22.    *Proofs of Claim.*

(a)  In order to facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized to file a master proof of claim on behalf of itself and each of the Prepetition Lenders on account of their claims arising under the Prepetition Credit Documents and hereunder against the Debtors (the "Master Proof of Claim"), and the Prepetition Agent (and DIP Agent) shall not be required to file verified statements pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure.

(b)  Upon the filing of the Master Proof of Claim against the Debtors, the Prepetition Agent and each Prepetition Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors arising under the Prepetition Credit Documents, and the claim of the Prepetition Agent and each Prepetition Lender (and each of

23

their respective successors and assigns), named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each applicable Case in the amount set forth opposite each name in the Master Proof of Claim; provided that the Prepetition Agent may, but shall not be required to, amend its Master Proof of Claim from time to time to, among other things, reflect a change in the holders of claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c) The provisions set forth in this paragraph and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, any Committee, the Prepetition Agent or the Prepetition Lenders or any other party in interest or their respective successors in interest including, without limitation, the right of each Prepetition Lender (or their successors in interest) to vote separately on any plan of reorganization proposed in the Cases.

23. _Order Governs._ In the event of any inconsistency between the provisions of this Order and the DIP Term Sheet, the provisions of this Order shall govern.

24. _Binding Effect; Successors and Assigns._ The DIP Term Sheet and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, any Committee, and any of the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary hereafter appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of

24

the DIP Agent, DIP Lenders, the Prepetition Agent, the Prepetition Lenders and the Debtors and each of their respective successors and assigns; *provided, however*, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for the estate of any of the Debtors.

25. *Limitation of Liability*. In determining to make any loan under the DIP Term Sheet or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Term Sheet, the DIP Agent and the DIP Lenders, and the Prepetition Agent and Prepetition Lenders, shall not be deemed to be in control of the operations of any of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the DIP Term Sheet related to this transaction shall in any way be construed or interpreted to impose or allow the imposition, upon the DIP Agent or the DIP Lenders, or Prepetition Agent or Prepetition Lenders, of any liability for any claims arising from the pre-petition or post-petition activities by any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, or in connection with their restructuring efforts.

26. *Right of Access and Information*.

(a) The Debtors shall permit representatives, agents and/or employees of the DIP Agent and Prepetition Agent to have reasonable access to the Debtors' premises, management and non-privileged records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses), and the Debtors' and their

25

*Note: DIP Loan matures w/in 15 days of entry of Interim Order, if a Final Order has not been entered by this Court.*

CRO shall cooperate and consult with, and provide to such persons all such non-privileged information as they may reasonably request.

27. *Effectiveness*. This Order shall constitute findings of fact and conclusions of law and, notwithstanding the possible application of Bankruptcy Rule 6004(g), shall take effect immediately upon execution hereof.

28. *Final Hearing*. The Final Hearing is scheduled for _____ ___, 2008 at _____.m. before this Court. The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) counsel to the Debtors, Patten, Peterman, Bekkedahl & Green, P.L.L.C., the Fratt Building, 2817 Second Ave. North (Suite 300), Billings, Montana 59101 (Attn: James A. Patten); (b) counsel to any statutory committee appointed in the chapter 11 cases; (c) counsel for the DIP Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, Wilmington, Delaware 19899 (Attn: Mark Chehi, Esq.), and Holland & Hart LLP, 401 North 31st Street, Billings, MT 59101-1277 (Attn: Charles Hingle, Esq.); and

*This Order is an interim order only, subject to entry of a Final Order by this Court.*

26

(d) the office of the United States Trustee for the District of Montana, and shall be filed with the

Clerk of the United States Bankruptcy Court for the District of Montana, in each case to allow

actual receipt by the foregoing no later than _____, 2008 at 4:00 p.m., prevailing [Montana] time.

Dated:   November   , 2008
         Missoula, Montana

                               _____
                               Hon. Ralph B. Kirscher
                               United States Bankruptcy Judge

THIS SUPERPRIORITY DEBTOR-IN-POSSESSION TERM LOAN FACILITY TERM SHEET IS FOR DISCUSSION PURPOSES ONLY AND DOES NOT CONSTITUTE A COMMITMENT BY CREDIT SUISSE OR ANY OF ITS AFFILIATES TO UNDERWRITE, SUBSCRIBE FOR OR PLACE ANY SECURITIES OR TO EXTEND OR ARRANGE CREDIT OR TO PROVIDE ANY OTHER TYPE OF FINANCING OR OTHER SERVICES.

<u>YELLOWSTONE MOUNTAIN CLUB, LLC</u>
<u>YELLOWSTONE DEVELOPMENT, LLC</u>
<u>BIG SKY RIDGE, LLC</u>
<u>$4,450,000 Superpriority Debtor-in-Possession Term Loan Facility</u>
<u>Summary of Principal Terms and Conditions</u>

Reference is made to the Credit Agreement dated as of September 30, 2005 (as amended, the *"Prepetition Credit Agreement"*) , among Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, the lenders party thereto (the *"Prepetition Lenders"*) and Credit Suisse, as administrative agent and collateral agent (the *"Prepetition Agent"*).

| | |
|---|---|
| <u>Borrowers:</u> | Yellowstone Mountain Club, LLC, a Montana limited liability company, Yellowstone Development, LLC, a Montana limited liability company, and Big Sky Ridge, LLC, a Montana limited liability company (collectively, the *"Borrowers"*), each a debtor-in-possession in the cases (the *"Cases"*) pending with respect to the Borrowers and their subsidiaries under chapter 11 of Title 11 of the United States Code (as amended, the *"Bankruptcy Code"*) filed with the United States Bankruptcy Court for the District of Montana (the *"Bankruptcy Court"*), and each of which shall be jointly and severally liable for the obligations of the Loan Parties (as defined below) under the DIP Facility (as defined below). |
| <u>Guarantors:</u> | Each existing and subsequently acquired or organized domestic and foreign subsidiary of any Borrower (collectively, the *"Subsidiary Guarantors"* and together with the Borrowers, the *"Loan Parties"*). |
| <u>Agent:</u> | Credit Suisse, acting through one or more of its branches or affiliates (*"CS"*), will act as sole administrative agent and collateral agent (collectively, in such capacities, the *"Agent"*) for a syndicate of banks, financial institutions and other institutional lenders that agree to make loans under the DIP Facility (the *"Lenders"*), and will perform the duties customarily associated with such roles. |
| <u>Sole Bookrunner and Sole Lead Arranger:</u> | Credit Suisse Securities (USA) LLC will act as sole bookrunner and sole lead arranger for the DIP Facility (as defined below) (collectively, in such capacities, the *"Arranger"*), and will perform the duties customarily associated with such roles. |
| <u>DIP Facility:</u> | A superpriority debtor-in-possession term loan facility in an aggregate principal amount of up to $4,450,000 (the |

"*DIP Facility*").

Closing Date:

November 12, 2008, so long as the entry of the Interim Order (as defined below) has occurred on such date, or on such later date as the Interim Order shall be entered, but in no event later than three business days after the commencement of the Cases (the "*Petition Date*" and the date of the closing of the DIP Facility, the "*Closing Date*").

Purpose:

The loans under the DIP Facility (the "*DIP Loans*") will be used to pay (i) costs and expenses of the Borrowers in respect of the "Project" as such term is defined in the Prepetition Credit Agreement, including certain allowed administrative fees, costs and expenses in connection with the Cases, (ii) interest payments on advances under the DIP Facility, and (iii) fees, costs and expenses relating to the DIP Facility, including those of Agent and Lenders and their counsel and financial advisor, in each case in accordance with the 21 day budget setting forth the fees, costs and expenses of the Loan Parties, including certain allowed administrative fees, costs and expenses in connection with the Cases on a weekly basis, annexed hereto as Annex A (the "*Approved Budget*").   The Approved Budget shall be subject to revision with the prior approval of the Agent, and shall be in form and substance in all respects satisfactory and agreeable to the Agent upon entry of each of the Interim Order (defined below) and Final Order (defined below). No Cash Collateral (defined below), Carve-Out (defined below) or advances under or proceeds of the DIP Loans may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Facility or the Prepetition Credit Documents, or the liens or claims granted under the Interim Order, the DIP Facility or the Prepetition Credit Documents, (b) assert any claims, defenses or causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Facility, the Prepetition Credit Documents or this Order or (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders hereunder, under the DIP Facility or the Prepetition Secured Credit Documents, in each foregoing case without such party's prior written consent.

Availability:

Lenders will fund the DIP Loans on the Closing Date into a collateral account maintained by the Agent.   (i) $_____ of proceeds of the DIP Loans will

be made available to the Borrowers upon entry of the Interim Order (as defined below), (ii) proceeds of the DIP Loans will be made available to the Borrowers on a weekly basis subject to confirmation by the Agent and the financial advisor to Lenders that such proceeds will be used in accordance with the Approved Budget after entry of the Interim Order, and (iii) all remaining proceeds of the DIP Loans will be made available to the Borrowers upon entry of the Final Order (as defined below).

**Interest Rate:** 15.0% per annum, payable weekly, on the Maturity Date (as defined below) and in connection with any repayment of DIP Loans, on the DIP Loans subject to such repayment.

**Default Rate:** During the continuance of any Event of Default (as defined below), interest will accrue at the applicable interest rate plus 2.0% per annum.

**Agency Fee:** $50,000 payable to Agent on the Closing Date and on each anniversary of the Closing Date.

**Arrangement Fee:** $150,000 payable to the Arranger on the Closing Date.

**Final Maturity and Amortization:** The earliest to occur of (a) 21 days following entry by the Bankruptcy Court of the interim order approving the DIP Loans in the Cases (the "*Interim Order*"), (b) 15 days after entry of the Interim Order if the final order approving the DIP Loans (the "*Final Order*") has not been entered by the Bankruptcy Court in the Cases prior to the expiration of such 15-day period, and (c) the acceleration of the DIP Loans and the termination of commitments to make the DIP Loans in accordance with the terms of the Initial Order, Final Order and DIP Facility documentation (the "*Maturity Date*"). The DIP Loans shall not be subject to amortization.

**Security:** The DIP Facility will be secured by substantially all the assets of each Borrower and each Subsidiary Guarantor, whether owned on the Closing Date or thereafter acquired (collectively, the "*Collateral*"), including but not limited to: (a) a perfected pledge of all the equity interests held by any Borrower or any Subsidiary Guarantor (including but not limited to equity interests of "Unrestricted Subsidiaries" as defined in the Prepetition Credit Agreement), (b) a pledge of all intercompany notes and notes constituting obligations of affiliates, and (c) perfected first-priority security interests in, and mortgages on, substantially all tangible and intangible assets of each Borrower and each Subsidiary Guarantor (including but not limited to accounts receivable, inventory, equipment, general intangibles, investment property, intellectual property, real property, cash, deposit and securities accounts, commercial tort claims, letter of credit rights,

3.

intercompany notes and proceeds of the foregoing); provided that Unrestricted Subsidiaries shall not be required to pledge Collateral if (x) such pledge would violate existing contracts such Unrestricted Subsidiaries are party to, or (y) agreed to by Lenders holding a majority of the outstanding commitments and loans under the DIP Facility.

Priority:

All DIP Loans and other liabilities and obligations of the Loan Parties to the Agent and the Lenders under the DIP Facility shall be:

(i) pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the Cases of the Loan Parties over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code (but subject to the Carve-Out);

(ii) pursuant to section 364(d) of the Bankruptcy Code, secured by first priority, priming and senior security interests and liens in and on the Collateral, not subject to subordination or any other liens, except for prepetition liens of third parties on the Collateral as to which such third parties have a valid, perfected and unavoidable existing lien (excluding any liens securing obligations relating to the Prepetition Credit Agreement) (the "*Prepetition Third Party Liens*"); and all existing liens, rights and interests granted to or for the benefit of the Prepetition Agent and Prepetition Lenders under the Prepetition Credit Agreement and other related documents (the "*Prepetition Credit Agreement Liens*") shall be primed and made subject to and subordinate to the perfected first priority senior liens to be granted to the Agent, for the benefit of the Lenders, which senior priming liens in favor of the Agent (the "*Priming DIP Liens*") shall also prime any liens granted after the commencement of the Cases to provide adequate protection in respect of any of the Prepetition Credit Agreement Liens;

(iii) pursuant to section 364(c)(2) of the Bankruptcy Code, secured by first priority security interests and liens not subject to subordination, in and on all Collateral that is not otherwise subject to a lien; and

(iv) pursuant to section 364(c)(3) of the Bankruptcy Code, secured by junior priority security interests and liens not subject to subordination, in and on all Collateral that is subject to the Prepetition Third Party Liens (the "*Second Priority DIP Liens*");

in each case subject only to permitted exceptions to be

agreed upon in writing by the Agent in its sole discretion, and (x) in the event of the occurrence and during the continuance of an Event of Default (as defined below), the payment of allowed and unpaid professional fees and disbursements incurred by the Loan Parties (excluding any incurred and unpaid professional fees and expenses of the Agent or Lenders payable pursuant to the Interim Order or the Final Order) in an aggregate amount not in excess of the sum of all budgeted unpaid professional fees and disbursements of the Loan Parties' professionals incurred prior to the occurrence of an Event of Default, to the extent proceeds of the DIP Loans in amounts budgeted for such unpaid Loan Parties' professional fees and disbursements are actually segregated and earmarked by the Borrowers only for payment of such budgeted professional fees and disbursements, and to the extent such unpaid fees and disbursements allowed by the Bankruptcy Court, and (y) the payment of fees pursuant to 28 U.S.C. § 1930 to the extent related to the Cases of the Loan Parties and incurred during the period prior to an Event of Default (clauses (x) and (y), together, the *"Carve-Out"*).

Cash Collateral

Pursuant to sections 361, 362 and 363 of the Bankruptcy Code, the Debtors shall be entitled to use the cash collateral (as defined in the Prepetition Credit Agreement, the *"Cash Collateral"*) and all other collateral on which the Prepetition Lenders have a lien or security interest (together with the Cash Collateral, the *"Prepetition Collateral"*), subject to the provisions for adequate protection set forth herein.

Conditions to Priming / Adequate Protection:

The Prepetition Agent and the Prepetition Lenders under the Prepetition Credit Agreement, whose liens are primed as described in clause (ii) of "Priority" above, shall receive, for adequate protection for such priming, adequate protection liens on all the Collateral, junior only to the (i) Priming DIP Liens, (ii) Second Priority DIP Liens, and (iii) Prepetition Third Party Liens.

Mandatory Prepayments:

The DIP Loans shall be prepaid with (a) 100% of the net cash proceeds of all asset sales or other dispositions of property by Borrowers and their subsidiaries (including proceeds from the sale of stock of any subsidiary of the Borrower and insurance and condemnation proceeds), (b) 100% of the net cash proceeds of issuances, offerings or placements of debt obligations of Borrowers and their subsidiaries, (c) 100% of the net cash proceeds of issuances of equity securities of Borrowers and their subsidiaries, (d) 100% of the net cash proceeds of certain extraordinary receipts (including tax refunds, indemnity payments, pension reversions, acquisition purchase price adjustments

and insurance proceeds not included as proceeds of asset dispositions), and (e) other amounts which are usual and customary for debtor-in-possession financings. Any proceeds from the sale of Unrestricted Subsidiaries or assets of Unrestricted Subsidiaries shall be distributed to the Borrowers and applied to repay the DIP Loans. Notwithstanding the foregoing, no reinvestment with any proceeds of any extraordinary receipts, asset sales or other proceeds described above shall be permitted without the written consent of the Lenders.

Prepayments will be applied (a) first, to pay all outstanding indemnity obligations owing to the Agent and to reimburse the Agent for, or otherwise satisfy, all expenses incurred by the Agent (b) second, to pay accrued and unpaid interest on, and fees and expenses in respect of, the DIP Loans and the other obligations under the DIP Facility; (c) third to repay any principal amounts or other obligations outstanding in respect of the DIP Loans; and (d) upon the payment in full of the DIP Loans and the other obligations under the DIP Facility, to the Prepetition Lenders, the Loan Parties or as otherwise required by law.

**Voluntary Prepayments:**  Voluntary prepayments of the DIP Facility will be permitted at any time, in minimum principal amounts of $100,000 and any multiple thereof, without premium or penalty. All voluntary prepayments shall be applied to the obligations under the DIP Facility in accordance with the application of payment provisions set forth in "Mandatory Prepayments" above.

**Conditions Precedent to all Borrowings:**  Conditions precedent to each borrowing under the DIP Facility will be (i) the delivery of a customary borrowing notice, (ii) the accuracy of all representations and warranties, (iii) the absence of any continuing Event of Default, (iv) the conditions precedent set forth on Exhibit A hereto and (v) the Interim Order and Final Order (as the case may be) being in form and substance satisfactory and agreeable to the Agent in all respects.

**Representations and Warranties:**  The Borrowers represent and warrant to each Lender and Agent that the following statements are true and correct:

(a) Each Loan Party is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization.

(b) Each Loan Party is duly authorized and empowered to enter into, execute, deliver and perform the DIP Facility documentation to which it is a party. The execution, delivery and performance of the DIP Facility documentation has been duly authorized by all necessary action.

(c)   The DIP Facility documentation is a legal, valid and binding obligation of the Loan Parties signatories thereto, enforceable against each of them in accordance with the terms of such documentation, except as may be limited by law.

(d)   Set forth on Schedule 1 hereto is the complete organizational structure of the Loan Parties.

In addition to the foregoing representations and warranties, the DIP Facility documentation shall contain representations and warranties customary for debtor-in-possession financings and others deemed appropriate by the Agent or the Lenders.

Affirmative Covenants:

The Loan Parties shall, or shall cause their subsidiaries to: (a) deliver weekly certifications with respect to compliance with the Approved Budget, weekly cash reports and budgets, and all other reporting required under the Prepetition Credit Agreement and any other information reasonably requested by Agent, (b) weekly reports detailing all cash expenditures and cash receipts during the immediately preceding week and all expected cash expenditures and cash receipts for the subsequent two-week period, (c) deliver notices of Events of Default or any other material event, and all other notices required under the Prepetition Credit Agreement, (d) permit Agent, Lenders and their representatives and designees to visit and inspect the properties, books and records of the Loan Parties upon reasonable notice at the Loan Parties' expense, (e) preserve and keep in full force and effect each Loan Parties' organizational existence and all rights and privileges material to the business of the Loan Parties, (f) pay all taxes and other governmental charges imposed upon any Loan Party or any of its properties or assets as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Cases, (g) maintain in good working order all material properties used in the business of the Loan Parties, (h) maintain insurance with respect to the business and properties of the Loan Parties against loss of the type customarily maintained under similar circumstances by entities engaged in similar businesses, (i) comply with the requirements of all applicable laws, noncompliance with which, individually or in the aggregate, could reasonably be expected to have a material adverse effect on the Loan Parties taken as a whole, (j) in the event any person becomes a domestic subsidiary of any Borrower, take such actions and execute such documents as Agent may request to create in favor of Agent a valid and perfected first-priority lien on all Collateral owned by such subsidiary and all equity interests in such subsidiary, (k) execute and deliver such documents

and do such other acts as the Agent may reasonably request in connection with the DIP Facility, (l) maintain compliance with the Approved Budget, subject to variances acceptable to the Agent in its discretion, (m) cause, at all times, Edra Blixseth to directly or indirectly control each of the Borrowers and BLX Group, Inc.and own, directly or indirectly, 51% of the economic and voting interests in each of the Borrowers and BLX Group, Inc., (n) perform all obligations of the Loan Parties under the DIP Facility, (o) cooperate with Lenders and their affiliates in arranging any take-out financing (including without limitation, providing information, marketing and preparation of any memorandum of any offering documents), (p) provide the CRO (as defined in Exhibit A hereto) with access to the books and records of the Loan Parties and any and all information pertaining to the Loan Parties as the CRO may request from time to time.

In addition to the foregoing affirmative covenants, the DIP Facility documentation shall contain affirmative covenants customary for debtor-in-possession financings and others deemed appropriate by the Agent or the Lenders.

Negative Covenants:

Negative covenants will apply to each Loan Party and shall be as follows:

(a) Except to the extent existing as of the Closing Date, no Loan Party shall incur any indebtedness (other than the borrowings under the DIP Facility and obligations permitted to be incurred under the Approved Budget).

(b) Except to the extent existing as of the Closing Date, no Loan Party shall incur any liens other than liens permitted by the Agent in its discretion.

(c) Except to the extent existing as of the Closing Date, no Loan Party shall make any investments in any person or make any loan to any person.

(d) No Loan Party shall make any dividend or distribution or redeem or repurchase its equity interests except for dividends or distributions paid to a Loan Party.

(e) No Loan Party shall (i) enter into any merger, consolidation or reorganization, or (ii) liquidate, wind up or dissolve, in each case without the consent of the Agent.

(f) No Loan Party shall engage in any asset sales except with the consent of Agent.

(g) No Loan Party shall enter into any transaction with any affiliate of a Loan Party (other than another Loan Party) except with the consent of Agent.

(h) No Loan Party shall engage in any business other than the businesses engaged in by the Loan Parties on the

8

Closing Date.

(i) No Loan Party shall terminate or agree to any modification to any organizational documents of any Loan Party.

(j) No Loan Party shall make any payment of prepetition claims or payment of postpetition items except in accordance with the Approved Budget.

(k) No Loan Party shall consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior or pari passu with the liens granted to the Agent or the Prepetition Agent, except as permitted by the DIP Facility documentation.

(l) No Loan Party shall enter into any agreement providing for or related to the management of the Borrowers' business and/or properties other than any such agreement expressly consented to in writing by the Agent.

(m) The Loan Parties shall not terminate the CRO or modify the terms of retention, duties and authority of the CRO without the express written consent of the Agent.

In addition to the foregoing negative covenants, the DIP Facility documentation shall contain negative covenants customary for debtor-in-possession financings and others deemed appropriate by the Agent or the Lenders.

**Events of Default:**    IF any of the following conditions or events (each, an "*Event of Default*") shall occur:

(a) The Borrowers shall fail to pay any of the obligations under the DIP Facility on the due date thereof; or

(b) Any representation, warranty or other written statement to Agent or any Lender by or on behalf of any Loan Party proves to have been false or misleading in any material respect when made; or

(c) Any Loan Party shall breach any covenant contained herein or in the DIP Facility documentation or fail to comply with the Interim Order or Final Order; or

(d) There shall occur any event or condition that has a material adverse effect (other than with respect to a plan of reorganization and the DIP Facility) on the condition (financial or otherwise), businesses, performance, prospects, operations or property of the Borrowers and their subsidiaries, individually or taken as a whole; or

(e) Edra Blixseth shall cease to directly or indirectly control each of the Borrowers and BLX Group, Inc. and own, directly or indirectly, 51% of the economic and voting interests in each of the Borrowers and BLX Group, Inc.; or

(f) Any Loan Party or any of its affiliates shall challenge in

any action the validity or enforceability of any of the DIP Facility documentation, the enforceability of the obligations thereunder, or the perfection or priority of any lien granted to Agent or any of the DIP Facility documentation ceases to be in full force or effect; or

(g) Any Loan Party shall be convicted under any criminal law that could lead to a forfeiture of any property of such Loan Party; or

(h) A trustee, or an examiner with enlarged powers relating to the operation of the business of any Loan Party (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code), shall be appointed in any of the Cases; or

(i) Any other superpriority claim which is pari passu with or senior to the claims of the Agent and the Lenders shall be granted with respect to any of the Collateral (other than the Carve-Out); or

(j) Other than payments authorized by the Bankruptcy Court in respect of (i) accrued payroll and related expenses as of the commencement of the Cases and (ii) certain creditors, in each case to the extent authorized by one or more "first day" or other orders satisfactory to the Lenders holding a majority of the outstanding commitments and loans under the DIP Facility, the Loan Parties shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables; or

(k) The Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any Loan Party which have an aggregate value in excess of $100,000; or

(l) Any material provision of the DIP Facility documentation shall cease to be valid or binding on any Loan Party, or any Loan Party shall so assert in any pleading filed in any court; or

(m) Any order shall be entered reversing, amending, supplementing, staying for a period in excess of 5 days, vacating or otherwise modifying in any material respect the Interim Order or the Final Order without the prior written consent of the Lenders holding a majority of the outstanding commitments and loans under the DIP Facility; or

(n) A material change in the executive management of the Loan Parties shall have occurred, or a change of CRO or the terms of the CRO's duties and authority shall have

occurred, unless such default is cured to the satisfaction of the Lenders holding a majority of the outstanding commitments and loans under the DIP Facility within 5 business days; or

(o) A plan shall be confirmed in any of the Cases that does not provide for the termination of the commitments under the DIP Facility and the payment in full in cash of the Loan Parties' obligations under the DIP Facility in a manner acceptable to the Agent and the Lenders; or

(p) Variance from the Approved Budget in excess of 10% per line item set forth in the Approved Budget; or

(q) Any of the Cases shall be dismissed or converted into a chapter 7 case;

THEN the Agent, at the direction of the Lenders holding a majority of the outstanding commitments and loans under the DIP Facility, may take all or any of the following actions without further order of or application to the Bankruptcy Court, provided that, with respect to clause (iii) below and the enforcement of liens or other remedies with respect to the Collateral referred to in clause (iv) below, the Agent shall provide the Borrowers (with a copy to counsel to each statutory committee appointed in the Cases and to the applicable United States Trustee) with 5 business days' prior written notice, and provided further that, upon receipt of any such notice, the Borrowers may only make disbursements in the ordinary course of business consistent with the Approved Budget and with respect to the Carve-Out, but may not disburse any other amounts; provided further that, in any hearing after the giving of the aforementioned notice, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing:

(i) declare the principal of and accrued interest on the outstanding DIP Loans to be immediately due and payable;

(ii) terminate any further commitment to lend to the Borrowers;

(iii) set-off any amounts held as cash collateral (including, without limitation, in any cash collateral account for the benefit of the Agent and the Lenders) or in any accounts maintained by any of the Lenders or their affiliates; or

(iv) sell, collect, exercise rights of foreclosure and otherwise exercise remedies with respect to the Collateral and take any other action or exercise any other right or remedy (including, without limitation, with respect to the liens in favor of the Agent and the Lenders) permitted under the DIP Facility documentation or by applicable law.

**Other Bankruptcy Matters:**    Among other things, the Final Order shall provide that, upon entry of the Final Order, (a) the Agent, the Lenders, ~~the Prepetition Agent and the Prepetition Lenders~~ and all of their respective counsel, advisors and consultants, shall each be entitled to the benefit of a "good faith" finding pursuant to section 364(e) of the Bankruptcy Code, and (b) the Agent and the Lenders reserve the right to credit bid (pursuant to section 363(k) of the Bankruptcy Code and/or applicable law) the DIP Loans, in whole or in part, in connection with any sale or disposition of assets in the Cases.

**Voting:**    Amendments and waivers of the DIP Facility documentation shall require the approval of Lenders holding more than 50% of the aggregate outstanding amount of the loans and commitments under the DIP Facility, except that the consent of each Lender shall be required with respect to (a) increases in the commitment of such Lender, (b) reductions of principal, interest or fees payable to such Lender, (c) extensions of final maturity of the loans or commitments of such Lender and (d) releases of all or substantially all of the value of the guarantees of the DIP Facility, or all or substantially all of the Collateral.

**Notes:**    Each Borrower's obligation to pay the principal of, and interest on, the DIP Loans made by each Lender shall be evidenced in the register maintained by the Agent and shall, if requested by such Lender, also be evidenced by a promissory note duly executed and delivered by each Borrower substantially in the form of Annex B (each, a "*Note*" and, collectively, the "*Notes*").

Each Lender will note on its internal records the amount of each DIP Loan made by it and each payment in respect thereof and prior to any transfer of any of its Note will endorse on the reverse side thereof the outstanding principal amount of DIP Loans evidenced thereby. Failure to make any such notation or any error in such notation shall not affect any Borrower's obligations in respect of such DIP Loans.

Notwithstanding anything to the contrary contained above or elsewhere herein, Notes shall only be delivered to Lenders which at any time specifically request the delivery of such Notes. No failure of any Lender to request or obtain a Note evidencing its DIP Loans to any Borrower shall affect or in any manner impair the obligations of such Borrower to pay the DIP Loans (and all related obligations) incurred by such Borrower which would otherwise be evidenced thereby in accordance with the requirements hereof, and shall not in any way affect the security or guaranties therefor provided pursuant to any other agreement entered into in connection herewith. Any

Lender which does not have a Note evidencing its outstanding DIP Loans shall in no event be required to make the notations otherwise described in the immediately preceding paragraph. At any time any Lender requests the delivery of a Note to evidence any of its DIP Loans, each Borrower shall promptly execute and deliver to the respective Lender the requested Note in the appropriate amount or amounts to evidence such DIP Loans.

**Cost and Yield Protection:** Sections 2.8 and 2.9 of the Prepetition Credit Agreement relating to yield protection and indemnification, including capital adequacy requirements, shall apply to the DIP Facility mutatis mutandis.

**Assignments and Participations:** The Lenders will be permitted to assign loans under the DIP Facility without the consent of (but with notice to) the Borrower. All assignments will require the consent of the Agent, not to be unreasonably withheld or delayed. Each assignment will be in the amount of $100,000 or an integral multiple thereof. Assignments will be by novation.

The Lenders will be permitted to sell participations in loans and commitments under the DIP Facility without restriction. Voting rights of participants shall be limited to matters in respect of (a) increases in commitments of such participant, (b) reductions of principal, interest or fees payable to such participant, (c) extensions of final maturity of the loans or commitments under the DIP Facility and (d) releases of all or substantially all of the value of the guarantees of the DIP Facility, or all or substantially all of the Collateral.

**Expenses and Indemnification:** The Borrowers will indemnify the Arranger, the Agent, the Lenders, their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an *"Indemnified Person"*) and hold them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel and financial advisors) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by Borrowers or any of their affiliates) that relates to the financing contemplated hereby, *provided* that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in the final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from its gross negligence or willful misconduct. In addition, all out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of counsel) of the

*post-petition*

*13*

Arranger, the Agent and the Lenders for enforcement costs and documentary taxes associated with the DIP Facility will be paid by the Borrower. All out-of-pocket costs and expenses of the Agent and the DIP Lenders in connection with the DIP Facility shall be payable by the Loan Parties promptly upon written demand and without the requirement for Bankruptcy Court approval whether or not the transactions contemplated hereby are consummated.

Agency:

Section 8 of the Prepetition Credit Agreement relating to, among other things, agents' appointment, rights and responsibilities shall apply to the DIP Facility mutatis mutandis.

Governing Law and Jurisdiction:

The Loan Parties shall submit to the exclusive jurisdiction of the Bankruptcy Court and shall waive any right to a trial by jury. Except to the extent governed by the Bankruptcy Code, the definitive documentation for the DIP Facility shall be governed by the laws of the State of New York (provided that to the extent required under the laws of the State of Montana, rights and remedies in respect of the real property Collateral shall be governed thereby).

Counsel to Agent and Arranger:

Skadden, Arps, Slate, Meagher & Flom LLP.

14

ACCEPTED AND AGREED:

YELLOWSTONE MOUNTAIN CLUB,
LLC, as a Borrower

By:      BLX GROUP INC., its Manager

         By:      _____
         Name:
         Title:


YELLOWSTONE DEVELOPMENT, LLC,
as a Borrower

By:      BLX GROUP INC., its Manager

         By:      _____
         Name:
         Title:


BIG SKY RIDGE, LLC, as a Borrower


By:      _____
Name:
Title:


Term Sheet

15

CREDIT SUISSE, CAYMAN ISLANDS
BRANCH, as Agent and Lender

By: _____
Name:
Title:


By: _____
Name:
Title:

Term Sheet

*16*

## EXHIBIT A

### Additional Conditions Precedent

Except as otherwise set forth below, the initial borrowing under the DIP Facility shall be subject to the following additional conditions precedent:

1.    Chief Restructuring Officer.  A chief restructuring officer (the "*CRO*") shall be retained to support senior management in connection with the management of the Loan Parties' affairs and businesses on customary terms and conditions for an assignment of this type.  The identity of the CRO, the scope of the CRO's duties and authority, and the terms and conditions of the CRO's engagement shall be acceptable in form and substance to the Agent and Lenders.

2.    Corporate Structure; Organizational Documents.  The corporate structure, capital structure, other debt instruments, material contracts, cash management systems, governing documents of the Borrowers, and their direct and indirect subsidiaries and any other Loan Parties, tax effects resulting from the commencement of the Cases and the DIP Loans and the DIP Facility, shall be satisfactory to the Lenders.

3.    Interim Order.  The Bankruptcy Court shall have entered the Interim Order which shall be in form and substance in all respects satisfactory and agreeable to the Agent and its counsel.  All motions relating to the Interim Order, shall be in form and substance satisfactory to the DIP Lenders and their counsel, shall be entered by the Bankruptcy Court no later than 3 business after the Petition Date, and shall include, without limitation, provisions (a) modifying the automatic stay to permit the creation and perfection of the Agent's liens on the Collateral, (b) providing for the automatic vacation of such stay to permit the enforcement of the Agent's and Lenders' remedies under the DIP Facility, including, without limitation, the enforcement, upon 5 days' prior written notice, of such remedies against the Collateral, requiring the Borrowers' best efforts (subject to applicable law) to sell the Collateral if requested by the Agent and directing that the Agent and its representatives be granted access to all locations during the continuance of an Event of Default in support of the enforcement and exercise of such remedies, (c) upon entry of the Final Order, prohibiting the assertion of claims arising under section 506(c) of the Bankruptcy Code against the Agent or any Lender or, except as expressly permitted therein, the commencement of other actions adverse to the Agent or any Lender or their respective rights and remedies under the DIP Facility, the Interim Order, the Final Order, or any other order, (d) prohibiting the incurrence of debt by any of the Loan Parties, (e) prohibiting any granting or imposition of liens other than liens acceptable to the Lenders, (f) approving Borrowers' stipulation to the validity, extent, amount, perfection, priority, and non-avoidability of the prepetition claims and liens granted under or in connection with the Prepetition Credit Agreement, and (g) authorizing and approving the DIP Facility and the transactions contemplated thereby, including, without limitation, the granting of the super-priority status, security interests and liens, and the payment of all fees, referred to herein.

4.    First Day Motions.  All "first day" motions and related orders (including, without limitation, in respect of cash management) entered by the Bankruptcy Court in the Cases shall be in form and substance satisfactory to the Lenders and their counsel.

5.    Approved Budget.  The Borrowers shall have delivered to the Lenders an Approved Budget in form and substance acceptable to the Lenders.

6.     Projections.  The Lenders shall have received final financial projections of the Borrowers and their direct and indirect subsidiaries for period(s) requested by the Agent, and such financial projections shall be in form and substance acceptable to Agent.

7.     Performance of Obligations.  All costs, fees, expenses (including, without limitation, legal fees and expenses) and other compensation payable to the Agent and the Lenders shall have been paid to the extent due and payable in accordance with the terms of the Interim Order and the DIP Facility.

8.     Litigation, etc.  There shall not exist any action, suit, investigation, litigation or proceeding pending (other than the Cases) or threatened in any court or before any arbitrator or governmental authority that, in the opinion of the Agent or any Lender, affects any of the transactions contemplated hereby, or that has or could be reasonably likely to have a material adverse change or material adverse condition in or affecting the businesses, assets, operations or condition (financial or otherwise) of the Borrowers and their direct and indirect subsidiaries, taken as a whole, or any of the transactions contemplated hereby.

9.     Customary Closing Documents.  All documents required to be delivered, including customary corporate records, organizational resolutions and approvals, documents from public officials and officers' certificates and other information (including other information and documentation required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including without limitation the PATRIOT Act), shall have been delivered and reviewed to the satisfaction of the Lenders.

10.    Satisfactory Documentation.  The DIP Facility documentation, including without limitation this Superpriority Debtor-in-Possession Term Loan Facility Term Sheet, shall be prepared by counsel to the Lenders and shall be in form and substance satisfactory in all respects to the Agent and the Lenders.

11.    Lien Search, etc.  Administrative Agent shall have received the results of a recent lien, tax and judgment search in each relevant jurisdiction with respect to the Loan Parties, and such search shall reveal no liens on any of the assets of the Loan Parties other than liens permitted hereby and other liens acceptable to the Lenders.

12.    Cash Management.  Cash management arrangements satisfactory to the Agent in form and substance shall be in place.  The Lenders or their advisors shall have completed a review of the Loan Parties' cash management systems and determined that all cash and cash equivalents of the Loan Parties are subject to a valid and perfected first priority security interest in favor of the Agent, for the benefit of the Lenders, pursuant to control agreements and/or orders of the Court.

13.    Insurance/Assets.  The Interim Order shall provide that the Agent shall be named as loss payee (in respect of property/casualty insurance policies maintained by the Loan Parties) and additional insured (in respect of liability insurance policies maintained by the Loan Parties), and that the Agent shall be provided with 30 days' advance notice of all non renewal/cancellation/amendment riders in respect of such policies.

14.    Material Adverse Change.  There will have been, since the Petition Date, no material adverse change, individually or in the aggregate, (other than with respect to a plan of reorganization and the DIP Facility) in (a) the condition (financial or otherwise), businesses, performance, prospects, operations or property of the Borrowers and their direct and indirect

subsidiaries, individually or taken as a whole, (b) the ability of any Loan Party to perform its respective obligations hereunder or under any other DIP Facility documentation, and (c) the validity or enforceability of any of the DIP Facility documentation or the rights and remedies of the Agent and the Lenders under any of the DIP Facility documentation; provided that (x) the filing of the Cases, and (y) any events of default under the Prepetition Credit Agreement shall not be taken into consideration.

15.     Waivers/Consents/Approvals. As may be required, the Agent shall have received all necessary third party and governmental waivers, consents and approvals, and the Borrowers shall, and shall have caused the other Loan Parties to, have complied with all applicable laws, decrees and material agreements.

16.     No Default. No default that, with the passage of time or the giving of notice, or both, could result in an Event of Default, or Event of Default shall exist at the time of, or after giving effect to the making of, the DIP Loans with respect to the DIP Loans made on the Closing Date.

17.     Representations and Warranties. All representations and warranties of each Loan Party made herein and in any other DIP Facility documentation shall be true and correct in all respects as of the Closing Date.

18.     Margin Regulations. All loans made by the Lenders to the Borrowers shall be in full compliance with the Federal Reserve's Margin Regulations.

19.     Fees and Expenses. The Borrowers shall have paid all fees and expenses then due to CS, any Agent or any Lender hereunder.

20.     Funding by Lenders. Lenders other than Credit Suisse and its affiliates shall have agreed to fund an aggregate principal amount equal to not less than 75% of the DIP Facility and shall have funded such amount into an account maintained by Credit Suisse.

*19*

ANNEX A

Approved Budget

20

ANNEX B

Form of Note

21