IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        )
IN RE:                                                  )
                                                        )   Bankr. Case No. 08-61570-11
YELLOWSTONE MOUNTAIN CLUB, LLC, et al.,                 )
                                                        )   Jointly Administered
                                                        )
        Debtors.                                        )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1) AND 364(e), AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11
U.S.C. §363; (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY
CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED
PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; AND (IV) SCHEDULING
A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 2002, 4001 AND 9014**

Upon the motion (the "**Motion**") of Yellowstone Mountain Club, LLC, Yellowstone

Development, LLC and Big Sky Ridge, LLC, each as debtor and debtor-in-possession

(collectively, the "**Debtors**" or "**Borrowers**"), in the above-captioned cases (the "**Cases**")

seeking, pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1)

and 364(e) of title 11 of the United States Code, 11 U.S.C. §§101, *et seq.* (the "**Bankruptcy**

**Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), this Court's authorization:

         (a)     for the Borrowers to obtain an initial 21 day superpriority
postpetition term loan financing facility pursuant to a DIP Term Loan Facility (the "**DIP
Facility**") in an aggregate principle amount of $4,450,000 on the terms set forth on the term
sheet attached hereto as Exhibit 1 (the "**DIP Term Sheet**"), and for each existing and
subsequently acquired or organized subsidiary of any Borrower (the "**Subsidiary Guarantors**")
to guaranty the Borrowers' obligations in connection with the DIP Facility from a syndicate of
banks, financial institutions and other institutional lenders that agree to make loans under the
DIP Facility (the "**DIP Lenders**") (with Credit Suisse acting as sole administrative agent and
collateral agent (the "**DIP Agent**"), and Credit Suisse Securities (USA) LLC, acting as sole
bookrunner and sole lead arranger), with such DIP Facility:

(i)        having priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out (defined below);

(ii)        being secured (subject to the Carve-Out), pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority security interests in and liens, not subject to subordination, upon all unencumbered prepetition and postpetition property of the Debtors including, but not limited to, Cash Collateral (defined below), inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, property, plants, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing, but excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "**Avoidance Actions**");[1]

(iii)        being secured (subject to the Carve-Out), pursuant to Section 364(d)(1) of the Bankruptcy Code, by perfected first priority senior priming and security interests and liens on substantially all of the property of the Debtors and the Subsidiary Guarantors whether owned on the Closing Date (as defined in the DIP Term Sheet) or thereafter acquired (the "**Collateral**"), except for prepetition liens of third parties on the Collateral as to which such third parties have a valid, perfected and unavoidable existing lien (excluding any liens securing obligations relating to the Credit Agreement dated as of September 30, 2005, as amended, (the "**Prepetition Credit Agreement**") (the "*Prepetition Third Party Liens*"); and all existing liens, rights and interests granted to or for the benefit of the Prepetition Agent and Prepetition Lenders under the Prepetition Credit Agreement and other related documents (the "*Prepetition Credit Agreement Liens*") shall be primed and made subject to and subordinate to the perfected first priority senior liens to be granted to the DIP Agent, for the benefit of the DIP Lenders, which senior priming liens in favor of the DIP Agent (the "*Priming DIP Liens*") shall also prime any liens granted after the commencement of the Cases to provide adequate protection in respect of any of the Prepetition Credit Agreement Liens; and

(iv)        being secured (subject to the Carve-Out), pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected second priority security interests in and liens, not subject to subordination, upon all Collateral that is subject to the Prepetition Third Party Liens (the "**Second Priority DIP Liens**");

(b)        for the Debtors to use the Cash Collateral (as defined in the Prepetition Credit Agreement) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other collateral on which the Prepetition Lenders have a lien or security interest (together with the Cash Collateral, the "**Prepetition Collateral**") and provide adequate protection with respect to any diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral resulting from the implementation of the DIP Facility and the priming of the Prepetition Agent's liens on the Prepetition Collateral to secure the DIP Facility set forth herein, the use of the Cash Collateral and the use, sale or lease by the Debtors (or other decline in value)

---

[1]        Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)     to schedule, pursuant to Bankruptcy Rule 4001, an emergency interim hearing (the "**Interim Hearing**") on this Motion for this Court to consider entry of an interim order annexed to the Motion (the "**Interim Order**") (i) authorizing the Borrowers, on an interim basis, to forthwith borrow up to the aggregate amount of $4,450,000 from the DIP Lenders under the DIP Facility, (ii) authorizing the use by the Debtors of Cash Collateral, and (iii) granting the adequate protection hereinafter described; and

(d)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of a final order authorizing such additional postpetition financing for which the Debtors obtain commitment on a final basis and on such terms as shall be set forth in definitive debtor-in-possession loan documentation (the "**DIP Financing Documents**") and as set forth in the Motion; and

(e)     the granting of certain related relief.

The Interim Hearing having been held by this Court on November 12 and 13, 2008, in

Missoula and upon the record made by the Debtors at the Interim Hearing and after due

deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction*. This Court has core jurisdiction over the Case, this Motion, and the

parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice*. Notice of the Motion, the relief requested therein and the Interim

Hearing was served by the Debtors on their largest unsecured creditors, the Prepetition Agent,

the United States Trustee for the District of Montana and certain other parties. Under the

circumstances, such notice constitutes due and sufficient notice thereof and complies with

Bankruptcy Rules 4001(b) and (c).

3.     *Objections*. All objections to the entry of this Order, if any, are resolved hereby

or, to the extent not resolved, are overruled. The rights of all parties to object to the entry of the

final order are reserved.

4.    *Debtor's Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 18 below), the Debtors admit, stipulate and agree that:

(a)    as of the Petition Date, (i) the Debtors were truly and justly indebted and liable to (i) the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $307,000,000 in respect of loans made by the Prepetition Lenders pursuant to, and in accordance with the terms of, the Prepetition Credit Agreement and related documents (the "**Prepetition Credit Documents**"), plus, accrued and unpaid interest thereon and fees, expenses and other obligations incurred in connection therewith as provided in the Prepetition Credit Documents (the "**Prepetition Secured Obligations**"), and

(b)    the Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(c)    no portion of the Prepetition Secured Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(d)    the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Agent, the Prepetition Lenders and their affiliates, agents, officers, directors, employees, attorneys and advisors with respect to the Prepetition Secured Obligations; and

(e)    the liens and security interests granted to the Prepetition Agent and the Prepetition Lenders pursuant to and in connection with the Prepetition Credit Documents

4

(including, without limitation, all security agreements, pledge agreements, mortgages, leasehold mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Lenders) are (i) valid, binding, perfected, enforceable first priority liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (x) after giving effect to this Order, the DIP Liens (as defined below), (y) after giving effect to this Order, the Carve Out (as defined below) and (z) valid, perfected and unavoidable liens permitted under the Prepetition Credit Documents to the extent such permitted liens are senior to or *pari passu* with the liens of the Prepetition Agent and the Prepetition Lenders on the Prepetition Collateral (the "**Permitted Prepetition Liens**").

     5.    *Findings Regarding the DIP Facility.*

         (a)    Good cause has been shown for the entry of this Order.

         (b)    The Debtors have an immediate need to obtain the DIP Facility and use the Prepetition Collateral, including the Cash Collateral, for the purposes and on the terms set forth in the DIP Term Sheet, in order to permit, among other things, the orderly continuation of the operation of their businesses to pay the expenses in respect of the "Project" as such term is defined in the Prepetition Credit Agreement, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs. As a condition to any postpetition lending, the Debtors' use of the Prepetition Collateral and access to the Cash Collateral are necessary in order to ensure that the Debtors have sufficient working capital and liquidity and can preserve and maintain the going concern value of the Debtors' estates.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or unsecured credit with the enhanced priority afforded by section 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens and the Superpriority Claims (defined below) under the terms and conditions set forth in this Order and in the DIP Term Sheet.

(d)     Subject to Mont. LBR 2016-1(d), the terms of the DIP Term Sheet and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Term Sheet and the use of Cash Collateral have been negotiated in good faith between the Debtors, the DIP Agent, the DIP Lenders and the Prepetition Agent, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility, including without limitation, all loans made to the Debtors pursuant to the DIP Facility (together with any other obligation arising under this Order or the DIP Term Sheet, collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lenders in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6

(f)      The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Order and the DIP Facility is therefore in the best interest of the Debtors' estates.

6.      *Authorization of the DIP Term Sheet.*

(a)      The DIP Documents are hereby approved as set forth in this Order and the Debtors are hereby authorized to borrow money pursuant to the DIP Term Sheet and this Order, up to an aggregate principal or face amount of $4,450,000, which shall be used for all purposes permitted under the DIP Term Sheet, including, without limitation, to pay interest, fees and expenses in accordance with this Order (including interest payments on advances under the DIP Facility), to pay amounts approved by other Orders of this Court and to provide working capital for the Debtors.

(b)      The DIP Term Sheet, as approved by this Order, shall constitute the valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms. No obligation, payment, transfer or grant of security under the DIP Term Sheet or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code, under section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.      *Superpriority Claims.*

(a)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed claims against the Debtors with priority over any and all

administrative expenses, diminution claims (including all Adequate Protection Obligations

(defined below)) and all other claims against the Debtors, now existing or hereafter arising, of

any kind whatsoever, including, without limitation, all administrative expenses of the kind

specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all

administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b),

506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority**

**Claims**"), whether or not such expenses or claims may become secured by a judgment lien or

other non-consensual lien, levy or attachment, which allowed claims shall be payable from and

have recourse to all pre and post-petition property of the Debtors and all proceeds thereof,

subject only to the payment of the Carve Out to the extent specifically provided for herein.

(b)     For purposes hereof, the "**Carve Out**" means (i) all fees, incurred during

the period prior to an Event of Default, required to be paid to the Clerk of the Bankruptcy Court

and to the Office of the United States Trustee under section 1930(a) of title 28 of the United

States Code and (ii) in the event of the occurrence and during the continuance of an Event of

Default, the payment of allowed and unpaid professional fees and disbursements incurred by the

Borrowers and Subsidiary Guarantors (excluding any incurred and unpaid professional fees and

expenses of the DIP Agent or DIP Lenders payable pursuant to the Interim Order or the Final

Order) in an aggregate amount not in excess of the sum of all budgeted unpaid professional fees

and disbursements of the Borrowers' and Subsidiary Guarantors' professionals incurred prior to

the occurrence of an Event of Default, to the extent proceeds of the DIP Loans in amounts

budgeted for such unpaid professional fees and disbursements are actually segregated and

8

earmarked by the Borrowers only for payment of such budgeted professional fees and
disbursements, and to the extent such unpaid fees and disbursements are allowed by the
Bankruptcy Court. Nothing herein shall be construed to impair the ability of any party to object
to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B)
above.

       8.     *DIP Liens*.

As security for the DIP Obligations, effective and perfected upon the date of this Order
and without the necessity of the execution and recordation of filings by the Debtors of security
agreements, control agreements, pledge agreements, financing statements or other similar
documents, the following security interests and liens are hereby granted to the DIP Lenders,
subject, only in the event of the occurrence and during the continuance of an Event of Default, to
the payment of the Carve Out (all such liens and security interests granted to the DIP Lenders,
pursuant to this Order and the DIP Facility, the "**DIP Liens**"):

       (a)     <u>First Lien on Unencumbered Property</u>. Pursuant to section 364(c)(2) of
the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority
senior security interest in and lien upon all pre- and postpetition property of the Debtors, whether
existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not
subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"),
including, without limitation, any unencumbered cash, inventory, accounts receivable, other
rights to payment whether arising before or after the Petition Date, contracts, properties, plants,
equipment, general intangibles, documents, instruments, interests in leaseholds, real properties,
patents, copyrights, trademarks, trade names, other intellectual property, capital stock or other

equity interests of subsidiaries, and the proceeds of all the foregoing. Unencumbered Property shall exclude the Avoidance Actions.

(b)     Liens Priming Prepetition Secured Parties' Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock or other equity interests of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Prepetition Secured Obligations. Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Agent and the Prepetition Lenders arising from current and future liens of the Prepetition Agent and the Prepetition Lenders (including, without limitation, the Adequate Protection Liens (defined below)), but shall not be senior to the Prepetition Third Party Liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Agent and the Prepetition Lenders become or became subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)     Liens Junior to Certain Other Liens. Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected second priority security interests in and liens upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security

10

interests in favor of the DIP Lenders will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable Prepetition Third Party Liens which security interests and liens in favor of the DIP Lenders are junior to such valid, perfected and unavoidable liens of Prepetition Third Parties.

(d)     Liens Senior to Certain Other Liens.  The DIP Liens and the Adequate Protection Liens (defined below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

9.     *Protection of DIP Lenders' Rights.*

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon the occurrence of an Event of Default and the giving of five (5) business days' written notice to the Debtors, the Prepetition Agent, any official committees appointed in these cases (the "Committee"), and the United States Trustee as provided for in the DIP Term Sheet, all rights and remedies against the Collateral provided for in the DIP Term Sheet (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with or under the control of the DIP Agent or any DIP Lender or their affiliates, requiring the Debtors' best efforts to sell the Collateral at the request of the DIP Agent, foreclosing on the collateral or otherwise selling the collateral, and directing that the DIP Agent and its representatives be

11

granted access to all locations during the continuance of and Event of Default in support of the enforcement and exercise of such remedies). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and each of the Debtors hereby waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent and the DIP Lenders set forth in this Order or the DIP Term Sheet. In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The DIP Agent's or the DIP Lenders' failure to seek relief or otherwise exercise its rights and remedies under the DIP Facility or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise.

(b)     Entry of this Order shall be without prejudice to the right of the Prepetition Agent and the Prepetition Lenders to seek relief in the Cases and to appear and be heard on matters before the Court.

10.     *Limitation on Charging Expenses Against Collateral*.

Subject to the entry of the Final Order and except as expressly permitted therein, except to the extent of the Carve Out, no expenses of administration of any of the Cases or any future proceeding that may result therefrom (including liquidation in bankruptcy, the commencement of any action adverse to the DIP Agent or any DIP Lender or their respective rights hereunder, under the DIP Term Sheet or under any other order, or other proceedings under the Bankruptcy Code) shall be charged against or recovered from the Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law,

12

without the prior written consent of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders.

11.     *Payments Free and Clear*. Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or Prepetition Agent on behalf of the Prepetition Lenders pursuant to the provisions of this Order or any subsequent order of the Court shall be received free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.

12.     *Interest on DIP Obligations*. Interest on the DIP Obligations shall accrue at the rates and shall be paid at the times as provided in the DIP Term Sheet.

13.     *Use of Cash Collateral*. The Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Lenders within the meaning of Section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"). The Debtors are hereby authorized to use the Cash Collateral of the Prepetition Agent and the Prepetition Lenders, *provided* that the Prepetition Lenders are granted adequate protection as hereinafter set forth. The Debtors' right to use Cash Collateral under this Order shall terminate automatically on the Maturity Date (as defined in the

13

DIP Term Sheet). The Prepetition Lenders have consented to the use by the Debtors of the Cash Collateral, subject to the terms of this Order.

14. *Adequate Protection*. The Prepetition Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Lenders' Prepetition Collateral, including, without limitation, any such diminution resulting from the implementation of the DIP Facility and the priming of the Prepetition Agents' liens on the Prepetition Collateral, the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "**Adequate Protection Obligations**"). As adequate protection, the Prepetition Agent and the Prepetition Lenders are hereby granted the following:

(a)     Adequate Protection Liens. The Prepetition Agent (for itself and for the benefit of the Prepetition Secured Lenders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements, control agreements or other agreements) a valid, perfected replacement security interest in and lien upon all the Collateral (the "**Adequate Protection Liens**"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the Priming Liens and any liens on the Collateral to which such liens so granted to the DIP Agent are junior and (iii) the Carve Out.

(b)     Section 507(b) Claim. The Adequate Protection Obligations shall constitute Superpriority Claims, subject and subordinate only to the payment of the Carve Out and the Superpriority Claims granted with respect to the DIP Obligations. Notwithstanding the

14

foregoing, the Prepetition Agent and the Prepetition Lenders shall not receive or retain any payments, property or other amounts in respect of the Superpriority Claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Prepetition Credit Documents, but excluding any amounts payable or paid pursuant to this Order, unless and until the DIP Obligations have indefeasibly been paid in cash, in full.

(c)     Reporting and Right to Access. The Debtors shall provide the Prepetition Agent and the Prepetition Lenders with copies of all non-privileged reports, information and other materials reasonably requested by the Prepetition Agent. In addition, the Debtors shall cooperate with and permit representatives of the Prepetition Agent to have access to their premises, non-privileged records and management personnel and meetings. The CRO (as defined in the DIP Term Sheet) shall make himself available to and cooperate reasonably with the representatives of the Prepetition Agent and their reasonable information requests.

15.     *Sufficiency of Adequate Protection.*

The Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agent and the Prepetition Lenders. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Agent and the Prepetition Lenders pursuant hereto is without prejudice to the right of the Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. The consent of the Prepetition Agent and the Prepetition Lenders to the priming of the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Facility authorized pursuant to this Order, and shall not extend to any other post-petition financing or to any modified version

15

or replacement of the DIP Facility and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Agent or the Prepetition Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

16.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders or Prepetition Agent on behalf of the Prepetition Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Order.

(b)     A copy of this Order authenticated by the certificate of the Clerk of the Bankruptcy Court pursuant to Mont. Code Ann. Section 70-21-205, in the discretion of the DIP Agent or the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

16

(c) The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agent all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and Adequate Protection Liens granted pursuant hereto.

(d) Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders or the Prepetition Lenders in accordance with the terms of the DIP Term Sheet or this Order.

17. *Preservation of Rights Granted Under the Order.*

(a) Unless all DIP Obligations and Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the DIP Agent and the Prepetition Agent (and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent), (ii) any order authorizing additional or different debtor-in-possession financing in these cases without the prior written consent of the DIP Agent (and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent), or (iii) an order dismissing any of the

Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agent or the DIP Lenders, and, as applicable, the Prepetition Agent or the Prepetition Lenders pursuant to this Order, shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such superpriority claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) of this paragraph. Without the express written consent of the DIP Lenders, if at any time prior to the repayment in full of all obligations arising under the DIP Facility, including subsequent to the confirmation of any plan in these cases, any of the Borrowers, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to section 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the terms of the Interim Order or the Final Order or shall receive proceeds from a sale of Collateral pursuant to section 363(b) of the Bankruptcy Code, or from a sale of any other Collateral after the satisfaction of liens that are senior to those of the DIP Lenders, then all of the cash proceeds derived from such credit, debt, or sale shall immediately be turned over to the DIP Agent for the *pro rata* reduction of the DIP Facility

      (b)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual

receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacation or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Term Sheet with respect to any DIP Obligations or this Order with respect to any Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders prior to the actual receipt by the DIP Agent or the Prepetition Agent of written notice of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Facility with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(c)     Except as expressly provided in this Order or in the DIP Term Sheet, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders granted by the provisions of this Order and the DIP Term Sheet shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Order and the DIP Term Sheet shall continue in these Cases, in any successor cases if these Cases cease to

19

be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders granted by the provisions of this Order and the DIP Term Sheet shall continue in full force and effect until the DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full.

18.    *Effect of Stipulations on Third Parties.*  The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon the Debtors in all circumstances. The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon all other parties in interest, including, without limitation, any Committee, unless (and only to the extent) (a) a party in interest (including a trustee) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by no later than the date that is the later of (i) 90 days after the entry of this Order, (ii) in the case of such an action being brought by a Committee, 90 days after the appointment of the statutory committee of unsecured creditors appointed in this Case, or (iii) such later date as has been agreed to, in writing, by the Prepetition Agent in respect of challenges that may be initiated against the Prepetition Agent or the Prepetition Lenders in the sole discretion of the Prepetition Agent and has been ordered by the Court (A) challenging the validity, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens on the Prepetition Collateral or (B) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Claims and Defenses**") against the Prepetition Agent or any of the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with matters related to the

Prepetition Credit Documents, the Prepetition Secured Obligations, or the Prepetition Collateral),

and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in

any such timely filed adversary proceeding or contested matter, *provided* that as to the Debtors,

all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition

Date. If no such adversary proceeding or contested matter is timely filed (or, if such proceeding

or matter is filed, then to the extent not subject to successful Claims and Defenses asserted

therein), (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to

counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in

the Cases and any subsequent chapter 7 case, (y) the Prepetition Liens on the Prepetition

Collateral shall be deemed to be legal, valid, binding, perfected, not subject to recharacterization,

subordination, avoidance or reduction and (z) the Prepetition Secured Obligations, the

Prepetition Liens on the Prepetition Collateral and the Prepetition Agent and the Prepetition

Lenders shall not be subject to any other or further challenge by any party in interest, and any

such party in interest shall be enjoined from, seeking to exercise the rights of any of the Debtors'

estates, including, without limitation, any successor thereto (including, without limitation, any

estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).

Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code)

standing or authority to pursue any cause of action belonging to the Debtors or their estates,

including, without limitation, Claims and Defenses with respect to the Prepetition Liens or the

Prepetition Secured Obligations.

     19.    *Waiver of Claims and Causes of Action Against the DIP Lenders.* Without

prejudice to the rights of any other party, including any Committee (but subject to the limitations

thereon in paragraphs 18 and 20), the Debtors have waived any and all claims and causes of

action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, directly related to the DIP Facility, this Order or the negotiation of the terms thereof.

20. *Limitation on Use of DIP Facility Proceeds and Collateral*. The Debtors shall use the proceeds of the DIP Facility and the Cash Collateral solely as provided in this Order and in the DIP Term Sheet. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Prepetition Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Order, the DIP Term Sheet or the Prepetition Credit Documents, or the liens or claims granted under this Order, the DIP Documents or the Prepetition Credit Documents, (b) assert any Claims and Defenses or causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Facility, the Prepetition Credit Documents or this Order or (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders hereunder, under the DIP Facility or the Prepetition Secured Credit Documents, in each foregoing case without such party's prior written consent. Notwithstanding anything herein or the DIP Term Sheet, the Debtors shall be authorized to withdraw funds from any collateral account established or maintained for purposes of funding DIP Facility advances to the Debtors only to the extent of, and with, the Agent's express consent; and all funds in such collateral

account shall be deemed Collateral and under the control of the Agent whether or not subject to any account control agreement in favor of the Agent.

21.    *Insurance.* Pursuant to this Order, (i) the DIP Agent and the DIP Lenders shall be and shall be deemed to be, without any further action or notice, named as an additional insured on each insurance policy maintained by any of the Debtors which in any way relates to the Collateral, and (ii) the Prepetition Agent and the Prepetition Lenders, to the extent of their Adequate Protection Liens, shall be and shall be deemed to be, without any further action or notice, named as additional insureds on each insurance policy maintained by any of the Debtors which in any way relates to the Collateral. The proceeds of any such insurance policy shall be applied to repay, first, the obligations owed to the DIP Lenders under the DIP Facility, and second, the Adequate Protection Obligations owed to the Prepetition Agent and the Prepetition Lenders.

22.    *Proofs of Claim.*

(a) In order to facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized to file a master proof of claim on behalf of itself and each of the Prepetition Lenders on account of their claims arising under the Prepetition Credit Documents and hereunder against the Debtors (the "Master Proof of Claim"), and the Prepetition Agent (and DIP Agent) shall not be required to file verified statements pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure.

(b) Upon the filing of the Master Proof of Claim against the Debtors, the Prepetition Agent and each Prepetition Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name

23

therein in respect of its claims against each of the Debtors arising under the Prepetition Credit Documents, and the claim of the Prepetition Agent and each Prepetition Lender (and each of their respective successors and assigns), named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each applicable Case in the amount set forth opposite each name in the Master Proof of Claim; provided that the Prepetition Agent may, but shall not be required to, amend its Master Proof of Claim from time to time to, among other things, reflect a change in the holders of claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c) The provisions set forth in this paragraph and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, any Committee, the Prepetition Agent or the Prepetition Lenders or any other party in interest or their respective successors in interest including, without limitation, the right of each Prepetition Lender (or their successors in interest) to vote separately on any plan of reorganization proposed in the Cases.

23. *Order Governs*. In the event of any inconsistency between the provisions of this Order and the DIP Term Sheet, the provisions of this Order shall govern.

24. *Binding Effect; Successors and Assigns*. The DIP Term Sheet and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, any Committee, and any of the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy

24

Code, or any other fiduciary hereafter appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, DIP Lenders, the Prepetition Agent, the Prepetition Lenders and the Debtors and each of their respective successors and assigns; *provided*, *however*, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for the estate of any of the Debtors.

25. *Limitation of Liability*. In determining to make any loan under the DIP Term Sheet or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Term Sheet, the DIP Agent and the DIP Lenders, and the Prepetition Agent and Prepetition Lenders, shall not be deemed to be in control of the operations of any of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*. as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the DIP Term Sheet related to this transaction shall in any way be construed or interpreted to impose or allow the imposition, upon the DIP Agent or the DIP Lenders, or Prepetition Agent or Prepetition Lenders, of any liability for any claims arising from the pre-petition or post-petition activities by any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, or in connection with their restructuring efforts.

26. *Right of Access and Information*.

(a) The Debtors shall permit representatives, agents and/or employees of the DIP Agent and Prepetition Agent to have reasonable access to the Debtors' premises,

25

management and non-privileged records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses), and the Debtors' and their CRO shall cooperate and consult with, and provide to such persons all such non-privileged information as they may reasonably request.

27.     *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law and, notwithstanding the possible application of Bankruptcy Rule 6004(g), shall take effect immediately upon execution hereof.

28.     *Final Hearing*.  The Final Hearing is scheduled for **Tuesday, November 25, 2008, at 09:00 a.m. in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA**.  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) counsel to the Debtors, Patten, Peterman, Bekkedahl & Green, P.L.L.C., the Fratt Building, 2817 Second Ave. North (Suite 300), Billings, Montana 59101 (Attn: James A. Patten); (b) counsel to any statutory committee appointed in the chapter 11 cases; (c) counsel for the DIP Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, Wilmington, Delaware 19899 (Attn: Mark Chehi, Esq.), and Holland & Hart LLP, 401 North 31st Street, Billings, MT 59101-1277 (Attn: Charles Hingle, Esq.); and

(d) the office of the United States Trustee for the District of Montana, and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Montana, in each case to allow actual receipt by the foregoing no later than **November 21, 2008 at 2:00 p.m., Mountain Standard Time.**

Dated:   November 13, 2008
           Missoula, Montana

Hon. Ralph B. Kirscher
United States Bankruptcy Judge