JAMES H. COSSIT (MONT. #4773)
**JAMES H. COSSIT, PC**
40 2nd Suite 202
Kalispell, MT 59901-6112
Tel: 406-752-5616
Email: jhc@cossittlaw.com

J. THOMAS BECKETT (UTAH BAR #5587)
DAVID P. BILLINGS (UTAH BAR #11510)
*Pro Hac Vice Pending*
**PARSONS BEHLE & LATIMER**
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
Email: tbeckett@parsonsbehle.com
dbillings@parsonsbehle.com

*Proposed Counsel to the Official Committee*

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re:<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC,, *et al.*,**<br><br>    Debtors. | Bankruptcy Case No. 08-61570-11-RBK<br>JOINTLY ADMINISTERED<br>Chapter 11<br><br>              **NOTICE OF HEARING:**<br><br>        Date: 12/11/08 at 2:00 pm<br>    Location: Bankruptcy Courtroom<br>    Russell Smith Courthouse #200A<br>    201 E. Broadway, Missoula MT |

**THE COMMITTEE'S LIMITED OBJECTION TO THE
DEBTOR'S MOTION FOR A FINAL ORDER
AUTHORIZING POSTPETITION FINANCING ON
SUPERPRIORITY, SECURED, AND PRIMING BASIS**

The Official Committee (the "Committee") of Unsecured Creditors of Yellowstone Mountain Club, LLC, *et al.* (the "Debtors"), by and through its undersigned proposed counsel, objects on a limited basis to the Debtors' Motion for a Final Order Authorzing Postpetition Financing on Superpriority, Secured and Priming Basis [Docket #96] from CIP Yellowstone Lending LLC and its participating designees, including the Ad Hoc Membership Committee (collectively, "CIP Yellowstone"), as follows:

## I.
## INTRODUCTION

The Committee was formed by the United States Trustee on December 4, 2008, to represent the interests of all the Debtors' unsecured creditors. Its constituency holds nearly $100 million of claims. It engaged its proposed counsel on December 8 and 9, 2008.

The post-petition financing proposed by CIP Yellowstone (the "DIP") is ordinary and customary under the circumstances: it is onerous, severe, and outrageously expensive. But it is also necessary for the Debtors' short-term survival, which in turn is necessary to a successful long-term restructuring. Consequently, the Committee believes the DIP should be ultimately approved, but not until three fundamental flaws are remedied.

**II.**

**COMMITTEE'S LIMITED
OBJECTIONS TO FINAL
APPROVAL OF THE DIP**

A.      **By its Terms, the DIP Would Allow CIP Yellowstone to Declare an Immediate Event of Default and Take Title for Itself of the Previously Unencumbered Farcheville Property.**

The Committee understands that a subsidiary of one of the Debtors owns the so-called Farcheville Property, a villa in France worth tens of millions of dollars. Prior to the DIP, the Farcheville Property was unencumbered by the Credit Suisse loan, so it was an asset that might have been available for sale for the benefit of unsecured creditors. Now it is collateral for the DIP, and the DIP requires that it be sold. The DIP also provides that, in the event of default, the Agent may "take over in all respects [that] sale process" as follows:

> If an Event of Default (as defined in the loan documentation) exists, Agent, for the benefit of the DIP Lenders, shall have the right to take over in all respects the sale process with respect to the Farcheville Property, all in a manner determined by Agent in its sole and absolute discretion.

Term Sheet, p. 3. Conceivably, in the event of a default, the Agent could take over the sale process in all respects and sell the Farcheville property to an affiliate of CIP Yellowstone for less than the amount of the remaining DIP balance. All value for unsecured creditors would be lost. Nor are events of default (under which that could happen) unlikely to occur under the DIP. Indeed, an event of default can easily be triggered by the Agent within days of this Court's final approval of the DIP. Specifically, under the DIP, and without notice to the Debtors or the Committee, an event of default occurs "[i]f a final order [approving the DIP] shall not have entered . . . satisfactory to the Agent in its sole discretion . . . ." Term Sheet, p. 6. This is more

than a hair-trigger default provision – it may be envoked at the Agent's *sole discretion*. The Debtors must not allow the Agent such discretion.

Even if the Farcheville Property were sold in a commercially reasonable manner and yielded an acceptable price, the DIP provides that, at the Agent's option, the proceeds of sale can be escrowed, earning a very low interest rate, pending disposition pursuant to a reorganization plan. The Term Sheet provides,

> The proceeds of the sale of the Farcheville Property shall immediately be placed into a segregated account over which the Agent, for the benefit of the DIP Lenders, shall have a first priority perfected security interest and sole and exclusive control. Such proceeds shall be used as Agent determines in its sole and absolute discretion to fund a plan of reorganization as contemplated hereunder or to satisfy the DIP Loan in full when due.

Term Sheet, p. 3. This is unfair to all the other creditor constituencies. The proceeds of the sale of Farcheville should, *at the Debtors'* option, be available to pay down the DIP and reduce the accumulation of interest at the DIP's very high rate.

## B.   The DIP Should Identify the Remedies that CIP Yellowstone May Exercise Upon an Event of Default.

Remarkably, while the Term Sheet is rife with "Events of Default," it does not require the Agent to declare an Event of Default, and it is silent with regard to what remedies the DIP lenders can pursue, and what notice they must give before pursuing such remedies. The Agent cannot be free to simply begin exercising every imaginable remedy after concluding, in its own mind, that a default has occurred. Its available remedies must be identified and the notice it must first give must be specified.

**C.**     **The DIP and the Approved Budget Should Provide for the Reasonable Fees and Expenses of the Committee's Members and Professionals.**

It is in the best interest of all creditor constituencies that the Yellowstone Club community has confidence that the interest of all unsecured creditors (all trade creditors and club members alike) are being protected by a statutory advocate during this bankruptcy process.  That requires the active participation of an official committee.  However, neither the DIP nor the Approved Budget provide for the payment of the Committee's members' expenses or its professionals' fees and expenses.  Now that the Committee has been formed, the DIP and the Approved Budget must be modified appropriately to accommodate the Committee's active participation.

Furthermore, while the DIP does provide for the payment of the Committee's fees and expenses under the "Carve-out," the Carve-out is subject to an undefined limitation:

> DIP Loan shall be subject to a carve out in customary form with respect to the allowed post-petition fees and expenses of Debtors' counsel and other professionals retained by the Debtor and for allowed post-petition fees and expenses of counsel and professionals retained by an official unsecured creditors' committee, if any (the "Carve-Out"), ***subject to limitations to be determined on the amount of such allowed creditor committee professional fees and expenses*** during the Cases, and <u>provided</u>, further, that the payment of professional fees and expenses (other than as part of the Carve-Out) shall be solely in accordance with the Approved Budget, which shall not include the payment of debtor counsel or other professional fees and expenses in excess of the amount to be determined.

Term Sheet, p. 2-3.  (Emphasis added.)  No such limitations have been determined with respect to the Committee, nor are the fees and expenses of the Committee and its professionals adequately provided for in the Approved Budget.

## IV
## CONCLUSION

While the DIP is necessary for the Debtors' short-term survival, it cannot allow for CIP Yellowstone to so easily and cheaply acquire the Farcheville Property at the expense of the unsecured creditors. The DIP must identify the remedies that the DIP lenders may exercise after declaring an event of default on notice to parties in interest. An active official committee is necessary in this case. The DIP and the Approved Budget must be modified to accommodate the fees and expenses of the Committee.

Dated: December 9, 2008.

**JAMES H. COSSIT, PC**

/s/ James H. Cossit

**PARSONS BEHLE & LATIMER**

/s/ J. Thomas Beckett

*Proposed Counsel to the Official Committee*

## CERTIFICATE OF SERVICE BY MAIL / ECF / EMAIL

This document was served pursuant to FRBP 7004, 9001(8), 9013, 9014(b): 1) by mail, in envelopes addressed to each of the parties at the addresses above; and/or 2) by electronic means, pursuant to LBR 7005-1, 9013-1(c) and 9036-1 on the parties noted in the Court's ECF transmission facilities, on December 9, 2008, prior to 4:00 pm (MST), and in addition by email to the following at the email addresses shown, on December 9, 2008, prior to 4:00 pm (MST).

| | |
|---|---|
| JAMES A. PATTEN | japatten@ppbglaw.com |
| DANIEL P. MCKAY | Dan.P.McKay@usdoj.gov |
| BENJAMIN P HURSH | bhursh@crowleylaw.com, |
| | jbalsley@crowleylaw.com |
| PAUL D. MOORE | PDMoore@duanemorris.com |
| WILLIAM D. LAMDIN, III | blamdin@crowleylaw.com |

The undersigned declares, under penalty of perjury pursuant to 28 USC § 1746, that the foregoing is true and correct.

/s/  J. Thomas Beckett