CHARLES W. HINGLE (#1947)
SHANE P. COLEMAN (#3417)
HOLLAND AND HART LLP
401 NORTH 31st STREET, SUITE 1500
BILLINGS, MONTANA 59101
(406) 252-2166 (PHONE)
chingle@hollandhart.com (EMAIL)
spcoleman@hollandhart.com (EMAIL)

EVAN R. LEVY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 FOUR TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 735-3000 (PHONE)
evan.levy@skadden.com (EMAIL)
***Admitted Pro Hac Vice***
    - and –

MARK S. CHEHI
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899
(302) 651-3000 (PHONE)
mark.chehi@skadden.com (EMAIL)
***Admitted Pro Hac Vice***

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

------------------------------------------------

|  |  |  |
|---|---|---|
|  | x | Chapter 11 |
|  | : |  |
| In re: | : | Case No. 08-61570-11 |
|  | : |  |
| YELLOWSTONE MOUNTAIN CLUB, LLC, et al., | : | Jointly Administered with: |
|  | : |  |
| Debtors.[1] | : | Case No. 08-61571-11 |
|  | : |  |
|  | : | Case No. 08-61572-11 |
|  | : |  |
|  | x | Case No. 08-61573-11 |

------------------------------------------------

---

[1]    The Debtors are the following entities:  Yellowstone Mountain Club LLC, Yellowstone Development LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC.

## NOTICE OF APPEAL

Credit Suisse, as agent for itself and other secured creditors, appeals under 28 U.S.C. § 158(a) or (b) from the final order of the Honorable Ralph B. Kirscher, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Montana, allowing and granting on a final basis the above Debtors' motion for entry of a final order authorizing the Debtors to obtain post-petition debtor-in-possession financing and to use cash collateral, and granting adequate protection to pre-petition secured lenders (the "Order") (Docket No. 182),[2] attached hereto as Exhibit A, entered in the above captioned chapter 11 cases on the 17th day of December, 2008.

The names of all parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

**Debtors**

Represented by:

James A. Patten, Esq.
Patten, Peterman, Bekkedahl & Green P.L.L.C.
2817 2nd Avenue North, Suite 300
Billings, MT  59101
Tel.: (406) 252-8500

**Credit Suisse**

Represented by:

Charles W. Hingle, Esq.
Shane P. Coleman, Esq.
Holland & Hart LLP

---

[2]   The Order was entered in accordance with the Memorandum of Decision dated December 17, 2008 setting forth the Court's findings of fact and conclusions of law (Docket No. 181); and the Order incorporates findings of fact and conclusions of law in the prior Memorandum of Decision (Docket No. 84) and interim order (Docket No. 86) both dated November 26, 2008.

2

401 North 31st , Suite 1500
P.O. Box 639
Billings, MT 59103-0639
Tel.: (406) 252-2166

Mark S. Chehi, Esq.
Robert S. Saunders, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19801
Tel.: (302) 651-3000

Evan R. Levy, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522
Tel.: (212) 735-3889

**CrossHarbor Capital Partners LLC and
CIP Yellowstone Lending LLC**

Represented by:

Benjamin P. Hursh, Esq.
Crowley, Haughey, Hanson, Toole & Dietrich
PLLP
305 South 4th Street East, Suite 100
P.O. Box 7099
Missoula, MT 59807-7099

William D. Lamdin, III, Esq.
Crowley, Haughey, Hanson, Toole & Dietrich
PLLP
500 Transwestern Plaza, II
490 North 31st
P.O. Box 2529
Billings, MT 59103

Paul D. Moore, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210-2600
Tel.: (857) 488-4200

**Normandy Hill Capital L.P.**

Represented by:

Quentin M. Rhoades, Esq.
Aleea Sharp, Esq.
Sullivan Tabaracci & Rhoades, P.C.
1821 South Avenue, 3rd Floor
Missoula, MT 59801
Tel.: (406) 721-9700

**Official Committee of Unsecured Creditors**

Represented by:

James H. Cossitt, Esq.
202 KM Building
40 2nd Street East
Kalispell, MT 59901-4563
Tel. (406) 752-5616

J. Thomas Beckett, Esq.
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Tel. (801) 532-1234

Dated:  December 29, 2008

/s/  Charles W. Hingle
Charles W. Hingle
Shane P. Coleman
HOLLAND & HART LLP
401 North 31st , Suite 1500
P.O. Box 639
Billings, MT 59103-0639
(406) 252-2166
chingle@hollandhart.com (Email)
spcoleman@hollandhart.com (Email)

- and -

4

Evan R. Levy (NY No. 2720068)
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM, LLP
Four Times Square
New York, New York 10036
(212) 735-3000
evan.levy@skadden.com (EMAIL)

Mark S. Chehi (Del. No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
mark.chehi@skadden.com (EMAIL)

Attorneys for Credit Suisse,
sole administrative agent and collateral
agent for pre-petition secured lenders

     If a Bankruptcy Appellate Panel Service is authorized to hear this appeal, each party has a right to have the appeal heard by the district court.  The appellant may exercise this right only by filing a separate statement of election at the time of the filing of this notice of appeal.  Any other party may elect, within the time provided in 28 U.S.C. § 158(c), to have the appeal heard by the district court.

## EXHIBIT A

Order Appealed From

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | Case No. **08-61570-11** |
| **YELLOWSTONE MOUNTAIN CLUB, LLC,** | Jointly Administered with: |
| Debtor. | |
| In re | |
| **YELLOWSTONE DEVELOPMENT, LLC,** | Case No. **08-61571-11** |
| Debtor. | |
| In re | |
| **BIG SKY RIDGE, LLC,** | Case No. **08-61572-11** |
| Debtor. | |
| In re | |
| **YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC,** | Case No. **08-61573-11** |
| Debtor. | |

## *O R D E R*

At Butte in said District this 17th day of December, 2008.

In accordance with the Memorandum of Decision entered in the above-referenced jointly-administered Chapter 11 bankruptcies,

1

IT IS ORDERED:

1.   *Motion Allowed and Objections Overruled.*  The Debtors' Motion to obtain DIP financing through CrossHarbor is ALLOWED on the terms and conditions set forth in this Order. The objections of Credit Suisse and Normandy Hill Capital, LP to approval of the Debtors' DIP financing with CrossHarbor are OVERRULED.

2.   *Findings Regarding the DIP Loan.*

(a)   Good cause has been shown for the entry of this Order.

(b)   The Debtors have an immediate and continuing need to obtain the balance of the DIP Loan and use the Prepetition Collateral, including the Cash Collateral, and the proceeds of the DIP Loan subject to and in accordance with the DIP Term Sheet, for the purposes and on the terms and conditions set forth in the DIP Term Sheet, in order to permit, among other things, the orderly continuation of the operation of their businesses, to pay the Debtors' post-petition operating expenses and certain other costs and expenses of administration of the Cases, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs.  As a condition to any postpetition lending, the Debtors' use of the Prepetition Collateral and access to the Cash Collateral are necessary in order to ensure that the Debtors have sufficient working capital and liquidity and can preserve and maintain the going concern value of the Debtors' estates while they formulate their plan of reorganization.

(c)   The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Financing Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an

2

administrative expense or unsecured credit without the enhanced priority afforded by section 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Lenders the DIP Liens and the Superpriority Claims (defined below), subject to the Carve-Out, under the terms and conditions set forth in this Order and in the DIP Term Sheet.

(d)     The terms of the DIP Term Sheet and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Term Sheet and the use of Cash Collateral have been negotiated in good faith between the Debtors and the DIP Agent, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Loan, including without limitation, the DIP Loan Term Sheet and DIP Financing Documents (together with any other obligation arising under this Order or the DIP Term Sheet, collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lenders in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Court previously issued and entered its Memorandum of Decision dated November 26, 2008 ("Memorandum") and its interim order dated November 26, 2008 ("Interim Order"), and all findings of fact and conclusions of law in the Memorandum and Interim Order

3

are incorporated here by reference.  Pursuant to the Memorandum and Interim Order, the Court, inter alia, allowed the Motion on an interim basis after conducting a preliminary hearing pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2) and 4001(d)(4).  To avoid immediate and irreparable harm, the Court awarded interim relief and authorized the Debtors to incur the postpetition indebtedness described in the Motion to a maximum principal amount of $10,000,000 (the "Interim Authority").  By this Order, the Court allows the Motion in full on a final basis.  Consummation of the DIP Loan and the use of Cash Collateral in accordance with this Order and the DIP Term Sheet also are in the best interests of the Debtors' estates.  Authorization of the DIP Term Sheet and DIP Financing Documents

3.      The DIP Term Sheet is incorporated by reference, approved in its entirety, except as noted herein, and in all respects and is **SO ORDERED AS AN ORDER OF THIS COURT** as if its terms are set forth here at length.  The Debtors are hereby authorized, empowered and directed to execute and deliver, without any further order or notice, any and all documents necessary or desirable (including, without limitation, the DIP Financing Documents), as they determine or as requested by the DIP Agent to permit them to borrow money pursuant to the DIP Term Sheet and this Order, in the amounts, and on the terms and conditions set forth in the DIP Term Sheet.

(a)      The DIP Term Sheet and (when executed by the Debtors) the DIP Financing Documents shall constitute the valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with their terms.  No obligation, payment, transfer or grant of security under the DIP Term Sheet, the DIP Financing Documents or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any

4

applicable law (including without limitation, under section 502(d) of the Bankruptcy Code, under

section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer

Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any

defense, reduction, setoff, recoupment or counterclaim.

    4.    *Superpriority Claims.*

    (a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed claims against the Debtors with priority over any and all

administrative expenses, and all other claims against the Debtors, now existing or hereafter

arising, of any kind whatsoever, including, without limitation, all administrative expenses of the

kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all

administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b),

506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"),

whether or not such expenses or claims may become secured by a judgment lien or other non-

consensual lien, levy or attachment, which allowed Superpriority Claims shall be payable from

and have recourse to all pre and post-petition property of the Debtors and all proceeds thereof,

subject only to the payment of the Carve Out.

    (b)    For purposes hereof, the "Carve Out" means (I) all fees, incurred during the

period prior to an Event of Default, required to be paid to the Clerk of the Bankruptcy Court and

to the Office of the United States Trustee under section 1930(a) of title 28 of the United States

Code and (ii) to the extent, subject to and only up to the amounts set forth in the agreed Budget,

in the event of the occurrence and during the continuance of an Event of Default, the payment of

allowed and unpaid post-petition professional fees and disbursements of the Debtors' counsel

and other professionals retained by the Debtor, and for allowed and unpaid post-petition fees and expenses of counsel and professionals retained by an official creditors committee, if any ("Committee") (excluding any incurred and unpaid professional fees and expenses of the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders) in an aggregate amount as set forth in, and payable solely in accordance with, the terms and conditions of the DIP Term Sheet. Nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above. All professional fees must be approved by the Court upon proper application irregardless of what may be otherwise contained herein or in the Term Sheet.

5.    *DIP Liens.*

As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution and recordation of filings by the Debtors of security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the DIP Agent on behalf of the DIP Lenders and as provided in the DIP Financing Documents, subject, only in the event of the occurrence and during the continuance of an Event of Default, to the Carve Out and, as set forth below, the Prepetition Third Party Liens (all such liens and security interests granted to the DIP Agreement and DIP Lenders, pursuant to this Order, the "DIP Liens"):

(a)    *First Lien on Unencumbered Property.* Pursuant to section 364(c)(2) of the Bankruptcy Code, subject only to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or

6

as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property"), including, without limitation, any unencumbered cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock or other equity interests of subsidiaries, and the proceeds of all the foregoing. Unencumbered Property shall exclude the Avoidance Actions.

(b)    *Priming DIP Liens, Senior to and Priming Prepetition Secured Parties' Liens.* Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all Collateral that is subject to the existing liens allegedly securing the Prepetition Secured Obligations (the "Prepetition Secured Collateral"). Such security interests and liens shall be senior in all respects to the Prepetition Liens. As to any Collateral that is encumbered by a Prepetition Third Party Lien, then with respect to such Collateral, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior priming security interest in and lien upon all such Collateral junior only to such Prepetition Third Party Liens.

(c)    *DIP Liens Senior to Other Liens.* Except as otherwise set forth in this Final Order with respect to Prepetition Third Party Liens, the DIP Liens shall not be (I) subject or subordinate to any lien or interest, including, without limitation (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date including, without limitation,

7

any liens or security interests granted in favor of any federal, state, municipal or other

governmental unit, commission, board or court for any liability of the Debtors, or

(ii) subordinated to or made *pari passu* with any other lien or security interest under sections 105,

363, 364 or 510 of the Bankruptcy Code or otherwise.

(d)    *Definition of Prepetition Third Party Liens.*  For purposes of this Final

Order, the term "Prepetition Third Party Liens" shall mean prepetition liens of third parties on

the Collateral (excluding the Prepetition Secured Collateral) as to which such third parties have a

valid, perfected and unavoidable existing lien.

6.    *Protection of DIP Lenders' Rights.*

The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and

modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon

the occurrence of an Event of Default (including, without limitation, failure to meet any

Benchmark) and the giving of notice, if any, as provided for in the DIP Term Sheet and DIP

Financing Documents, all rights and remedies against the Collateral provided for in the DIP

Term Sheet and DIP Financing Documents (including, without limitation, the right to set off

monies of the Debtors in accounts maintained with or under the control of the DIP Agent or any

DIP Lender or their affiliates, requiring the Debtors' best efforts to sell the Collateral at the

request of the DIP Agent, foreclosing on the Collateral or otherwise selling the Collateral, and

directing that the DIP Agent and its representatives be granted access to all locations during the

continuance of an Event of Default in support of the enforcement and exercise of such remedies).

In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by

any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is

8

continuing, and each of the Debtors hereby waive its rights to seek any relief other than a determination whether an Event of Default has occurred and is continuing, including, without limitation, under section 105 of the Bankruptcy Code.  In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The DIP Agent's or the DIP Lenders' failure to seek relief or otherwise exercise its rights and remedies under the DIP Loan or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise.

       7.    *Limitation on Charging Expenses Against Collateral.*

      Except to the extent of the Carve Out, no expenses of administration of any of the Cases or any future proceeding that may result therefrom (including liquidation in bankruptcy, the commencement of any action adverse to the DIP Agent or any DIP Lender or their respective rights hereunder, under the DIP Term Sheet, the DIP Financing Documents or under any other order, or other proceedings under the Bankruptcy Code) shall be charged against or recovered from the Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent.

       8.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to the provisions of this Order or any subsequent order of the Court shall be received free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.

9.     *Use of Cash Collateral.*  The Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable (including, without limitation, membership dues), sale of inventory or other disposition of the Prepetition Collateral, may constitute proceeds of the Prepetition Collateral and, therefore, may be cash collateral of the Prepetition Agent and Prepetition Lenders within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral").  The Debtors are hereby authorized to use the Cash Collateral in which the Prepetition Agent and the Prepetition Lenders assert an interest, and the proceeds of the Prepetition Collateral, without further order of this Court or notice to any parties, but solely under the terms and conditions governing the Debtors use of the proceeds of the DIP Loan pursuant to the DIP Term Sheet.

10.     *Adequate Protection.*  The Court finds that the interests of the Prepetition Agent and the Prepetition Lenders in all property of the estate, including, without limitation, the Prepetition Collateral, are adequately protected pursuant to 11 U.S.C. §§361 – 364.  As set forth in detail in the Memorandum, the Court finds that there will be a net economic benefit to all parties stemming from the DIP Loan.  Moreover, the DIP Loan will provide the Prepetition Agent and Prepetition Lenders, and their interests in property of the estate, with at least the same level of protection they would have absent the DIP Agent's superpriority financing that primes the Prepetition Agent's position.  In any event, based upon the testimony of the Debtors' Chief Restructuring Officer, whether or not the Prepetition Agent and the Prepetition Lenders ultimately prove to be oversecured or undersecured, the DIP Loan will serve to preserve the value of their collateral and in fact enhance it in an amount that exceeds the amount of the DIP Loan by

10

multiples.

11. *Sufficiency of Adequate Protection.*

The Court finds that the adequate protection of the Prepetition Agent and the Prepetition Lenders and their interests in property of the estate, arising from the use of the DIP Loan proceeds and the maintenance of the going concern value of the Debtors' businesses and their assets, is reasonable and sufficient to protect the interests of the Prepetition Agent and the Prepetition Lenders.

12. *Perfection of DIP Liens.*

(a)   The DIP Agent and the DIP Lenders, are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent on behalf of the DIP Lenders shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, duly perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Order.

(b)   A copy of this Order authenticated by the certificate of the Clerk of the Bankruptcy Court pursuant to Mont. Code Ann. Section 70-21-205, in the discretion of the DIP Agent, may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are

11

hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax in accordance with the provisions of section 1146 of the Bankruptcy Code.

(c)     The Debtors shall execute and deliver to the DIP Agent all such agreements, financing statements, instruments and other documents as the DIP Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens granted pursuant hereto.

(d)     Any provision of any lease or other license, contract or other agreement that requires (I) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Term Sheet, DIP Financing Documents or this Order.

(e)     Cooperation and Non-Interference by Credit Suisse. Pursuant to an Interim Order of this Court dated November 13, 2008 ("CS Interim Order"), Credit Suisse, Cayman Islands Branch, acting through one or more of its branches or affiliates (collectively "CS"), acted as sole administrative agent and collateral agent ("CS DIP Loan Agent") for a syndicate of banks, financial institutions and other institutional lenders (the "CS DIP Lenders") who made available to the Debtors a certain postpetition loan up to the aggregate principal

12

amount of $4,450,000 ("CS DIP Loan"), plus applicable interest, and professional fees and expenses allowed by this Court. The Debtors contemplate that a portion of the DIP Loan approved by this Order will be used to satisfy the CS DIP Loan. CS shall cooperate with and shall not interfere with the transactions contemplated by this Order fully and completely. Without limiting the generality of the immediately preceding sentence, upon payment to CS or upon delivery to counsel for the DIP Agent as escrow agent such sums as are necessary to satisfy the then outstanding amounts due under the CS DIP Loan, CS, in all of its capacities, including as CS DIP Loan Agent and Prepetition Agent, and whether in connection with the CS DIP Loan, the Prepetition Loan, the Prepetition Liens, or any of them, (I) shall execute and deliver to the Debtors or to the DIP Agent, as appropriate, any and all documents requested by either of them to effectuate and implement the DIP Loan transactions, and the granting and perfection of the DIP Liens, described in this Final Order, (ii) shall comply with all requests made by either the Debtors or the DIP Agent to turnover to the DIP Agent all Collateral in CS's possession, custody or control, and shall terminate its existing control agreements with respect to the Prepetition Loan and the CS DIP Loan to enable the DIP Agent to perfect its priority DIP Liens and unfettered control of all deposit accounts that are the subject of any such control agreements. CS shall retain as escrow agent any portion of such amount that the Debtors dispute are owing to CS, subject to further order of this Court or agreement between the Debtors and CS with respect to any amounts so disputed by the Debtors. CS shall comply with its obligations under this paragraph, and CS's obligations hereunder shall not be conditioned, suspended, delayed or limited, notwithstanding that any disputed amounts remain in escrow in accordance with this paragraph.

13

13. *Preservation of Rights Granted Under the Interim Order and Final Order.*

(a)     Unless and until all DIP Obligations are paid in full, the Debtors shall not seek, and it shall constitute an Event of Default if without the consent of the DIP Agent (and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent), any of the Debtors seek or if there is entered, (I) any modifications or extensions of this Order, (ii) any order authorizing additional or different debtor-in-possession financing in these Cases, or (iii) an order dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, then such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the DIP Liens and Superpriority Claims granted to the DIP Agent or the DIP Lenders shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full (and that such Superpriority Claims and DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) of this paragraph.  Without the express written consent of the DIP Lenders, if at any time prior to the repayment in full of all obligations arising under the DIP Loan, including subsequent to the confirmation of any plan in these cases, any of the Borrowers, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to section 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the terms of the Interim Order or the Final Order or if any of them, the Prepetition Agent or the Prepetition Lenders shall receive proceeds from a sale of Collateral pursuant to section 363(b) of the Bankruptcy Code, then all of the cash

14

proceeds derived from such credit, debt, or sale shall immediately be turned over to the DIP

Agent for the application to the DIP Loan in accordance with the DIP Financing Documents,

except for any recovery that may be made on any promissory notes owed to Debtor for which

Credit Suisse has a pledge.

   (b)  If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (I) the

validity of any DIP Obligations incurred prior to the actual  receipt of written notice by the DIP

Agent, as applicable, of the effective date of such reversal, modification, vacation or stay or (ii)

the validity or enforceability of any lien (including the DIP Lien) or priority (including the DIP

Agent's Superiority Claims) authorized or created hereby or pursuant to the DIP Term Sheet, DIP

Financing Documents or this Order. Notwithstanding any such reversal, modification, vacation or

stay, any use of Cash Collateral or DIP Obligations incurred by the Debtors to the DIP Agent and

the DIP Lenders, prior to the actual receipt by the DIP Agent or of written notice of such reversal,

modification, vacation or stay, shall be governed in all respects by the original provisions of this

Order, and the DIP Agent and the DIP Lenders shall be entitled to all the rights, remedies,

privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant

to the DIP Term Sheet and DIP Financing Documents.

   (c)  The DIP Term Sheet, the DIP Financing Documents, the DIP Liens, the

Superpriority Claims, and all other rights and remedies of the DIP Agent and the DIP Lenders

granted or approved by the provisions of this Order, the DIP Term Sheet and the DIP Financing

Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an

order converting any of the Cases to a case under chapter 7, dismissing any of the Cases or by

15

any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Order, the DIP Term Sheet and the DIP Financing Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations and all other rights and remedies of the DIP Agent and the DIP Lenders granted or approved by the provisions of this Order, the DIP Financing Documents and the DIP Term Sheet shall continue in full force and effect until the DIP Obligations are paid in full.

14.     *Effect of Stipulations on Third Parties.* The findings, stipulations and admissions contained in this Order shall be binding upon the Debtors in all circumstances. The findings, stipulations and admissions contained in this Order regarding the extent, priority and validity of the DIP Obligations, the Superpriority Claim and the DIP Liens shall be binding upon all other parties in interest, including, without limitation, any Committee or trustee. Nothing in this Order vests or confers on any Person or Entity (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estate, except as authorized by this Court.

15.     *Waiver of Claims and Causes of Action Against the DIP Lenders.* The Debtors on behalf of their bankruptcy estate hereby are deemed to waive any and all claims and causes of action against the DIP Agent and the DIP Lenders, and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, directly related to the DIP Loan, this Order or the negotiation of the terms thereof.

16

16.     *Limitation on Use of DIP Loan Proceeds and Collateral.*  The Debtors shall use the proceeds of the DIP Loan and the Cash Collateral solely as provided in this Order and in the DIP Term Sheet and DIP Financing Documents.  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Prepetition Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any DIP Obligations and DIP Liens, the terms and conditions of the DIP Term Sheet and the DIP Financing Documents, (b) assert any causes of action against the DIP Agent, the DIP Lenders, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Loan, the DIP Term Sheet, the DIP Financing Documents or this Order, or (d) seek to modify any of the rights granted to the DIP Agent or the DIP Lenders, in each foregoing case without the DIP Agent's prior written consent. Notwithstanding anything herein or the DIP Term Sheet, the Debtors shall be authorized to withdraw funds from any collateral account established or maintained for purposes of funding DIP Loan advances to the Debtors only to fund expenses consistent with the DIP Term Sheet or DIP Financing Documents or to the extent of, and with, the DIP Agent's express consent; and all funds in such account shall be deemed Collateral and under the control of the DIP Agent whether or not subject to any account control agreement in favor of the DIP Agent.

17.     *Insurance.*  Pursuant to this Order, the DIP Agent and the DIP Lenders shall be and shall be deemed to be. without any further action or notice, named as an additional insured and, as applicable, loss payee/mortgagee on each insurance policy maintained by any of the

17

Debtors which in any way relates to the Collateral.

18.      *Termination of Exclusivity Periods.*  In the event the Debtors fail to file the "Plan Documents" (as that term is defined and used in the DIP Term Sheet), the Debtors' exclusive periods to file a plan of reorganization under 11 U.S.C. §1121 shall terminate at midnight on February 13, 2009.

19.      *Binding Effect; Successors and Assigns.*  The DIP Term Sheet and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, any Committee, and any of the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary hereafter appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of the DIP Agent, DIP Lenders, the Prepetition Agent, the Prepetition Lenders and the Debtors and each of their respective successors and assigns; *provided, however,* that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for the estate of any of the Debtors.  In the event any conflict exists between the Term Sheet and this Order, this Order governs.

20.      *Limitation of Liability.*  In determining to make any loan under the DIP Term Sheet or in exercising any rights or remedies as and when permitted pursuant to this Order, the DIP Financing Documents or the DIP Term Sheet, the DIP Agent and the DIP Lenders shall not be deemed to be in control of the operations of any of the Debtors or to be acting as a

18

"responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute). Furthermore, nothing shall in any way be construed or interpreted to impose or allow the imposition, upon the DIP Agent or the DIP Lenders, of any liability for any claims arising from the prepetition or post-petition activities by any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, or in connection with their restructuring efforts.

21. *Right of Access and Information.* The Debtors shall permit representatives, agents and/or employees of the DIP Agent to have reasonable access to the Debtors' premises, management and non-privileged records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses), and the Debtors' and their officers, directors, members and professional persons shall cooperate and consult with, and provide to such persons all such non-privileged information as they may reasonably request.

22. *Memorandum of Decision, Effectiveness, No Stay.* This Order and the Memorandum incorporated by reference shall constitute findings of fact and conclusions of law and, notwithstanding the possible application of any applicable Federal Rule of Bankruptcy Procedure, including, without limitation, Bankruptcy Rules 4001(a)(3) and 6004(g), shall take effect immediately upon execution hereof. The stay of this Order provided by Rules 4001(a)(3) and 6004(g), F.R.B.P., or similar rule shall NOT apply, and this Final Order shall NOT be stayed but instead shall be effective immediately.

23. *Montana Department of Revenue Provision.* Notwithstanding anything herein to

19

the contrary, the relief granted herein is without prejudice to any rights of the Montana

Department of Revenue to funds which do not constitute property of the estate but which may

qualify as tax trust funds.  The Montana Department of Revenue is not precluded from pursuing

such funds, if any, by this Order, nor is any party in interest precluded from contesting any action

of the Montana Department of Revenue to recover alleged trust funds.

24.     *Mailing of Final Order to certain Parties in Interest.*  The Debtors shall promptly

mail copies of this Order to all parties in interest, with a certificate of service filed with the Court

showing that service of this Order has been completed.

IT IS FURTHER ORDERED that Credit Suisse's oral motion for a continuance of the

instant hearing to Monday, December 22, 2008, is DENIED; and Credit Suisse's oral motion for

stay pending appeal lodged December 12, 2008, is DENIED.

IT IS FURTHER ORDERED that the Debtors, Credit Suisse and any other parties in

interest, shall appear before the Court on **Tuesday, January 13, 2009, at 10:00 a.m.**, or as soon

thereafter as the parties can be heard, in the 2ND FLOOR COURTROOM, FEDERAL

BUILDING, 400 N. MAIN, BUTTE, MONTANA, and show cause why the Court should not lift

the automatic stay to allow Credit Suisse to proceed with enforcement of the three Promissory

Notes in the approximate stated amount of $275,000,000.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

20

21