James A. Patten (1191)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**
2817 2nd Avenue North, Suite 300
Billings, MT 59101
Phone: (406) 252-8500
Fax: (406) 294-9500
E-Mail: japatten@ppbglaw.com

Attorney for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 08-61570-11-RBK |
| | ) | |
| YELLOWSTONE MOUNTAIN | ) | |
| CLUB, LLC, et al. | ) | **JOINTLY ADMINISTERED** |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 FOR AN ORDER (I) AUTHORIZING DEBTORS TO OBTAIN INCREASED POST-PETITION FINANCING, (II) AUTHORIZING DEBTORS TO UTILIZE CASH COLLATERAL, AND (III) GRANTING ADEQUATE PROTECTION**

The YELLOWSTONE MOUNTAIN CLUB, LLC, YELLOWSTONE DEVELOPMENT, LLC, BIG SKY RIDGE, LLC and YELLOWSTONE CLUB CONSTRUCTION CO., LLC., Debtors and Debtors in Possession (collectively "Debtors") by and through their attorney James A. Patten, hereby move for entry of an order (the "Order"), under §§ 105, 361, 363 and 364 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rues of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules for the United States

1

Bankruptcy Court for the District of Montana (the "Local Rules"): (i) authorizing the Debtors to obtain increased postpetition financing with a priming lien and other liens as more particularly described below and superpriority administrative expense treatment; (ii) authorizing the Debtors to utilize cash collateral; and (iii) granting adequate protection.

In support of this motion, the Debtors respectfully represent:

## I. BACKGROUND

1.      On November 10, 2008 (the "Petition Date"), Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Yellowstone Club Construction Company LLC, and Big Sky Ridge, LLC (the "Company" or the "Debtors") each commenced a case by filing a petition for relief under Chapter 11 of the Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors and debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. This Court has ordered these Chapter 11 cases (the "Chapter 11 Cases") be jointly administered [Docket No. 39].

2.      A creditors' committee has been appointed in these Chapter 11 cases by the United States Trustee [Docket No. 115]. No trustee or examiner has been appointed in any of the Debtors' Chapter 11 cases.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      By a final order of this Court, the Debtors have been authorized to enter into a debtor-in-possession loan with CIP Yellowstone Lending LLC ("Lender"), having priority pursuant

2

to Bankruptcy Code § 364(c)(1) over all administrative expenses, except the "carve out"; being secured pursuant to Bankruptcy Code § 364(c)(2) by duly perfected liens in all property of the Debtors and Subsidiary Guarantees; and being secured pursuant to Bankruptcy Code § 364(d)(1) by a perfected primary security interest in the amount of $19,750,000 to be expended consistent with a budget submitted to the Court ("Final Order") [Docket No. 182].

5.     At the time of the final hearing on the Debtors' motion for approval of Debtor-in-Possession Facility ("DIP Facility"), the Debtors advised this Court that they would be seeking an increase in the amount of the DIP Facility to cover costs of maintaining and preserving the Farcheville Chateau and to allow an increase in the "carve out" fees for Debtors' legal and professional fees and for the Unsecured Creditor Committee expenses including counsel. It was anticipated that the additional funds would come from an increase in the Debtor-in-Possession loan ("Increased DIP Facility"].

6.     The Debtors have executed the various loan documents comprising the DIP Facility. The Debtors now have an immediate need for additional funds that can be obtained from the Lender through an increased secured debtor in possession financing facility. The Debtors' use of Cash Collateral and the funds provided under the Increased DIP Facility shall be limited to expenditures described in the terms and conditions of the DIP Loan Term Sheet ("DIP Loan Term Sheet") provided to the Court at the Final Hearing in such amounts as may be made available to the Debtors by Lender in accordance with the budget and the terms and conditions set forth in the Increased DIP Facility, as set out in detail in the budget attached hereto as Exhibit A.

## II. RELIEF REQUESTED

7.     The Debtors intend to finance the operations of their business during the initial 24

3

weeks of these Chapter 11 cases through the continued use of cash collateral and by entering into the Increased DIP Facility with the Lender pursuant to the DIP Loan Term Sheet. The Debtors intend to use the proceeds of the Increased DIP Facility: (i) to fund the costs and expenses of the Debtors in respect of the Project, (ii) to fund their general corporate needs, including working capital needs; and (iii) to pay fees and expenses related to the financing and these Chapter 11 cases, in accordance with the terms set forth in the DIP Term Sheet and in accordance with the DIP budget, Exhibit A attached hereto.

8.     The Debtors have negotiated the specific terms of the Increased DIP Facility and use of cash collateral with the Lender. By this Motion, the Debtors request entry of an order authorizing the Debtors to increase the amount of the DIP Facility otherwise consistent with the conditions of the DIP Loan Term sheet described as follows:

(i)     Farcheville deferred maintenance and operating costs: $1,500,000 (no expense in existing DIP loans);

(ii)    Legal/professional fees of Debtors: $1,050,000 (increased from $400,000);

(iii)   Legal/professional fees of Unsecured Creditors Committee; $350,000 (no expense in existing DIP loan).

(iv)    Legal fees of Lender to secure a mortgage on the Farcheville Chateau: $350,000 (no expense in existing DIP loan).

The total increase above the amounts approved by this Court in the Final Order is $2,850,000.

9.     The Debtors request approval of the DIP Facility, authorizing:

(a)     for the Debtors to obtain a postpetition loan facility up to an aggregate of $22,600,086 on a senior secured basis (the "DIP Loan"), which shall be issued in minimum increments of $3 million on the terms set forth in the term sheet attached to this Court's December 17, 26, 2008 Memorandum and Order ("Memorandum") as Exhibit 1 (the "DIP Term Sheet"), and for each existing and subsequently acquired or organized subsidiary of any Debtor (the "Subsidiary

4

Guarantors") to guaranty the Debtors' obligations in connection with the DIP Loan, from the "DIP Lenders" (as defined in the DIP Term Sheet);

        (i)    having priority, pursuant to § 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in §§ 503 (b) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out (as defined below);

        (ii)    being secured pursuant to § 364(c)(2) of the Bankruptcy Code, by duly perfected first priority security interests in and liens, not subject to subordination, upon all property of the Debtors and the Subsidiary Guarantors (as defined below), whether owned on the property of the Debtors and the Subsidiary Guarantors (as defined below), whether owned on the Closing Date (as defined in the DIP Term Sheet) or thereafter acquired, including but not limited to, Cash Collateral (defined below), inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, property, plants, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing (the "Collateral"), that is not subject to any valid and duly perfected lien or security interest as of the Petition Date but (i) subject to the Carve-Out; and (ii) excluding claims and causes of action under §§ 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "Avoidance Actions");

        (iii)    being secured pursuant to § 364(d)(1) of the Bankruptcy Code, by duly perfected senior priming security interests and liens, not subject to subordination, on all Collateral. Such perfected priority senior priming and security interests and liens (x) shall be subject to the Carve-Out, and (y) shall have priority over and shall prime any liens (the "Prepetition Liens") allegedly securing obligations (the "Prepetition Secured Obligations") created by, relating to or arising from the Prepetition Credit Agreement, and (z) to extent sent forth below, shall be subject to "Prepetition Third Party Liens" (as defined below);

        (b)    for the Debtors to use the Cash Collateral (as defined in the Prepetition Credit Agreement) pursuant to §§ 361, 362 and 363 of the Bankruptcy Code, and all over collateral on which the Prepetition Agent and the Prepetition Lenders assert a lien or security interest (together with the Cash Collateral, the "Prepetition Collateral");

    10.    For purposes hereof, the "Carve Out" means (i) all fees, incurred during the period prior to an Event of Default, required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United states Trustee under § 1930(a) of title 28 of the United States Code and (ii) to the extent subject to and only up to the amounts set forth in the agreed Budget, incurred prior to an Event of Default, the payment of allowed and unpaid post-petition professional fees and disbursement of the Debtors' counsel and other professionals retained by the Debtor, and for

allowed and unpaid post-petition fees and expenses of counsel and professionals retained by an official creditors committee ("Committee") (excluding any incurred and unpaid professional fees and expenses of the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders) in an aggregate amount as set forth in, and payable solely in accordance with, the terms and conditions of the DIP Term Sheet. Nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (i) and (ii) above.

11.    Access to such additional financing will provide the Debtors, the Committee and the Lender reasonable assurance that the necessary legal and professional expense can be funded and that a valuable asset, the Farcheville Chateau, will be preserved and maintained during the course of these bankruptcy cases. In the absence of the approval of the Increased DIP Facility and use of cash collateral, the Debtors will be unable to properly fund their legal and professional expenses or to protect the value of the Farcheville Chateau. For these reasons, the Debtors have an immediate need for additional postpetition financing.

12.    Prior to the Petition Date, the Debtors sought postpetition financing proposals from several sources. Indeed, the Debtors, with the help of their advisors, contacted multiple parties, and received preliminary interest from two parties. Ultimately, however, the Debtors were unable to obtain post-petition financing in the form of unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, unsecured credit allowable under sections 364(a) and 364(b) of the Bankruptcy Code, or secured credit pursuant to section 364(c) of the Bankruptcy Code on terms and conditions more favorable to the Debtors' estates than those offered by the Lender. In light of the Debtors' search, and given the current

6

credit markets, the Debtors do not believe that any lender would be willing to loan new money to the Debtors on terms more favorable to the Debtors than the terms of the Increased DIP Facility.

13.     The Debtors believe that the value of the Debtors' property will be enhanced by a greater amount than the cost of the DIP Facility which enhancement constitutes adequate protection sufficient to protect the Prepetition Lenders from any diminution in value of their interest in the Prepetition Collateral.

### III. TERMS OF THE DIP FACILITY

14.     The terms of the Increased DIP Facility and Cash Collateral uses are more specifically set forth in the DIP Loan Term Sheet, modified only in dollar amount for the purpose stated in paragraph 8 above.

15.     The Debtors request that this Court authorize the Debtors to execute the Increased DIP Facility to the extent and pursuant to the terms set forth herein and in the DIP Loan Term Sheet.

16.     These Chapter 11 cases were precipitated by the Debtors' severe liquidity problems without the proposed increase in financing and cash collateral usage, the Debtors will be unable to maintain the value of the Farcheville Chateau; further, the Debtors realize the budget for their legal and professional fees is not adequate to allow a robust representation of the Debtors in this case.   The additional amount for the Committee legal fees is also intended to allow an active and involved Committee.   In all the additional expenses are in the best interests of the Debtors, creditors, and parties in interest.

17.     The Debtors submit that the forms of protection preserving the value of its collateral and enhancing the value of the collateral more than adequately protect the interests of

7

the Prepetition Lenders and, therefore, the relief sought herein should be granted.  The

preservation of the Farcheville Chateau enhances the repayment of the Increased DIP Facility as

the sales proceeds from the Farcheville Chateau are to be applied to repayment of the Increased

DIP Facility first therefore protection of that property is beneficial to the Prepetition Lenders, the

Increased DIP Lender, and the unsecured creditors.

18.     The Debtors adopt the reasoning, factual findings, and conclusions of law of this

Court set out in its Memorandum of Decision in support of the Final Order [Docket # 181].

WHEREFORE, the Debtors respectfully request that the Court authorize an increase in

the DIP loan, granting the relief requested in this Motion and such other and further relief as may

be just and proper.

## NOTICE TO CREDITORS

**If you object to the application, you must file a written responsive pleading and
request a hearing within ten (10) days of the date of the notice.  The responding party shall
schedule the hearing on the application at least 20 days after the date of the response and
request for hearing sand shall include in the caption of the responsive pleading, the date,
time and location of the hearing by inserting in the caption the following:**

### NOTICE OF HEARING
**Date: _____**
**Time: _____**
**Location: _____**

**If no response and request for hearing are timely filed, the Court may grant the
relief requested as a failure to respond by any entity shall be deemed an admission that the
relief requested should be granted.**

DATED this 30th day of December, 2008.

/s/ *James A. Patten*

James A. Patten
Patten, Peterman, Bekkedahl & Green, PLLC
2817 2nd Avenue North Suite 300
Billings, MT 59101
Attorneys for Debtors

8

YELLOWSTONE CLUB & RELATED PARTIES
DRAFT UPDATED BUSINESS PLAN

EXHIBIT
A