IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| IN RE: | ) | **Case No. 08-61570** |
| | ) | |
| YELLOWSTONE MOUNTAIN CLUB, LLC, | ) | Jointly Administered |
| | ) | with: |
| Debtor. | ) | |
| | ) | |
| IN RE: | ) | Case No. 08-61571 |
| | ) | |
| YELLOWSTONE DEVELOPMENT, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BIG SKY RIDGE, LLC, | ) | Case No. 08-61572 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC, | ) | Case No. 08-61573 |
| | ) | |
| Debtor. | ) | |

## ORDER

AT BUTTE, MONTANA IN SAID DISTRICT THIS 22nd DAY OF JANUARY, 2009

This Court has considered the motion, dated December 30, 2008 (the "Motion") of Yellowstone Mountain Club LLC, Yellowstone Development LLC, Big Sky Ridge LLC, and Yellowstone club Construction Company LLC for approval of an increase in the amount

("Increased DIP Loan") of its debtor in possession loan with CIP Yellowstone Lenders, ( the "DIP Loan") previously approved by the order of this Court dated December 17, 2008 ("Final Order") [Docket No. 182], and the objection of the Prepetition Lenders, dated January12, 2009, to the Motion; and whereas the parties have agreed to a consensual resolution of the Motion on the terms set forth in this Order:

IT IS ORDERED:

1. Findings Regarding the Increased DIP Loan.

   (a) Good cause has been shown for the entry of this Order.

   (b) The Debtors have an immediate and continuing need for the DIP Loan and the use the Prepetition Collateral,[1] including the cash collateral, and an immediate need for the proceeds of the Increased DIP Loan, subject to and in accordance with the DIP Term Sheet and this Order, for the purposes and on the terms and conditions set forth in the DIP Term Sheet as stated in the Motion, all in order to permit payment of, among other amounts authorized in the Final Order, the additional costs of the Debtors' legal and professional fees, the Unsecured Creditors Committee professional fees, the costs of maintaining and preserving the Farcheville Chateau, and the costs of recording a mortgage on the Farcheville Chateau.

   (c) At this time, Debtors are unable to obtaining financing of amounts proposed by the Increased DIP Loan on more favorable terms from sources other than the DIP Lenders under the DIP Financing Documents and the Increased DIP Loan and are unable to obtain adequate unsecured credit for such amounts allowable under § 503(b)(1) of the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Final Order and the DIP Term Sheet.

2

Bankruptcy Code as an administrative expense or unsecured credit without the enhanced priority afforded by § 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit for the amounts proposed by the Increased DIP Loan allowable under § 364(c) (1), 364(c)(2) and 364(3) of the Bankruptcy Code without the Debtors granting to the DIP Lenders the DIP Liens and the Superpriority Claims, subject to the Carve-Out, under the terms and conditions set forth in this Order, the Final Order, and in the DIP Term Sheet.

(d) The terms of the Increased DIP Financing as approved by this Order, specifically including the additional amounts to be borrowed, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equilivant value and fair consideration.

(e) The Debtors have previously testified that the Farcheville Chateau was purchased for $27,000,000 (US), was subject to a sale in September 2008 for 45,000,000 Euros which sale did not close, and is currently listed for sale for 50,000,000 Euros. In connection with their request for approval of the Increased DIP Loan, the Debtors represent that they believe the Farcheville Chateau represents net value of not less than approximately $42,150,000 Euros for the Debtors' estate (prior to repayment of the DIP Loan with any proceeds of sale of the Farcheville Chateau).

3. (i) The terms and conditions of the DIP Loan are hereby modified to incorporate the Increased DIP Loan being authorized hereby, such that the total increased amount to be borrowed and used by the Debtors under the DIP Loan as increased by the Increased DIP Loan is $23,306,701 including the following additional amounts authorized by

3

this Order.

    (a)    Farcheville Chateau deferred maintenance and operating costs: $1,500,000;

    (b)    Legal/professional fees of Debtor: $900,000 (increased from $400,000);

    (c)    Legal/professional fees of Unsecured Creditors Committee: $350,000;

    (d)    Fees and expenses of Lender re Farcheville Chateau mortgage: $350,000;

    (e)    DIP Lender Interest on Increased DIP Loan: $150,000;

    (f)    DIP Lender professional fees and expenses: $600,000; and

    (g)    DIP Lender loan fee (3%): $106,701.

The increased borrowing shall enjoy the same security, priority, and seniority as the money advanced pursuant to the Final Order. The DIP Lenders' rights with respect to the additional money advanced shall be the same as provided in the Final Order and shall not be diminished in any manner by this Order. Except as otherwise expressly provided herein, all terms, conditions, rights and obligations of the Debtors, the Prepetition Lenders, the DIP Lenders, and all other creditors and parties in interest shall be as set forth in the Final Order.

    (ii)    In connection with the Increased DIP Loan, each of the DIP Financing Documents (including the Term Loan Note entered into by the Debtors) are hereby deemed amended by this Order to reflect a principal amount of $23,306,701. Without limitation of the foregoing, the Maximum Loan Amount (as defined in the DIP Loan Agreement) shall be equal to $23,306,701 as of the effective date of this Order. The Increased DIP Loan shall constitute Obligations (as defined in the DIP Loan Agreement) under and for all purposes of the DIP Financing Documents (including all security agreements, mortgages and guarantees entered into in connection with the DIP Loan), and the DIP Liens and the Collateral shall secure the

4

Obligations, as increased pursuant to this Order. The Debtors will, promptly upon the request of the DIP Lender, execute all other amendments or supplements to the DIP Financing Documents, and all other documents and instruments, as are requested by the DIP Lender to further evidence the Increased DIP Loan and the security for the Increased DIP Loan. This Order may be recorded and filed in the real estate records of any properties of the Loan Parties (and any other recordings and filing locations for purposes of recording and filing liens and security interests on any real, personal or other properties of the Loan Parties) (i) as an amendment to any mortgage or other agreement or notice of record securing the DIP Loan and (ii) for purposes of further evidencing and recording the adequate protection liens granted by this Order to the Prepetition Lenders.

4. The Debtors shall use the proceeds of the Increased DIP Loan and the Cash Collateral solely as provided in this Order and in the DIP Term Sheet and DIP Financing Documents. Notwithstanding anything herein or the DIP Term Sheet, the Debtors shall be authorized to withdraw funds from any collateral account established or maintained for purposes of funding the Increased DIP Loan advances to the Debtors only to fund expenses consistent with the DIP Term Sheet or DIP Financing Documents or to the extent of, and with, the DIP Lender's express consent; and all funds in such account shall be deemed Collateral and under the control of the DIP Lender whether or not subject to any account control agreement in favor of the DIP Lender.

5. As additional adequate protection of the Prepetition Lenders' interests in their Prepetition Collateral in connection with the imposition of the increased amount of priming DIP Liens on the Prepetition Lenders' Prepetition Collateral that will result from approval of the

5

Increased DIP Loan and the related use of Prepetition Collateral, the Prepetition Lenders shall receive and are hereby granted under §361 of the Bankruptcy Code (i) adequate protection liens (junior to the DIP Liens and any valid unavoidable prepetition third party liens senior to the prepetition liens of the Prepetition Lenders) on all property of the Loan Parties subject to the DIP Liens. Such additional adequate protection liens shall be in an amount equal to the lesser of (x) the amount of the increased financing under the Increased DIP Loan, $3,556, 701, and (y) the amount (if any) by which the allowed amount of the Prepetition Lenders' claims under the Prepetition Credit Agreement exceeds the amount of proceeds of the Prepetition Collateral realized by the Lenders. The foregoing grant of adequate protection liens to the Prepetition Lenders is in addition to and without prejudice to any and all adequate protection rights of the Prepetition Lenders under §361, 362, 363, 364, and 507(b) of the Bankruptcy Code or otherwise.

6. The Debtors shall promptly provide to the Agent, the DIP Lender, and the Official Committee copies of all non-privileged documents and communications related to the following: the Farcheville Chateau, the value of the Farcheville Chateau, any offers to purchase the Farcheville Chateau, the non-debtor entity that owns the Farcheville Chateau, its assets and liabilities, and any claims, liabilities and litigation being threatened or asserted against any such entity and/or the Farcheville Chateau .

7. Entry of this Order is without prejudice to the rights of the Agent and Prepetition Lenders to seek further and additional adequate protection of their interests in their Prepetition Collateral, and is without prejudice to the Agent's and Prepetition Lenders' appeal of the Final Order, dated December 17, 2008, authorizing the Cross Harbor DIP financing.

8. Pursuant to this Order, the DIP Lenders shall be and shall be deemed to be

without any further action or notice, named as an additional insured and, as applicable, loss payee/mortgagee on each insurance policy maintained by any of the Debtors which in any way relates to the Collateral.

BY THE COURT

*Ralph B. Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana