Ronald A. Bender, Esq.
Matthew J. Cuffe, Esq.
Worden Thane P.C.
Attorneys at Law
P.O. Box 4747
Missoula, Montana 59806
Telephone: (406) 721-3400
Fax: (406) 721-6985
rbender@wthlaw.net
State Bar I.D. Number 106
mcuffe@wthlaw.net
State Bar I.D. Number 4448

Clark T. Whitmore, Esq.
Kesha L. Tanabe, Esq.
Maslon Edelman Borman & Brand, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-4140
Telephone: (612) 672-8200
Fax: (612) 672-8397
clark.whitmore@maslon.com
kesha.tanabe@maslon.com

Attorneys for Ad Hoc Group
of Class B Unit Holders

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC<br><br>Debtor. | Case No. 08-61570-11-RBK<br>JOINTLY ADMINISTERED<br><br>**NOTICE OF HEARING**<br>**Date: 2/10/2009 at 9:00 a.m.**<br>**Location: Bankruptcy Courtroom**<br>**U.S. Courthouse, Butte, MT** |

**OBJECTION OF AD HOC GROUP OF CLASS B UNIT HOLDERS TO MOTION FOR APPROVAL OF BIDDING AND SOLICITATION PROCEDURES**

The Ad Hoc Committee of Class B Unit Holders (the "Class B Committee") hereby objects to Debtors' Motion for Approval of Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests in the Debtors Pursuant to a Plan of Reorganization (the "Motion"). In support thereof, the Class B Committee states as follows.

## INTRODUCTION

In advance of filing any plan of reorganization (a "Plan") or hiring a broker, Debtors ask the Court to approve bidding procedures for 100% of the equity of the Reorganized Debtors (the "Equity Interests"). The value of Equity Interests to be sold at auction would depend entirely on the terms of and the confirmability of the Plan. However, to date, the Plan terms are not fully known, will doubtlessly be subject to dispute, and may be altered at any time by Debtors. All these factors raise serious questions about the Debtors' conclusion that the proposed bidding process will maximize the participation of third-party bidders.

There are disturbing "tell tale" indications that the proposed bidding process is aimed more at assuring that the Debtors' DIP lender ("Cross Harbor") will be the successful purchaser of the Yellowstone Club than encouraging third-party bids. First, as DIP lender, Cross Harbor has established very short deadlines for Debtors to file and confirm a plan. Second, Debtors are owned and controlled by Edra Blixseth. Edra Blixseth's ability to negotiate effectively with Cross Harbor on behalf of the estates regarding plan terms and stalking horse terms is highly doubtful in light of her $35 million personal debt to Cross Harbor. Notably, she has caused BGI, Debtors' affiliate, to grant liens to Cross Harbor to secure her personal debt. Accordingly, the Court has charged the Official Committee of General Unsecured Creditors (the "Unsecured Creditors' Committee") with the duty to collect the BGI Notes or investigate important estate

claims relating to the proceeds of the Credit Suisse Loan because Edra Blixseth's conflicts of interest have made Debtors unable to discharge their fiduciary duties to creditors and other equity holders with respect to these claims.

These same fiduciary concerns are implicated by the Motion. If Cross Harbor is functionally the plan proponent, and also DIP lender and stalking horse bidder, there is a grave risk that the Motion has been principally designed to benefit Cross Harbor as opposed to the bankruptcy estates. Accordingly, the Class B Committee asks the Court to review the Motion with the special scrutiny required by the unusual circumstances of this case and to require any bidding process to be approved by the Unsecured Creditors' Committee or another fiduciary (other than Debtors) on behalf of the estate.

## **SPECIFIC OBJECTIONS**

The Class B Committee respectfully objects to the Motion on the following specific grounds:

1. <u>Hearing on the Motion is Premature.</u> The Motion is premature for several reasons. First, the Motion is inextricably tied up with a plan of reorganization that has not yet been filed. A review of the Plan is necessary to understand the Motion because the asset to be sold is not a hard asset, but rather the equity interests in a reorganized debtor. The value of such asset depends on a full understanding of the Plan and any changes to the Plan that occur, by reason of objections or changes voluntarily made by Debtors. Second, the Debtors should not seek to establish bidding procedures before hiring CB Richard Ellis or another broker to market the assets. If the bidding procedures are really intended to maximize value for the estates, Debtors should hire their broker first, design a sales process with the help of the broker's

expertise and then seek approval of a sale process from the Court. Finally, it does not even appear that Cross Harbor has even signed a binding offer for the stalking horse bid which should occur before the Motion is brought before the Court.

2. <u>Notice has been Inadequate.</u> Cross Harbor, as the proposed stalking horse bidder and apparent plan sponsor, should not be permitted to use unilateral deadlines in its DIP financing as a reason to deprive creditors of a full and fair opportunity to be heard with respect to the proposed bidding process. There is no fair reason why this matter should be set for a contested hearing on just a few days' notice. The Motion is filled with broad assertions about the sales process and plan negotiations process to date. The short notice leaves little time to objectors to explore the extent to which a real negotiation between Cross Harbor and Debtors have occurred on their behalf and whether the proposed bidding process reflects a fair effort to promote competitive bidding.

3. <u>The Motion Fails to Address the Stated Barriers to a Fair Sale.</u> Debtors allege that their sale efforts have been undermined because the limited pool of potential buyers is concerned that: (1) Credit Suisse, as the prepetition lender, will attempt to block their purchase; and (2) Cross Harbor has an advantage that any other buyer would not easily be able to overcome. The Motion, however, will create more impediments to a third party sale than it will solve. The Motion strongly suggests that there will be a battle over Credit Suisse's right to credit bid. However, the Court cannot take away Credit Suisse's basic rights as secured creditor, and an order purporting to do so will result in ongoing legal disputes, thereby exacerbating such problem. Moreover, the Motion entrenches Cross Harbor's position as the presumptive buyer with numerous provisions that favor it in light of its relationship to Debtors, including:

(i) a very short, sub-optimal sales process;

(ii) delays in retention of marketing expertise;

(iii) unique features to the Cross Harbor bid that will make bids not directly comparable;

(iv) excessive discretion in Debtors to favor Cross Harbor by not finding other bidders to be qualified or by rejecting other bids in favor of Cross Harbor;

(v) vague and potentially difficult obstacles to becoming a Qualified Bidder that do not apply to Cross Harbor; and

(vi) the requirement that other bidders meet or exceed Cross Harbor agreements that are not provided with the Motion.

4. <u>Debtors Cannot Properly Discharge Their Fiduciary Duty to Negotiate a Stalking Horse Deal Without Committee Involvement.</u> This Court has correctly determined that the Debtors indeed have conflicts of interest limiting their abilities to discharge their duties to creditors. In recognition thereof, the Court ruled that the Unsecured Creditors' Committee, and not the Debtors, should collect the BGI Notes and investigate claims the estates may have relating to dissipated proceeds of the Debtors' $375 million loan from Credit Suisse. For similar reasons, the Debtors cannot be relied upon to strike a fair stalking horse deal with Cross Harbor, not only because it is the DIP lender but because, on information and belief, it has loaned $35 million to Edra Blixseth and she has caused BGI to grant it liens in assets paid for with Credit Suisse loan proceeds. There are no objective assurances that the negotiations here could have been balanced or done with complete loyalty to creditors. As with the BGI Notes, the Court should require involvement of the Committee of Unsecured Creditors, the B Members Committee and the Ad Hoc Committee of Yellowstone Members in the review of stalking horse and alternative bids to assure creditors that their rights are being protected.

5.  <u>The Court Should Terminate Exclusivity, not Extend It.</u> The Motion includes a request to extend the Debtors' exclusivity. To the contrary, the Court should allow other parties to propose competing plans. Cause exists for terminating Debtors' exclusivity by reason of its conflicts of interests. Cross Harbor, as a prospective buyer, should not effectively control the Debtors' right of exclusivity for its own purposes. If competition is the goal, terminating exclusivity is the best way to proceed.

## CONCLUSION

For the foregoing reasons, the Ad Hoc Group of Class B Unit Holders respectfully requests this Court to deny the Debtors' Motion for Approval of Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests in the Debtors Pursuant to a Plan of Reorganization and any motion to extend the Debtors' exclusivity period under §1121(b) and (c)(3) beyond February 13, 2009.

Date: February 6, 2009    By: /s/ Ronald A. Bender
                              Ronald A. Bender, Esq.
                              Matthew J. Cuffe, Esq.
                              Worden Thane P.C.
                              Attorneys at Law
                              P.O. Box 4747
                              Missoula, Montana 59806
                              Telephone: (406) 721-3400
                              Fax: (406) 721-6985
                              rbender@wthlaw.net
                              State Bar I.D. Number 106
                              mcuffe@wthlaw.net
                              State Bar I.D. Number 4448

                              Clark T. Whitmore, Esq.
                              Kesha L. Tanabe, Esq.
                              Maslon Edelman Borman & Brand, LLP
                              3300 Wells Fargo Center
                              90 South Seventh Street
                              Minneapolis, Minnesota 55402-4140

Telephone: (612) 672-8200
Fax: (612) 672-8397
clark.whitmore@maslon.com
kesha.tanabe@maslon.com

Attorneys for Ad Hoc Group
of Class B Unit Holders

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 6, 2009, a copy of the above document was served: 1) by electronic means, pursuant to LBR 7005-1, 9013-1(c) and 9036-1 on the parties noted in the Court's CM/ECF transmission facilities; and/or 2) by mail as indicated below:

By mail:   None.

/s/ Ronald A. Bender
Ronald A. Bender

09001510