**Murphy Law Offices, PLLC**
Edward A. Murphy (#1108)
P.O. Box 2639
Missoula, MT 59806
Telephone: 406-728-2671
Email: murphylawoffices@yahoo.com

**Warner Stevens, L.L.P.**
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
Telephone: 817.810.5250
Facsimile: 817.810.5255
Michael D. Warner (Texas Bar No. 00792304)
E-mail: mwarner@warnerstevens.com

Attorneys for Highland Capital Management, L.P.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

------------------------------x
In re:                        :   Case No. 08-61570-11
                              :   **Notice of Hearing**
                              :   **Date: February 10, 2009**
Yellowstone Mountain Club, et al.,  :   **Time: 9:00 a.m.**
                              :   **Location: Mansfield Courthouse**
            Debtors.          :              **Butte, Montana**
------------------------------x


**HIGHLAND CAPITAL MANAGEMENT, L.P.'S OPPOSITION TO
DEBTORS' MOTION FOR ORDER APPROVING BIDDING AND
SOLICITATION PROCEDURES REGARDING PROPOSED SALE OF
100% OF THE EQUITY INTERESTS IN THE DEBTORS
PURSUANT TO PLAN OF REORGANIZATION**

Highland Capital Management, L.P., as adviser for various institutional funds (collectively the "Highland Funds"), respectfully submits this Opposition to the "Motion for Order Approving Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests in the Debtors Pursuant to a Plan of Reorganization" (the "Bid Motion"; terms defined in the Bid Motion are used herein as therein defined) filed by Yellowstone Mountain Club and the other debtors and debtors in possession in the above captioned administratively consolidated bankruptcy cases (collectively, the "Debtors").

## I.

## INTRODUCTION

Highland Funds' Opposition is not intended simply to repeat the well-founded concerns raised by Credit Suisse, but, rather, to emphasize that the procedures and timing of the Bid Motion, as well as its substance, reduce rather than enhance the prospects for maximizing the value of the Debtors' assets.  As will be more articulated at the hearing, Highland Funds are supportive of a sales process, just not this sales process.

Debtors filed their Bid Motion on an expedited basis, but did not justify why the Court should consider the Motion without giving the parties proper notice and reasonable time to review the significant issues presented.  The timing of this Bid Motion precedes, purportedly by a matter of days, the anticipated filing of a disclosure statement and plan by the Debtors.  While the Bid Motion defers to the yet to be filed disclosure statement and plan for additional details and clarification of bid components, it requests the Court's approval without giving the Court or the parties those critical details. All of this is done in the context of the Debtors' request for an extension of the Debtors' exclusivity periods,

which, if granted, by itself, belies any need for the Court to decide the Bid Motion on such an expedited schedule.

On this record and for the additional reasons detailed below, this Court should deny in full the relief requested in the Bid Motion, as the procedures established therein are not designed to maximize the value of the Debtors' assets, but do chill all other bidding for the assets being sold.

## II.

## **FACTS**

The Highland Funds are Lender parties to that certain Credit Agreement, dated as of September 30, 2005 (the "Prepetition Credit Agreement"), with Credit Suisse, as administrative and collateral agent, for the prepetition Lenders as identified therein (the"Prepetition Lenders").

## III.

## **ARGUMENT**

**The Proposed Bidding Procedures Do Not Mazimize The Value Of Debtors' Assets, But Do Chill Bidding In Connection With The Proposed Sale**

It is generally recognized that proposed bid procedures should enhance bidding and maximize sale proceeds. Debtors' proposed bid procedures do not satisfy these goals.

The Court has to look no further than the timing chosen by the Debtors for the sale process for the Court to conclude that the sale is not designed to maximize sale proceeds. The Debtors propose to require bids be delivered ten (10) days prior to the Confirmation Hearing. In reality, that proposed date does not provide potential bidders

any guidance for preparing or submitting bids, let alone arranging necessary funding. The Confirmation Hearing will not be scheduled until the disclosure statement has been filed and approved; then, and only then, would a confirmation date be selected. Certainly, giving prospective bidders an illusory bid deadline will neither enhance bidding nor maximize the sales proceeds.

The Bid Motion acknowledges that the Debtors have not yet received Court authorization to employ a broker for the sale of the assets. How serious can the Debtors be with respect to marketing the property if they seek approval of bid procedures before they have even been authorized to employ a broker for the sale process?

Moreover, the Bid Motion assumes a valuation of the assets and bases the bid procedures on that assumption prior to disclosing any of the details behind the valuation assumptions in the yet to be filed disclosure statement and plan. Simply put, the valuation by Debtors in the Bid Motion is shocking. This Court expressly found that a value for the assets at $310 million was at the low end of a going concern value.[1] The Bid Motion presents an assumed value of $100 million, less than one-third of this Court's Finding.

Other problems with the proposed Bid Procedures include the following:

A. A potential bidder must propose additional collateral to replace the additional property being contributed by CrossHarbor Capital Partners, L.L.C. and its affiliates (collectively "CrossHarbor") but neither the property constituting additional collateral nor its value are disclosed.

---

[1] See Memorandum of Decision, dated December 17, 2008 [Dkt. No. 182]

B. Along the same lines, a potential bidder is also required to submit a bid with a debt component that does not exceed the debt component proposed under the to-be-filed plan. No plan has been filed, but the inference is the proposed debt component will be no greater than $70 million. At a minimum, this parameter unduly hampers any other prospective bidder.

C. The Debtors have the sole authority to determine whether a bid is a qualified bid or not. There is no oversight by the Court. This constitutes a red flag for any prospective bidder.

D. If the Debtors' seek to deny the Prepetition Lenders the right to credit bid their allowed secured claim, as some statements in the Bid Motion suggest, resolution of that issue must occur prior to bidding and the auction for the assets. The Bid Procedures are silent as to a mechanism or timing to resolve any such dispute.

The above procedures not only chill potential bidders and minimize potential sale proceeds but also are designed to limit the ability of the Prepetition Lenders to credit bid under section 363(k) of the Bankruptcy Code. More importantly, and in complete violation of the Prepetition Lenders' rights under section 363(k) of the Bankruptcy Code, the Prepetition Lenders are being forced to bid for assets and take on obligations that are outside the scope of their lien (such as the undefined additional collateral), thus hampering their statutory right to credit bid. The Prepetition Lenders have a right to credit bid for those assets against which they have a lien and that right cannot be defeated by creating a bidding structure that requires the Prepetition Lenders to contribute collateral in an unspecified amount, and limit the amount of debt to an unsupported

valuation assumption. Any sale/bid process must be structured to fully allow for the Prepetition Lenders to exercise their credit bid rights.

Obviously, the proposed timing for approving the bid procedures chosen by the Debtors, and the requirements of the proposed sale are not designed to encourage bidding or maximize the proceeds received from the proposed sale.

Due to the shortened time allowed for filing this Opposition, Highland Funds reserves the rights to raise additional points in argument and to conduct discovery of the Debtors, their proposed broker and other relevant interests or parties regarding the issues presented by the Bid Motion.

## IV.

## CONCLUSION

The bid procedures the Debtors wish to put into place clearly fail to meet the requirements under the Bankruptcy Code and applicable case law with respect to the Debtors' obligation to encourage bidding and to maximize the proceeds received from the sale of the assets. As such, the bid procedures put forth by the Debtors should be denied and the Debtors should be forced to return to this Court with bid procedures that are designed to maximize value.

DATED this 6th day of February, 2009

                By: /s/ Edward A. Murphy_____
                    **Murphy Law Offices, PLLC**
                    Edward A. Murphy (#1108)
                    P.O. Box 2639
                    Missoula, MT 59806
                    Telephone: 406-728-2671
                    Email: murphylawoffices@yahoo.com

                    And

                    Michael D. Warner (Texas Bar No. 00792304)
                    **Warner Stevens, L.L.P.**
                    301 Commerce Street, Suite 1700
                    Fort Worth, TX 76102
                    Telephone: 817.810.5250
                    Facsimile: 817.810.5255
                    E-mail: mwarner@warnerstevens.com

                    Attorneys for Highland Capital
                    Management, L.P.