Daniel P. McKay
Office of the United States Trustee
Liberty Center, Suite 204
301 Central Avenue
Great Falls, MT  59401
Phone: (406) 761-8777
Fax: (406) 761-8895
e-mail: dan.p.mckay@usdoj.gov
State Bar I.D. No. 2422
(Attorney for the United States Trustee)

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| YELLOWSTONE MOUNTAIN CLUB, LLC, et al., | ) | Case No.  08-61570-11 |
| | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR APPROVAL OF BIDDING AND SOLICITATION PROCEDURES REGARDING PROPOSED SALE OF 100% OF THE EQUITY INTEREST IN THE DEBTORS PURSUANT TO A PLAN OF REORGANIZATION**

Acting United States Trustee Robert D. Miller Jr., through his undersigned attorney, Daniel P. McKay, (hereinafter "UST") hereby objects to the Debtors' Motion for Approval of Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interest in the Debtors Pursuant to a Plan of Reorganization (hereinafter referred to as "Debtors' Motion"). This objection is made upon the following grounds and for the following reasons:

### I.  THESE CASES ARE NOT CONSOLIDATED

1. There are four separate debtors in this proceeding.  The cases are being jointly administered pursuant to this Court's order dated November 13, 2008 (docket no. 39).  Lest there be any doubt that the "consolidation" of the cases was for administrative purposes only the order stated:

> IT IS FURTHER ORDERED that nothing contained in the Motion or this Order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of the above captioned chapter 11 cases.

The Debtors' Motion metaphorically puts the cart before the horse. The sale procedure and the forthcoming reorganization plan it describes appear to effect a de facto substantive consolidation of the four debtor entities. The "equity" in the four separate entities is being offered for a unitary price. There is no allocation of value among the entities. A single liquidating trust would be established, apparently without regard to which entity owns the assets which would be placed in the trust or has causes of action based on powers granted to a debtor under the Bankruptcy Code. One example of such assets is the three promissory notes, the collection of which is being pursued by the Official Committee of Unsecured Creditors under this Court's order of January 16, 2009, which presumably would go into the liquidating trust. Two of the notes, with aggregate face value of approximately $216,000,000, are payable to Yellowstone Mountain Club, LLC and one, in the face amount of approximately $56,000,000, is payable to Yellowstone Development, LLC. Further, the UST has become aware of the existence of substantial inter-company financial obligations that bear potentially on the value of the "equity" being offered in the proposed sale as it relates to the separate debtor entities.

The Ninth Circuit Court of Appeals adopted a test, articulated by the Second Circuit, to be applied in assessing whether consolidation is appropriate. In *In re Bonham*, 229 F.3d 750 (9th Cir. 2000), the court stated:

> The Second Circuit has applied an independent test which requires the consideration of two factors: '(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors.' *In re Reider,* 31 F.3d at 1108 (citing *In re Augie/Restivo*, 860 F.2d at 518); *see also Colonial Realty*, 966 F.2d at 61. The presence of either factor is a sufficient basis to order substantive consolidation. *See id*. The first factor, reliance on the separate credit of the entity, is based on the consideration that lenders 'structure their loans according to their expectations regarding th[e] borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets.' *In re Augie/Restivo*, 860 F.2d at 518-19. Consolidation under the second factor, entanglement of the debtor's affairs, is justified only where 'the time and expense necessary even to attempt to unscramble them [is] so substantial as

2

>to threaten the realization of any net assets for all the creditors' or where no accurate identification and allocation of assets is possible. *Id* at 519.
>
>The Second Circuit's approach is more grounded in substantive consolidation and economic theory; it is also more easily applied. Thus, we adopt it and utilize it in our analysis of this case. In applying the Second Circuit's test, we must determine whether Bonham's creditors either dealt with WPI, APFC and Bonham as a single economic unit and did not rely on the separate credit of each of the consolidated entities; or, whether the operations of of WPI and APFC were excessively entangled with Bonham's affairs to the extent that consolidation will benefit all creditors. *See In re Augie/Restivo*, 860 F.2d at 518.

229 F.3d at 766. The court further noted that consolidation is a remedy to be used sparingly. *Id* at 767. Proponents of substantive consolidation have the burden of proof to show that sufficient factors exist under either prong of the test. *In re Owens Corning*, 419 F.3d 195, 212 (3rd. Cir. 2005).

Substantive consolidation of these cases may or may not be warranted by the facts. Nonetheless, it can only be effected through the filing of a motion, on proper notice, giving all parties in interest the opportunity to object and request a hearing. And given the substantial inter-company financial relationships, evidenced by the balance sheets included in the monthly operating reports filed by the Debtors, such a motion should not be considered until proper disclosure of the nature and extent of these relationships is made through amendments to the schedules.

## II. THE DEBTORS' MOTION IS TOO VAGUE TO FORM THE BASIS FOR AN ORDER ESTABLISHING BIDDING PROCEDURES

The Debtors' Motion, at page 6, states that the Debtors have negotiated an "equity sale" under which CrossHarbor has agreed to purchase 100% of the "equity interests" in the "Reorganized Debtors". Neither the term "equity interest" nor the term "reorganized debtor" is defined in the Bankruptcy Code. Presumably the Debtors intend the term "equity interest" to mean the same thing as "equity security" as defined a 11 U.S.C. § 101(16).[1] With regard to the debtor entities in this case the relevant definition is "shares in a corporation, whether transferable or denominated 'stock', or similar security." § 101(16)(A).

---

[1] All statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532.

The ownership structure of the equity securities of the debtors, according to the schedules filed in these cases is as follows:

- Yellowstone Development LLC owns Yellowstone Club Construction Company LLC.
- Edra Blixseth and Yellowstone Development LLC each own 50% of Big Sky Ridge LLC.
- Blixseth Group, Inc. owns 86.7% of Yellowstone Development LLC and Yellowstone Mountain Club LLC. The remainder of the ownership of those entities is held by eight other individual or entities.

It is conceivable that debtor Yellowstone Development LLC could sell its equity securities in debtor Yellowstone Club Construction Company LLC because those equity securities are assets of Yellowstone Development LLC's bankruptcy estate. But the equity securities of Yellowstone Development LLC and Yellowstone Mountain Club LLC cannot be sold by those debtor entities because they are not assets of those estates. They are owned by non-debtor third parties. So the "Equity Sale" referenced in the Debtors' Motion cannot be accomplished through § 363 because that section of the Bankruptcy Code applies exclusively to the use, sale, or lease of property of a bankruptcy estate.

Because this so called "Equity Sale" cannot be a sale free and clear of liens under § 363, it is interesting that the Debtors' Motion cites (at page 5) as impediments to attracting qualified purchasers the risk of Credit Suisse exercising an overriding credit bid and the rights afforded to Credit Suisse under the *Clear Channel* case which both arise in the context of § 363. This simply may be an acknowledgment that the Debtors cannot accomplish what they would like to do through the mechanism of § 363 because of the rights afforded under that section to Credit Suisse and the other secured creditors.

As noted above, the term "reorganized debtor" also is not defined in the Bankruptcy Code. Outside of § 1173 dealing with railroad reorganizations, the term is used twice in the Code. Under § 1127(b) the plan proponent or "the reorganized debtor" can file a motion to modify a plan after confirmation. And one of the requirements for confirmation of a plan is that the proponent of the plan "disclos[e] the identity of any insider that will be employed or retained by the reorganized debtor..." § 1129(a)(5)(B). Therefore, it appears clear in the context of the

4

Bankruptcy Code that a reorganized debtor is a debtor operating under the terms and conditions of a confirmed plan. Presumably this is what the Debtors' Motion means when it uses this term.

When stripped to its essence it appears that what the Debtors are attempting to do is market the right to fund a plan of reorganization and, through the confirmation process, acquire "ownership" of the reorganized debtors through an infusion of new capital. Therefore, unless there is a bid under the mechanism proposed in the Debtor's Motion that vastly exceeds the proposed "stalking horse" bid of CrossHarbor, it is a certainty that the cram down provisions of § 1129 will have to be invoked. This prospect goes to the heart of the issue of whether this "Equity Sale" will do what the Debtors' Motion represents it is designed to do; i.e. foster a robust bidding process wherein the highest value will be obtained. If approved, it is likely that this process will do exactly the opposite. This is true for at least the following reasons:

1. <u>Secured creditors' rights under § 1111(b)</u>. A class of secured creditors may have the right under § 1111(b) to elect to have its claims secured up to the total amount of the claims pursuant to § 1111(b)(2). Therefore, if the class rejects the plan, the plan would have to pay the claims in full to be confirmable. A bidder under the debtors' proposed "Equity Sale" would face these prospects:

    a. Make a bid sufficient to pay the class in full;

    b. Hope the class does not make the § 1111(b) election;

    c. Argue successfully that the class or classes of secured creditors do not have the right to make the election.

2. <u>The difficulty in allocating the amount of cash or notes to be paid on account of secured claims among those claim holders</u>. The only secured claim referenced in the Debtors' Motion is that of Credit Suisse. However, at least two other creditors apparently have significant secured claims. Prim Vintage Development LP is scheduled with a secured claim of approximately $8,000,000 and has filed a claim in excess of $10,000,000. American Bank of Bozeman has a scheduled claim of $3,834,144.[2] There are numerous other secured claims that

---

[2] The UST is not aware that there are any issues of the seniority of the liens of these three creditors as it relates to any particular piece of property.

5

have been filed.  Therefore, there are at least in the range of $14,000,000 of secured claim potentially competing with Credit Suisse for sale proceeds. For confirmation purposes, the Debtors' Motion turns the issue of treatment of secured claims on its head.  Normally a plan proponent would asert the value of the property securing a claim and then propose how to pay that value.  In the scenario apparently proposed by the debtors, a finite amount of proceeds from the "Equity Sale" would be allocated to the secured claims and the plan proponent would have to show that the amount (1) equals at least the value of the aggregate of the creditors' secured claims and (2) is allocated among those creditors according to the value of their individual claims.  This factor alone could make confirmation of a plan very difficult if not impossible.

It is unlikely the bidding procedures outlined in the Debtors' Motion will attract competing bidders under circumstances in which the successful bidder may have to run the gauntlet of a plan confirmation process in which the outcome is anything but certain.

3. <u>There are significant built in problems with the bidding process itself</u>.  These impediments to robust bidding include, among others:

1. The requirement of bidders to offer substitute collateral of a value equal to that being contributed by CrossHarbor with that determination of value to be made by debtors in their sole discretion.

2. The requirement at paragraph 4.b. that the "debt component" (presumably referring to the $70,000,000 promissory note in the CrossHarbor proposal) of an overbid cannot exceed the debt component in the CrossHarbor proposal.  A larger debt component, if significant enough, could be attractive to secured creditors and make them less inclined to fight confirmation of a plan.

And, finally, it is impossible to assess the merits of the Debtors' Motion and the proposed bidding procedures contained therein without the benefit of a detailed plan of reorganization, and accompanying disclosure statement.  At the very least, consideration of the Debtors' Motion should be delayed until those documents are filed and parties in interest have had the opportunity to put them and the Debtors' Motion into the proper context.

WHEREFORE, the United States Trustee objects to the Motion For Approval of Bidding

and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests In the Debtors Pursuant to a Plan of Reorganization for all of reasons set out herein.

DATED this 6th day of February, 2009.

                                              Respectfully Submitted

                                              ROBERT D. MILLER JR.
                                              Acting United States Trustee


                                              /s/ Daniel P. McKay
                                              DANIEL P. McKAY
                                              Attorney for United States Trustee