Quentin M. Rhoades
State Bar No. 3969
Aleea Sharp
State Bar No. 7205
SULLIVAN, TABARACCI & RHOADES, P.C.
1821 South Avenue West, Third Floor
Missoula, Montana 59801
Telephone: 406-721-9700
Facsimile: 406-721-5838

Attorneys for Creditor Normandy Hill Capital L.P.


UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| IN RE:<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC,<br><br>        Debtor. | Case No.  08-61570-11-RBK |

### OBJECTION OF CREDITOR NORMANDY HILL CAPITAL, L.P., TO MOTION FOR APPROVAL OF BIDDING AND SOLICITATION PROCEDURES REGARDING PROPOSED SALE OF 100% OF THE EQUITY INTERESTS IN THE DEBTORS PURSUANT TO A PLAN OF REORGANIZATION

Creditor, Normandy Hill Capital L.P., by and through its counsel of record, SULLIVAN, TABARACCI & RHOADES, P.C., states as follows:

1.     Normandy Hill Capital is a secured creditor of the Debtors under a Credit Agreement dated as of September 30, 2005.  The prepetition secured lenders' claims under the Credit Agreement are approximately $307 million.

2.     On February 3, 2009, the debtors in these chapter 11 cases filed  a "Motion For Approval of Bidding and Solicitation Procedures Regarding Proposed Sale Of 100% Of The Equity Interests In The Debtors Pursuant To A Plan Of Reorganization," (the "Bidding and Solicitation Procedures Motion"). (Dkt. No. 322.)

3.    Timely filed have been objections to the Bidding and Solicitation Procedures Motion by:

A.    Credit Suisse, as administrative agent and collateral agent for the prepetition secured lenders under the Prepetition Credit Agreement (Dkt. No. 350);

B.     The United States Trustee (Dkt. No. 352);

C.    Highland Capital Management, L.P. (Dkt. No. 349);

D.    The Ad Hoc Group of Class B Unit Holders (Dkt. No. 347).

4.    Each of these well-taken objections, alone, would be sufficient to deny the motion, and Normandy Hill hereby joins in them.  Normandy Hill further objects as set forth below.

5.    Debtors' Bidding and Solicitation Procedures Motion is intended to limit the process to bidders who might sponsor a particular plan of reorganization, with obvious detriments for sale prices.  This is patently improper.  In re APP Plus, Inc., 223 B.R. 870, 875 (Bkrtcy. E.D.N.Y. 1998). Under this proposal, as the U.S. Trustee has noted, the beneficiary of the Motion, CrossHarbor Capital Partners L.L.C., consists of nothing more or less than a "stalking horse" whose purpose is to obtain the Debtors' "equity interest" not for dimes, but for pennies on the dollar – at the expense and prejudice of all other parties-in-interest.  This is clear on the face of the Motion.  If the proponents believe they can show otherwise, the burden is on them to do so.

6.    The record has established beyond cavil that the stalking horse nature of CrossHarbor.  Clearly it has substantial and insider relationships with the Debtors, and it has involved itself for a sole purpose: bargain hunting.

7.    Debtors cannot satisfy this purpose in a sale outside of a plan under Bankruptcy Code § 363(b) because § 363(k) protects the prepetition lenders' right to credit bid their claims.  In re California Hancock, Inc., 88 B.R. 226, 230 (9th Cir.BAP 1988).  As the 9th Circuit BAP has affirmed the rights of section 363(k) attach to the sale

of property under the plan: "Sale of property under section 363 or under the plan is excluded from treatment under section 1111(b) because of the secured party's right to bid in the full amount of his allowed claim at any sale of collateral under section 363(k) of the House amendment." Id. at 230.  Likewise, Debtors are unable to deliver the prepetition lenders' collateral to CrossHarbor under a reorganization plan because Bankruptcy Code §§ 1111(b) and 1129(b) preserve the prepetition lenders' right to credit bid.  Id.  "[T]he sale exception to section 1111(b)(1)(A) applies only where the lienholder is allowed to credit bid." Id., (citing In re Woodridge North Apts., 71 B.R. at 192.)

8.      In view of these twin impossibilities, Debtors have proposed, ingeniously if disingenuously, a purposely obscure (and likely, once defined, labyrinthine) bidding process for selling-off the prepetition secured lenders' collateral to the stalking horse, CrossHarbor.  Debtors proposed auction, inexplicably and in flat violation of the Bankruptcy Code, limits credit bids, and boldly seeks to impair the prepetition secured lenders.  Small wonder the bidding procedure is proposed without benefit of a plan or disclosure statement.  Given the impairment to the secured creditors required under the current proposal, such a plan would be, as envisioned by Debtors and CrossHarbor, flatly un-confirmable.  Asking interested bidders to step forward and bid on an un-confirmable plan is (as the proponents must intend), a pointless waste of time and money which no rational bidder would have the never to ask potential investors to undertake. Under this reality, the proposal is plainly a contrivance to benefit CrossHarbor.

9.      If Debtors want to pursue a sale process and conduct a fair auction intended to find the highest and best offer for its assets, the sale procedures should be as a bona fide auction – with procedures as transparent and as flexible as possible. Specifically, the parties marketing Debtors assets should be directed to solicit any and

all types of bids for any or all of Debtors' assets.  After all bona fide interest is solicited, the Court can then effectively oversee an auction that encourages – and potentially rewards – all bidders to proffer their highest and best offers.  After the highest and best bids are exposed, Debtors – in consultation with their creditors, and under the Court's supervision – can then examine them and effectively identify the highest and best value achievable.

9.      Ultimately, moreover, if the bids for property that is collateral security for a creditor achieve bids that are less than the amount of a secured creditors claims, secured creditors should have the right to credit bid for their collateral security. California Hancock, Inc., 88 B.R. at 230.

10.     Thereafter, Debtors' cases can advance to the plan of reorganization stage in order to achieve a fair and equitable distribution of the maximized value achieved at the auction, not a value formulated to simply enrich a stalking horse buyer – at all other parties' expense.

11.     If Debtors want to pursue a plan of reorganization before selling their assets, Debtors should file a plan of reorganization that is either acceptable to classes of creditors or consistent with the requirements of Bankruptcy Code § 1129(b).  In either event, Debtors have not attempted to reach some consensual resolution of their cases by proposing a plan term sheet and offering to negotiate a consensual plan in this case. They should be required to do so before any proposal for a stalking horse purpose should be heard.  Thus, Debtors' Bidding and Solicitation Procedures Motion should be denied.

DATED this 6th day of February, 2009.

SULLIVAN, TABARACCI & RHOADES, P.C.

By: /s/ Quentin M. Rhoades
        Quentin M. Rhoades
        Attorneys for Creditor Normandy Hill Capital, L.P.

-4-