## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **YELLOWSTONE MOUNTAIN CLUB, LLC,** | Case No. **08-61570-11** |
| Debtor. | Jointly Administered with: |
| In re | |
| **YELLOWSTONE DEVELOPMENT, LLC**, | Case No. **08-61571-11** |
| Debtor. | |
| In re | |
| **BIG SKY RIDGE, LLC**, | Case No. **08-61572-11** |
| Debtor. | |
| In re | |
| **YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC**, | Case No. **08-61573-11** |
| Debtor. | |

## *MEMORANDUM of DECISION*

At Butte in said District this 18th day of February, 2009.

In the above-referenced jointly administered Chapter 11 bankruptcies, after due notice, a hearing was held February 10, 2009, in Butte on:

1

1.      CrossHarbor Capital Partners, LLC's "Objection and Motion for Reconsideration of Order for 2004 Examination and to Quash Related Subpoenas Under Local Rule 9013-1(f)(2)(BB) & Request Court Find Good Cause Under 9029(1)(a)(3) to Set This Matter for Hearing With Less Than 20 Days Notice As Required Under 9013(1)(e)" filed January 26, 2009, at docket entry no. 309, together with Credit Suisse's response thereto filed February 3, 2009, at docket entry no. 324;

2.      Credit Suisse's "Emergency Motion for Prepetition Lenders for Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 364 Compelling Immediate Commencement of Marketing Process" filed January 27, 2009, at docket entry no. 311, together with the objection and responses thereto filed by the Debtors on February 5, 2009, CrossHarbor Capital Partners and CIP Yellowstone Lending, LLC on February 5, 2009, and the Official Committee of Unsecured Creditors filed February 6, 2009;

3.      Credit Suisse's "Emergency Motion of Prepetition Lenders Pursuant to Bankruptcy Rules 7026 and 9014 and Local Rule 9014-1 for Order Authorizing Prepetition Lenders to Seek Expedited Discovery" filed January 28, 2009, at docket entry no. 314, together with the response of CrossHarbor Capital Partners and CIP Yellowstone Lending, LLC filed February 6, 2009;

4.      The Debtors' "Motion for Approval of Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests in the Debtors Pursuant to a Plan of Reorganization" filed February 3, 2009, at docket entry no. 322, together with the objections and responses of the Ad Hoc Group of Class B Unit Holders, Highland Capital Management, L.P., Credit Suisse, the Office of the United States Trustee, Normandy Hill Capital, L.P., and the Official Committee of Unsecured Creditors, all filed February 6, 2009, and the objection of Timothy L. Blixseth filed February 8, 2009; and

5.      Credit Suisse's "Emergency Motion of Prepetition Lenders for Appointment of Examiner" filed February 3, 2009, at docket entry no. 326, together with the responses filed thereto by the Debtors, CrossHarbor Capital Partners, CIP Yellowstone Lending, LLC, and the Official Committee of Unsecured Creditors on February 6, 2009.

The following appearances were made at the February 10, 2009, hearing:  James A. Patten of Billings, Montana and Lawrence R. Ream of Seattle, Washington for the Debtors;

Daniel P. McKay of Great Falls, Montana for the Office of the United States Trustee ("UST");

Mark S. Chehi, Robert S. Saunders and Joseph O. Larkin of Wilmington, Delaware and Evan R.

Levy of New York, New York for Credit Suisse, Cayman Island Branch ("Credit Suisse");

Jonathan B. Alter of Hartford, Connecticut and John Grant of Helena, Montana for the Ad Hoc

Committee of Yellowstone Club Members ("Ad Hoc Committee"); Clark T. Whitmore of

Minneapolis, Minnesota for the Ad Hoc Group of Class B Unit Holders ("Class B Group"); Paul

D. Moore of Boston, Massachusetts and Benjamin P. Hursh of Missoula, Montana for

CrossHarbor Capital Partners and CIP Yellowstone Lending, LLC ("CrossHarbor")[1]; J. Thomas

Beckett of Salt Lake City, Utah and James H. Cossitt of Kalispell, Montana for the Official

Committee of Unsecured Creditors (the "Committee"); Jon Doak of Billings, Montana for James

T. Murphy, Murphy Family Limited Partnership and the Edwards Law Firm; Joel E. Guthals of

Billings, Montana for Timothy Blixseth; Quentin M. Rhoades of Missoula, Montana for

Normandy Hill Capital, L.P.; and Michael D. Warner of Fort Worth, Texas and Edward A.

Murphy of Missoula, Montana for Highland Management, L.P.  The Court heard testimony from

Edra Blixseth, Samuel Byrne of CrossHarbor, Ronald Greenspan of FTI Consulting, Inc., and

Scott Miller of Jones Lang LaSalle.  Credit Suisse's Exhibits 6, 7, 12 and 13 were admitted into

evidence without objection.  By separate Order, this Court granted Credit Suisse's Emergency

Motion of Prepetition Lenders for Appointment of Examiner.

       The background of these jointly administered Debtors is set forth in numerous Orders and

Memoranda of Decision entered by this Court and it is also often repeated by various of the

parties in the motions filed herein.  Rather than repeat what is obviously known to the parties that

attended the February 10, 2009, hearing, the Court will simply incorporate by reference the

---

[1] Barry Green also appeared at the hearing on behalf of CrossHarbor, but he has not been admitted to practice before this Court.

3

factual background set forth in the Memoranda of Decision entered November 26, 2008,

December 17, 2008, and January 16, 2009.  This Memorandum of Decision sets forth the Court's

findings of fact and conclusions of law with respect to the following:

> 1.    **CrossHarbor Capital Partners, LLC's Objection and Motion for Reconsideration of Order for 2004 Examination and to Quash Related Subpoenas Under Local Rule 9013-1(f)(2)(BB) & Request Court Find Good Cause Under 9029(1)(a)(3) to Set This Matter for Hearing With Less Than 20 Days Notice As Required Under 9013(1)(e).**

Rule 2004 is the basic discovery device in bankruptcy cases and it is initiated by a

motion.  In this Court, a motion for Rule 2004 examination is filed and usually granted *ex parte*.

That is precisely what happened in this case.  On January 19, 2009, Credit Suisse filed an

Amended Motion for Rule 2004 Examinations, seeking to examine various witnesses.  The scope

of the examinations was outlined in Exhibit B to the Motion and the documents to be produced

were set forth in Exhibit A attached to the Motion.  As is this Court's custom, the Court entered

an Order on January 20, 2009, approving Credit Suisse's examination of CrossHarbor and its

affiliates.

Curiously, CrossHarbor seeks reconsideration of the Court's January 20, 2009, taking

issue with the "scope" of the 2004 examinations and seeking to quash various subpoenas.  In

support of its Motion, CrossHarbor seeks refuge in this Court's December 17, 2008,

Memorandum of Decision and further argues that Credit Suisse's requests for production will

delay and disrupt "CrossHarbor's and the Debtors' efforts to formulate and propose a plan of

reorganization prior to February 13, 2009."

In the Memorandum of Decision entered December 17, 2008, this Court determined that

in the context of the Debtors' efforts to secure post-petition financing, Credit Suisse's argument

that the relationship between CrossHarbor and Edra Blixseth somehow tainted CrossHarbor's

offer to provide DIP financing was a baseless allegation at that time.  The Court's reasoning at

that time stemmed in part from the fact that all parties believed that Credit Suisse would be the

party providing DIP financing to the Debtors.  It was not until hours before a hearing held

November 25, 2008, that Credit Suisse advised the Debtors and other parties in interest that it

was not able to fund its proposed DIP financing.  At that time, CrossHarbor essentially took

Credit Suisse's DIP financing proposal and substituted its name in place of Credit Suisse's.

Despite Credit Suisse's arguments to the contrary, the Court was hard-pressed to find any type of

collusion or undue influence in CrossHarbor's last minute DIP financing proposal.

However, this case has moved beyond the Debtors' request for approval of DIP financing

and the scope of the parties' and this Court's examination expands as the Debtors move forward

in the confirmation process.  CrossHarbor, in its Motion for Reconsideration,

recognizes the scope of Rule 2004, as interpreted by any number of courts is
broad, but is not boundless.

[a]lthough the scope of the examination permitted under Bankruptcy Rule
2004 is broad it is not without limits.  The examination of a witness as to
matters having no relationship to the debtor's affairs or no effect on the
administration of his estate is improper.

*In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D.Ill. 1985), citing *In re Johns-
Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984).  *See also, In re Flynn*, 3
Mont. B.R. 22, 23 (1986) ("In short, Rule 2004 allows a broad ground for
examination of the Debtor, but only in matters directly relating to the bankruptcy
petition.") With respect to third party witnesses such as CrossHarbor and the
numerous affiliates Credit Suisse seeks to examine and produce voluminous
documents:

[A]lthough Rule 2004 permits examinations of "third parties" the language
of the rule makes it "evident that an examination may be had only of those
persons possessing knowledge of a debtor's acts, conduct or financial

5

affairs so far as this relates to a debtor's proceeding in bankruptcy." It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.

*Wilcher*, 56 B.R. at 434, *quoting, In Re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr.D.Mass.1983). Likewise, "[s]uch examination . . . cannot be 'used for purposes of abuse or harassment' and it 'cannot stray into matters which are not relevant to the basic inquiry.'" *In re W&S Investments, Inc.*, 985 F.2d 577 (9th Cir. 1993), 1993 WL 18272, *quoting, In re Table Talk*, 51 B.R. 143, 145 (Bankr. D.Mass 1985) (*quoting In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)).

Consideration and examination of the Debtors' and Edra Blixseth's relationship – past, present and future – with CrossHarbor is now fair game because those relationships bear directly on the Debtors' reorganization as contemplated in the Debtors' proposed Joint Plan of Reorganization. Rather than seeking reconsideration of the Court's January 20, 2009, Order, CrossHarbor needs to seek other appropriate remedies founded on something more than the skeletal reasoning set forth in CrossHarbor's pending Motion. For the reasons discussed above, CrossHarbor's Objection and Motion for Reconsideration of Order for 2004 Examination and to Quash Related Subpoenas Under Local Rule 9013-1(f)(2)(BB) & Request Court Find Good Cause Under 9029(1)(a)(3) to Set This Matter for Hearing With Less Than 20 Days Notice As Required Under 9013(1)(e) is overruled and denied.

   2.   **Credit Suisse's Emergency Motion for Prepetition Lenders for Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 364 Compelling Immediate Commencement of Marketing Process**.

On February 10, 2009, the Debtors filed an Application to Approve Employment of Professional seeking authorization to employ CB Richard Ellis, Inc. to solicit and procure prospective purchasers for certain land, buildings and improvements owned by the Debtors. The Court approved the Debtors' employment of CB Richard Ellis, Inc. on February 10, 2009. Credit

Suisse's witness, Scott Miller of Jones Lang LaSalle, while critical of the Debtors' data room, conceded that CB Richard Ellis, Inc. will do a great job for the Debtors and further conceded that Jones Lang LaSalle would not be in a better position than CB Richard Ellis, Inc. to market the Debtors' property.  This Court thus concludes that Credit Suisse's Motion was rendered moot when the Court approved the Debtors' Application to hire a qualified and experienced company to create a robust marketing strategy for the Debtors.  Therefore, Credit Suisse's Emergency Motion for Prepetition Lenders for Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 364 Compelling Immediate Commencement of Marketing Process is denied.

3. **Credit Suisse's Emergency Motion of Prepetition Lenders Pursuant to Bankruptcy Rules 7026 and 9014 and Local Rule 9014-1 for Order Authorizing Prepetition Lenders to Seek Expedited Discovery**.

Credit Suisse's Emergency Motion to Seek Expedited Discovery is tied to Credit Suisse's Emergency Motion Compelling Immediate Commencement of Marketing Process.  In particular, Credit Suisse sought to ascertain matters relevant to the Debtors' marketing, solicitation of potential buyers, and negotiations with CrossHarbor and any other parties.  Such matters were explored extensively at the February 10, 2009, hearing and for the reasons discussed previously in this Order and pursuant to the Court's oral ruling from the bench made February 10, 2009, the Emergency Motion to Seek Expedited Discovery is denied for the reason that said Motion is moot.

4. **The Debtors' Motion for Approval of Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests in the Debtors Pursuant to a Plan of Reorganization.**

The Debtors' Motion for Approval of Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests in the Debtors Pursuant to a Plan of

7

Reorganization is opposed in whole or part by the Class B Group, Highland Capital Management, L.P., Credit Suisse, the UST, Normandy Hill Capital, L.P., the Committee and Timothy L. Blixseth.  The Debtors filed the pending Motion and a hearing on said Motion was held prior to the time that the Debtors filed their Disclosure Statement or their Joint Plan of Reorganization.  The Debtors' filed their Disclosure Statement and proposed Chapter 11 Joint Plan of Reorganization on February 13, 2009.

Counsel for Highland Capital Management, L.P. correctly notes in Highland Capital Management, L.P.'s opposition to the Debtors' Motion that "proposed bid procedures should enhance bidding and maximize sale proceeds."  Similarly, the Committee, in the statement of its position and quoting *In re Biderman Indus. U.S.A., Inc.*, 203 B.R. 547, 549 (Bankr. S.D.N.Y. 1997), persuasively argues that "[t]he conduct of bankruptcy proceedings not only should be right but must seem right."

All parties acknowledged at the hearing that the bidding process for these Debtors starts at a disadvantage because of the potential threat of a credit bid by Credit Suisse.  Furthermore, prior to the Debtors' petition dates, CrossHarbor had entered into an agreement to purchase the Yellowstone Club for an amount indicated by the parties to be in the neighborhood of $470 million.  As part of the prior purchase agreement, CrossHarbor did extensive due diligence and has thus had a head-start over any new entity who might be a potential bidder.  Morever, Edra Blixseth[2] is personally indebted to CrossHarbor for $35 million and CrossHarbor was instrumental in selecting Discovery Land Company, the company currently employed by the

---

[2]  Edra Blixseth is the President and 100% equity owner of BLX Group, Inc.  BLX Group, Inc. owns substantially all the interests in the Debtors.

8

Debtors to oversee all services with respect to the Yellowstone Club operations, administration, design, construction, completion, maintenance, marketing, sales and all other day to day functions of the Yellowstone Club.

The close relationship of the Debtors, Edra Blixseth and CrossHarbor requires that this Court be particularly cautious about approving any bidding procedures that would favor CrossHarbor to the detriment of the other parties in interest in this case. Unfortunately, after much consideration of the Debtors' proposed bidding procedures, this Court finds that Debtors' proposed bid procedures do not encourage third-part bids but rather, were drafted in fashion to ensure that CrossHarbor, the DIP lender, will be the successful purchaser of the Yellowstone Club. Such proposed bidding procedures would have a chilling effect the Debtors' contemplated sale of its assets.

The creditors' committees in this case are extremely active and so far, they have served as a fair and accurate barometer on whether a proposed action is in the best interest of the Debtors and other parties in interest.[3] Although this Court would not anticipate that the Debtors could secure the consent of all interested parties to a proposed action, the fact that the Committee and the Class B Group are not on board with Debtors' proposed bidding procedures speaks volumes. The Debtors' proposed bidding procedures are not transparent and flexible and they will not encourage a process whereby the Debtors find the best offer for the assets they propose to sell.

Perhaps with a little more negotiation, and now that the parties can review the Debtors' Disclosure Statement and Chapter 11 Joint Plan of Reorganization, the Debtors will be able to

---

[3] With authorization from this Court, the Committee has filed an Adversary Proceeding against Edra Blixseth and BLX Group, Inc. The Committee is also seeking permission to file an Adversary Proceeding against Credit Suisse.

9

formulate bidding procedures that will encourage robust bidding by multiple parties, not just CrossHarbor or Credit Suisse.  For the reasons discussed above, the Court denies approval of the Debtors' proposed bidding procedures.

     5.    **Exclusivity Period.**

Finally, buried in the Debtors' Motion for Approval of Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests in the Debtors Pursuant to a Plan of Reorganization is a request that the Court extend the exclusivity period under 11 U.S.C. §1121(b) to April 30, 2009.  The Debtors offer no reason whatsoever for their request for an extension of the exclusivity period.

A key requirement for extending a debtor's exclusivity period is proof by the debtor of promise of probable success for the debtor's reorganization effort.  *Matter of Newark Airport/Hotel Ltd. Partnership*, 156 B.R. 144 (Bankr. D.N.J. 1993).  Based upon statements made in this case, it appears that the Debtors' proposed Joint Plan of Reorganization is a collective effort between the Debtors, Edra Blixseth and CrossHarbor.  The Court has no way of knowing at this time whether other parties in interest will support the Debtors' proposed Plan. However, extending the exclusivity period will discourage others who have an interest in submitting an alternative plan from coming forward.  Termination of the exclusivity period will only allow other parties who may be interested in proposing restructure and reorganization of the Yellowstone Club to offer plans so that creditors will have a choice about treatment and payment of their claims.  Given the absence of any proof by the debtors that an extension of the exclusivity period is necessary, the Debtors' request for an extension of the exclusivity period is denied.

10

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED:

1.  CrossHarbor's Objection and Motion for Reconsideration of Order for 2004 Examination and to Quash Related Subpoenas Under Local Rule 9013-1(f)(2)(BB) & Request Court Find Good Cause Under 9029(1)(a)(3) to Set This Matter for Hearing With Less Than 20 Days Notice As Required Under 9013(1)(e) [Docket Entry No. 309] is overruled and denied.

2.  Credit Suisse's Emergency Motion for Prepetition Lenders for Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 364 Compelling Immediate Commencement of Marketing Process [Docket Entry No. 311] is denied.

3.  Credit Suisse's Emergency Motion of Prepetition Lenders Pursuant to Bankruptcy Rules 7026 and 9014 and Local Rule 9014-1 for Order Authorizing Prepetition Lenders to Seek Expedited Discovery [Docket Entry No. 314] is denied.

4.  The Debtors' Motion for Approval of Bidding and Solicitation Procedures Regarding Proposed Sale of 100% of the Equity Interests in the Debtors Pursuant to a Plan of Reorganization [Docket Entry No. 322] is denied.

5.  The Debtors' request for an extension of the exclusivity period is denied.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

11