CHARLES W. HINGLE (#1947)
SHANE P. COLEMAN (#3417)
HOLLAND & HART LLP
401 NORTH 31st STREET, SUITE 1500
BILLINGS, MONTANA 59101
(406) 252-2166 (PHONE)
(406) 252-1669 (FAX)
chingle@hollandhart.com (EMAIL)
spcoleman@hollandhart.com (EMAIL)

EVAN R. LEVY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 FOUR TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 735-3000 (PHONE)
elevy@skadden.com (EMAIL)
*Admitted Pro Hac Vice*
    - and –

MARK S. CHEHI
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899
(302) 651-3000 (PHONE)
mchehi@skadden.com (EMAIL)
*Admitted Pro Hac Vice*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Chapter 11 |
| Yellowstone Mountain Club, <u>et al.</u>, | Case No. 08-61570-11<br>Jointly Administered |
| Debtors. | |

## OBJECTION OF PREPETITION LENDERS
## TO DEBTORS' DISCLOSURE STATEMENT

Credit Suisse, as administrative agent and collateral agent ("Credit Suisse" or, the "Agent") for the prepetition lenders (the "Prepetition Lenders") under that certain Credit Agreement, dated as of September 30, 2005 (the "Prepetition Credit Agreement"), hereby objects (the "Objection") to the adequacy of Debtors' proposed Disclosure Statement (the "Disclosure Statement" or "DS at __") with respect to the Debtors' proposed Joint Plan of Reorganization (the "Plan"), each dated and filed on February 13, 2009, as follows:

## Objections

1.    The Court should deny approval of the Disclosure Statement because (i) it proposes the solicitation of a putative reorganization plan that is patently unconfirmable, and (ii) fails to contain requisite "adequate information" within the meaning of section 1125 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. § 1125.

2.    Unconfirmable Plan. The Court should deny approval of the Disclosure Statement because the putative Plan is patently unconfirmable. See In re Kurth Ranch, 7 Mont. B.R. 207, 209 (Bankr. Mont. May 26, 1989) (Holding that the adequacy of the disclosure statement should be denied where the plan is not confirmable, as "the Chapter 11 Plan or summary thereof is one of the essential criteria which the Court must examine to determine adequacy of information") (attached hereto as Exhibit A); In re Silberkraus, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000) (where plan nonconfirmable as a matter of law, approval of disclosure statement should be denied). The Plan is fatally flawed and unconfirmable for the following non-exclusive reasons[1]:

---

[1] Credit Suisse hereby reserves the right to re-assert and supplement these objections before the conclusion of the hearing on the Disclosure Statement, and in conjunction with confirmation of the

1

    a.    <u>Plan Violates Terms Of Prior Order</u>. With the proposed Plan and Disclosure Statement, the Debtors purport to seek approval of reorganization terms that will treat the Prepetition Lenders' claims and liens "as Disputed Claims until the date 30 days after the Effective Date unless the Trustee has commenced an action against [the Prepetition Lenders] and Credit Suisse, and in such event until such time as any [such claims] . . . are resolved". (DS at 31.) Likewise, the Debtors purport to provide for subordination of the Prepetition Lenders' Deficiency Claim. (<u>Id</u>.). Accordingly, the Debtors purport to dispute and contest the Prepetition Lenders' claims and liens for purposes of their Plan, and to extinguish them with the Plan. (<u>See</u> <u>e.g.</u>, Plan §§ 3.3.2 and 3.3.3; DS at 31). The Plan therefore violates fundamental terms of the Interim Order Authorizing Debtors To Obtain Postpetition Financing [Dkt. No. 40] (the "Order") whereby the Debtors explicitly waived their rights to do same.[2] The Debtors' should be estopped from taking positions and advancing a Plan and Disclosure Statement where that violates the Order.

    b.    <u>Fails to Contain Adequate Means for Implementation</u>. The Plan fails to satisfy Code section 1123(a)(5), because: (i) the Plan seeks to satisfy and extinguish the Prepetition Lenders' liens on Project Assets purportedly in accordance with Code section 1123(a)(5)(E)

---

Plan, including, but not limited to, objections to the Definitive Agreement which was filed on the objection deadline to the Disclosure Statement.

[2]     In paragraph 4(c) of the Order, the Debtors stipulated that "no portion of the Prepetition Secured Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law."

In paragraph 4(e) of the Order, the Debtors stipulated that "the liens and security interests granted to the Prepetition Agent and the Prepetition Lenders pursuant to and in connection with the Prepetition Credit Documents (including, without limitation, all security agreements, pledge agreements, mortgages, leasehold mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Lenders) are (i) valid, binding, perfected, enforceable first priority liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law . . . [and are subordinate only to the DIP Liens, the Carveout and any Permitted Prepetition Liens]".

Paragraph 18 of the Order provides that "[t]he foregoing stipulations set forth in the Interim DIP Order are binding on the Debtors: "The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon the Debtors in all circumstances."

Paragraph 18(b) provides that "[t]he stipulations and admissions set forth in the Interim DIP Order are binding on all parties in interest (including the Committee) unless (i) a challenge is filed within the applicable challenge period and (ii) there is a final order sustaining such challenge "*provided* that as to the Debtors, all such Claims and Defenses [that may be asserted against the Prepetition Agent and Lenders] are hereby irrevocably waived and relinquished as of the Petition Date."

  (see Plan Section 3.3) without proper legal determination of lien validity pursuant to an adversary proceeding; (ii) the Plan is premised upon a sale of the "equity" in the Reorganized Debtors to be conducted based on procedures expressly disallowed by this Court, due to their chilling effect on bidding, See Mem. Dec., dated February 18, 2009; (iii) the feasibility of the Plan depends upon the success of inchoate litigation against the Prepetition Lenders and their claims and liens See In re McKay, 14 Mont. B.R. 296, 305 (Bankr. Mont. June 1, 1995) (Holding that "[i]f a claim is (1) unresolved and (2) of such probable magnitude as to (a) disrupt or render impossible the distribution contemplated by the Plan or (b) necessitate a further reorganization, then confirmation should be denied) (attached hereto as Exhibit B); and (iv) the confirmability of the Plan depends upon whether the Prepetition Lenders' exercise their Code section 1111(b) election. See In re Associated Vintage Group, Inc., 283 B.R. 549, 560 (9th Cir. BAP 2002) (observing that adequate means for plan implementation is "essential element" of a chapter 11 plan).

 c. Prohibited Non-Debtor Releases. The Plan provides for unlawful releases of "insiders" (including without limitation, Edra Blixseth, her affiliates, BLX Group, Inc., and CrossHarbor Capital Partners and its affiliates) through purported "exculpation and limitation of liability" terms (Plan § 8.4) and also through purported "no recourse" terms (Plan § 7.75). See Resorts Int'l v. Lowenschuss (In re Lowenschuss), 67 F.3d 1394 (9th Cir. 1995), *cert. denied*, 517 U.S. 1243 (1996) (Code section 524(e) prevents court from using equitable powers to permanently release third-party claims); In re American Hardwoods, 885 F.2d 621 (9th Cir. 1989); Underhill v. Royal, 769 F.2d 1426 (9th Cir. 1985).

 d. Not "Fair and Equitable"  The Plan fails to provide "fair and equitable" treatment of the Prepetition Lenders' claims within the meaning of Code sections 1129(b)(2), because the Plan (i) proposes to extinguish the Prepetition Lenders' liens (rather than providing that the Prepetition Lenders will "retain the liens securing" their claims), and fails to provide that the Prepetition Lenders' deferred cash payments with a present value at least equal to the value of the Prepetition Lenders' liens in their prepetition collateral totaling at least the allowed amount of their claim; (ii) fails to provide the Prepetition Lenders the "indubitable equivalent" of their secured claims; and (iii) violates the absolute priority rule by making a distribution to Equity Interests without making payment in full on account of the Prepetition Lenders' deficiency claim.. See 11 U.S.C. §§1129(b)(2)(A)(i)(I), 1129(b)(2)(A)(i) (II), 1129(b)(2)(A)(iii), and 1129(b)(2)(B); see also Liberty Nat'l Enterprises v. Ambanc La Mesa Ltd. P'shp. (In

3

re Ambanc La Mesa Ltd. P'shp), 115 B.R. 650, 654 (9th Cir. 1997) (Holding that the bankruptcy court is prohibited from confirming a plan that fails to provide "fair and equitable" treatment by allowing holders of the debtor's equity to receive or retain property under the plan without paying all senior objecting creditors in full).

e. <u>Impermissible Classification Scheme/Gerrymandering</u>. The Plan unlawfully proposes to classify Prepetition Lender deficiency claims as a class separate from general unsecured claims in an effort to obtain an impaired consenting class. (Plan §§ 3.4, 3.8) See <u>Barakat v. Life Insurance Co. of Virginia (In re Barakat)</u>, 99 F.3d 1520, 1526 (9th Cir. 1996) (legally created recourse debt cannot be separately classified from other unsecured claims absent legitimate business or economic justification); <u>Oxford Life Insurance Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage, Inc.)</u>, 166 B.R. 892, 897 (9th Cir. BAP 1994) (disallowing segregation of unsecured deficiency claims, on the basis that holders of deficiency claims had the right to make an 1111(b) election, from unsecured trade creditors' claims). The Plan also classifies the General Unsecured Claims separately from four separate classes of claims of holders of member rejection damages claims, creating artificial legal distinctions between and among such claims in order to obtain an impaired consenting class in violation of Ninth Circuit law. <u>Barakat</u>, 99 F.3d at 1525 (Quoting <u>Phoenix Mut. Life Ins. Co. v.Greystone III Joint Venture (In re Greystone III)</u>, 995 F.2d 1274, 1279 (5th Cir. 1991) which held that "one clear rule that emerges from otherwise muddled case law on §1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan.").

f. <u>Unfair Discrimination</u>. The Plan discriminates unfairly in violation of Code section 1129(b)(1), because it effectively pays many unsecured creditors <u>in full</u> (Plan §§ 3.5, 3.8, 6.17) while providing disparate treatment to unsecured Prepetition Lender deficiency claims (potentially giving Prepetition Lenders only a fractional recovery on their deficiency claims). See <u>Tucson Self-Storage</u>, 166 B.R. at 898 (disparate treatment of unsecured deficiency claims and trade creditor claims was unfair discrimination rendering plan unconfirmable).

g. <u>Improper Classification And Treatment of Convenience Class Claims</u>. Although Code section 1122(b) permits a convenience class of claims in an amount that is reasonable and necessary for administrative convenience, the Plan proposes a convenience class of claims allowed in the amount of $5,000 or less (or voluntarily reduced to such an amount). Such amount goes beyond what is

4

        reasonable and necessary for administrative convenience. See id. (separate classification of trade creditor claims, relatively few in number and very small in size in comparison to lender deficiency claim, is impermissible classification that cannot be justified for "administrative convenience").

    h.    <u>Violates "Best Interests of Creditors" Test</u>. The Plan violates Code section 1129(a)(7)(A)(ii) because it will <u>not</u> provide the Prepetition Lenders with at least as much as they would receive in a chapter 7 liquidation. See <u>In re Arnold</u>, 806 F.2d 937, 939 n.1 (9th Cir. 1986).

3.    <u>Inadequate Information</u>. The Court should deny approval of the Disclosure Statement because it fails to contain "adequate information" that would enable a party-in-interest to make an informed judgment about the Plan. 11 U.S.C. §1125(a), (b). See <u>In re Reilly</u>, 71 B.R. 132, 134 (Bankr. Mont. 1987) (identifying nineteen factors that form the basis for evaluating adequate disclosure, including, among others, a description of the available assets and their value, the accounting method utilized to produce financial information, valuations or projections relevant to creditors' decisions to accept or reject chapter 11 plan, and relationship of the debtor with affiliates). Specifically, the Disclosure Statement fails to include "adequate information" concerning:

    a.    <u>Blixseth And BGI Interests</u>. Edra Blixseth ("Blixseth") has testified that the Plan will involve contributions of property by her and/or her affiliates, in return for some sort of interest in the Reorganized Debtors. The Disclosure Statement fails to disclose such insider arrangements.

    b.    <u>Disposition of Settlement/Family Compound</u>. The Disclosure Statement fails to disclose information about the treatment of the Settlement/Family Compound property under the Plan.

    c.    <u>Management</u>. The Disclosure Statement simply fails to disclose material information concerning management -- and mismanagement -- of the Debtors and Reorganized Debtors, including without limitation, prepetition, postpetition and future management involvements of Discovery Land Company and CrossHarbor, and the terms of such management arrangements. Among other things, the Disclosure Statement fails to disclose that:

5

        (i) Edra Blixseth admittedly has engaged in a recent improper financial postpetition transfer of Debtor funds to her personal account; (ii) Edra Blixseth is dominated by CrossHarbor because she and her affiliates owe significant financial obligations to CrossHarbor, secured by Blixseth properties; and (iii) CrossHarbor and Discovery Land and Edra Blixseth entered into prepetition agreements for transfer of management and ownership control of the restructured Debtors to themselves.

d.    Bench Warrant For Edra Blixseth's Arrest. The Disclosure Statement is silent with respect to the issuance of a bench warrant (a copy of which is attached hereto as Exhibit C) for the arrest of the Debtors' control person, Edra Blixseth, for failure to appear in Court – a fact that may weigh heavily on the Court's considerations regarding the management of the Debtors and its considerations regarding the integrity and merits of the Plan, the Disclosure Statement and related Debtor initiatives.

e.    Property Valuation Facts. Despite the central importance and need for proper valuation of the Debtors' various properties and their going concern value, valuation of property to be contributed to the Plan by insiders, valuation of the Debtors' properties for purposes of liquidation analysis, valuation of Retained Actions, Reserved Actions, Transferred Actions and similar actions to be preserved or released under the Plan, the Disclosure Statement is devoid of information concerning such values or the factual basis for such values, all of which is needed to determine the merits of the Plan and by creditors deciding to vote to accept or reject the Plan. The failure to provide such valuations and the basis for such valuations means that the Disclosure Statement cannot be approved. See In re Reilly, 71 B.R. 135.

f.    No Valuation of Prepetition Lender Claims, Liens And Collateral. The Disclosure Statement is defective because it does not provide any valuation of the claims, liens and collateral of the Prepetition Lenders, much less the basis of such valuations, when such fundamental information is needed for approval of the Disclosure Statement. For example, the Debtors fail to disclose the Court's finding that the $310 million value of the Prepetition Lenders' collateral by the Prepetition Lenders' appraiser (excluding assets such as the Warren Miller Lodge on which the Prepetition Lenders do not have liens) was at the low-end, going concern value of such collateral. See Memorandum of Decision, dated December 17, 2008.

g.    Definitive Agreement. The Disclosure Statement contains no description of the Definitive Agreement with CrossHarbor that

6

      apparently is the basis for the Plan, much less the amount of the "Equity Purchase Price" and "Purchase Price" specified in the Plan and Definitive Agreement. Moreover, the Debtors fail to disclose the source and sufficiency of the CrossHarbor capital that will ultimately fund the Plan if CrossHarbor is the Acquirer under the Definitive Agreement. The Definitive Agreement was not filed by the February 13, 2009 filing deadline for the Disclosure Statement nor by the Debtors' self-imposed deadline in the Disclosure Statement of February 23, 2009. Rather, the Debtors filed it on the date hereof (literally hours ago). Accordingly, the Prepetition Lenders reserve the right to file objections thereto at any time at or before the confirmation hearing.

h.     <u>Identification of Properties</u>. The Disclosure Statement fails to identify and describe with particularity, and assign values to, the various particular properties that will become property of the Reorganized Debtors, the properties that will be contributed to the Reorganized Debtors, and the properties that will be assigned to the Liquidation Trusts. Moreover, the Disclosure Statement fails to disclose with particularity the valuation methodologies employed to determine the liquidation values referenced in the Plan.

i.     <u>Asset Values For Distribution Purposes And Revesting</u>. The Disclosure Statement fails to adequately disclose the value of the assets that will be distributed pursuant to the Plan, including those assets to be transferred to the Liquidating Trusts as well as those re-vesting in the Reorganized Debtors, thereby denying impaired creditors the ability to make an informed decision whether to accept or reject the Plan.

j.     <u>Methodologies Employed In Calculating Financial Information</u>. The Disclosure Statement fails to adequately disclose accounting methods and key assumptions forming the basis of the Liquidation Analysis. <u>See</u> <u>Reilly</u>, 71 B.R. 132.

k.     <u>Values and Facts Regarding Plan Funding And Plan Distributions</u>. The Disclosure Statement fails to adequately disclose information regarding plan funding and projected distributions to creditors, including adequate information on the Definitive Note Terms and any quantification of expected creditor recoveries such as distributions to General Unsecured Creditors.

l.     <u>Improper Proposed Valuation Of Prepetition Lenders' Secured Claims</u>. The Disclosure Statement fails to disclose that the Plan unlawfully seeks to value the Prepetition Lenders' liens, claims and collateral at the proposed confirmation hearing (<u>see</u> Plan §§ 3.3

7

and 6.15), and that the failure to include such information is grounds for denying approval of the Disclosure Statement. See Reilly, 71 B.R. at 135 (disclosure statement hearing is appropriate time for determining value of secured claim); see also Mont. LBR 3012-1 (allowed secured claim amount "may not be litigated at a confirmation hearing").

m. Section 1111(b) Election. The Disclosure Statement fails to disclose the implications for feasibility of the Plan and creditors in the event the Prepetition Lenders determine to exercise their rights under section 1111(b) of the Code.

n. Intercompany Claims. The Disclosure Statement fails to disclose the status and proposed discretionary treatment of Intercompany Claims, and how such treatment will impact creditor recoveries.

o. $310,000,000 Appraisal. The Disclosure Statement erroneously states that the Appraisal "shows a value of all of the Debtors' real property not just the value of the collateral securing the [Prepetition Lenders' claims]" and that such Appraisal is "likely . . . unreliable." In fact, the Appraisal expressly excludes the Warren Miller Lodge, and thus, does not show a value for all of the Debtors' real property. See Cushman & Wakefield Appraisal of Real Property, dated Nov. 10, 2008, pp.53, 65. The Debtors also fail to disclose the basis for their bald conclusion that the Appraisal is likely unreliable.

p. Refusal To Extend Exclusivity. The Disclosure Statement fails to disclose that the Court denied the Debtors' motion for extension of the exclusive periods and that competing plans may, therefore, be filed on or after March 10, 2009.

q. Prepetition Lender Liens On Future Memberships. The Disclosure Statement erroneously states that the Prepetition Lenders' liens do not cover future club memberships. See D.S. at 18, 2(a). Future club memberships are, in fact, covered by the Prepetition Lenders' liens.

r. Insider Relationships And Transactions. The Disclosure Statement fails to disclose adequate information concerning numerous insider prepetition transactions, arrangements and agreements involving the Debtors and their properties - - including facts that weigh heavily in a creditor's making an informed vote on the Plan and in determining whether the plan is fatally flawed for failure to satisfy the "good faith" requirement of Code section 1129(a)(3).

8

 s. <u>Avoidance Actions Against CrossHarbor</u>. The Disclosure Statement fails to disclose adequate information concerning potential avoidance actions against Debtors' insider, CrossHarbor (and as noted above, proposes to improperly release CrossHarbor from such actions), relating to (i) CrossHarbor's acquisition of the 31 Golf Course Lots[3] (which the Plan contemplates will be re-contributed <u>by</u> CrossHarbor, <u>effectively to CrossHarbor</u> as the successful bidder for the equity in the Reorganized Debtors), (ii) the Sunrise Ridge Development, and (iii) other properties and liens acquired by CrossHarbor and its affiliates from the Debtors.

 t. <u>No Investigation Of Avoidance Actions</u>. The Debtors admittedly have not investigated Avoidance Actions (D.S. at 26). Accordingly, the Disclosure Statement fails to provide adequate information about such causes of action that may exist and be material to creditor recoveries under the Plan, and why the Debtors have failed to investigate such claims.

 u. <u>Adequate Protection Administrative Claims</u>. The Disclosure Statement fails to disclose that the Prepetition Lenders have rights to assert superpriority claims under Code section 507(b) for the failure of adequate protection, the projected amount of such claims, how such claims will be paid under the Plan and how they will impact the confirmability of the Plan and creditor recoveries thereunder <u>See</u> <u>Kurth Ranch,</u> 7 Mont. B.R. at 213 (Finding Plan unconfirmable and disclosure statement insufficient where the secured claims were undervalued and payment of a significant administrative claim (if allowed) "would further drive another spike in the coffin in which the Plan is reposed.").

 v. <u>Farcheville Chateau</u>. The Disclosure Statement fails to disclose adequate, transparent information about the status and value of the Farcheville Chateau property, the status and value of the legal entity that owns such property, and CrossHarbor's past, present and contemplated pursuit of liens and/or ownership interests in respect of such property and/or the entity that owns it.

 w. <u>"Pool of Funds" Disparate Treatment</u>. The Disclosure Statement fails to disclose adequate information about the proposed treatment of Class 4 General Unsecured Claims. The Disclosure Statement provides for utterly disparate and arbitrary treatment of unsecured claims through the use of a "pool of funds" to be used allegedly to

---

[3] The Debtors do acknowledge, however, that the deemed value of the CrossHarbor 31 Golf Course Lots is not the fair market value of such lots.

9

"preserve the reputation and standing of the [Yellowstone] Club in the community." (D.S. at 6).

x. <u>Class 6 Periodic Distributions</u>. The Disclosure Statement fails to disclose adequate information about how, when and on what basis alleged "periodic distributions from the Liquidation Trusts" will be made on account of putative Intercompany Claims.

y. <u>Marketing Arrangements</u>. The Disclosure Statement fails to disclose adequate information about the contractual and compensation arrangements between and among the Debtors, CrossHarbor and Charlie Callendar (the Debtors' Vice President of Sales and Marketing) and his affiliates concerning their current, historical and future sales efforts for the benefit of CrossHarbor and its Yellowstone Club properties.

z. <u>Contribution of LLC Memberships To Liquidation Trusts</u>. The Disclosure Statement does not adequately disclose the value (if any) of limited liability membership interests in certain of the Debtors that are proposed to be contributed to Liquidation Trusts under the Plan, or how such treatment of such membership interests satisfies the Code's confirmation requirements for reorganization of such Debtors.

aa. <u>Misleading Tax Disclosure</u>. The Disclosure Statement contains misleading tax disclosures, including disclosures regarding the tax consequences of the Plan to holders of claims who are accrual basis taxpayers that purchased such claims at a discount to the face amount of the claims and experienced a gain without previously claiming a bad debt loss (See D.S. at 44, 47, 48).

4. Given that the Disclosure Statement lacks adequate information within the meaning of section 1125 of the Bankruptcy Code, and the Plan is patently unconfirmable, the Court should deny approval of the Disclosure Statement. <u>See</u> <u>In re Copy Crafters Quickprint, Inc.</u>, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) (noting that approval of a disclosure statement should be withheld if it is apparent that the plan will not comply with Code § 1129 and if it does not contain adequate information).

WHEREFORE, the Agent respectfully requests entry of an order (i) denying approval of the Disclosure Statement; and (ii) granting the Agent and Prepetition Lenders such other and further relief as is just and proper.

Dated: February 25, 2009
      Billings, Montana

    /s/ Charles W. Hingle
Charles W. Hingle
Shane P. Coleman
HOLLAND & HART LLP
401 North 31st Street
Suite 1500
Billings, Montana 59101
(406) 252-2166 (Phone)
(406) 252-1669 (Fax)
chingle@hollandhart.com (Email)
spcoleman@hollandhart.com (Email)

Of Counsel:
Evan R. Levy (NY No. 2720068)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

- and –

Mark S. Chehi (Del. Bar No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Credit Suisse,
sole administrative agent and collateral agent

4459154_1.DOC

11