CHARLES W. HINGLE (#1947)
SHANE P. COLEMAN (#3417)
HOLLAND & HART LLP
401 NORTH 31st STREET, SUITE 1500
BILLINGS, MONTANA 59101
(406) 252-2166 (PHONE)
(406) 252-1669 (FAX)
chingle@hollandhart.com (EMAIL)
spcoleman@hollandhart.com (EMAIL)

MARK S. CHEHI
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899
(302) 651-3000 (PHONE)
mchehi@skadden.com (EMAIL)
*Admitted Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFF, CREDIT SUISSE**
**Additional Counsel listed on signature page**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Case No. 08-61570-11-RBK |
| **YELLOWSTONE MOUNTAIN CLUB, LLC**, *et al.*, | Jointly Administered with 08-61571, 08-61572, and 08-61573 |
| Debtors. | Chapter 11 |
| **CREDIT SUISSE, CAYMAN ISLANDS BRANCH**, | Adversary No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS, YELLOWSTONE MOUNTAIN CLUB, LLC, YELLOWSTONE DEVELOPMENT, LLC, BIG SKY RIDGE, LLC, and YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC**, | **(DECLARATORY JUDGMENT)** |
| Defendants. | |

Credit Suisse, Cayman Islands Branch on behalf of itself and as agent for the Prepetition Lenders (as defined below) ("Credit Suisse"), by and through its undersigned counsel, herein states its causes of action and claims for relief against The Official Committee of Unsecured Creditors (the "Committee"), Yellowstone Mountain Club, LLC ("YMC"), and its debtor affiliates, Yellowstone Development, LLC ("YD"), Big Sky Ridge, LLC ("BSR") and Yellowstone Club Construction Company, LLC (collectively, the "Debtors"), as follows:

### INTRODUCTION

1. By this action, Credit Suisse seeks an expedited declaratory judgment confirming the validity of the secured claim of Credit Suisse and other Prepetition Lenders against the Debtors in the principal amount of $309,021,984.26, together with interest, fees and expenses thereon, arising out of a $375 million pre-petition secured loan (the "Prepetition Loan") to YMC, YD, and BSR under a Credit Agreement dated as September 30, 2005 (the "Loan Agreement") from Credit Suisse, as administrative agent and collateral agent, for a group of lenders (the "Prepetition Lenders").

2. On February 11, 2009, the Committee moved for leave to file a Complaint against Credit Suisse to disallow and subordinate Credit Suisse's claim. According to the Committee's proposed Complaint, Timothy and Edra Blixseth (the "Blixseths") were the owners of the Debtors, controlled the Debtors, and caused the Debtors to enter into the Loan Agreement and grant liens on nearly all of the Debtors' assets to enable the Blixseths to use the Prepetition Loan proceeds for purposes unrelated to the Debtors' business. The proposed Complaint charges, among other things, that (i) the Loan Agreement was a fraudulent transfer, (ii) entering into the Loan Agreement constituted a breach of the Blixseths' fiduciary duties to the Debtors and their creditors, and (iii) Credit Suisse knowingly aided and abetted the Blixseths'

breach of their fiduciary duties; and seeks relief disallowing the claims of Credit Suisse and the other Prepetition Lenders, equitably subordinating these claims, and avoiding the liens, security interests, and mortgages granted in connection with the Loan Agreement.

        3.      There is no merit to the Committee's proposed Complaint. The proposed fraudulent transfer claims, on their face, are fatally flawed because the Debtors were solvent at the time the Prepetition Loan was made, and remained solvent thereafter. The Debtors received unqualified audit opinions, thus attesting to their solvency at the time the Prepetition Loan was made and thereafter. Indeed, this Court's Memorandum of Decision granting a priming lien in connection with the Debtors' application for post-petition financing expressly adopted the "credible expert" appraisal establishing that collateral securing the Prepetition Loan was worth <u>a minimum</u> of $310 million – and excluding from this figure the value of 107 excluded dwelling unit rights, and existing neighborhoods with completed plats and infrastructure, including Andesite Ridge, Miller Point Duplexes, Mountain Chalets and the Warren Miller Lodge. (Memorandum of Decision, dated December 17, 2008, at 8; [Docket No. 139 at 53; 65]). It bears emphasis that the real estate market was significantly better in 2005 when the loans were originally issued. Moreover, as recently as March 2008, the Debtors were party to a sale contract to sell most of their assets for $470 million. [Docket No. 341, Exh. 12 at 16; Exh. K]. As the Debtors were solvent at the time the Prepetition Loan was made and remained solvent thereafter, the Committee's fraudulent transfer claim cannot stand. Furthermore, as the directors of solvent entities owe no fiduciary duties to creditors, the Committee's claims against Credit Suisse for aiding and abetting breaches of fiduciary duty to creditors falls of its own weight.

        4.      As set forth below, the remaining claims for aiding and abetting breaches of fiduciary duties are equally baseless -- and the Committee knows it. Indeed, while the Committee alleges that "[t]he Blixseths represented themselves and their personal interests in the

loan negotiations [and] [t]he Yellowstone Club was unrepresented in those negotiations" (Proposed Compl. ¶9), in truth the Chairman of the Committee and his law firm represented the Debtors as special Montana counsel in the very Loan Agreement which the Committee now claims was unlawful; and the Committee Chairman's firm issued a legal opinion that the Debtors' entering into the Loan Agreement "<u>does</u> <u>not</u> . . . <u>violate</u> <u>any</u> <u>laws</u>", and that the liens granted to Credit Suisse and the Prepetition Lenders, once properly recorded, were valid and enforceable liens. (A copy of this legal opinion is annexed hereto as Exhibit A). The Opinion was personally signed by the Committee Chairman himself. (Exh. A at 6).

5. As set forth below, the Committee Chairman was right -- the Loan Agreement was a valid transaction, and the liens granted to Credit Suisse and the Prepetition Lenders were, and are, valid and enforceable in all respects.

6. Despite the utter absence of merit to the Committee's proposed Complaint, the Debtors have proposed a Plan of Reorganization which is premised largely upon the unfounded assumption that the Committee's position is correct, and therefore unilaterally strips Credit Suisse of its full secured claim. Moreover, the Debtors seek confirmation of their Plan no later than April 30, 2009. Given the foregoing, the Committee clearly has no incentive to pursue the unfounded allegations in their proposed Complaint, since the proposed Plan of Reorganization, if confirmed, may moot the Committee's need to expeditiously attempt to prove its charges. Therefore, Credit Suisse brings this declaratory judgment action to vindicate its status and the status of the other Prepetition Lenders as secured creditors with an allowed secured claim in the principal amount of $309,021,984.26, plus interest, fees and expenses, and seeks such declaratory judgment on an expedited basis to ensure they receive fair and just treatment in the ultimate plan of reorganization confirmed by the Court.

**PARTIES**

7. Plaintiff Credit Suisse is a financial services company and secured creditor of YMC, YD and BSR.

8. Defendant the Committee is the statutory representative of the unsecured creditors of the Debtors, pursuant to section 1102 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et. seq. (the "Bankruptcy Code"). The Committee has sought leave to file a Complaint against Credit Suisse, on behalf of and for the benefit of the Debtors, their estates, and the creditors thereof, captioned <u>Official Committee of Unsecured Creditors v. Credit Suisse, Cayman Islands Branch, and John Does 1-15</u>, in connection with case number 08-61570-11-RBK (the "Unfiled Complaint").

9. BGI is an Oregon Corporation and the majority owner of YMC and YD.

10. The Debtors filed a petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et. seq., as amended, and continue to operate their business and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

11. YCW is a Washington State limited liability company. It was majority owned by Timothy Blixseth until August of 2008, when it was turned over to Ms. Blixseth. An involuntary petition for relief under section 303 of the Bankruptcy Code is pending against YCW.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and as a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

14. This action is brought as an adversary proceeding in <u>In re Yellowstone Mountain Club, LLC, et al.</u>, chapter 11 cases, procedurally consolidated under case number 08-

61570-11-RBK, currently pending in the United States Bankruptcy Court for the District of Montana.  This action is directly related to the Unfiled Complaint.

### GENERAL ALLEGATIONS

A. **Factual Background.**

**The Pre-Petition Loan Agreement**

15. Pursuant to the Loan Agreement, the Debtors entered into a $375 million credit facility with the Prepetition Lenders headed by Credit Suisse as Administrative Agent, Collateral Agent, Paying Agent, Sole Lead Arranger and Sole Bookrunner.  In conjunction with the Loan Agreement, the Debtors also: executed a Security Agreement, dated September 30, 2005, granting Credit Suisse and the Prepetition Lenders mortgages, security interests and liens on nearly all of the Debtors' properties; and executed and caused to be recorded a Mortgage, Security Agreement, Assignment of Rents and Leases, dated September 30, 2005, covering nearly all of the Debtor's properties (collectively, the "Security Documents").

16. There was nothing hidden or unusual about the Prepetition Loan.  The loan was similar to more than $140 Billion in commercial loans that were rated by Standard & Poor's rating service since 2000 that funded equity distributions or payments to business owners or the millions of home equity loans that are funded each year allowing homeowners to realize the value of their assets.  Nothing required Debtors to develop the Yellowstone Club without construction financing and nothing restricted them from realizing on the equity value they funded and created.

**The Post-Petition Financing Proceedings**

17. By motion dated November 10, 2008, the Debtors moved for an Order (the "DIP Motion") authorizing them to obtain post-petition financing from Credit Suisse, as administrative agent and collateral agent for a syndicate of lenders.  On November 13, 2008, the

Court entered an Interim Order Authorizing the Debtors to Obtain Post-Petition Financing (the "Interim Order").

18. Pursuant to the Interim Order, the Debtor irrevocably admitted, stipulated and agreed as follows with respect to their obligations and Credit Suisse's rights under the Loan Agreement:

(a) "As of the Petition Date, (i) the Debtors were truly and justly indebted and liable to (i) the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $307,000,000 in respect of [the Loan Agreement] plus, accrued and unpaid interest thereon . . ."

(b) "[T]he Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms . . ."

(c) "[N]o portion of the Prepetition Secured Obligations are subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;"

(d) "[T]he Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, . . ., against the Prepetition Agent, the Prepetition Lenders and their affiliates, . . . with respect to the Prepetition Secured Obligations," and

(e) "[T]he liens and security interests granted to the Prepetition Agent and the Prepetition Lenders . . . are (i) valid, binding, perfected, enforceable first priority liens on and security interests in the Prepetition Collateral, [and] (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy or applicable nonbankrupty law . . ."

(Interim Order at Docket No. 40, ¶ 4)

19. Under the terms of the Interim Order, the aforesaid stipulations and admissions are "binding upon the Debtors in all circumstances." (Id. at 20, ¶ 18).

**The Committee's Moves to File a Complaint Against Credit Suisse**

20. On February 11, 2009, the Committee filed a Notice of Claim Against Credit Suisse, Objection to Claim of Credit Suisse and Motion for Authorization to File Complaint Against Credit Suisse, which attached as an exhibit the "Unfiled Complaint." The

Unfiled Complaint challenges the validity of the Loan Agreement and the liens granted pursuant to the Security Documents, and purports to assert claims against Credit Suisse for Aiding and Abetting Breach of Fiduciary Duty, Avoidance of Fraudulent Transfer, Disallowance of Claims, Subordination of Claims, Turnover, and Declaratory Judgments.

21. The gravamen of the Unfiled Complaint is that the Blixseths, as the owners and controlling persons of the Debtors, caused the Debtors to enter into the Loan Agreement for the purpose of borrowing $375 million and using the loan proceeds for purposes unrelated to the Debtors. According to the Unfiled Complaint, by granting liens in the Debtors' properties as security for a loan whose proceeds would be used for purposes unrelated to the Debtors, the transaction was a breach of the Blixseths' fiduciary duties, and Credit Suisse's participation in the transaction aided and abetted this breach of fiduciary duty. The Unfiled Complaint also alleges that the loan transaction was a fraudulent transfer under the Montana Uniform Fraudulent Transfer Act. MONT. CODE ANN. § 31-2-339(a) (2007). In addition, the Unfiled Complaint seeks to recharacterize the loan as only a $67 million loan to the Debtors which has been repaid, and the remaining $208.8 million loan as an unsecured personal loan to the Blixseths.

22. On February 13, 2009, the Debtors filed a Joint Plan of Reorganization (the "Proposed Plan"). The Proposed Plan is premised entirely on the theory that the unsubstantiated assertions in the Unfiled Complaint are valid. As such, the Proposed Plan provides for treatment of Credit Suisse and the Prepetition Lenders as unsecured creditors rather than secured creditors with respect to $208.8 million owed under the Loan Agreement.

## FIRST CLAIM FOR RELIEF

*[Declaratory Judgment that the Committee is Barred From Pursuing the Unfiled Complaint Under the Doctrine of In Pari Delicto]*

23. Credit Suisse repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

24. The gravamen of the Unfiled Compliant is that the Blixseths acted wrongfully and in breach of their fiduciary duties by causing the Debtors to enter into the Loan Agreement and, in conjunction therewith, causing the Debtors to grant liens, security interests, and mortgages to Credit Suisse on virtually all of the Debtors' properties.

25. In addition, according to the Unfiled Complaint, Timothy and/or Edra Blixseth dominated and controlled the Debtors at all relevant times, and was the controlling shareholder and sole decision maker of the Debtors. Specifically, the Committee alleges that "Timothy Blixseth . . . was the controlling shareholder of BGI and . . . YCW through August of 2008. As such, he controlled BGI, YMC, YD and YCW" (Unfiled Comp. ¶ 21); and "Edra Blixseth . . . was Chief Operating Officer of YMC until she resigned in late 2005 or early 2006 . . . in August, 2008, Ms. Blixseth became the majority owner of BGI and YCW. As such, she now controls BGI, YMC, YD and YCW." (Id. ¶¶22-23). In addition, this Court has explicitly determined that "Blixseth, through an entity known as Blixseth Group or BGI, owns the Debtors." (Memorandum and Decision, dated November 26, 2008, at 3); see also Memorandum and Decision, dated December 17, 2008 at 4 ("Blixseth . . . owns and is the managing member of the Debtors"); In re Yellowstone Mountain Club, et al., 08-61570-11, 8 n.2 (Bankr. D. Mont. Feb. 18, 2009) ("Edra Blixseth is the President and 100% equity owner of BLX Group, Inc." which "owns substantially all the interests in the Debtors").

26.    As a result of the foregoing allegations and findings of the Court, the conduct and knowledge of the Blixseths, as the controlling persons and sole decision makers of the Debtors, is imputed to the Debtors as a matter of law.  Therefore, the Debtors are barred by the doctrine of <u>in pari delicto</u> from asserting claims against third parties for aiding and abetting the Blixseths' alleged breach of their fiduciary duty.

27.    In addition, as a matter of law, anyone who stands in the shoes of the Debtors is subject to the same defenses, obligations and infirmities that can be asserted against the Debtors.  As the Committee has asserted the claims in the Unfiled Complaint "not for itself, but on behalf of and for the benefit of the Debtors . . .," it is subject to all defenses, obligations and infirmities that can be asserted against the Debtors.  Accordingly, the Committee is barred from asserting any claims on behalf of, or for the benefit of the Debtors, that the Debtors themselves would be barred from asserting.

28.    Credit Suisse is entitled to a declaratory judgment that the Committee is barred from pursuing the Unfiled Complaint under the doctrine of <u>in pari delicto.</u>

**SECOND CLAIM FOR RELIEF**

*[Declaratory Judgment that the Loan Agreement and Liens Granted in Connection Therewith were Not Fraudulent Transfers]*

29.    Credit Suisse repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

30.    Pursuant to the Montana Uniform Fraudulent Transfer Act, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's property at a fair valuation and the debtor is generally not paying his debts as they become due."  MONT. CODE ANN. § 31-2-321 (2007).

31. In addition, pursuant to the Montana Uniform Fraudulent Transfer Act, the party seeking to rescind a transaction must show that the transferee "was engaged . . . in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "intended to incur . . . debts beyond his ability to pay as they became due." MONT. CODE ANN. § 31-2-333 (2007).

32. The Debtors were solvent at the time the Prepetition Loan was made and at all relevant times thereafter, based on their receipt of unqualified audit opinions attesting to their status as going concerns.

33. In its Memorandum of Decision, dated December 17, 2008, the Court, after reviewing the evidentiary record, including "credible expert witness" testimony, accepted an expert appraisal of $310 million as the low-end, going concern value of the Debtors' assets securing Credit Suisse's lien as of November 10, 2008 for purposes of the Decision. In re Yellowstone Mountain Club, et al., 08-61570-11, at 8 (Bankr. D. Mont. Dec. 17, 2008). Notably, this appraisal did not include the value of numerous assets, including Andesite Ridge, Miller Point Duplexes, Mountain Chalets, and the Warren Miller Lodge. [Docket No. 139, at 53; 65]. Furthermore, as the real estate market had significantly deteriorated since the Prepetition Loan was originally made, these same assets were worth even more than this appraised amount at the time the parties entered into the Prepetition Loan.

34. This same credible expert witness also prepared a Total Net Proceeds evaluation of the Debtors' properties securing Credit Suisse's liens as of August 26, 2008. This evaluation estimated the total net proceeds, a figure that included the "aggregate sum of master development net cash flows" and excluded certain items, to be $1.114 billion dollars, more than sufficient cash flows to pay debts as they matured. In re Yellowstone Mountain Club, et al., 08-61570-11, at 8 (Bankr. D. Mont. Dec. 17, 2008). In this connection, following the closing, the

Debtors sold more than 124 residential lots, generating hundreds of millions of dollars in income. [Docket No. 341, Exh. 12].

35. Further, the Court noted that the Appraisal did "not appear" to include the Promissory Notes in an amount of roughly $275 million "owed to the Debtors by BGI, Blixseth and/or Timothy Blixseth." In re Yellowstone Mountain Club, et al., 08-61570-11, at 21 (Bankr. D. Mont. Dec. 17, 2008).

36. As late as March 2008, the Debtors were party to a sale contract to sell most of their assets for $470 million. [Docket No. 341, Exh. 12 at 16; Exh. K].

37. Based on the foregoing, the Debtors were solvent at the time of, and remained solvent for at least some three years after, entering into the Loan Agreement.

38. Credit Suisse is entitled to a declaratory judgment that the Loan Agreement and the granting of liens in connection therewith, were not fraudulent transfers, and that the liens, security interests and mortgages granted under the Loan Agreement and the Security Documents are not subject to avoidance and are valid and enforceable against the Debtors and their estates.

## THIRD CLAIM FOR RELIEF

*[Declaratory Judgment for Allowance of Claims]*

39. Credit Suisse repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

40. Credit Suisse is entitled to a declaratory judgment allowing the claims of Credit Suisse and the Prepetition Lenders in the amount of $309,021,984.26, plus interest, fees, and expenses, and such claims are not subject to equitable subordination.

**PRAYER FOR RELIEF**

WHEREFORE, Credit Suisse prays for the following judgments against the Committee:

1. That the Court declare that Credit Suisse has an allowed secured claim is in the principal amount of $309,021,984.26, plus interest, fees and expenses;

2. That the Court declare that the Loan Agreement and the granting of liens in connection therewith were not fraudulent transfers;

3. That the Committee is barred from pursuing the Unfiled Complaint by the doctrine of in pari delicto; and

4. That the liens, security interests, and mortgages of Credit Suisse and the Prepetition Lenders are valid and enforceable and not subject to avoidance or equitable subordination.

Dated: Billings, Montana
February 25, 2009

    /s/ Charles W. Hingle
Charles W. Hingle
Shane P. Coleman
HOLLAND & HART LLP
401 North 31st Street
Suite 1500
Billings, Montana 59101
(406) 252-2166 (Phone)
chingle@hollandhart.com (Email)
spcoleman@hollandhart.com (Email)

Of Counsel:
Evan R. Levy (NY No. 2720068)
George A. Zimmerman (NY No. _____ , *pro hac vice* pending)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

   – and –

Mark S. Chehi (Del. Bar No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER
  &amp; FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Credit Suisse,
sole administrative agent and collateral agent

4459526_1.DOC