**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re | |
| **YELLOWSTONE MOUNTAIN CLUB, LLC**, | Case No. **08-61570-11** |
| Debtor. | Jointly Administered with: |
| In re | |
| **YELLOWSTONE DEVELOPMENT, LLC**, | Case No. **08-61571-11** |
| Debtor. | |
| In re | |
| **BIG SKY RIDGE, LLC**, | Case No. **08-61572-11** |
| Debtor. | |
| In re | |
| **YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC**, | Case No. **08-61573-11** |
| Debtor. | |

*O R D E R*

At Butte in said District this 6th day of March, 2009.

1

In accordance with the Memorandum entered in the above-referenced Chapter 11 bankruptcies on this same date,

IT IS ORDERED that

1.    Credit Suisse's Objection and Request for Reconsideration filed February 20, 2009, at docket entry no. 415, is granted in part and denied in part; and CBRE shall vigorously market not only the equity interests in the Debtors, but also all the Debtors' assets, which assets could conceivably be sold with a prospective bidder's written agreement to assume the Membership Contracts as outlined in Debtors' Schedule of assumed and modified Membership Agreements;

2.    CrossHarbor Capital Partners, LLC's ("CrossHarbor") Motion for Protective Order filed February 27, 2009, at docket entry no. 468; is denied; and

3.    The Debtors' Motion to Vacate Order Denying Debtors' Motion for Bidding and Solicitation Procedures or in the Alternative, Renewed Motion for Bidding and Solicitation Procedures filed February 24, 2009, at docket entry no. 427, is granted, and the following bidding and solicitation procedures are hereby adopted by the Court, but may be subject to future modification in order to promote a more robust bidding and sale procedure that may better protect the rights of parties-in-interest:

1.    **Confidentiality Agreement**.  Upon execution of a confidentiality agreement reasonably acceptable to Debtors, any qualified party that wishes to conduct due diligence may be granted access to all material information that has been or will be provided to any potential bidder.

2.    **Engagement of CBRE**.  CBRE shall be engaged by Debtors to undertake a robust marketing  process in accordance with these bid procedures and any subsequent amendment to these bid procedures that the Court may implement by future order.

3.  **Alternative Bid Deadline**.  All Alternative Bids must be submitted not later than 12:00 p.m. (MST) on the tenth day prior to the Confirmation Hearing (the "Alternative Bid Deadline") to:

> Yellowstone Club
> 71713 Highway 111
> Rancho Mirage, CA 92270

with copies to:

> Ron Greenspan
> c/o FTI Consulting, Inc.
> 633 West Fifth Street, 16th Floor
> Los Angeles, CA 90071
>
> James A. Patten
> Patten Peterman Bekkedahl & Green
> 2817 Second Avenue North, Suite 300
> Billings Mt 59101
>
> Lawrence R. Ream
> Bullivant Houser Bailey PC
> 1601 Fifth Avenue, Suite 2300
> Seattle, Washington  98101-1618

4.  **Distribution of Alternative Bid.**  Upon receipt of an Alternative Bid, the Debtors shall immediately distribute a copy of such Alternative Bid to counsel of record for (I) the Purchaser, (ii) Credit Suisse, (iii) the Official Unsecured Creditors Committee (the "Committee"), (iv) the Ad-Hoc Members' Committee (the "Ad-Hoc Committee"), and (v) the Ad-Hoc Class "B" Equity Interest Holders' Group (the "B" Committee) (collectively, with the Committee and the Ad Hoc Committee, the "Committees"); provided, that each such party shall take reasonably satisfactory precautions to ensure that such information does not come into the possession of any person who is interested in the acquisition of the Equity Interests, or be subject to sanctions by the Court for violation of the bidding procedures and this Order, upon a party-in-interest moving for such relief.

5.  **Qualified Alternative Bid**.  An Alternative Bid will qualify for consideration only if the Alternative Bid is a "Qualified Alternative Bid."  To be a Qualified Alternative Bid, the Alternative Bid shall either be submitted by Purchaser or must:

    a.  Identify the proponent of the Alternative Bid (the "Alternate Bidder") and

an officer or authorized person who is authorized to appear and act on behalf of and bind Alternative Bidder in connection with all proceedings related to such bid;

b.  Propose in writing a transaction with the cash component of the purchase price greater than or equal to the sum of (x) the cash component of the purchase price set forth in the Plan, plus (y) $3,500,000.00 (the "Initial Overbid Amount"), and in the case of any subsequent Qualified Alternative Bids, $1,000,000.00 over the immediately preceding Qualified Alternative Bid (the "Subsequent Overbid Amount"), and in all cases the debt component of the purchase price cannot exceed 70% of the purchase price up to a purchase price of $150 million, and thereafter, the debt component of the purchase price shall not exceed the amount of One Hundred Five Million Dollars ($105 Million).  The debt component shall be secured by the Project and be evidenced by an interest only note having an interest rate of LIBOR plus 500 basis points with an initial five year term with two one-year extensions at a fee of 50 basis points of the then outstanding indebtedness, having a lot release price of $500,000 and with the right to cause the holder thereof to subordinate to third-party construction financing (without payment of release prices) for up to 100 lots in the aggregate at any point in time;

c.  Consist of an agreement in the form of the Agreement to be entered into with Purchaser to effectuate the purchase contemplated by the Plan (the "CH Definitive Agreement"), marked to show changes thereto that is on terms and conditions no less favorable to the Debtors than the terms and conditions contained in the CH Definitive Agreement and provides for sufficient working capital in an amount not materially less than the amount to be provided by the Purchaser in light of the capital structure proposed by the bidder;

d.  Not be subject to any contingencies related to due diligence, financing or further approval, such as by senior management or board of directors—the only contingency being approval by April 30, 2009 of a Plan of Reorganization substantially similar to that filed by the Debtor or as such plan might be modified with the reasonable consent of such bidder;

e.  Not be subject to termination by such bidder except on the same terms as the CH Definitive Agreement and state such Alternative Bid is irrevocable until the effective date of the Plan and, if it is not the winning bid,  may be accepted nonetheless for a period of thirty (30) days following the effective date if the winning bidder fails timely to close;

f.    Be accompanied by (I) a cash deposit or letter of credit in the amount of $5,000,000, refundable only in the event that the prospective bidder is not a bidder required to close under these Bidding Procedures;

g.    Not be subject to any conditions precedent other than the approval of such Alternative Bid by the Bankruptcy Court in connection with the confirmation of a plan incorporating such alternative Agreement;

h.    Contain such financial and other information that will allow the Debtors after consultation with the Committees to make a reasonable determination as to the Alternative Bidder's financial wherewithal to consummate the transactions contemplated by the Alternative Bid, including to provide adequate assurance of such bidder's ability to perform in the future under any assumed executory contract, and to show that the Plan is feasible;

I.    Identify with particularity each and every executory contract agreement and unexpired lease, the assumption and assignment of which is a condition to closing;

j.    Not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

k.    Fully discloses the identity of each entity that will be bidding for the equity interests or otherwise participating in connection with such bid and the complete terms of any such participation;

l.    If the Alternative Bid is submitted by Credit Suisse as administrative agent for the existing secured lenders there shall be no requirement of a cash deposit or letter of credit (although it shall be subject to a comparable $5,000,000 forfeiture if it should be the prevailing bidder and not close);

m.    If an Alternative Bid is submitted by Credit Suisse and if, prior to the Auction, the Bankruptcy Court has determined that Credit Suisse has the right to credit bid or setoff, then it shall have the right to pay its bid in the form of cash equal to the cash component of the Alternative Bid less a setoff for the portion of the cash component that would be payable to Credit Suisse under the Plan, plus a note substantially similar to the promissory note in the amount equal to the Liquidating Trust's share, on the Definitive Note Terms as provided above.  Any right of Credit Suisse to credit bid or setoff will not affect its obligation to provide working capital not materially less than the amount to be provided by the Purchaser in light of the capital structure proposed by the Credit Suisse Alternative Bid.

n.      Contain evidence that the bidder has received equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the equity interests and establish the working capital, which evidence is reasonably satisfactory to the Debtors after consultation with the Committees.

6.      **Auction, Bidding Increments and Bids Remaining Open**.  If the Debtors do not receive any Qualified Alternative Bids, the Debtors will report the same to the Bankruptcy Court and will proceed with the Motion for approval of the plan based on the CH Definitive Agreement.  If the Debtors receive a Qualified Alternative Bid:

a.      The Debtors shall conduct an open auction (the "Auction") at a location to be provided to all Auction Parties (as hereinafter defined), at least five business days in advance, on the business day five days immediately prior to the Confirmation Hearing, beginning at 10:00 a.m. local time or such later time or other place as the Debtors shall notify the Purchaser and all bidders who have submitted Qualified Alternative Bids (Purchaser and such bidders collectively, "Qualified Bidders").  Only the Debtors, representatives of Credit Suisse, the Committees, the U.S. Trustee, the Purchaser, and any other Qualified Bidders, together with their respective legal counsel and financial advisors, shall be entitled to attend the Auction, and only the Qualified Bidders shall be entitled to make any additional bids ("Subsequent Bids") in increments of the Subsequent Overbid Amount at the Auction.  All Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Bid will be fully disclosed to all other bidders throughout the entire Auction.  The Debtors may announce at the Auction additional procedural rules that they determine, in consultation with the Committees, are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent alternative bids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

b.      As a condition of participating in the Auction, each Qualified Bidder shall certify prior to the commencement of the Auction that (I) its representatives attending the auction have the full power and authority to act on behalf of and legally bind the bidder to any bids made at the auction and (ii) any bid made shall constitute a binding and legally enforceable contract of the bidder to timely close a purchase of 100% of the Debtors' equity   at the price bid in the event an order is entered approving a plan based upon such bid.

c.  At least two business days prior to the Auction, the Debtors shall provide to all Qualified Bidders copies of all other Qualified Alternative Bids.  In addition, the Debtors will inform the Purchaser and each other Qualified Bidder who has expressed its intent to participate in the Auction of the identity of all Qualified Bidders that may participate in the Auction.

d.  At the Auction, bidding shall begin with the Qualified Alternative Bid that the Debtors, in consultation with the Committees, believes to be the highest and best pending offer, and continue in increments of the Subsequent Overbid Amount in one or more rounds of bidding and shall conclude after each Qualified Bidder has had the opportunity to but has declined to submit an additional Subsequent Bid.  For the purpose of evaluating which bid is the highest and best bid, the value of a bid shall be determined by the Debtors, in consultation with the Committees, after considering all relevant factors, including the following: (I) the net consideration payable to the Debtors, after giving effect to any Termination Fee that may be payable to Purchaser under the Bidding Procedures Order; (ii) the contracts to be assumed under the bid; (iii) the adequate assurance of future performance to non-debtor parties under the bid; (iv) the debt to equity ratio of the Reorganized Debtor under the bid; (v) the waiver of any claims against the Debtors; (vi) the commitments regarding future employment of employees under the bid;  and (vii) the feasibility of the Plan if the bid  were accepted.  At the conclusion of the bidding, the Debtors, in consultation with the Committees, shall announce their determination as to the bidder submitting the highest and best bid, which bid shall be submitted to the Bankruptcy Court for approval at the Confirmation Hearing.  Debtor will also consider bids that include the sale of other assets owned by Debtor, including the Chateau Farcheville and St. Andrew's assets, and will consider whether any such bid would likely produce greater value for the Debtor than the sale of the Project and the separate, subsequent sale of such other assets.  The Purchaser shall be deemed a party-in-interest with standing to appear and be heard in connection with any motions, hearings, or other proceedings relating to the CH Definitive Agreement and any Alternative Bid or Subsequent Bid. That standing, however, shall not entitle the Purchaser to propose any Subsequent Bid at any such hearing.

e.  The Purchaser shall be entitled to a termination fee (the "Termination Fee") in the amount of (a) $2,000,000 (being 2% of Purchaser's acquisition price of $100 Million) plus (b) all out of pocket expenses incurred by CrossHarbor or Purchaser subsequent to November 10, 2008 in pursuing the acquisition of the Debtors' equity interests but not to exceed the sum of $1,000,000 in the aggregate, in the event (I) the Bankruptcy Court

approves a sale of 100% of the Debtors' equity to an entity other than the Purchaser, and (ii) the Purchaser remained at all times through and including seven (7) business days immediately following such Bankruptcy Court approval, ready, willing and able to consummate the CH Definitive Agreement.

       f.      The bidding at the Auction will be transcribed.

7.      The "benchmark" set out in the CrossHarbor term sheet for its debtor-in-possession financing approved by this Court on December 17, 2008 [Docket No. 182] ("Final Order"), fixed a plan confirmation deadline of March 31, 2009, and an end of the exclusivity period if a plan is not filed by February 13, 2009; CrossHarbor has consented to the extension of the March 31, 2009, plan confirmation deadline until April 30, 2009, and the deadline is so extended and the Final Order is so modified.

8.      Nothing in this Order is intended to effect a substantive consolidation of the Estates, affect the allocation of proceeds amongst the Estates, or affect the rights or interests of the parties to these bankruptcies except as is set forth herein or required to effectuate the intents and purposes of this Order.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana