CHARLES W. HINGLE (#1947)
SHANE P. COLEMAN (#3417)
HOLLAND & HART LLP
401 NORTH 31st STREET, SUITE 1500
BILLINGS, MONTANA 59101
(406) 252-2166 (PHONE)
(406) 252-1669 (FACSIMILE)
chingle@hollandhart.com (EMAIL)
spcoleman@hollandhart.com (EMAIL)

EVAN R. LEVY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 FOUR TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 735-3000 (PHONE)
elevy@skadden.com (EMAIL)
*Admitted Pro Hac Vice*
   - and –

MARK S. CHEHI
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899
(302) 651-3000 (PHONE)
mchehi@skadden.com (EMAIL)
*Admitted Pro Hac Vice*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Chapter 11 |
| Yellowstone Mountain Club, et al., | Case No. 08-61570-11<br>Jointly Administered |
| Debtors. | |

**MOTION OF PREPETITION LENDERS FOR ENTRY OF ORDER
AUTHORIZING (I) MODIFIED BIDDING PROCEDURES, (II) CREDIT
BIDDING AND (III) EXAMINER TO EVALUATE AND REPORT TO THE
<u>COURT ON QUALIFIED ALTERNATIVE BIDS</u>; AND NOTICE**

Credit Suisse, as administrative agent and collateral agent ("Credit Suisse" or, the "Agent") for the prepetition lenders (the "Prepetition Lenders") under that certain Credit Agreement, dated as of September 30, 2005 (the "Prepetition Credit Agreement"), hereby moves (the "Motion") for entry of an order authorizing (i) modified bidding procedures, (ii) credit bidding, and (iii) an examiner to evaluate and report to the court on qualified alternative bids, as follows:

## Background

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought are 11 U.S.C. §105(a) and 363.

3. On November 10, 2008 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Code"). An official committee of unsecured creditors has been appointed in these cases (the "Committee").

4. The Debtors continue to operate their businesses and properties as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. However, the United States Trustee has filed a pending motion seeking the appointment of a chapter 11 trustee.

5. An examiner has been ordered by the Court, but has not been appointed and the scope of such examiner's duties has not been set.

## Preliminary Statement

6. On March 6, 2009, the Court authorized certain bidding procedures in these cases (the "Current Procedures" or "Curr. P. at __") with an order [Dkt. No. 535]

(the "Prior Order')[1] and Memorandum of Decision of the same date [Dkt. No. 534] (hereafter, Mem. Dec. at "__").

7. When authorizing the Current Procedures, the Court expressed concerns about certain terms of the Current Procedures (Mem. Dec. at 8) - - and general concerns including that "CrossHarbor will serve as stalking horse, and if CrossHarbor is not the successful bidder, CrossHarbor will be entitled to a $2.0 million breakup or termination fee, plus actual expenses up to $1.0 million." (Id. at 6)

8. Given the concerns the Court expressed about the Current Procedures and CrossHarbor's prepetition and postpetition involvements with the Debtors and Edra Blixseth, its status as a "stalking horse," its "attempt to circumvent" the Court's prior discovery orders, and the need to "closely scrutinize the transactions between the Debtors and CrossHarbor" (Mem. Dec. at 5-8), the Court authorized the Current Procedures with a clear statement that the Court "<u>is open to amending certain provisions of said procedures if and when a party-in-interest proposes alternative language that will both better promote robust bidding of the Debtors' assets and protect any rights that Credit Suisse may have as determined either by agreement of the parties or subsequent order of this Court</u>." (Mem. Dec. at 8.) (emphasis added).

9. Apparently, the Court believes that no party in interest has proposed alternative procedures.[2] However, the Prepetition Lenders did propose alternative "fair

---

[1] The Current Procedures were approved in connection with the Court's consideration of the Debtors' Motion To Vacate Order Denying Debtors' Motion For Bidding And Solicitation Procedures Or In The Alternative Renewed Motion For Bidding And Solicitation Procedures (the "Renewed Bid Motion") [Dkt. No. 427].

[2] When authorizing the Current Procedures, the Court stated:

Notwithstanding its concerns, the Court finds it better, at this juncture, to approve bid procedures that begin forming the general structure of the Debtors' sale. The Debtors have proposed bidding and

bidding procedures" with their objections to the Debtors' motion seeking approval of the Current Procedures. See Ex. D to Credit Suisse's Objection to Debtor's Motion for Bidding and Solicitation Procedures or in the Alternative Renewed Motion for Bidding and Solicitation Procedures [Dkt. No. 485]; see also Highland Capital Management, L.P.'s Opposition and Joinder [Dkt. No. 488]. Indeed, the Debtors' Chief Restructuring Officer Ronald Greenspan testified about alternative terms for bidding procedures requested by Credit Suisse that he and CrossHarbor had rejected. (3/4/09 Hr'g Tr. (Greenspan) at 203-13).

10. In any event, consistent with the Court's view that alternative bidding procedures are desirable and may be proposed, the Prepetition Lenders hereby propose and seek authorization of the improved bidding procedures set forth as Exhibit A hereto (the "Modified Procedures" or "Mod.P. at __"), including (i) authorization of the Prepetition Lenders' rights to credit bid and (ii) an examiner to evaluate and report to the court on qualified alternative bids to eliminate any actual or appearance of impropriety in connection with the bidding process.

11. The Court should enter an order approving the proposed Modified Procedures attached hereto as Exhibit A, in order to promote robust bidding, enhance and maximize the value of the Debtors' estate and properties and recoveries to all creditors and other parties in interest, vindicate the credit bidding rights of Credit Suisse and the

---

> solicitation procedures that provide general structure by establishing an initial bid, overbids and the like. That is why the Court has determined that it is appropriate to approve Debtors' bidding and solicitation procedures at this time, particularly as not one objecting party offered a single alternative to the Debtors' revised bidding and solicitation procedures.

Mem. Dec. at 8 (emphases added).

Prepetition Lenders under section 363(k) of the Code, and address concerns expressed by the Court in its Memorandum Decision. (Mem. Dec. at 7-8.)

### Infirmities Of The Current Procedures

12. The Court identified concerns when approving the Current Procedures, and has indicated that insider relationships in this case raise, at a minimum, potential for appearances of impropriety. See In re Biderman Indus. U.S.A., 203 B.R. 547, 549 (Bankr. S.D.N.Y. 1997) ("conduct of bankruptcy proceedings not only should be right but must seem right").

13. The Modified Procedures address such concerns, including the following infirmities of the Current Procedures:

- The Current Procedures Limit Bidding to Only Equity Interests. The Current Procedures require that to be a "Qualified Alternative Bid," a bid must propose acquisition of the equity of the Debtors as reorganized under the Plan and as contemplated by CrossHarbor's proposal under the Definitive Agreement. As such, the Current Procedures are utterly inconsistent with the Court's ruling that it "wants to see a vigorous marketing of not only the equity interest in the Debtors, but also the Debtors' assets". (Mem. Dec. at 8.)

  *The Modified Procedures invite any and all Alternative Bids.*

- The Current Procedures Limit the Capital Structure of Bids. Subparagraph 5.b of the Current Procedures limits the capital structure of bids. The Current Procedures requires that to be a "Qualified Alternative Bid," a bid must propose a transaction that includes a so-called "debt component of the purchase price" that cannot exceed $105 million ("70% of the purchase price up to $150 million"). Such arbitrary limitation on the "debt component" and related terms of the Current Procedures will chill competitive bidding and alternative bidding and purchase price structures.

  *The Modified Procedures invite any and all capital structures to be proposed.*

- The Current Bidding Procedures Limit the Legal Structure of Bids. Subparagraph 5.c of the Current Procedures requires all bids to conform to the legal structure of the CH Definitive Agreement.

  *The Modified Procedures invite any and all legal structures to be proposed.*

4

- The Current Procedures Restrict Credit Bidding. Subparagraphs 5.l and 5.m of the Current Procedures imposes restrictions on credit bidding by Credit Suisse and the Prepetition Lenders.

  *The Modified Procedures permit any and all credit bidding permitted by the Bankruptcy Code.*

- The Current Procedures Empower Insider Interests To Determine Outcome Of Bidding. Subparagraph 6.d of the Current Procedures provide that "[a]t the conclusion of the bidding, the Debtors, in consultation with the Committees, shall announce their determination as to the bidder submitting the highest and best bid." This permits improper control (or the appearance of improper control) by conflicted insiders of the outcome of the marketing and bidding process, because (i) the Debtors continue to be controlled by Edra Blixseth who is dominated by CrossHarbor, (ii) the Debtors continue to be managed by Discovery Land Company which has worked hand in hand with CrossHarbor since early 2008 to obtain ownership and control over the Yellowstone Club and (iii) the Ad Hoc Committee of Members and the Official Committee of Unsecured Creditors both represent Yellowstone Club members whom CrossHarbor admittedly has invited and offered to participate financially in CrossHarbor's proposed transaction.[3]

  *The Modified Procedures provide that an impartial Examiner will oversee, evaluate and report to the Court on the bidding process and highest and best bids.*

- The Current Procedures Propose Unreasonably Short Marketing Period. Paragraph 7 of the Current Procedures sets April 30, 2009 as the deadline for confirmation of the Plan, and paragraph 1 sets the Alternative Bid Deadline as April 20, 2009, the date ten (10) days prior to the Confirmation Hearing.

  *Because the Debtors' CRO testified that CrossHarbor will make debtor-in-possession financing available until May 21, 2009, the Modified Procedures extend the Alternative Bid Deadline to May 11, 2009.*

- The Current Procedures Provide an Improper Break-up Fee. Subparagraph 6.e of the Current Procedures provides a "stalking horse" Termination Fee in the amount of $2,000,000 plus an Expense Reimbursement up to $1,000,000 to CrossHarbor. Such payments are improper, inequitable and unnecessary where CrossHarbor is an insider, where it required the Debtors to propose a Plan and bidding process

---

[3] The Debtors argue that consultation with the Official Committee of Unsecured Creditors and the Ad Hoc Members Group sanitizes the appearance of impropriety created from the insider control of the bidding process. These two groups, however, are dominated by members of the Yellowstone Club. Recently Sam Byrne, CrossHarbor's principal, publicly announced that CrossHarbor is offering Yellowstone Club members financial participations in the CrossHarbor proposal. See Ex. C hereto (copy of "Exclusive Interview: Sam Byrne on the Future of the Yellowstone Club," March 9, 2009, NewWest.net). Such actions only further the spider web of actual and potential conflicts that must be addressed to provide credibility to the bidding process.

limited to a sale of the equity that CrossHarbor seeks and where the purchase price CrossHarbor has proposed is less than 25% of the $470 million purchase price it previously was willing to pay for the Yellowstone Club.

*The Modified Procedures eliminate the inequitable and bid-chilling Termination Fee and Expense Reimbursement for CrossHarbor.*[4]

### The Proposed Modified Bidding Procedures

14. The Court should order the Modified Procedures set forth on Exhibit A hereto. The Modified Procedures will promote a robust sale and bidding process, maximize the value of the Debtors' estates and properties for all parties in interest, protect the integrity of these chapter 11 cases, and safeguard the rights of all creditors, including the Prepetition Lenders.

15. The Modified Procedures include the following:

- Engagement of CBRE For Marketing Of Debtors' Assets, Not Just Equity. CB Richard Ellis, Inc. ("CBRE") will be engaged by the Debtors to undertake a robust and comprehensive marketing effort designed and intended to encourage and obtain alternative bids (each an "Alternative Bid") for the acquisition or sale of any or all of the land, buildings and improvements and other business assets, properties and property rights of the Debtors, for the sale of equity interests in the Debtors as they may be reorganized pursuant to an Alternative Bid or otherwise. CBRE's robust marketing effort shall include, without limitation, marketing for a sale of equity interests in the reorganized Debtors as contemplated and proposed by the Definitive Agreement between CrossHarbor and the Debtors and their proposed plan of reorganization filed with the Court, in addition to marketing for any other alternative acquisition, sale or other investment or reorganization proposals and bids for the land, buildings and improvements and other business assets, properties and property rights owned by the Debtors, or for equity interests in the reorganized Debtors, that may be proposed by any Alternative Bid.[5]

---

[4] CrossHarbor should not receive any Termination Fee (a break-up fee) given its insider status, self-dealing, and position of influence and control over the Debtors starting even before these chapter 11 cases were commenced. See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 657-58 (S.D.N.Y. 1992) (break-up fee should only be approved where it is the product of arm's length negotiations not tainted by self-dealing, and safeguarded by the scrutiny of disinterested directors); In re 995 Fifth Ave. Assoc., 96 B.R. 24 (Bankr. S.D.N.Y. 1989) (disapproving insider-biased bidding procedures and directing examiner with enhanced duties to ensure fair sale process).

[5] Such an expanded CBRE marketing process will encourage bids for either assets or equity of the reorganized Debtors - - without limiting bids to the Plan structure contemplated by the Definitive

- Extended Alternative Bid Deadline. To ensure a robust and thorough sales process, the Alternative Bid Deadline will be fixed as May 11, 2009

- Appointment of Examiner and Designation of Duties. The Modified Procedures provide that, for the purpose of evaluating which bid is the highest and best bid, the value of a bid shall be determined by an Examiner appointed by the Bankruptcy Court, after considering all relevant factors, including the following: (i) the net consideration payable to the Debtors; (ii) the contracts, agreements and leases to be assumed and rejected under the bid; (iii) the adequate assurance of future performance to non-debtor parties under the bid; (iv) the commitments regarding future employment of employees under the bid; and (v) the feasibility of the Plan if the bid were accepted. At the conclusion of the bidding, the Examiner appointed by the Bankruptcy Court, shall announce its determination as to the bidder submitting the highest and best bid, which bid shall be submitted to the Bankruptcy Court for approval at the Confirmation Hearing. The Debtors and the Examiner appointed by the Bankruptcy Court will also consider bids that include the sale of other assets owned by Debtors, including the Chateau Farcheville and St. Andrew's assets, and will consider whether any such bid would likely produce greater value for the Debtors than the sale of the Project and the separate, subsequent sale of such other assets.[6]

- Qualified Alternative Bids. The Modified Procedures do not contain the restrictive, bid-chilling terms of the Current Procedures that would restrict the substance and form of competitive bids (and the structure of transactions they might propose). Instead, the Modified Procedures encourage all parties in interest to propose any and all Alternative Bids.

- Preservation Of Credit Suisse's Credit Bid Rights. The Modified Procedures provide that if the Alternative Bid is submitted by Credit Suisse, as administrative and collateral agent for the Prepetition Lenders under the Prepetition Credit Agreement, such Alternative Bid for collateral securing the claims of Credit Suisse and the Prepetition Lenders under the Prepetition Credit Agreement shall be deemed to be and treated as a credit bid under section 363(k) of the Bankruptcy Code, and Credit Suisse and the Prepetition Lenders shall have the

---

Agreement with CrossHarbor - - and without undermining or precluding the Prepetition Lenders' credit bidding rights under 11 U.S.C. §363(k).

[6] The Court should approve the involvement and powers of an Examiner contemplated by the Modified Procedures, because by order dated February 13, 2009 [Dkt. No. 374] the Bankruptcy Court authorized the appointment of an Examiner. With this Motion and the proposed Modified Procedures, the Prepetition Lenders request that the Court authorize such Examiner to oversee the bidding process and report to the Court as set forth in the Modified Procedures, in order to ensure "complete transparency so that no questions arise that the sale of Debtors' assets was not fair and equitable and that the Debtors did not do everything in their power to maximize the return for the estate." (Mem. Dec. at 7).

7

right to make an Alternative Bid for any assets that are not collateral under the Prepetition Credit Agreement.[7]

- Elimination of Termination Fee and Expense Reimbursement. The Modified Procedures eliminate the insider Termination Fee And Expense Reimbursement terms of the Current Procedures that are inequitable and improper because they were designed to benefit insiders and to chill rather than encourage competitive bidding.

- Initial Bidding. The Modified Procedures encourage robust initial bidding by guaranteeing only the five highest bidders will be invited to the final Auction.

- Provision of Needed Information to Bidders. The Modified Procedures provide that adequate information be provided to all bidders by requiring the Debtors to distribute to all bidders all anticipated Plan Supplements at least 10 days prior to the final Auction.

16. By authorizing the Modified Procedures, an Examiner to oversee and report to the Court on the bidding and auction process, and the Prepetition Lenders' credit bidding rights, the Court will ensure that the bidding, auction and reorganization process in these cases "will both better promote robust bidding of the Debtors' assets and protect any rights that Credit Suisse may have." (Mem. Dec. at 8). Moreover, the Modified Procedures will resolve the Court's concerns regarding the Current Procedures. (Id.) Additionally, the Modified Procedures should have the effect of reducing the appearance of impropriety posed by CrossHarbor's involvement in and influence over the bidding procedures and marketing process to date. See Memorandum Decision, dated February 18, 2009 at 9 [Dkt. No. 395].

---

[7] In short, the Modified Procedures clarify that the rights of Credit Suisse and the Prepetition Lenders under 11 U.S.C. § 363(k) to credit bid will not be disenfranchised or avoided by the Debtors' putative Plan and Current Procedures that contemplate and propose only a sale of the equity of the reorganized Debtors. See John Hancock Mutual Life Ins. Co. v. Cal. Hancock, Inc., 88 B.R. 226 (9th Cir. BAP 1988) (finding plan unconfirmable where secured creditor denied credit bid rights); In re Monarch Beach Venture, Ltd, 166 B.R. 428, 433 (C.D. Cal. 1993) (holding that "right to credit bid may not be taken from the creditor").

17. For the foregoing reasons, the relief sought herein will provide the Court and all parties in interest with some assurance that the contemplated sale-bidding-auction process will be conducted in a manner that does not merely advance a long-standing plan to transition ownership of the Yellowstone Club to CrossHarbor and Discovery Land Company. The Modified Procedures will permit fair bidding and opportunity to maximize the value of the Debtors' estates and properties for the benefit of all creditors, including the Prepetition Lenders.

WHEREFORE, the Agent respectfully requests that the Court enter an order authorizing (i) the Modified Procedures annexed as Exhibit A hereto, (ii) an Examiner to oversee, evaluate and report to the Court on the bidding and auction process and competing bids and (iii) credit bidding by Credit Suisse and the Prepetition Lenders; and granting the Agent and Prepetition Lenders such other and further relief as is just and proper.

Dated: Billings, Montana
March 16, 2009

                                                  */s/* Shane P. Coleman
                                                  Charles W. Hingle
                                                  Shane P. Coleman
                                                  HOLLAND & HART LLP
                                                  401 North 31st Street
                                                  Suite 1500
                                                  Billings, Montana 59101
                                                  (406) 252-2166 (Phone)
                                                  chingle@hollandhart.com (Email)
                                                  spcoleman@hollandhart.com (Email)

Of Counsel:
Evan R. Levy (NY No. 2720068)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

  - and –

Mark S. Chehi (Del. Bar No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Credit Suisse,
sole administrative agent and collateral agent

## NOTICE TO DEBTORS AND INTERESTED PARTIES

**If you object to the motion, you must file a written responsive pleading and request a hearing within ten (10) days of the date of the motion. The objecting party shall schedule the hearing and shall include in the caption of the responsive pleading the date, time, and location of the hearing by inserting in the caption the following:**

**NOTICE OF HEARING**
**Date:** _____
**Time:** _____
**Location:** _____

**If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.**

4474276_1.DOC