## Modified Bidding Procedures

1. **Confidentiality Agreement**.  Upon execution of a confidentiality agreement reasonably acceptable to the Debtors and the potential bidder, any party that wishes to conduct due diligence shall be granted access to all material information that has been or will be provided to any potential bidder.

2. **Engagement of CBRE**. CB Richard Ellis, Inc. ("CBRE") shall be engaged by the Debtors to undertake a robust and comprehensive marketing effort designed and intended to encourage and obtain alternative bids (each an "Alternative Bid") for the acquisition or sale of any or all of the land, buildings and improvements and other business assets, properties and property rights of the Debtors, for the sale of equity interests in the Debtors as they may be reorganized pursuant to an Alternative Bid or otherwise.  CBRE's robust marketing effort shall include, without limitation, marketing for a sale of equity interests in the reorganized Debtors as contemplated and proposed by the Definitive Agreement between CrossHarbor and the Debtors and their proposed plan of reorganization filed with the Court, in addition to marketing for any other alternative acquisition, sale or other investment or reorganization proposals and bids for the land, buildings and improvements and other business assets, properties and property rights owned by the Debtors, or for equity interests in the reorganized Debtors, that may be proposed by any Alternative Bid.

3. **Alternative Bid Deadline**.  All Alternative Bids must be submitted not later than 12:00 p.m. (MST) on  May 11, 2009.  Alternative Bids should be submitted to:

    Yellowstone Club
    71713 Highway 111
    Rancho Mirage, CA 92270

    with copies to:

    Ron Greenspan
    c/o FTI Consulting, Inc.
    633 West Fifth Street, 16th Floor
    Los Angeles, CA 90071

    James A. Patten
    Patten Peterman Bekkedahl & Green
    2817 Second Avenue North, Suite 300
    Billings Mt 59101

    Lawrence R. Ream
    Bullivant Houser Bailey PC
    1601 Fifth Avenue, Suite 2300
    Seattle, Washington  98101-1618

4. **Distribution of Alternative Bid**. Upon receipt of an Alternative Bid, the Debtors shall immediately distribute a copy of such Alternative Bid to counsel of record for (i) Cross Harbor, (ii) Credit Suisse, (iii) the Official Unsecured Creditors Committee (the "Committee"), (iv) the Ad-Hoc Members' Committee (the "Ad-Hoc Committee"), (v) the Ad-Hoc Class "B" Equity Interest Holders' Group (the "B Committee") (collectively, with the Committee and the Ad Hoc Committee, the "Committees"), and (vi) the Examiner appointed by the Bankruptcy Court.

5. **Qualified Alternative Bid**. An Alternative Bid will qualify for consideration only if the Alternative Bid is a "Qualified Alternative Bid." To be a Qualified Alternative Bid, the Alternative Bid must:

   (a) Identify the proponent of the Alternative Bid (the "Alternative Bidder") and an officer or authorized person who is authorized to appear and act on behalf of and bind the Alternative Bidder in connection with all proceedings related to such bid;

   (b) Propose in writing a transaction for all or a portion of land, building and improvements owned by the Debtors or for all of the equity interests in one or more of the Debtors;

   (c) Provide for a cash component of the purchase price greater than or equal to $33,500,000.00, and in the case of any subsequent Qualified Alternative Bids, $1,000,000.00 over the immediately preceding Qualified Alternative Bid (the "Subsequent Overbid Amount");

   (d) Consist of an agreement marked to show changes from the form of definitive agreement attached hereto as Exhibit A (a "Definitive Agreement") and provide for sufficient working capital for the continued operations of Debtors contemplated in such Definitive Agreement;

   (e) Not be subject to any contingencies for due diligence, financing or approval by senior management or board of directors of the Alternative Bidder;

   (f) Not be subject to termination by the Alternative Bidder following the acceptance of the Alternative Bidder of an invitation to participate in the Auction and, if it is not the winning bid at the Auction, may be accepted nonetheless for a period of thirty (30) days following the Auction if the winning bidder at the Auction fails timely to close;

   (g) Require payment of a cash deposit or letter of credit in the amount of $5,000,000 upon acceptance of an invitation to participate in the Auction, refundable only in the event that the Alternative Bidder's Definitive Agreement is not approved by the Bankruptcy Court following the Auction or the Debtors fail to close under such Definitive Agreement pursuant to the terms thereof within thirty (30) days following the Auction;

   (h) Not be subject to any conditions precedent other than as set forth in the Alternative Bidder's Definitive Agreement and the approval of such Alternative Bid by the

2

Bankruptcy Court in connection with the confirmation of a plan incorporating such Definitive Agreement;

(i) Contain such financial and other information that will allow the Examiner appointed by the Bankruptcy Court to make a reasonable determination as to the Alternative Bidder's financial wherewithall to consummate the transactions contemplated by the Alternative Bid, including to provide adequate assurance of the Alternative Bidder's ability to perform in the future under any assumed executory contract identified in the Alternative Bidder's Definitive Agreement, and to show that the Plan is feasible;

(j) Identify with particularity each and every executory contract, agreement and unexpired lease, the assumption and assignment or rejection and termination of which is a condition to closing;

(k) Not request or entitle any bidder, including Cross Harbor and its affiliates and the Alternative Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

(l) Fully disclose the identity of each entity that will be participating in such Alternative Bid and the complete terms of any such participation;

(m) If the Alternative Bid is submitted by Credit Suisse, as administrative and collateral agent ("Credit Suisse") for the prepetition lenders (the "Prepetition Lenders") under that certain Credit Agreement, dated as of September 30, 2005 (the "Prepetition Credit Agreement"), such Alternative Bid for collateral securing the claims of Credit Suisse and the Prepetition Lenders under the Prepetition Credit Agreement shall be deemed to be and treated as a credit bid under section 363(k) of the Bankruptcy Code, and Credit Suisse and the Prepetition Lenders shall have the right to make an Alternative Bid for any assets that are not collateral under the Prepetition Credit Agreement. Any right of Credit Suisse and the Prepetition Lenders to submit an Alternative Bid, and its making of any such Alternative Bid, shall not limit the rights of Credit Suisse and the Prepetition Lenders as secured creditors under the Bankruptcy Code; and

(n) Contain evidence that the bidder has received equity funding commitments or has financial resources readily available and sufficient in the aggregate to finance the Alternative Bid, which evidence is reasonably satisfactory to the Examiner appointed by the Bankruptcy Court.

6. **Auction, Bidding Increments and Bids Remaining Open**. If the Debtors do not receive any Qualified Alternative Bids, the Debtors will report the same to the Bankruptcy Court and will proceed with the Motion for approval of the plan based on the CrossHarbor Definitive Agreement, subject to the rights of secured creditors pursuant to the Bankruptcy Code. If the Debtors receive a Qualified Alternative Bid:

(a) The Debtors shall conduct an open auction (the "Auction") at a location to be provided to all Auction Parties (as hereinafter defined), at least ten (10) business days in advance, on the business day ten (10) business days immediately prior to the

3

Confirmation Hearing, beginning at 10:00 a.m. local time or such later time or other place as the Debtors shall notify the Auction Parties.

(b)     The Debtors shall provide all Auction Parties with copies of all anticipated Plan Supplements at least ten (10) business days prior to the Auction.

(c)     Only the (i) Debtors, (ii) representatives of Credit Suisse, (iii) representatives of the Committees, (iv) the U.S. Trustee, (v) Cross Harbor, (vi) the Examiner appointed by the Bankruptcy Court, (vii) the parties that the Examiner believes to have submitted the five highest and best Qualified Alternative Bids, (viii) any other party that submitted a Qualified Alternative Bid that has been identified by CBRE for participation in the Auction, together with each such parties respective legal counsel and financial advisors (the "Auction Parties"), shall be entitled to attend the Auction, and only the Auction Parties shall be entitled to make any additional bids ("Subsequent Bids") at the Auction. All Auction Parties shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other Auction Parties and that all material terms of each Bid will be fully disclosed to all Auction Parties throughout the entire Auction. The Examiner may announce at the Auction additional procedural rules that the Examiner determine are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent alternative bids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

(d)     As a condition of participating in the Auction, each Alternative Bidder invited to participate in the Auction shall certify prior to the commencement of the Auction that (i) its representatives attending the auction have the full power and authority to act on behalf of and legally bind the bidder to any bids made at the Auction and (ii) any bid made shall constitute a binding and legally enforceable contract of the bidder to timely close pursuant to such bidders' Definitive Agreement at the price bid in the event an order is entered approving a plan based upon such bid.

(e)     At least five (5) business days prior to the Auction, the Debtors shall provide to all Auction Parties copies of all Qualified Alternative Bids and the identify of all Auction Parties.

(f)     At the Auction, bidding shall begin with the Qualified Alternative Bid that the Examiner appointed by the Bankruptcy Court believes to be the highest and best pending offer, and continue in one or more rounds of bidding and shall conclude after each Auction Party has had the opportunity to but has declined to submit an additional Subsequent Bid. For the purpose of evaluating which bid is the highest and best bid, the value of a bid shall be determined by the Examiner appointed by the Bankruptcy Court, after considering all relevant factors, including the following: (i) the net consideration payable to the Debtors; (ii) the contracts, agreements and leases to be assumed and rejected under the bid; (iii) the adequate assurance of future performance to non-debtor parties under the bid; (iv) the commitments regarding future employment of employees under the bid; and (v) the feasibility of the Plan if the bid were accepted. At the conclusion of the bidding, the Examiner appointed by

4

the Bankruptcy Court, shall announce its determination as to the bidder submitting the highest and best bid, which bid shall be submitted to the Bankruptcy Court for approval at the Confirmation Hearing. Debtors and the Examiner appointed by the Bankruptcy Court will also consider bids that include the sale of other assets owned by Debtors, including the Chateau Farcheville and St. Andrew's assets, and will consider whether any such bid would likely produce greater value for the Debtors than the sale of the Project and the separate, subsequent sale of such other assets.

(g) The bidding at the Auction will be transcribed.

7. The "benchmark" set out in the CrossHarbor term sheet for its debtor-in-possession financing approved by this Court on December 17, 2008 [Docket No. 182] ("Final Order")_fixed a plan confirmation deadline of March 31, 2009, and an end of the exclusivity period if a plan is not filed by February 13, 2009; CrossHarbor has consented to the extension of the March 31, 2009 plan confirmation deadline until May 21, 2009 and the deadline is so extended and the Final Order is so modified.

5

8. Nothing in this Order is intended to effect a substantive consolidation of the Estates, affect the allocation of proceeds amongst the Estates, or affect the rights or interests of the parties to these bankruptcies except as is set forth herein or required to effectuate the intents and purposes of this Order.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

08-61570-RBK Doc#: 571-1 Filed: 03/16/09 Entered: 03/16/09 15:12:49 Page 6 of 6

1443504.2C-New York Server 7A - MSW