# Modified Bidding Procedures

1. **Confidentiality Agreement**. Upon execution of a confidentiality agreement reasonably acceptable to the Debtors and the potential bidder, any ~~qualified~~ party that wishes to conduct due diligence ~~may~~shall be granted access to all material information that has been or will be provided to any potential bidder.

2. **Engagement of CBRE**. ~~CBRE shall be engaged by Debtors to undertake a robust marketing process in accordance with these bid procedures and any subsequent amendment to these bid procedures that the Court may implement by future order.~~CB Richard Ellis, Inc. ("CBRE") shall be engaged by the Debtors to undertake a robust and comprehensive marketing effort designed and intended to encourage and obtain alternative bids (each an "Alternative Bid") for the acquisition or sale of any or all of the land, buildings and improvements and other business assets, properties and property rights of the Debtors, for the sale of equity interests in the Debtors as they may be reorganized pursuant to an Alternative Bid or otherwise. CBRE's robust marketing effort shall include, without limitation, marketing for a sale of equity interests in the reorganized Debtors as contemplated and proposed by the Definitive Agreement between CrossHarbor and the Debtors and their proposed plan of reorganization filed with the Court, in addition to marketing for any other alternative acquisition, sale or other investment or reorganization proposals and bids for the land, buildings and improvements and other business assets, properties and property rights owned by the Debtors, or for equity interests in the reorganized Debtors, that may be proposed by any Alternative Bid.

3. **Alternative Bid Deadline**. All Alternative Bids must be submitted not later than 12:00 p.m. (MST) on ~~the tenth day prior to the Confirmation Hearing (the "~~ May 11, 2009. Alternative ~~Bid Deadline")~~Bids should be submitted to:

Yellowstone Club

71713 Highway 111

Rancho Mirage, CA 92270

with copies to:

Ron Greenspan

c/o FTI Consulting, Inc.

633 West Fifth Street, 16th Floor

1 DeltaView comparison of pcdocs://nycsr07a/1443504/1 and pcdocs://nycsr07a/1443504/2c. Performed on 3/16/2009.

Los Angeles, CA 90071

James A. Patten

Patten Peterman Bekkedahl & Green

2817 Second Avenue North, Suite 300

Billings Mt 59101

Lawrence R. Ream

Bullivant Houser Bailey PC

1601 Fifth Avenue, Suite 2300

Seattle, Washington 98101-1618

4. **Distribution of Alternative Bid**. Upon receipt of an Alternative Bid, the Debtors shall immediately distribute a copy of such Alternative Bid to counsel of record for (i) ~~the Purchaser~~Cross Harbor, (ii) Credit Suisse, (iii) the Official Unsecured Creditors Committee (the ~~"~~“Committee~~"~~”), (iv) the Ad-Hoc Members~~'~~’ Committee (the ~~"~~“Ad-Hoc Committee~~"~~”), ~~and~~ (v) the Ad-Hoc Class ~~"~~“B~~"~~” Equity Interest Holders~~'~~’ Group (the ~~"~~“B~~"~~ Committee”) (collectively, with the Committee and the Ad- Hoc Committee, the ~~"~~“Committees~~"); provided, that each such party shall take reasonably satisfactory precautions to ensure that such information does not come into the possession of any person who is interested in the acquisition of the Equity Interests, or be subject to sanctions by the Court for violation of the bidding procedures and this Order, upon a party-in-interest moving for such relief~~”), and (vi) the Examiner appointed by the Bankruptcy Court.

5. **Qualified Alternative Bid**. An Alternative Bid will qualify for consideration only if the Alternative Bid is a ~~"~~“Qualified Alternative Bid.~~"~~” To be a Qualified Alternative Bid, the Alternative Bid ~~shall either be submitted by Purchaser or~~ must:

(a) Identify the proponent of the Alternative Bid (the ~~"~~“Alternative Bidder~~"~~”) and an officer or authorized person who is authorized to appear and act on behalf of and bind the Alternative Bidder in connection with all proceedings related to such bid;

(b) Propose in writing a transaction for all or a portion of land, building and improvements owned by the Debtors or for all of the equity interests in one or more of the Debtors;

(c) ~~(b) Propose in writing a transaction with the~~Provide for a cash component of the purchase price greater than or equal to ~~the sum of (x) the cash component of the purchase price set forth in the Plan, plus (y) $3,500,000.00 (the "Initial Overbid Amount"),~~$33,500,000.00, and in the case of any subsequent Qualified Alternative Bids, $1,000,000.00 over the immediately preceding Qualified Alternative Bid (the "Subsequent Overbid Amount")~~, and in all cases the debt component of the purchase price cannot exceed 70% of the purchase price up to a purchase price of $150 million, and thereafter, the debt component of the purchase price shall not exceed the amount of One Hundred Five Million Dollars ($105 Million). The debt component shall be secured by the Project and be evidenced by an interest only note having an interest rate of LIBOR plus 500 basis points with an initial five year term with two one-year extensions at a fee of 50 basis points of the then outstanding indebtedness, having a lot release price of $500,000 and with the right to cause the holder thereof to subordinate to third-party construction financing (without payment of release prices) for up to 100 lots in the aggregate at any point in time~~;

(d) ~~(c)~~ Consist of an agreement ~~in the form of the Agreement to be entered into with Purchaser to effectuate the purchase contemplated by the Plan (the "CH Definitive Agreement"), marked to show changes thereto that is on terms and conditions no less favorable to the Debtors than the terms and conditions contained in the CH~~ marked to show changes from the form of definitive agreement attached hereto as Exhibit A (a "Definitive Agreement") and provide~~s~~ for sufficient working capital ~~in an amount not materially less than the amount to be provided by the Purchaser in light of the capital structure proposed by the bidder~~for the continued operations of Debtors contemplated in such Definitive Agreement;

(e) ~~(d)~~ Not be subject to any contingencies ~~related to~~for due diligence, financing or ~~further~~ approval~~, such as~~ by senior management or board of directors~~—the only contingency being approval by April 30, 2009 of a Plan of Reorganization substantially similar to that filed by the Debtor or as such plan might be modified with the reasonable consent of such bidder~~ of the Alternative Bidder;

(f) ~~(e)~~ Not be subject to termination by ~~such bidder except on the same terms as the CH Definitive Agreement and state such Alternative Bid is irrevocable until the effective date of the Plan~~the Alternative Bidder following the acceptance of the Alternative Bidder of an invitation to participate in the Auction and, if it is not the winning bid at the Auction, may be accepted nonetheless for a period of thirty (30) days following the ~~effective date~~Auction if the winning bidder at the Auction fails timely to close;

(g) ~~(f) Be accompanied by (i)~~Require payment of a cash deposit or letter of credit in the amount of $~~5,000,000,~~5,000,000 upon acceptance of an invitation to participate in the Auction, refundable only in the event that the ~~prospective bidder is not a bidder required to close under these Bidding Procedures~~Alternative Bidder's Definitive

Agreement is not approved by the Bankruptcy Court following the Auction or the Debtors fail to close under such Definitive Agreement pursuant to the terms thereof within thirty (30) days following the Auction;

(h) (g) Not be subject to any conditions precedent other than as set forth in the Alternative Bidder's Definitive Agreement and the approval of such Alternative Bid by the Bankruptcy Court in connection with the confirmation of a plan incorporating such alternativeDefinitive Agreement;

(i) (h) Contain such financial and other information that will allow the Debtors after consultation with the CommitteesExaminer appointed by the Bankruptcy Court to make a reasonable determination as to the Alternative Bidder''s financial wherewithall to consummate the transactions contemplated by the Alternative Bid, including to provide adequate assurance of such bidder'the Alternative Bidder's ability to perform in the future under any assumed executory contract identified in the Alternative Bidder's Definitive Agreement, and to show that the Plan is feasible;

(j) (i) Identify with particularity each and every executory contract, agreement and unexpired lease, the assumption and assignment or rejection and termination of which is a condition to closing;

(k) (j) Not request or entitle the bidderany bidder, including Cross Harbor and its affiliates and the Alternative Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

(l) (k) Fully discloses the identity of each entity that will be bidding for the equity interests or otherwise participating in connection with such bidAlternative Bid and the complete terms of any such participation;

(l) If the Alternative Bid is submitted by Credit Suisse as administrative agent for the existing secured lenders there shall be no requirement of a cash deposit or letter of credit (although it shall be subject to a comparable $5,000,000 forfeiture if it should be the prevailing bidder and not close);

(m) If an Alternative Bid is submitted by Credit Suisse and if, prior to the Auction, the Bankruptcy Court has determined that Credit Suisse has the right to credit bid or setoff, then itthe Alternative Bid is submitted by Credit Suisse, as administrative and collateral agent ("Credit Suisse") for the prepetition lenders (the "Prepetition Lenders") under that certain Credit Agreement, dated as of September 30, 2005 (the "Prepetition Credit Agreement"), such Alternative Bid for collateral securing the claims of Credit Suisse and the Prepetition Lenders under the Prepetition Credit

 DeltaView comparison of pcdocs://nycsr07a/1443504/1 and pcdocs://nycsr07a/1443504/2c. Performed on 3/16/2009.

Agreement shall be deemed to be and treated as a credit bid under section 363(k) of the Bankruptcy Code, and Credit Suisse and the Prepetition Lenders shall have the right to ~~pay its bid in the form of cash equal to the cash component of the Alternative Bid less a setoff for the portion of the cash component that would be payable to Credit Suisse under the Plan, plus a note substantially similar to the promissory note in the amount equal to the Liquidating Trust's share, on the Definitive Note Terms as provided above~~make an Alternative Bid for any assets that are not collateral under the Prepetition Credit Agreement. Any right of Credit Suisse ~~to credit bid or setoff will not affect its obligation to provide working capital not materially less than the amount to be provided by the Purchaser in light of the capital structure proposed by the Credit Suisse Alternative Bid.~~and the Prepetition Lenders to submit an Alternative Bid, and its making of any such Alternative Bid, shall not limit the rights of Credit Suisse and the Prepetition Lenders as secured creditors under the Bankruptcy Code; and

(n) Contain evidence that the bidder has received equity funding commitments or has financial resources readily available and sufficient in the aggregate to finance the ~~purchase of the equity interests and establish the working capital~~Alternative Bid, which evidence is reasonably satisfactory to the ~~Debtors after consultation with the Committees~~Examiner appointed by the Bankruptcy Court.

6. **Auction, Bidding Increments and Bids Remaining Open**. If the Debtors do not receive any Qualified Alternative Bids, the Debtors will report the same to the Bankruptcy Court and will proceed with the Motion for approval of the plan based on the ~~CH~~CrossHarbor Definitive Agreement, subject to the rights of secured creditors pursuant to the Bankruptcy Code. If the Debtors receive a Qualified Alternative Bid:

(a) The Debtors shall conduct an open auction (the "Auction") at a location to be provided to all Auction Parties (as hereinafter defined), at least ten (10) business days in advance, on the business day ten (10) business days immediately prior to the Confirmation Hearing, beginning at 10:00 a.m. local time or such later time or other place as the Debtors shall notify the Auction Parties.

(b) The Debtors shall provide all Auction Parties with copies of all anticipated Plan Supplements at least ten (10) business days prior to the Auction.

(c) ~~(a) The Debtors shall conduct an open auction (the "Auction") at a location to be provided to all Auction Parties (as hereinafter defined), at least five business days in advance, on the business day five days immediately prior to the Confirmation Hearing, beginning at 10:00 a.m. local time or such later time or other place as the Debtors shall notify the Purchaser and all bidders who have submitted Qualified Alternative Bids (Purchaser and such bidders collectively, "Qualified Bidders").~~ Only the (i) Debtors, (ii) representatives of Credit Suisse, (iii) representatives of the

Committees,~~ the U.S. Trustee, the Purchaser, and any other Qualified Bidders, together with their~~ (iv) the U.S. Trustee, (v) Cross Harbor, (vi) the Examiner appointed by the Bankruptcy Court, (vii) the parties that the Examiner believes to have submitted the five highest and best Qualified Alternative Bids, (viii) any other party that submitted a Qualified Alternative Bid that has been identified by CBRE for participation in the Auction, together with each such parties respective legal counsel and financial advisors (the "Auction Parties"), shall be entitled to attend the Auction, and only the ~~Qualified Bidders~~Auction Parties shall be entitled to make any additional bids (~~"~~"Subsequent Bids~~") in increments of the Subsequent Overbid Amount~~") at the Auction. All ~~Qualified Bidders~~Auction Parties shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other ~~bidders~~Auction Parties and that all material terms of each Bid will be fully disclosed to all ~~other bidders~~Auction Parties throughout the entire Auction. The ~~Debtors~~Examiner may announce at the Auction additional procedural rules that ~~they~~the Examiner determine~~, in consultation with the Committees,~~ are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent alternative bids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

(d) ~~(b)~~ As a condition of participating in the Auction, each ~~Qualified~~Alternative Bidder invited to participate in the Auction shall certify prior to the commencement of the Auction that (i) its representatives attending the auction have the full power and authority to act on behalf of and legally bind the bidder to any bids made at the ~~a~~Auction and (ii) any bid made shall constitute a binding and legally enforceable contract of the bidder to timely close ~~a purchase of 100% of the Debtors' equity~~pursuant to such bidders' Definitive Agreement at the price bid in the event an order is entered approving a plan based upon such bid.

(e) ~~(c)~~ At least ~~two~~five (5) business days prior to the Auction, the Debtors shall provide to all ~~Qualified Bidders~~Auction Parties copies of all ~~other~~ Qualified Alternative Bids~~. In addition, the Debtors will inform the Purchaser and each other Qualified Bidder who has expressed its intent to participate in the Auction of the identity of all Qualified Bidders that may participate in the Auction~~ and the identify of all Auction Parties.

(f) ~~(d)~~ At the Auction, bidding shall begin with the Qualified Alternative Bid that the ~~Debtors, in consultation with the Committees,~~Examiner appointed by the Bankruptcy Court believes to be the highest and best pending offer, and continue in ~~increments of the Subsequent Overbid Amount in~~ one or more rounds of bidding and shall conclude after each ~~Qualified Bidder~~Auction Party has had the opportunity to but has declined to submit an additional Subsequent Bid. For the purpose of evaluating which bid is the highest and best bid, the value of a bid shall be determined by the ~~Debtors, in consultation with the Committees~~Examiner appointed by the Bankruptcy Court, after considering all relevant factors, including the following: (i) the net

consideration payable to the Debtors~~, after giving effect to any Termination Fee that may be payable to Purchaser under the Bidding Procedures Order~~; (ii) the contracts, agreements and leases to be assumed and rejected under the bid; (iii) the adequate assurance of future performance to non-debtor parties under the bid; (iv) the ~~debt to equity ratio of the Reorganized Debtor under the bid; (v) the waiver of any claims against the Debtors; (vi) the~~ commitments regarding future employment of employees under the bid; and (~~vii~~v) the feasibility of the Plan if the bid were accepted. At the conclusion of the bidding, the ~~Debtors, in consultation with the Committees~~Examiner appointed by the Bankruptcy Court, shall announce ~~their~~its determination as to the bidder submitting the highest and best bid, which bid shall be submitted to the Bankruptcy Court for approval at the Confirmation Hearing. ~~Debtor~~Debtors and the Examiner appointed by the Bankruptcy Court will also consider bids that include the sale of other assets owned by Debtors, including the Chateau Farcheville and St. Andrew~~'~~’s assets, and will consider whether any such bid would likely produce greater value for the Debtors than the sale of the Project and the separate, subsequent sale of such other assets. ~~The Purchaser shall be deemed a party in interest with standing to appear and be heard in connection with any motions, hearings, or other proceedings relating to the CH Definitive Agreement and any Alternative Bid or Subsequent Bid. That standing, however, shall not entitle the Purchaser to propose any Subsequent Bid at any such hearing.~~

~~(e)~~ ~~The Purchaser shall be entitled to a termination fee (the "Termination Fee") in the amount of (a) $2,000,000 (being 2% of Purchaser's acquisition price of $100 Million) plus (b) all out of pocket expenses incurred by CrossHarbor or Purchaser subsequent to November 10, 2008 in pursuing the acquisition of the Debtors' equity interests but not to exceed the sum of $1,000,000 in the aggregate, in the event (i) the Bankruptcy Court approves a sale of 100% of the Debtors' equity to an entity other than the Purchaser, and (ii) the Purchaser remained at all times through and including seven (7) business days immediately following such Bankruptcy Court approval, ready, willing and able to consummate the CH Definitive Agreement.~~

(g) ~~(f)~~ The bidding at the Auction will be transcribed.

7. The ~~"~~“benchmark~~"~~” set out in the CrossHarbor term sheet for its debtor-in-possession financing approved by this Court on December 17, 2008 [Docket No. 182] (~~"~~“Final Order~~"~~”)~~,~~ fixed a plan confirmation deadline of March 31, 2009, and an end of the exclusivity period if a plan is not filed by February 13, 2009; CrossHarbor has consented to the extension of the March 31, ~~2009,~~2009 plan confirmation deadline until ~~April 30, 2009,~~May 21, 2009 and the deadline is so extended and the Final Order is so modified.

8. Nothing in this Order is intended to effect a substantive consolidation of the Estates, affect the allocation of proceeds amongst the Estates, or affect the rights or interests of the parties to these bankruptcies except as is set forth herein or required to effectuate the intents and purposes of this Order.

BY THE COURT

__________________________________

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

Document comparison done by DeltaView on Monday, March 16, 2009 2:52:05 PM

| **Input:** | |
|---|---|
| Document 1 | pcdocs://nycsr07a/1443504/1 |
| Document 2 | pcdocs://nycsr07a/1443504/2c |
| Rendering set | Option 3a strikethrough double score no moves |

| **Legend:** | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| <~~Moved from~~> | |
| >Moved to < | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| **Statistics:** | |
|---|---|
| | Count |
| Insertions | 105 |
| Deletions | 119 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 224 |