CHARLES W. HINGLE (#1947)
SHANE P. COLEMAN (#3417)
HOLLAND & HART LLP
401 NORTH 31st STREET, SUITE 1500
BILLINGS, MONTANA 59101
(406) 252-2166 (PHONE)
(406) 252-1669 (FAX)
chingle@hollandhart.com (EMAIL)
spcoleman@hollandhart.com (EMAIL)

EVAN R. LEVY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOUR TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 735-3000 (PHONE)
elevy@skadden.com (EMAIL)
*Admitted Pro Hac Vice*
   - and –

MARK S. CHEHI
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899
(302) 651-3000 (PHONE)
mchehi@skadden.com (EMAIL)
*Admitted Pro Hac Vice*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Chapter 11 |
| Yellowstone Mountain Club, et al., | Case No. 08-61570-11<br>Jointly Administered |
| Debtors. | |

**OBJECTION OF PREPETITION LENDERS TO DISCLOSURE STATEMENT
<u>RESPECTING FIRST AMENDED PLAN OF REORGANIZATION</u>**

Credit Suisse, as administrative agent and collateral agent ("Credit Suisse" or, the "Agent") for the prepetition lenders (the "Prepetition Lenders") under that certain Credit Agreement, dated as of September 30, 2005 (the "Prepetition Credit Agreement"), hereby submits these objections (the " Objection") to the adequacy of Debtors' proposed Disclosure Statement (the "Disclosure Statement" or "DS at __") with respect to the Debtors' proposed First Amended Joint Plan of Reorganization (the "Amended Plan"), dated and filed on March 3, 2009, as follows:

### Incorporation Of Prior Objections

1. The Court should deny approval of the Disclosure Statement for the reasons stated in the Prepetition Lenders' objections to the Debtors' initial disclosure statement filed on February 25, 2009 (the "Initial Objection") [Dkt. No. 439], the Prepetition Lenders' supplemental disclosure statement objections, filed on March 1, 2009 (the "Supplemental Objection") [Dkt. No. 495], and the objections stated in this Objection to the Disclosure Statement with respect to the Amended Plan.[1]

2. **Illusory and Non-Confirmable Plan**. The Prepetition Lenders do not waive (and expressly reserve) all objections to confirmation of the Amended Plan that they may assert at or prior to the conclusion of any hearing on confirmation of the Amended Plan, including without limitation the confirmation issues raised by the Prepetition Lenders in their Initial Objection and Supplemental Objection.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Initial Objection. This Objection reasserts and renews, as if set forth fully herein, the grounds of objection and legal authority cited in the Initial Objection and Supplemental Objection.

1

3. The Prepetition Lenders' failure to assert here for the first time (or repeat and reassert) any ground of objection to confirmation of the Amended Plan is not, and should not be deemed to be, a waiver of any such objections.

4. **Inadequate Information.** The Court should deny approval of the Disclosure Statement because it fails to contain "adequate information" that would enable a party-in-interest to make an informed judgment about the Plan. 11 U.S.C. §1125(a), (b). See In re Reilly, 71 B.R. 132, 134 (Bankr. Mont. 1987) (identifying nineteen factors that form the basis for evaluating adequate disclosure, including, among others, a description of the available assets and their value, the accounting method utilized to produce financial information, valuations or projections relevant to creditors' decisions to accept or reject chapter 11 plan, and relationship of the debtor with affiliates).

5. The Prepetition Lenders reassert and expressly incorporate by reference, as if set forth fully herein as objections to the Disclosure Statement, with respect to the Amended Plan, all of the grounds of objection stated in paragraph 3 of their Initial Objection.

6. Additionally, the Prepetition Lenders object to the Disclosure Statement because it fails to include "adequate information" concerning the following:

   a. Trade Creditor Fund. The Disclosure Statement fails to provide adequate information concerning the "Trade Creditor Fund" and how this "pool of funds" will be administered, and for whose benefit. (DS at 2, 12)

   b. Misleading Statement re $100 Million Purchase Price. The Disclosure Statement fails to adequately disclose the putative purchase price to be paid by CrossHarbor, and states misleadingly that there will be a "payment of at least $100 million by the successful bidder." (DS at 2) Such statement is inaccurate and misleading because the Definitive Agreement provides that the contemplated

$70 million note will be issued by the Reorganized Debtors - - not CrossHarbor. (DS at 42, et seq.)

c.  Marketing of Equity.  The Disclosure Statement states misleadingly that CB Richard Ellis, Inc. ("CBRE") will market "New Membership Interests" - - without disclosing that the Court has required CBRE to market the Debtors' assets as well. (DS at 2)

d.  Bidding and Sale Procedures.  The Disclosure Statement misstates that the Debtors have filed a motion seeking approval of bidding procedures, when the Court already has approved bidding procedures - - and also has invited revised procedures - - and that the Prepetition Lenders have proposed such revised procedures.  (DS at 2)  See Motion of Prepetition Lenders for Entry of Order Authorizing (i) Modified Bidding Procedures, (ii) Credit Bidding and (iii) Examiner to Evaluate and Report to the Court on Qualified Alternative Bids, dated March 16, 2009 [Dkt. No. 571]

e.  Future Capital Commitments.  The Disclosure Statement fails to disclose that no independent party will have rights to enforce the putative capital commitments contemplated by the Definitive Agreement.  (DS at 2-3)

f.  Note Payable To Debtors' Estates.  The Disclosure Statement provides no estimate or basis or method for the contemplated "allocation of value" that will determine who will receive the proceeds of the $70 million note contemplated by the Definitive Agreement.  (DS at 7, 8, 16, 21, 35)

g.  Alleged Litigious Stance.  The Disclosure Statement states incorrectly and misleadingly that "in keeping with its litigious stance" Credit Suisse "has requested additional disclosure with respect to a myriad of matters."  (DS at 10)  Likewise objectionable is the statement that "the Debtors prefer and hope that the marketplace will fix the value not an artificial and counterproductive litigation strategy of Credit Suisse."  (DS at 86)

h.  Member Failure to Pay Dues.  The Disclosure Statement fails to disclose that members have failed to pay second half dues in amounts that were required to be paid on before February 28, 2009 under the terms of the CrossHarbor DIP financing, and such failure is an Event of Default thereunder.  (DS at 16)

i.  Membership Deposit Postponement Agreements.  The Disclosure Statement fails to provide adequate disclosure concerning membership deposit postponement agreements, lacks any disclosure concerning the postponement of material deposit amounts owed by CrossHarbor, and fails to disclose that the Debtors do not intend to provide timely identification of postponement agreements.  (DS at 16, 24, 52, 53)

j.  Valuation of Prepetition Lender Collateral.  The Disclosure Statement states falsely that the Court has concluded that disclosing valuation information "would act only to chill effective and robust bidding."  (DS 16, 21)  Relatedly, the

3

Disclosure Statement fails to disclose the difference between valuing collateral securing the Prepetition Lender claims on the one hand, and valuing the equity of the reorganized Debtors on the other. (Id.)

k.   BGI Notes. The Disclosure Statement fails to disclose any value for the BGI Notes, or that they are subject to the Prepetition Lenders' liens. (DS at 19, 47)

l.   Debtor Stipulations. The Disclosure Statement fails to disclose that the Debtors previously stipulated and admitted to the amount and validity of the Prepetition Lenders' claims and liens - - and that the Debtors therefore are estopped from disputing same, including any disputes as to whether postpetition membership deposits, dues and revenues are proceeds of the Prepetition Lenders' collateral. (DS at 21, 22, 30)

m.   Prior CrossHarbor $470 Million Purchase Price. The Disclosure Statement fails to disclose the amount of CrossHarbors' prior obligation to purchase Yellowstone Club for $470 million. (DS at 24, 25)

n.   Cancellation of Prepetition Lender Liens. The Disclosure Statement fails to disclose that the Definitive Agreement requires cancellation of the Prepetition Lenders' liens, that such lien cancellation is a condition of the CrossHarbor transaction proposal - - and that the proposed cancellation is impermissible under the Bankruptcy Code. (DS at 35-36)

o.   Creditworthiness (Or Not) Of CrossHarbor Acquisition Entity. The Disclosure Statement fails to disclose whether and how the CrossHarbor acquisition entity (New CH YMC Acquisition LLC) under the Definitive Agreement is creditworthy (or not). (DS at 35)

p.   Expedited Trial. The Disclosure Statement fails to disclose that the Court has scheduled an expedited trial on the Committee's alleged challenges to the Prepetition Lenders' claims and liens, and the implications of such trial for creditors. (DS at 37)

q.   11 U.S.C. § 1111(b). The Disclosure Statement fails to disclose properly the implications of the Prepetition Lenders' exercise of their rights under section 1111(b) of the Bankruptcy Code. (DS at 41)

r.   Releases/Exculpations. The Disclosure Statement fails to disclose that the Debtors have added CrossHarbor Capital Partners LLC and all of its affiliates to the Amended Plan's exculpation and release provisions. (DS at 49)

s.   Substantive Consolidation. The Disclosure Statement fails to disclose adequate information about the applicable standards, reasons and implications for creditors of the substantive consolidation proposed by the Plan (and what happens if substantive consolidation is not approved by the Court). (DS at 50)

4

t. <u>Discovery Land Company ("DLC")</u>. The Disclosure Statement fails to provide adequate information about DLC's agreements and dealings with CrossHarbor, DLC's proposed involvement with the Acquirer under the Definitive Agreement - - or that DLC's longstanding involvements with CrossHarbor (including longstanding joint intentions to obtain ownership and control of the Yellowstone Club) were not properly disclosed in connection with DLC's employment by the Debtors. (DS at 50)

u. <u>Treatment Of Certain Membership Arrangements</u>. The Disclosure Statement fails to disclose adequate information about the propriety of the proposed treatment of Pioneer and Frontier Memberships under the Plan. (DS at 53-54)

v. <u>Definitive Agreement</u>. The Disclosure Statement fails to disclose whether and when the Definitive Agreement has been executed (or not) by CrossHarbor.

w. <u>Preferential Rights Granted Exclusively to CrossHarbor</u>. The Disclosure Statement fails to disclose the preferential right granted exclusively to CrossHarbor to "jointly endeavor to reach an agreement" with the Debtors to modify the Contract Assumption Schedule, the Member Assumption Schedule, the Modified Member Schedule, Honorary Modified Member Schedule, Founder's Circle Modified Member Schedule or Company Modified Member Schedule. Only CrossHarbor - - and no other potential bidders - - is provided with this right. (Amended Plan, Article 5.1.8)

x. <u>Other Prepetition Lender Objections</u>. The Disclosure Statement purports to address prior objections raised by the Prepetition Lenders by characterizing Debtor responses thereto in Exhibit VI to the Disclosure Statement. In many cases the Debtors' responses fall short of the "adequate information" standard of section 1125 of the Bankruptcy Code.

7. **Additive Disclosures.** The Agent reserves the right to propose to the Debtors (prior to the hearing on the Disclosure Statement) various additional language to be inserted into the Disclosure Statement to improve the adequacy of the information and address issues raised in this Objection, the Initial Objection and the Supplemental Objection.

8. **Approval of Disclosure Statement Should Be Denied.** Given that the Disclosure Statement lacks adequate information within the meaning of section 1125 of the Bankruptcy Code, and the Plan is patently unconfirmable, the Court should deny

5

approval of the Disclosure Statement. See In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) (noting that approval of a disclosure statement should be withheld if it is apparent that the plan will not comply with Code § 1129 and if it does not contain adequate information); In re Reilly, 71 B.R. 132 (Bankr. D. Mont. 1987).

9. **Reservation of Rights.** The Agent and Prepetition Lenders do not waive (and expressly reserve) their rights to file and assert additional objections to the Disclosure Statement before the conclusion of the hearing thereon - - and to submit curative disclosures at any time.

WHEREFORE, the Agent respectfully requests entry of an order (i) denying approval of the Disclosure Statement; and (ii) granting the Agent and Prepetition Lenders such other and further relief as is just and proper.

Dated: March 16, 2009
      Billings, Montana

    /s/ Charles W. Hingle_____
Charles W. Hingle
Shane P. Coleman
HOLLAND & HART LLP
401 North 31st Street
Suite 1500
Billings, Montana 59101
(406) 252-2166 (Phone)
(406) 252-1669 (Fax)
chingle@hollandhart.com (Email)
spcoleman@hollandhart.com (Email)

Of Counsel:
Evan R. Levy (NY No. 2720068)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

- and –

Mark S. Chehi (Del. Bar No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Credit Suisse,
sole administrative agent and collateral agent

4474606_1.DOC