James A. Patten (1191)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN P.L.L.C.**
2817 - 2nd Avenue North, Ste. 300
Billings, MT 59101
Telephone (406) 252-8500
Facsimile (406) 294-9500
E-mail: japatten@ppbglaw.com
Richard G. Birinyi
Lawrence R. Ream
**BULLIVANT HOUSER BAILEY PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930
Facsimile: 206.386.5130
E-mail: larry.ream@bullivant.com
E-mail: rick.birinyi@bullivant.com

Attorneys for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re:<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC., et al.,<br><br>Debtors. | No.: 08-61570 |

### RESPONSE TO REMAINING OBJECTIONS TO ADEQUACY OF PROPOSED DISCLOSURE STATEMENT

COMES NOW Yellowstone Mountain Club, Yellowstone Development, Big Sky Ridge and Yellowstone Construction (collectively the "Debtors"), by and through their attorneys of record, and respectfully submit this summary response to the remaining objections to the Debtors' proposed Disclosure Statement. The following sections set forth the Debtors' understanding of unresolved issues related to the approval of the Debtor's

proposed disclosure statement and a memorandum discussing the reasons why the remaining objections should be overruled and the Disclosure Statement approved.

## I. INTRODUCTION

As the Court knows, the Debtors in this case have been involved in ongoing disputes with Credit Suisse since the beginning of the cases. Although Credit Suisse originally agreed to fund the Debtors' operations in the chapter 11 case over the winter, a few hours before the final hearing to approve that financing, Credit Suisse advised the Debtors that it would not be able to perform. Since that time, the litigation has been relentless, with no discernable end game. The approval of the Debtors proposed Disclosure Statement presents another chapter in a long line of such disputes.[1] The disputes have all revolved around Credit Suisse's desire to control the outcome of the case, even apparently to the point of causing the club to fail and force a liquidation of the property under chapter 7 of the Bankruptcy Code.

## II. STATEMENT OF FACTS

### A. General

The Debtors filed their proposed Plan and Disclosure Statement on February 13, 2009. The Court set a hearing on the Disclosure Statement for March 4, 2009. That Order required the parties to essentially meet and confer regarding objections. The original Disclosure Statement generated objections from numerous parties, including the Unsecured Creditors' Committee, the Ad Hoc Members' Committee, the "B" Members' Committee, and the U.S. Trustee. The Debtors worked virtually non-stop until the early hours of the morning of the Disclosure Statement hearing to draft additional language to include in the Disclosure Statement, and filed a First Amended Plan and an associated Disclosure Statement late in the

---

[1] Ironically, at the last hearing on the Disclosure Statement, Credit Suisse's counsel suggested that the final approval would not be difficult. The Debtors certainly hope that will be the case.

2

evening of March 3. Recognizing the parties needed additional time to assess the new language, the hearing on the Disclosure Statement was continued until April 1st and then again to April 6th. There were far fewer objections to the adequacy of the Disclosure Statement for this hearing. All of the Committees,[2] the U.S. Trustee's office,[3] and other independent parties[4] have no continuing objections to the Disclosure Statement.

There were seven objections filed to the Amended Disclosure Statement. Four of the objections, filed by National/Founders' Members, Michelle Cameron Donaldson and Neal Donaldson,[5] Maxon Holding Copr [sic],[6] and The Bauman Family Trust.[7] One objection was filed by Prim Vintage Development.[8] One objection was filed by the "Yellowstone Club World Members.[9] Finally, one objection was filed by Credit Suisse.[10]

---

[2] The Debtors have made some minor changes to the language in response to the Unsecured Creditors' Committee's comments.

[3] The U.S. Trustee's representative authorized the Debtors to advise the Court that "the UST has no continuing objections to the disclosure statement as amended."

[4] Parties that filed objections to the initial Disclosure Statement who did not file additional pleadings are Tim Blixseth (Dkt. # 443), the EPA (Dkt. # 424), and BC Concrete (Dkt. # 446).

[5] Dkt. # 564 & 565. These two objections are identical with each other, and have the same text as the Objection to the original Disclosure Statement, with only the date changed. See Dkt. # 432.

[6] Dkt. # 566. This objection is identical to the Donaldson's two objections, and, like the Donaldson's has the same text as the Objection to the original Disclosure Statement, with only the date changed. See Dkt. # 440.

[7] Dkt. # 572. This objection was filed by a different lawyer than the Donaldson and Maxon objection, but is essentially identical.

[8] Dkt. # 569.

[9] Dkt. # 577.

[10] Dkt. # 575.

### B. Unresolved Matters

#### 1. National/Founders' Members

These objections are identical to the original objections despite the fact that there has been substantial additional explanation of the treatment of National/Founders' Members claims. Indeed, the objections still assert, wrongly, that the documents do not have a copy of the proposed new contract for such members. That document is in fact attached to the Plan as Schedule 1.72. Moreover, there is extensive new discussion of the treatment of such members that appears at page 49 of the proposed Disclosure Statement filed with this Response.

#### 2. Prim Vintage Development

This objection, like the original objection, misunderstands the plan and misstates the applicable law. It essentially is an objection to the definition of unimpaired set forth in 11 U.S.C. § 1124. Nevertheless, the Debtors have clarified the language in the Disclosure Statement and the language in the Plan relative to the Prim unimpaired claim.

#### 3. Yellowstone Club World Members

In the Notice of Objection, Mr. Amsden never identifies who he is representing. In an email exchange, he advised that he represents the Yellowstone Club World Trustee, Ross Richardson, who is a lawyer and likely cannot misunderstand any of the documents and information contained in the several hundred pages of material. Nevertheless, Mr. Amsden details 25 alleged deficiencies to the language in the Amended Disclosure Statement. In the interest of cooperation, the Debtors have modified the language with respect to the identified material, except for those circumstances where the objection asked for the inclusion of material that would be misleading or false, or was based on a mistaken factual assertion. In addition, like the Credit Suisse original objection, the Debtors have included a specific new

4

Exhibit to the Disclosure Statement which details Mr. Richardson's concerns and the particular responses.

### 4. Pre-Petition Lenders

Finally, the Pre-Petition Lenders filed yet another objection.[11] Despite the suggestion in the newest objection and the statement of counsel at the last hearing that remaining Disclosure issues should be easy to resolve, Credit Suisse has raised another alleged 24 deficiencies. As with the original objection and supplemental objection, responding to Credit Suisse is like playing Wack-a-Mole at a county fair. Each time you make a change in the language to respond to an objection, Credit Suisse says that the new language is deficient for a different reason. Nevertheless, the Debtors have changed the language in the Disclosure Statement to address each of the newly raised issues. The Debtors, however, share the Court's observation at the last hearing that there is essentially nothing that Credit Suisse does not know and further disclosure would not affect it in any way.

### C. Redrafted Documents

Attached hereto as Exhibit A is a blackline version of the proposed Disclosure Statement. Attached hereto as Exhibit B is a blackline version of the modified Plan of Reorganization. Clean versions of these documents were filed with the Court this afternoon. Should the Court require any additional information required, a final approved version can be ready for filing shortly at the conclusion of the Disclosure Statement hearing.

## III. LEGAL ANALYSIS

### A. The Debtors' Proposed Disclosure Statement Includes Adequate Information.

This case has generated a disclosure statement that is decidedly long and involved. The courts have all recognized that adequacy of disclosure is based on all the facts and

---

[11] The two prior objections are at Dkt. # 439 & 495.

5

circumstances. It is a case by case inquiry and it is left largely to the discretion of the bankruptcy court. *See e.g. In re A.H. Robins Co.*, 880 F.2d 694 (4th Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989) (*quoting Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir.1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988)); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168 (Bankr.S.D.Ohio 1988). All that is necessary, however, is a disclosure statement that includes adequate information to permit creditors to cast an informed vote. It should not be overly burdened with additional extraneous material.

> The case law establishes that a disclosure statement under Chapter 11 is "intended to assist the creditors in evaluating the plan on its face rather than to promote a comparison among various proposed plans." *In re Brandon Mill Farms, Ltd.*, 37 B.R. 190 (Bankr.N.D.Ga.1984). In my judgment approval of a disclosure statement is an interlocutory action in the progress of a Chapter 11 reorganization effort leading to a confirmation hearing at which all parties have ample opportunity to object to confirmation of the plan. It is not intended to be the primary focus of litigation in a contested Chapter 11 proceeding. *See, In re Hughes Marina, Inc.*, 6 BCD 978, 979 (Bankr.W.D.N.Y.1980); *Matter of Georgetown Of Kettering*, 17 B.R. 73, 8 BCD 934, 935 (Bankr.S.D.Ohio 1981); 5 Collier On Bankruptcy, 15th Ed. § 1125.03[1] (1986).
>
> Moreover, overly technical and extremely numerous additions to a disclosure statement suggested by an objecting party may themselves be self-defeating in terms of the resulting clarity and understandability of the document to the average investor. *Cf. In re Stanley Hotel Inc.*, 13 B.R. 926, 933 (Bankr.D.Colo.1981). I accept and follow the observation of bankruptcy Judge Moore in the Stanley Hotel case on this point:
>
>> A disclosure statement must be meaningful to be understood, and it must be understood to be effective. Thus, what lawyers regard as useful information based upon their experience might be meaningless verbiage in the hands of a "typical" investor. Accordingly, by overburdening a proponent's disclosure statement with information significant and meaningful to lawyers alone may result ultimately in reducing the disclosure statement to an overlong, incomprehensible, ineffective

6

> collection of words to those whose interests are to be
> served by disclosure. Thus, compounding a disclosure
> statement for the sake of a lawyer's notion of
> completeness, or because some additional information
> might enhance one's understanding, may not always be
> necessary or desirable, and the length of a document
> should not be the test of its effectiveness.

*In re Waterville Timeshare Group*, 67 B.R. 412, 41314 (Bankr.D.N.H.1986). Moreover, there is also no question that a creditor may not make objections related to disclosure to other classes of creditors, but the objections must relate to the particular treatment of that holder's claim.

> Further, it is noteworthy that a creditor only has standing
> to object to the adequacy of a disclosure statement as to its own
> class and not as to the adequacy of the statement as it affects
> another class. *In re Adana Mortgage Bankers, Inc.*, 14 B.R. 29,
> 30 (Bankr.N.D.Ga.1981). And, as one author warns,
> "reorganization is not to be doomed by meaningless disclosure
> paperwork." Trost, *Business Reorganization Under Chapter 11
> of the New Bankruptcy Code*, 34 Bus. Law. 1309, 1339 (1979).

*In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 171 (Bankr.S.D.Ohio 1988). Over the years, the courts have developed categories of information that must be disclosed. These lists are not exhaustive and every type of information need not be included in every disclosure statement. See *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 171 (Bankr.S.D.Ohio 1988); *In re Inforex, Inc.*, 2 C.B.C.2d 612 (Bankr.D.Mass.1980); *In re William F. Gable Co.*, 10 B.R. 248, 249 (Bankr.N.D.W.Va.1981); *In re A.C. Williams Co.*, 25 B.R. 173, 176 (Bankr.N.D.Ohio 1982); *In re Malek*, 35 B.R. 443, 444 (Bankr.E.D.Mich.1983); *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 568 (Bankr.N.D.Ga.1984); *In re Jeppson*, 66 B.R. 269, 292 (Bankr.D.Utah 1986).

Finally, most courts recognize that the Court may deny approval for a facially defective plan of reorganization, but that the disclosure statement hearing is not the time or the place to litigate plan confirmation issues. *See, e.g. In re 266 Washington Assocs.*, 141

B.R. 275, 281 (Bankr.E.D.N.Y.1992), *aff'd*, 147 B.R. 827 (E.D.N.Y.1992); *In re Valrico Square Ltd. Partnership*, 113 B.R. 794 (Bankr.S.D.Fla.1990). Most of these cases involve situations where the confirmation objection is clear and the issue is a matter of law.

Applying these rules to the remaining disclosure objections by Credit Suisse and the Yellowstone Club World Trustee compels the unmistakable conclusion that the remaining objections to the adequacy of the disclosure statement should be rejected. The remaining objections are, at best, lawyerly position taking which will provide no real benefit to any creditors. Moreover, as the standing cases make clear, neither Credit Suisse nor the Yellowstone Club World Trustee has standing to assert the rights of any other creditors. The fact that all the Committees now support the approval of the redrafted Disclosure Statement certainly provides profound and almost conclusive evidence that the document does contain adequate information for all parties. There is no deficiency in disclosure. In fact, there is probably too much disclosure.

### B. The Proposed Plan is not facially defective

The remaining Credit Suisse objections go to confirmation and should be overruled. In the original objection, Credit Suisse fired a shotgun of confirmation objections, all of which miss the mark. They are the following:

#### 1. CS alleges that the Plan violates a prior order

CS's argument on this issue was based on the plan provision treating the CS claim as disputed unless an adversary proceeding was filed by the Trustee of the Liquidation Trust within 30 days of the Effective Date. Of course, subsequent events have mooted this argument. The Creditors' Committee has obtained permission to commence the suit against CS, CS filed its own Declaratory Judgment Action, and the Court has set a trial for that proceeding to commence prior to Confirmation.

### 2. CS alleges that the Plan fails to provide adequate means for implementation

CS's argument on this issue was based on (i) that the validity of its lien had to be determined prior to confirmation, (ii) that the Court had denied approval of the bidding procedures, (iii) that the plan depends on litigation against the Lenders, and (iv) that the Plan depends on whether the Lenders exercise their rights under § 1111(b). Like the first argument, this has now been mooted. The Court has approved modified bidding procedures, the pending adversary proceedings will be tried prior to confirmation, and the time for the Lenders' to make their election under § 1111(b) has been extended until after the claim is allowed or disallowed in the adversary proceeding, and if allowed, the collateral valued.

### 3. Prohibited Non-Debtor Releases.

CS's argument on this issue is based on a misunderstanding of the scope of the plan provision. In fact, this particular provision was based on CS's own plan provision contained in the Promontory chapter 11 case pending in Utah. In that case, CS proposed identical language, urged the Utah Bankruptcy Court to confirm their Plan containing the language, and obtained a confirmation order expressly adopting the release. Attached as Exhibit C is a copy of the Utah Court's confirmation order expressly incorporating the identified language. It is hard to imagine a clearer case of judicial estoppel.

### 4. Not Fair and Equitable

If there were ever a Plan confirmation argument that cannot be resolved at the Disclosure Statement hearing, this is it. CS argues that the Court can rule on a facial basis that the Plan, which, as drafted, gives Credit Suisse the portion of the value paid after the conclusion of the auction, fails to meet the requirements of § 1129(b). In fact, however, this particular plan is based upon the teachings of the U.S. Supreme Court. In *Bank of America NT & SA v. 203 North LaSalle Street P'ship* . (*In re North LaSalle Street P'ship.*), 526 U.S. 434, 461, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999), the Supreme Court determined that the

9

fair and equitable rule with respect to creditors would be satisfied through an auction of the equity interests in the Debtor. That is exactly what the Plan in this Case provides, an auction of the equity interests and a distribution of the resulting proceeds to the respective creditors in accordance with their relative priorities. *See also In re Bonner Mall Partnership,* 2 F.3d 899 (9th Cir.,1993)(Section 1129(b) provision not exclusive methods of establishing fair and equitable treatement); Klee, *Cram Down II,* 64 Am.Bankr.L.J. 229 (1990)(discussing uncodified aspects of fair and equitable rule);. Klee, *All You Ever Wanted to Know About Cram Down Under The New Bankruptcy Code,* 53 Am.Bankr.L.J. 133, 148-56 (1979)(same). This is exactly the methods used by the Bankruptcy Courts since the beginning of reorganization cases.

### 5. Impermissible Classification

CS asserts that the Plan impermissibly classifies its Deficiency Claim. As with the prohibited "releases" the classifications in this Plan were based on Credit Suisse's proposed Plan in the Promontory case. CS obtained confirmation of that Plan which included a separate classification of its Deficiency Claim. This separate classification is also consistent with the Ninth Circuit authority that CS cited in its original objection, which recognizes that a secured lender's deficiency claim may be separately classified for legitimate business or economic reasons. *See e.g. Barakat v. Life Insurance Co. of Virginia (In re Bakarat),* 99 F.3d 1520 (9th Cir.1996). Moreover, under express Ninth Circuit authority, separate classification is permissible where there is pending litigation over a disputed claim. *Steelcase Inc. v. Johnston (In re Johnston),* 21 F.3d 323, 327 (9th Cir.1994). Lest there be any doubt, however, the Plan has been modified to expressly provide that if the Court determines that the separate classification is improper, then any ballot cast on account of an allowed deficiency claim will be treated as a ballot for a Class 4 Unsecured Claim. Of

10

course, the economic treatment of the deficiency claim is exactly the same as the treatment of the other General Unsecured Claim holders.

### 6.     Unfair Discrimination

CS argues that other unsecured creditors receive disparate treatment. The only difference is the Convenience class, which will be paid in full. As indicated in the following section, the size of that class was set based on the overall amount of claims, the convenience of paying small claims, and the prospect that future dividends to creditors with such small claims would be too small to conveniently distribute. As to the Trade Creditor Fund, such a sharing between a secured creditor and unsecured creditors has expressly been approved by the Courts. *See e.g. Official, Unsecured Creditors' Committee v. Stern (In re SPM Manufacturing Corp.)*, 984 F.2d 1305 (1st Cir.1993)(secured creditor reached agreement with Unsecured Creditors' Committee to share proceeds of liquidation of collateral); *In re Exide Techs.*, 303 B.R. 48, 77 (Bankr.D.Del.2003) (relying on *SPM* to permit confirmation of chapter 11 plans that included such reallocations); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 612 (Bankr.D.Del.2001)(same). In this case, there is, and can be little doubt that CrossHarbor and the Unsecured Creditors' Committee can reach an agreement regarding what CrossHarbor does with the repayment it receives on its DIP Loan. That does not violate the absolute priority rule, nor does it constitute unfair discrimination.

### 7.     Improper Classification and Treatment of Convenience Class

This argument again completely misses the mark. The $5,000 figure used in the Plan is based on a determination of what would be reasonable under the circumstances. The total Convenience Class based on the claims filed is approximately $1,000,000.00 dollars, or less than 2% of the total filed Unsecured Creditor pool of $64,000,000. It is less than .1% of the total filed claim pool of $1,157,922,367. In short, the figure was, in fact, developed based on the applicable criteria. The CS argument is likewise legally suspect. It relies on *Oxford Life*

11

*Insurance Co. v. Tucson Self-Storage (In re Tucson Self Storage, Inc.)*, 166 B.R. 892 (9th Cir. BAP 1994). That case, however, involved a single asset real estate case with few unsecured creditors. In contrast, as shown by the spreadsheet attached to the Disclosure Statement, there were over 1200 proofs of claim filed in this case. The Convenience Class has approximately 400 creditors whose claims would be dwarfed if they were required to share pro rata with those creditors with larger claims. In fact using a higher figure would be justified.

## IV. CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the court approve the Amended Disclosure Statement as containing adequate information and authorizing its transmission to creditors, members and parties in interest.

DATED this 3rd day of April, 2009.

Richard G. Birinyi
Lawrence R. Ream
**BULLIVANT HOUSER BAILEY PC**
1601 Fifth Avenue, Suite 2300
Seattle, WA 98101-1618

James A. Patten (1191)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**
2817 – 2nd Avenue North, Suite 300
Billings, MT 59101
Attorneys for Debtors

_____
James A. Patten

11451409.1