CHARLES W. HINGLE
SHANE P. COLEMAN
HOLLAND & HART LLP
401 NORTH 31st STREET, SUITE 1500
BILLINGS, MONTANA 59101
(406) 252-2166 (PHONE)
chingle@hollandhart.com (EMAIL)
spcoleman@hollandhart.com (EMAIL)

EVAN R. LEVY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOUR TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 735-3000 (PHONE)
elevy@skadden.com (EMAIL)
*Admitted Pro Hac Vice*
   - and –

MARK S. CHEHI
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899
(302) 651-3000 (PHONE)
mchehi@skadden.com (EMAIL)
*Admitted Pro Hac Vice*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Chapter 11 |
| Yellowstone Mountain Club, et al., | Case No. 08-61570-11<br>Jointly Administered |
| Debtors. | |

## **PREPETITION LENDERS' MOTION UNDER 11 U.S.C. §§ 105(a), 361 & 363(e)**

Credit Suisse, as administrative agent and collateral agent (the "Agent") for the prepetition lenders (the "Prepetition Lenders") under that certain Credit Agreement, dated as of September 30, 2005 (the "Prepetition Credit Agreement"), hereby moves pursuant to section 363(e) of the Bankruptcy Code for immediate entry of an order authorizing and directing the Debtors to grant to the Agent and Prepetition Lenders adequate protection, as follows:

Background

1. On November 10, 2008, Yellowstone Mountain Club, LLC, Yellowstone Development LLC, Big Sky Ridge, LLC and Yellowstone Club Construction Company, LLC (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. On December 17, 2008, the Court entered its Memorandum of Decision [Dkt. No. 181] (hereinafter, "Mem. Dec. at __") and Order (the "DIP Financing Order") [Dkt. No. 182] authorizing and approving postpetition super-priority debtor-in-possession financing for the Debtors (the "CrossHarbor Financing") provided by an affiliate of CrossHarbor Capital Partners, LLC ("CrossHarbor").

3. The CrossHarbor Financing gives CrossHarbor fully perfected liens and security interests on all assets of the Debtors, as well as liens and security interests on all assets of the Debtors' subsidiaries who are guarantors of the CrossHarbor Financing. Such liens (the "CrossHarbor Priming Liens") prime the prepetition liens and security interests of the Prepetition Lenders.

4. The DIP Financing Order does not provide adequate protection payments or liens to the Prepetition Lenders to protect them against the imposition of the non-consensual CrossHarbor Priming Liens or any diminution in the value of the Prepetition Lenders' interests in their collateral under the Prepetition Credit Agreement (the "Prepetition Collateral").

5. With its DIP Financing Order, the Court concluded that the interests of the Prepetition Lenders were adequately protected, finding that the "low-end, going concern value" of the Debtors' Yellowstone Club properties that are Prepetition Collateral of the Prepetition Lenders is $310 million. (Mem. Dec. at 8)

6. Since then, the Debtors embraced and used the Court's DIP Financing Order and adequate protection finding that the Prepetition Collateral has a value of at least $310 million. The Debtors expressly adopted the Court's December 17, 2008 conclusions and findings (including the $310 million valuation finding) in their December 31, 2009 motion seeking authorization of increased CrossHarbor DIP Financing.[1] Just recently, on March 20, 2009, the Debtors represented in court papers that they "do not dispute that the market value of the [Yellowstone Club] property is $310 million." (Brief of Debtor-Appellees on appeal from the DIP Financing Order, at 10 n.9) (Dist. Ct. Case No. CV-09-6 SHE) [Dkt. No. 13]

7. However, upon filing their Second Amended Reorganization Plan (the "Plan") and Disclosure Statement thereto [Dkt. No. 692] (hereinafter "DS at __"), the Debtors are now asserting an inconsistent position that if the Prepetition Lenders' claims and liens under the Prepetition Credit Agreement are not avoided, then the Prepetition Lenders "will have a significant deficiency claim." (DS at 50) The Debtors are now asserting that the value of the Prepetition Collateral is 'significantly' less than $310 million. Indeed, the Debtors have submitted an expert report allegedly valuing the Prepetition Collateral at only $92.6 million.

8. In these circumstances, where the Debtors are alleging that the value of the Prepetition Collateral is far less than $310 million, they cannot demonstrate that the Prepetition Lenders are adequately protected. The Prepetition Lenders therefore seek immediate entry of an order (i) conditioning any further Debtor use of the Prepetition Collateral on a grant to the Prepetition Lenders of junior adequate protection liens and (ii) directing the Debtors to sell the Farcheville Chateau and repay the CrossHarbor Financing with the proceeds such sale.

---

[1] In their motion [Dkt. No. 211] seeking authorization to increase the CrossHarbor DIP Financing, the Debtors stated that they "adopt the reasoning, factual findings and conclusions of law of this Court set out in its Memorandum of Decision in support of the Final Order [Docket # 181]." (Dkt. No. 211 at 8)

Relief Requested

9. The Prepetition Lenders seek immediate entry of an order under 11 U.S.C. §§ 105(a), 361 and 363(e): (i) authorizing and granting, and directing the Debtors to grant to the Agent and Prepetition Lenders, as a condition of any further Debtor use of the collateral of the Prepetition Lenders, junior adequate protection liens on all property that secures the CrossHarbor Financing, with such adequate protection liens being junior to the CrossHarbor Financing liens and security interests, and any other preexisting, valid and unavoidable third party liens and security interests and (ii) directing the Debtors to sell the Farcheville Chateau and repay the CrossHarbor Financing with the proceeds of such sale.

10. Such adequate protection is needed to protect the interests of the Agent and Prepetition Lenders in their collateral under the Credit Agreement against (i) the imposition of CrossHarbor Priming Liens on the Prepetition Collateral and (ii) any diminution in the value of the Prepetition Collateral since entry of the DIP Financing Order on December 17, 2008.

11. The Agent seeks adequate protection under section 363(e) of the Bankruptcy Code because (i) the Debtors' most recent value pronouncements are inconsistent with the Court's December 17, 2008 adequate protection findings (including the $310 million minimum valuation of the Prepetition Collateral), (ii) the Debtors' continuing use of the Prepetition Collateral has resulted, or may result, in a "significant" diminution of value of the Prepetition Lenders' interest in their Prepetition Collateral, (iii) the Prepetition Lenders' interests in the Prepetition Collateral are not adequately protected against the CrossHarbor Priming Liens and (iv) uncertainty surrounding the merits of the Debtors' insider Plan and its effect on the value of the Prepetition

4

Collateral poses significant risk of irreparable harm to the Prepetition Lenders' interests in their collateral.

## Basis For Relief Requested

12. Section 363(e) of the Bankruptcy Code provides that on request of entities (like the Prepetition Lenders) that have an interest in property to be used by the Debtors, the Court <u>shall</u> prohibit or condition the use of the Debtors' property "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) ("<u>at any time</u>, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, <u>the court</u>, <u>with or without a hearing</u>, <u>shall</u> prohibit or condition such use, sale, or lease as is necessary to <u>provide adequate protection</u> of such interest") (emphasis added).

13. Section 361 of the Bankruptcy Code sets forth three alternative non-exclusive methods by which adequate protection may be provided when required under section 363: (i) periodic cash payments, (ii) additional or replacement liens; or (iii) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361. Moreover, section 361 provides that adequate protection in the form of "additional or replacement liens" may be granted to the extent any "grant of a lien under section 364 . . . results in a decrease in the value" of the Prepetition Lenders' interests in their collateral. 11 U.S.C. § 361(1), (2).

14. Section 361 of the Bankruptcy Code provides that adequate protection in the form of "additional or replacement liens" may be provided to the extent any "use" of property or any "grant of a lien under section 364 . . . results in a decrease in the value" of the Prepetition Lenders' interests in their collateral. 11 U.S.C. § 361(1), (2).

15. The Debtors have the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1).

5

16. The requirement that the Court must grant adequate protection under section 363(e) is mandatory - - not discretionary. See In re Metromedia Fiber Network, Inc. et al. v. Lexent, Inc. et al. (In re Metromedia Fiber Network, Inc.), 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("[s]ection 363(e) is not permissive or discretionary - - it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity"), citing: 3 COLLIER ON BANKRUPTCY 363.05[3], at 363-39 (Lawrence P. King et al. eds., 15th ed. rev.) ("[T]he requirement of adequate protection in section 363(e) is mandatory."), 3 NORTON BANKR. L. & PRAC. 2D § 37:2 ("In the event that the appropriate valuation test applied by the court reveals that the debtor has insufficient equity in the collateral to cushion the impairment of the requested entity's interests in the property, the court should select one of two alternatives permitted by subsection (e). The court will either prohibit the use, sale or lease of the property by the trustee or debtor in possession, or condition the use, sale, or lease upon the trustee or debtor in possession providing adequate protection compatible with one of the mandates in Code § 361."), United States v. Whiting Pools, Inc., 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ("At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease the property as are necessary to protect the creditor."), In re Best Products Co., Inc., 138 B.R. 155, 158, aff'd, 149 B.R. 346 (S.D.N.Y. 1992) ("By making a motion for adequate protection, a secured creditor demonstrates its concern and puts the debtor in a position where it must decide what it should do with collateral. The debtor is given the option to surrender the property to the entity that has made the request, and avoid providing adequate protection or provide adequate protection to such entity for the debtor's continued use of the collateral.").

17. Here, where the Debtors are asserting that the Prepetition Lenders are undersecured - - and that the Prepetition Collateral allegedly is worth far less than $310 million -

6

- the Debtors cannot show that the Prepetition Lenders are adequately protected.  See <u>Resolution Trust Corp. v. Swedeland Develop. Group, Inc.</u> (In re Swedeland Develop. Group), 16 F.3d 552, at 566-67 (3rd Cir. 1994) ("We reject the notion that development property is increased in value simply because a debtor may continue with construction which might or might not prove to be profitable. . . . "[t]he law does not support the proposition that a creditor, particularly one . . . undersecured by many millions of dollars, may be adequately protected when a superpriority lien is created without the provision of additional collateral by the debtor"); <u>In re Pacific Lifestyle Homes, Inc.</u>, 2009 WL 688908 (Bankr. W.D. Wash March 16, 2009) (same) (bankruptcy court rejects contention that mere continuation of real property development project will afford adequate protection to lenders:  "hopes and speculation of future profitability . . . during a period of financial crisis unprecedented in recent history" is only "speculation" that "does not compensate" lenders for use of their collateral).

18. Given the Debtors' recent assertions and representations that the Prepetition Lenders are undersecured and that the Prepetition Collateral allegedly is worth far less than $310 million, junior adequate protection liens are needed to protect the Prepetition Lenders against the imposition of the priming liens imposed by the CrossHarbor DIP Financing and any diminution in the value of the Prepetition Lenders' collateral during these chapter 11 cases.

19. Accordingly, section 363(e) mandates that the Court enter an order conditioning any further Debtor use of the Prepetition Lenders' collateral on an immediate grant of junior adequate protection liens as requested herein.  Such adequate protection liens are <u>not</u> prohibited by the CrossHarbor Financing and will not result in an Event of Default thereunder.  The adequate protection liens will be <u>junior</u> to the CrossHarbor Financing liens and to any preexisting valid and unavoidable third party liens - - so no creditors will be prejudiced by the relief sought herein.

20. Moreover, the relief requested herein will protect the Prepetition Lenders only to the extent that their liens are unavoidable, and their claims under the Credit Agreement are allowed.

21. Granting the relief requested herein will not interfere with the Debtors' continuing operation of their businesses and the employment of their employees.

WHEREFORE, the Agent respectfully requests immediate entry of an order under 11 U.S.C. §§ 105(a), 361 and 363(e): (i) granting this Motion, (ii) authorizing and granting, and directing the Debtors to grant to the Agent and Prepetition Lenders, as a condition of any further Debtor use of the Prepetition Collateral of the Prepetition Lenders, junior adequate protection liens on all property that secures the CrossHarbor Financing, with such adequate protection liens being junior to CrossHarbor DIP Financing liens, mortgages and security interests, and any other preexisting, valid and unavoidable third party liens, mortgages and security interests, (iii) directing the Debtors to sell the Farcheville Chateau and repay the CrossHarbor Financing with the proceeds of such sale, and (iv) granting the Agent and Prepetition Lenders such other and further relief as is just and proper.

## NOTICE

**If you object to the motion, you must file a written responsive pleading and request a hearing within ten (10) days of the date of the motion. The responding party shall schedule the hearing on the motion at least 20 days after the date of the response and request for hearing and shall include in the caption of the responsive pleading the date, time and location of the hearing by inserting in the caption the following:**

> **NOTICE OF HEARING**
> **Date: _____**
> **Time: _____**
> **Location: _____**

**If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.**

8

Dated: Billings, Montana
       April 9, 2009

      /s/ Charles W. Hingle
Charles W. Hingle
Shane P. Coleman
HOLLAND AND HART LLP
401 North 31st Street
Suite 1500
Billings, Montana 59101
(406) 252-2166 (Phone)
spcoleman@hollandhart.com (Email)

Of Counsel:
Evan R. Levy (NY No. 2720068)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

  - and –
Mark S. Chehi (Del. Bar No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Credit Suisse,
sole administrative agent and collateral agent

4493399_1.DOC