James A. Patten (1191)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN P.L.L.C.**
2817 - 2nd Avenue North, Ste. 300
Billings, MT 59101
Telephone (406) 252-8500
Facsimile (406) 294-9500
E-mail: japatten@ppbglaw.com
Richard G. Birinyi
Lawrence R. Ream
**BULLIVANT HOUSER BAILEY PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930
Facsimile: 206.386.5130
E-mail: larry.ream@bullivant.com
E-mail: rick.birinyi@bullivant.com

Attorneys for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re:<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC., et al.,<br><br>Debtors. | No.: 08-61570-11-RBK<br><br>**DEBTORS' OBJECTION TO PREPETITION LENDERS' MOTION UNDER 11 U.S.C. §§ 105(a), 361 & 363(e)**<br><br>**Notice of Hearing**<br>**Date:** May 8, 2009<br>**Time:** 9:00 o'clock a.m.<br>**Place:** 201 East Broadway<br>Russell Smith Fed. Building<br>316 North 26th Street<br>Missoula, MT |

      The Debtors' respectfully object to Credit Suisse's ("CS") motion seeking post hoc relief in the form of disguised superpriority claims in this case. This objection is based on

1

the applicable provisions of the Bankruptcy Code and Rules and the following facts and argument.[1]

## I. FACTS

1. On December 17, 2008, this Court filed a Memorandum Decision[2] and an Order[3] regarding the Debtors' motion to approve its DIP financing.

2. In paragraphs 10 and 11 of the Order, the Court made specific findings regarding the adequate protection provided to the Prepetition Lenders.

3. Paragraph 10 of the Order, expressly states that "based upon the testimony of the Debtors' Chief Restructuring Officer, **whether or not the Prepetition Agent and the Prepetition Lenders ultimately prove to be oversecured or undersecured**, the DIP Loan will serve to preserve the value of their collateral and in fact enhance it in an amount that exceeds the amount of the DIP Loan by multiples."[4] (emphasis added)

4. CS filed a notice of appeal and the appeal from the Court's order approving the DIP financing and the Court's adequate protection finding is pending before the District Court.

5. CS's present motion is nothing more than a thinly disguised motion for reconsideration of the Court's December 17th Order. CS, however, has not even attempted to

---

[1] The Debtors Objection anticipate that they will file provide a full memorandum prior to the scheduled evidentiary valuation hearing scheduled for May 8.

[2] Docket # 181.

[3] Docket # 184.

[4] The Debtors cannot understand CS's continual suggestion that the Court found that the value of the CS collateral was $310M on the date of filing in light of this express finding deferring a determination of whether CS is oversecured or undersecured.

2

make a required showing for reconsideration. There are no new facts, there is no new law. In short, there is no reason to reconsider the prior order.[5]

6. Even if it is not an improper motion for reconsideration, it must be denied in any event because there are no facts to support the request.

## II. ARGUMENT

7. The overwhelming case authority expressly states that a creditor is only entitled to adequate protection against the decline in value as a result of the actual use of property from the date an adequate protection request is filed, not from the outset of a case.[6]

> Section 363(e) of the bankruptcy code provides that "on request of an entity that has an interest in property used ... by the trustee, the court, with or without a hearing, shall prohibit or condition such use ... as is necessary to provide adequate protection...." Courts remain divided on whether the petition date or the motion date is the appropriate date for valuing collateral for adequate protection purposes. *Compare In re Best Products Co., Inc.*, 138 B.R. 155 (Bankr.S.D.N.Y.1992) *with In re Craddock-Terry Shoe Corp.*, 98 B.R. 250 (Bankr.W.D.Va.1988). This court is persuaded that Chief Judge Lifland expressed the better view in *Best*. First, the language "on request" in § 363(e) strongly suggests that a secured creditor is entitled to adequate protection only upon a motion and only prospectively from the time protection is sought. 138 B.R. at 157. Moreover, valuing collateral as of the petition date for adequate protection purposes would reward inaction by secured creditors and subject reorganizing debtors to potentially crippling demands for "make-up" payments late in a case. *Id.*; *see also, e.g., In re Continental Airlines,* 146 B.R. at 540. *But see, e.g., In re Craddock-Terry Shoe Corp.*, 98 B.R. at 255; *In re Ritz-Carlton of D.C., Inc.*, 98 B.R. 170, 173 (S.D.N.Y.1989). It

---

[5] CS's own appraiser now concludes that the Court's original adequate protection determination was exactly correct. According to his opinion, as of April 1st, the difference between the going concern value of CS's collateral and the liquidation value of CS's collateral is between $116M and $131M. There now appears to be no dispute whatsoever that maintaining the going concern value of the property is adequately protecting CS's interest in the collateral.

[6] *See generally In re Waverly Textile Processing, Inc.,* 214 B.R. 476 (Bankr.E.D.Va.,1997).

3

is worth noting that the only U.S. Court of Appeals to address this issue, the Eighth Circuit, indicates that the motion date is the date from which a creditor is entitled to adequate protection payments. *Ahlers v. Norwest Bank Worthington, N.A.*, 794 F.2d 388, 395 & n. 6 (8th Cir.1986), *rev'd on other grounds sub nom., Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Accordingly, this court holds that the date IPF filed its motion, September 12, 1997, and not the petition date, is the proper date for valuing IPF's collateral for adequate protection purposes.[7]

8. Case authority is quite clear that the § 363(e) adequate protection is predicated on the "use" of the property in the case, not a general decline in the market value of the property.[8]

9. A Debtor's mere holding property for sale during the pendency of a case is not an actual use of the property entitling a creditor to an administrative expense claim.[9]

> We appreciate that FMCC wants to be compensated for the delay and related opportunity loss occasioned by the Dobbinses' continued possession of its collateral. And we agree that in many cases "it would be inequitable to tax the creditor with the burden of the court's error if the judicially determined adequate protection later proves to be 'inadequate.'" *Cheatham v. Central Carolina Bank & Trust Co. (In re Cheatham)*, 91 B.R. 382, 387 (E.D.N.C.1988). However, it also strikes us as inequitable to tax unsecured creditors for a decline in the value of collateral when the decline does not result from a use that actually benefits the estate: "To prioritize ... claims where they are not clearly entitled to such treatment, is not only inconsistent with the policy of equality of distribution but it also dilutes the value of the priority for the claims of creditors Congress in fact intended to prefer." *In re Chicago, M., St. P. and Pac. R.R.*, 658 F.2d 1149, 1163 (7th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982).[10]

---

[7] *Id.* 214 B.R. at 479.

[8] *See generally In re Continental Airlines, Inc.*, 154 B.R. 176 (Bankr.D.Del.1993).

[9] *See Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 870 (4th Cir.1994).

[10] *Id.* 35 F.3d at 872.

10. In *Dobbins* Ford Motor Credit had a mortgage on real property that declined in value during the case. It was not the Debtor's use of the property that created the decline in value, and in fact the Dobbins only held the property for sale. CS's present motion actually seeks more preferential relief than the relief the Fourth Circuit refused to grant Ford, it seeks a lien on all the Estate's unencumbered assets. CS's request, therefore, not only disrupts the priority scheme of administrative expense creditors, but also elevate it above all the other unsecured creditors in the case.

11. In this case CS's collateral consists of (1) lots held for sale, which may be purchased, but for which no post-petition sales have occurred and which have not been used, sold or leased under § 363, (2) tangible personal property in the Lodge and other areas, the real property common areas and related infrastructure (i.e. the ski slopes and roads), which have been used, insured, and maintained in accordance with the Debtors' well established practices that actually contribute to maintaining the value of the property, and (3) tangible personal property in storage, which has not been used, sold or leased under § 363.

12. The maintenance program with respect to the tangible personal property has, in fact, provided adequate protection to CS and there is not one shred of evidence that the property is declining in value.[11]

13. Not only is there no evidence that the value of the property is declining as a result of the Debtors' use, but also CS has never filed a motion for relief from the automatic stay. Any protection from a market decline through the imposition of the automatic stay is only available from the date of filing of a motion for relief from stay.

> Read together, sections 361(1) and 362(d)(1) provide
> that a party in interest shall be granted adequate protection when

---

[11] *See In re Bonner Mall Partnership*, 147 B.R. 50, 51 (Bankr.D.Idaho 1992)(concluding that property not depreciating notwithstanding the fact that debtor took $630,000 in annual depreciation deductions); *In re Elco Logging Corporation*, 42 B.R. 9, 11 (Bankr.D.Or. 1983)(concluding that IRS depreciation is of little value in determining actual depreciation).

5

the continuation of the automatic stay causes that party to suffer a decrease in the value of its property interest. In other words, a party can be granted relief from the stay if his interest is not ade-quately protected; if that request for relief from the stay is not granted, and the value of the collateral is declining, adequate protection may be required. *United Savings v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Thus, the Code provides for adequate protection as alternative relief to the lifting of the stay pursuant to § 362(d). Accordingly, this Court finds that it is necessary to seek relief from the stay in order for the Court to grant relief either by lifting the stay or requiring adequate protection for the decline in the market value of the collateral subsequent to the imposition of the stay. *In re Best Products Co., Inc.*, 138 B.R. at 155. (adequate protection is available to cover a decline in property's value from the time adequate protection is sought).[12]

14. Accordingly, even if there were any evidence of the decline in the value of the Debtors' real property held for sale since the filing of the case, CS would not be entitled to any protection and certainly not protection of the scope requested.

15. The final portion of the CS motion seeking an order regarding the sale of the Farcheville property is moot. The Court entered its order regarding Farcheville on April 15, 2009.[13]

---

[12] *In re Continental Airlines, Inc., supra* 154 B.R. at 180-81.

[13] Docket # 763.

6

DATED this 20th day of April, 2009.

>Richard G. Birinyi
>Lawrence R. Ream
>**BULLIVANT HOUSER BAILEY PC**
>1601 Fifth Avenue, Suite 2300
>Seattle, WA 98101-1618
>
>James A. Patten (1191)
>**PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**
>2817 – 2nd Avenue North, Suite 300
>Billings, MT 59101
>Attorneys for Debtors
>
>/s/JA Patten
>James A. Patten

11499430.1