Trent M. Gardner (I.D. #7477)
**GOETZ, GALLIK & BALDWIN, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580
Ph:   (406) 587-0618
Fax:  (406) 587-5144
Email: tgardner@goetzlawfirm.com

*Attorneys for Greg LeMond*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE:<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC, *et al.*,<br><br>Debtors. | Case No. 08-61570-11<br>**(Jointly Administered)** |

### OBJECTION OF GREG LEMOND TO CONFIRMATION OF SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED APRIL 3, 2009

This Objection is filed by GREG LEMOND ("Mr. LeMond"), a creditor in the above-captioned, jointly administered Chapter 11 case of YELLOWSTONE MOUNTAIN CLUB, LLC *et al.* (collectively, the "Debtors"). Pursuant to Bankruptcy Code §1129, Mr. LeMond hereby objects to confirmation of the Debtors' proposed Second Amended Joint Plan of Reorganization dated April 3, 2009 (the "Plan") (DE# 691). The Plan does not satisfy the requirements for confirmation because, among other things: (i) the Plan fails to properly classify Mr. LeMond's unsecured claim in violation of Bankruptcy Code §§1122(a) and 1129(a)(1), (ii) all unsecured creditors in Class 4 will not receive the same treatment under the Plan as required by Bankruptcy Code §1123(a)(4), (iii) the Plan has not been proposed in good faith in violation of Bankruptcy

Code §1129(a)(3), and (iv) the Plan discriminates unfairly in violation of §1129(b)(1). Accordingly, the Plan cannot be confirmed. In support of this Objection, Mr. LeMond states as follows:

## I. INTRODUCTION

The Debtors are the owners, developers, and operators of a master planned unit development located in Madison County, Montana. Pursuant to an agreement between Mr. LeMond and parties including two of the Debtors (i.e., Yellowstone Mountain Club, LLC ("Yellowstone Mountain Club") and Yellowstone Development LLC ("Yellowstone Development")), Mr. LeMond agreed to provide certain promotional services for Yellowstone Mountain Club. Mr. LeMond performed under the promotional services agreement. The Debtors, however, failed to compensate Mr. LeMond for his services as promised under the agreement. As a result, Mr. LeMond holds unsecured claims (the "LeMond II Claims") against the Yellowstone Mountain Club and the Yellowstone Development estates.[1]

As explained below, the Debtors have proposed a Plan that is fatally flawed in a number of respects. Among other things, the Debtors improperly classify Mr. Lemond's unsecured claims in a class of equity interests (Class 7), rather than in the class of general unsecured claims (Class 4). Accordingly, the Plan, and in particular the treatment of Mr. Lemond's unsecured claims, does not meet the requirements for confirmation.

## II. FACTUAL BACKGROUND.

1. On November 10, 2008 (the "Petition Date"), the Debtors (which include Yellowstone Mountain Club, Yellowstone Development, Big Sky Ridge LLC, and Yellowstone

---

[1] Mr. LeMond, through counsel, has filed four proofs of claim in the bankruptcy cases: (1) a proof of claim in the amount of $15,000,000 against Yellowstone Mountain Club (POC #531), (2) a proof of claim in the amount of $4,409,540.35 against Yellowstone Development (POC #223), and (3) a proof of claim in the amount $15,000,000 against Yellowstone Development (POC #131). This Objection relates solely to Mr. LeMond's claims in the amount of $15,000,000 against Yellowstone Mountain Club and Yellowstone Development. Nothing in this Objection waives, or shall be construed to waive, any of Mr. LeMond's rights and remedies with respect to the $3,375,000 claim.

Construction Company LLC) filed voluntary bankruptcy petitions for relief under Chapter 11 of the United States Bankruptcy Code, thereby commencing the above-captioned, jointly administered Chapter 11 cases.

2. Since the Petition Date, the Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code §§1107 and 1108.

3. The Debtors are the owners, developers, and operators of a master planned unit development located in Madison County, Montana known as the Yellowstone Club. See Disclosure Statement, p. 21 (DE #385). The Yellowstone Club is an approximately 13,500 acre vacation home community that includes one championship golf course, clubhouses, an equestrian center, ski lodges, and other recreational amenities. Id.

4. Mr. LeMond is an individual and resident of Medina, Minnesota.

5. Timothy Blixseth ("Mr. Blixseth") is an individual and was the president of Blixseth Group, Inc. ("BGI"), an Oregon corporation.

6. During the relevant time periods, BGI was the manager of Yellowstone Mountain Club and Yellowstone Development. BGI, Yellowstone Mountain Club, and Yellowstone Development are herein collectively referred to as the "Yellowstone Group".

7. Mr. LeMond and Mr. Blixseth, individually and as agent for the Yellowstone Group, are parties to an agreement whereby Mr. LeMond agreed to perform promotional services on behalf of Yellowstone Club. The promotional services provided by Mr. LeMond included, among others, giving speeches, entertaining prospective purchasers at his home, doing interviews with media outlets, and giving toasts.

8. As compensation for his promotional services, Mr. LeMond was promised certain real property located in the Yellowstone Club commonly referred to as Lot 11 ("Lot 11"). Mr. Blixseth and the Yellowstone Group promised to deed Lot 11 to Mr. LeMond in the event that Mr. LeMond brought in ten new members to Yellowstone Club.

9. Mr. LeMond has performed promotional services as promised and brought in more than 10 people who bought property at the Yellowstone Club.

10. As of the Petition Date, the Yellowstone Group was in breach of its obligations to Mr. LeMond under the above-described agreement.

11. The Subject Claims held by Mr. LeMond arise out of a breach of the promotional services agreement and not out of, or in relation to, any equity interest held by Mr. LeMond.

12. In January 2007, Mr. LeMond filed suit against various entities, including Yellowstone Development and Yellowstone Mountain Club, alleging breach of the promotional services agreement. The Third Amended Complaint in that litigation is attached hereto as **Exhibit A** and incorporated herein by this reference. That litigation is commonly referred to as LeMond II. The LeMond litigation had nothing to do with any equity interest or ownership claim in any of the Debtors.

13. The filing of the bankruptcy cases stayed LeMond II. On March 10, 2009, Mr. LeMond, through counsel, filed separate proofs of claim against Yellowstone Mountain Club in the amount of $15,000,000 (POC #531) and against Yellowstone Development in the amount of $15,000,000 (POC #131) relating to his claims in LeMond II (collectively, the "LeMond II Claims"). Even a cursory review of the Third Amended Complaint reveals that the LeMond II Claims cannot possibly be classified as equity interests.

14. Counsel for Mr. LeMond first learned that the Debtors intended to classify the LeMond II claims as equity interests when the Debtors filed their Notice To The Court on April 21, 2009 (DE #780), attaching various schedules, including Exhibit V - Claims by Class and Debtor. Subsequently, counsel for Mr. LeMond received ballots for Mr. LeMond to vote on his LeMond II claims as part of Class 7. Counsel has had communications with Debtors' counsel about correcting the error and reclassifying the LeMond II claims as Class 4 - General Unsecured Claims. To date, however, the error has not been corrected.

**The Debtors' Plan And Disclosure Statement**

15. On April 6, 2009, the Debtors filed their revised "<u>Disclosure Statement</u>" (the "Disclosure Statement"), referencing the Plan.

16. The Plan designates thirteen classes of claims and one class of interests. <u>See</u> Disclosure Statement, p. 49. This Objection makes specific reference to Class 4 and Class 7 claims designated by the Debtors.

17. As proposed by the Debtors, Class 4 consists of all unsecured, non-priority Allowed Claims against the Debtors that are not Convenience Claims or who do not elect to voluntarily reduce their claims to $5,000 and become a Convenience Class Claim. <u>Id.</u> at 51. Under the Plan, it is contemplated that, given a certain set of circumstances, a Trade Creditor Fund in an amount not to exceed $7,500,000 shall be established for payment of some, but not all, Allowed Claims in Class 4. <u>Id.</u> at 61. The persons or entities participating in the Trade Creditor Fund will be chosen by the Reorganized Debtors in consultation with the Unsecured Creditors' Committee and the Ad Hoc Members' Committee. <u>Id.</u>

18. Class 7 consists of the membership interests of the owners of the Debtors. <u>Id.</u> at 52. Under the Plan, the Holders of such membership interests will not receive any distributions from the Reorganized Debtors. <u>Id.</u>

19. In Exhibit V to the Disclosure Statement, the Debtors provide a list of Claims, sorted by Class and Debtor. Exhibit V indicates that the Debtors have classified the LeMond II Claims as Class 7 equity interests. Contrary to that classification, however, the Debtors do not list Mr. LeMond on Schedule 1.39 to the Plan, which is a schedule of "Current Equity Holders".

**III.   <u>THE PLAN CANNOT BE CONFIRMED.</u>**

Bankruptcy Code §1129 states the requirements that a Chapter 11 plan of reorganization must meet in order to be confirmed by the Court. <u>See</u> 11 U.S.C. §1129(a) and (b). The proponent of a plan has the burden of proving by a preponderance of the evidence that all of the

confirmation requirements of Section 1129 have been met. See In re Briscoe Enterprises, Ltd., 994 F.2d 1160, 1165 (5th Cir. 1993), cert. denied, 510 U.S. 992, 114 S. Ct. 550, 126 L. Ed. 2d 451 (1993). If any requirement is not satisfied, the plan may not be confirmed. The Debtors' Plan fails to satisfy the requirements of Section 1129, and, therefore, it cannot be confirmed.

### A. The Plan Violates Bankruptcy Code §§1122, 1123, And 1129(a)(1).

Bankruptcy Code §1129(a)(1) provides that a plan must comply with the applicable provisions of the Bankruptcy Code in order to be confirmed by the Court. This provision requires, among other things, compliance with Bankruptcy Code §§1122 and 1123 governing classification of claims and contents of a plan. See In re Barakat, 99 F.3d 1520, 1527 (9th Cir. 1996); In re Apex Oil, Inc., 118 B.R. 683 (Bankr. E.D. Mo. 1990); In re Johns-Manville Corp., 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom. Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988). The Plan fails to satisfy the requirements of Sections 1122, 1123, and 1129(a)(1).

#### 1. The Plan fails to satisfy the requirements of Bankruptcy Code §1122.

Bankruptcy Code §1122(a) provides that, other than claims classified together for administrative convenience, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. §1122(a). Because there is an inherent difference between claims and interests, a claim cannot be classified in the same class as an interest. 7 COLLIER ON BANKRUPTCY 1122.03[2] (15th ed. rev. 2005); see e.g. In re Deep Rock Oil Corp., 113 F.2d 266 (10th Cir.), 311 U.S. 699, 61 S. Ct. 138, 85 L. Ed. 453 (1940).

Bankruptcy Code §101(5) provides that the term "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." The Bankruptcy Code does not provide a definition for the term "interest". The term "interest",

however, is "used to describe proprietary rights, such as common stock, preferred stock or other equity interests in a debtor." 7 COLLIER ON BANKRUPTCY 1122.03[2] (15th ed. rev. 2005).

The LeMond II Claims arise out of LeMond's rights under a contract for promotional services. Thus, the LeMond II Claims are properly classified as "claims" and not as "interests". The LeMond II Claims properly should be included in Class 4, General Unsecured Claims. The Debtors' proposed Plan, however, improperly includes the LeMond II Claims in the Class 7 Equity Interests. This arbitrary classification scheme does not satisfy the requirements of Section 1122(a).

2. **The Plan fails to satisfy the requirement of Bankruptcy Code §1123 that all claims of a particular class be treated equally.**

Bankruptcy Code §1123(a)(4) provides that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. §1123(a)(4). In this case, the Plan does not meet the requirement of Section 1123(a)(4) because it provides for disparate treatment of claims in Class 4. Under the Plan, at the Reorganized Debtors' discretion, some Class 4 creditors will receive distributions from the Trade Creditor Fund while other Class 4 creditors will not. Because the Debtors propose to treat claims within Class 4 differently, the requirements of Section 1123(a)(4) are not met.

B. **The Plan Violates Bankruptcy Code §§1129(a)(3).**

Under Bankruptcy Code §1129(a)(3), a plan cannot be confirmed unless "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1129(a)(3). A plan is only proposed in good faith where it achieves a result consistent with the objectives and purposes of the Bankruptcy Code. Ryan v. Loui (In re Corey), 892 F.2d 829, 835 (9th Cir. 1989); see also In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1994) ("According to the good faith requirement of section 1129(a)(3), the court looks to the debtor's plan and

determines, in light of the particular facts and circumstances, whether the plan will fairly achieve a result consistent with the Bankruptcy Code"). The requisite good faith determination is based on the totality of the circumstances. Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167, 172 (9th Cir. BAP 1988).

In a Chapter 11 case, a paramount fiduciary duty of a debtor-in-possession is "to maximize the assets of the bankruptcy estate to allow maximum recovery for the debtor's creditors" and refrain from acting in a manner which could damage the estate or hinder successful reorganization. See In re Feiler, 218 F.3d 948, 952 (9th Cir. 2000); Marvel Entertainment, 140 F.3d 463, 472 (3d Cir. 1998). The burden of proposing a plan that satisfies the requirements of the Bankruptcy Code "falls particularly heavily on the debtor-in-possession [ ] since they stand in a fiduciary relationship to the estate's creditors." See Everett v. Perez (In re Perez), 30 F.3d 1209, 1214 n.5 (9th Cir. 1994).

The Debtors have not met their burden of proposing a plan which will fairly achieve a result consistent with the Bankruptcy Code. As stated above, the Plan singles out Mr. LeMond's claim to receive no distribution whereas other unsecured creditors will receive a distribution. In addition, the Debtors' propose to treat some Class 4 claimants more favorably than others in their sole discretion. Such action by the Debtors is inconsistent with their obligation to treat all creditors fairly. For these reasons, it can not be determined that the Debtors' have proposed the Plan in good faith in accordance with Section 1129(a)(3).

**C. The Plan Discriminates Unfairly In Violation of Bankruptcy Code §1129(b)(1).**

A plan may not be confirmed under Section 1129(b) if the plan discriminates unfairly as to a class of claims or interests. Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage), 166 B.R. 892, 898 (9th Cir. B.A.P. 1994). "A plan discriminates unfairly if it singles out the holder of some claim or interest for particular treatment." Id. In this case, the LeMond II Claims have been singled out from other unsecured claims, and provided much less

favorable treatment for no legitimate reason.  Under the proposed Plan, Mr. LeMond would not receive a distribution with respect to the LeMond II Claims, while general unsecured creditors in Class 4 would receive a substantial distribution.  Thus, the proposed Plan discriminates unfairly against the LeMond II Claims.

**IV.     CONCLUSION.**

Based on the forgoing, Mr. LeMond hereby requests that the Court issue an Order:

1. Denying confirmation of the Plan; and
2. Granting such other and further relief as is proper and just.

RESPECTFULLY SUBMITTED this 11th day of May, 2009.

GOETZ, GALLIK & BALDWIN, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580


By: /s/*Trent M. Gardner*
    Trent M. Gardner
    Attorneys for Greg LeMond

# CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Objection of Greg LeMond to Confirmation of Second Amended Plan of Reorganization Dated April 3, 2009 was served by first class mail and email upon the following on the 11th day of May 2009, at the following addresses:

*Attorneys for Debtor*
James A. Patten
Patten, Peterman, Bekkedahl & Green
2817 Second Avenue North, Suite 300
Billings, MT 59101
japatten@ppbglaw.com

*Attorneys for AdHoc Committee*
Jonathan B. Alter
Jaska P. Miettinen
Bingham McCutchen, LLP
One State Street
Hartford, CT 06103-3178
jonathan.alter@bingham.com
jaska.miettinen@bingham.com

*Office of the U.S. Trustee*
Daniel P. McKay
Office of the United States Trustee
Liberty Center, Suite 204
301 Central Avenue
Great Falls, MT 59401
Dan.P.McKay@usdoj.gov

*Attorneys for Creditors' Committee*
J. Thomas Beckett
David P. Billings
Parsons Behle & Latimer
P.O. Box 45898
Salt Lake City, UT 84145-0898
tbeckett@parsonbehle.com
dbillings@parsonbehle.com

James H. Cossitt
Cossitt Law Firm, P.C.
202 KM Building, 40 2nd St. E
Kalispell, MT 59901-4563
jhc@cossittlaw.com


/s/ Trent M. Gardner
Trent M. Gardner