CHARLES W. HINGLE (#1947)
SHANE P. COLEMAN (#3417)
HOLLAND & HART LLP
401 NORTH 31st STREET, SUITE 1500
BILLINGS, MONTANA 59101
(406) 252-2166 (PHONE)
(406) 252-1669 (FAX)
chingle@hollandhart.com (EMAIL)
spcoleman@hollandhart.com (EMAIL)

EVAN R. LEVY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 FOUR TIMES SQUARE
NEW YORK, NEW YORK 10036
(212) 735-3000 (PHONE)
elevy@skadden.com (EMAIL)
*Admitted Pro Hac Vice*
   - and –

MARK S. CHEHI
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899
(302) 651-3000 (PHONE)
mchehi@skadden.com (EMAIL)
*Admitted Pro Hac Vice*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Chapter 11 |
| Yellowstone Mountain Club, <u>et al.</u>, | Case No. 08-61570-11<br>Jointly Administered |
| Debtors. | |

**OBJECTION OF PREPETITION LENDERS TO CONFIRMATION OF SECOND
AMENDED JOINT PLAN OF REORGANIZATION**

Credit Suisse, as administrative agent and collateral agent ("Credit Suisse" or, the "Agent") for the prepetition lenders (the "Prepetition Lenders") under that certain Credit Agreement, dated as of September 30, 2005 (the "Prepetition Credit Agreement"), hereby objects (the "Objection") to confirmation of the Debtors' proposed Second Amended Joint Plan of Reorganization (the "Plan"), dated and filed on April 3, 2009 (Dkt. 691), as follows:

### Objections

1. <u>Plan Fails To Provide For Confirmation Pursuant To 11 U.C.S. § 1129(b)</u>. Assuming (as expected) that the Prepetition Lenders, voting as holders of Class 3 or Class 8 claims, do <u>not</u> vote as a class to accept the Plan[1], then the Plan is unconfirmable as a matter of law, because the Plan fails to provide for confirmation pursuant to (and lacks any terms that would satisfy) the "cram-down" requirements of section 1129(b) of the Code. See 111 U.S.C. § 1129(b) (specifying "fair and equitable" and "does not discriminate unfairly" tests that must be satisfied to confirm Plan in absence of acceptance by class of impaired secured or unsecured creditors); <u>Liberty Nat'l Enter. v. Ambanc La Mesa Ltd. P'ship</u> (In re Ambanc La Mesa Ltd. P'ship), 115 F.3d 650, 653 (9th Cir. 1997) (plan may be confirmed if cram-down requirements of section 1129(b) are met with respect to non-accepting class of impaired creditors).

2. The Plan makes no provision generally - - or specifically - - for confirmation pursuant to section 1129(b) of the Code. The Disclosure Statement alludes to section 1129(b) from time to time (DS at 58-59, 72-74, 87) - - but never states that the

---

[1] The Agent is informed and understands that the Prepetition Lenders, as holders of Class 3 and Class 8 claims, holding over 33 1/3% of all claims under the Prepetition Credit Agreement, have or will cast ballots to reject the Plan. As such, the Plan can be confirmed only by satisfying the "cram-down" requirements of section 1129(b) of the Code.

1

Debtors will invoke section 1129(b) to confirm the Plan, or that the Plan satisfies any section 1129(b) cram-down requirements - - which it does not.

3. <u>Plan Fails To Provide "Fair And Equitable" Treatment Under 11 U.S.C. § 1129(b)(2)(A)</u>. The Plan is non-confirmable if the Prepetition Lenders do <u>not</u> vote as Class 3 secured creditors to accept the Plan, because the Plan does not provide terms of treatment for Class 3 claims that satisfy the "fair and equitable" test of section 1129(b)(2)(A) of the Code. <u>See</u> 11 U.S.C. § 1129(b)(2)(A)(i)-(iii) (defining alternative "fair and equitable" standards for cram-down of class of secured claims).

4. The Plan cannot satisfy the section 1129(b)(2)(A)(i) secured creditor cram-down standard because the Plan purports to <u>extinguish</u> the Prepetition Lenders' liens (that must be retained to secure deferred cash payments required by that section of the Code). <u>See</u> Plan § 3.3.3 (Prepetition Lender liens "shall be satisfied and extinguished pursuant to Section 1123(a)(5)(E) of the Bankruptcy Code"). Section 1123(a)(5)(E) does not excuse compliance with the cram-down requirements of section 1129(b). <u>In re Keller</u>, 157 B.R. 680, 685-86 (Bankr. E.D. Wash. 1993) ("it is undisputed that modification of a lien as authorized under §1123(a)(5)(E) must meet the 'cram-down' requirements of §1129 by satisfying one of the alternatives under §1129(b)(2)(A)").[2]

5. The Plan also cannot satisfy the section 1129(b)(2)(A)(ii) cram-down standard because the Plan does not provide that the Prepetition Lenders' liens will attach to the proceeds of a sale of their collateral free and clear of liens, and does not provide for any such sale, or the exercise of the Prepetition Lenders' credit bid rights under sections

---

[2] The Plan will not "satisfy" the Prepetition Lenders' liens within the meaning of section 1123(a)(5)(E) because it will allocate only a portion of a nominal $70 million note to payment of the Prepetition Lenders' secured claims that have a higher value.

2

363(k) and 1129(b)(2)(A)(ii). See <u>John Hancock Mutual Life Ins. Co. v. California Hancock, Inc.</u> (<u>In re California Hancock, Inc.</u>), 88 B.R. 226 (9th Cir. BAP 1988) (a plan that does not allow a mortgagee the right to credit bid is unconfirmable).

6. The Plan also cannot satisfy the section 1129(b)(2)(A)(iii) cram-down standard because the Plan does not provide that the Prepetition Lenders will receive the "indubitable equivalent" of their secured claims - - that which is "too evident to be doubted." <u>In re Arnold & Baker Farms</u>, 85 F.3d 1415, 1421 (9th Cir. 1996). Allocating a portion of a nominal $70 million note to pay Prepetition Lenders' higher valued secured claims falls indisputably short of the "indubitable equivalent" standard.

7. In sum, the Plan must fail because it proposes to extinguish the Prepetition Lenders' liens without paying them "the present value of the collateral securing [their] claims" as required under section 1129(b). See <u>Ambanc</u>, 115 F.3d at 653.

8. <u>Violation of Absolute Priority Rule Under 11 U.S.C. § 129(b)(2)(B)</u>. The Plan is not "fair and equitable" if the Prepetition Lenders do <u>not</u> vote as Class 8 unsecured creditors to accept the Plan, because the Plan violates the absolute priority rule of unsecured creditor cram-down under section 1129(b)(2)(B). Under section 3.7.3 of the Plan, the Debtors' old equity owners are "entitled to receive such Holder's Pro Rata Share of an Equity Distribution from the Liquidation Trust." It is axiomatic that the "absolute priority" rule precludes any distribution of value to old equity holders unless a class of non-accepting unsecured creditors is paid in full on the effective date. The rule is codified in 11 U.S.C. § 1129(b)(2)(B).

9. The Plan's treatment of Intercompany Claims (Plan, § 3.6.3; DS, p. 35) is similarly non-confirmable to the extent that it allows distributions or retention of

3

anything of value on account of Intercompany Claims, if Prepetition Lenders do not vote as Class 8 to accept the Plan.

10. <u>Plan "Discriminates Unfairly" in Violation of 11 U.S.C. §§ 1123(a)(4) and 1129(b)(1)</u>. The Plan is non-confirmable if the Prepetition Lenders do <u>not</u> vote as Class 8 to accept the Plan, because it "discriminates unfairly" against Class 8 Prepetition Lender deficiency claims within the meaning of section 1129(b)(1) of the Code. 11 U.S.C. ' 1129(b)(1).

11. The Plan discriminates unfairly because unsecured creditors in other classes are to be paid in full - - whereas Class 8 "First Lien Lender Deficiency Claims" are being offered only a pro rata distribution on account of their deficiency claims. (Plan §§ 3.4, 3.5, 3.6, 3.8) <u>See also</u> 11 U.S.C. § 1123(a)(4) (plan shall "provide the same treatment for each claim or interest of a particular class").

12. The Plan provides for payment in full of all Class 5 Convenience Claims ("any Unsecured Claim in an amount equal to or less than $5,000" and any Unsecured Claim voluntarily reduced to $5,000) - - whereas Prepetition Lender unsecured deficiency claims are to receive only a pro rata fractional recovery on account of their unsecured Class 8 deficiency claims. (Plan §§ 1.35, 3.5, 3.8.3) While section 1122(b) of the Code permits a convenience class of claims "that the court approves as reasonable and necessary for administrative convenience," that is not the case here.

13. The Plan also discriminates unfairly against Class 8 deficiency claims by providing a $7,500,000 "Trade Creditor Fund" for discretionary "payment of Allowed Claims of local trade and other unsecured creditors." Likewise, the Plan provides for assumption of Yellowstone Club member contracts listed on the Member Assumption

4

Schedule, thereby leaving such member contract claimants unimpaired. (Plan § § 1.116, 5.1.3, 6.17)

14. The Plan's proposed payment in full of numerous unsecured creditors is unfair discrimination forbidden by the cram-down provisions of section 1129. See Oxford Life Insurance Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage, Inc.), 166 B.R. 892, 898 (9th Cir. BAP 1994) (disparate treatment of unsecured deficiency claims and trade creditor claims is unfair discrimination rendering plan unconfirmable).

15. Impermissible Classifications In Violation Of 11.U.S.C. § 1122(a) and § 1123(a)(1). The Plan is non-confirmable because it improperly classifies claims in violation of sections 1122(a) and 1123(a)(1) of the Code. The Plan classifies Prepetition Lender deficiency claims separately from general unsecured claims, in an effort to obtain an impaired consenting class. (Plan §§ 3.4, 3.8). See Barakat v. Life Ins. Co. of Virginia (In re Barakat), 99 F.3d 1520, 1526 (9th Cir. 1996) (legally created recourse debt cannot be separately classified from other unsecured claims absent legitimate business or economic justification). There is no justification for the separate classification in the Plan.

16. Also, the Plan classifies four separate classes of member contract rejection damages claims, creating artificial legal distinctions in order to ensure that the Debtors obtain an impaired consenting class satisfying section 1129(a)(10) of the Code (even if Prepetition Lender Class 8 deficiency claims are "deemed to be Allowed Claims in Class 4" that cause that class to reject pursuant to Section 3.8.4 of the Plan). (Plan §§ 3.9, 3.12, 3.13, 3.14) See Barakat, 99 F.3d at 1525 ("one clear rule that emerges from otherwise muddled case law on §1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan").

17. Finally - - and blatantly - - the Plan impermissibly classifies the Prepetition Lenders' section 507(b) <u>administrative</u> claims in Class 3 with the allowed <u>secured</u> claims of the Prepetition Lenders. (Plan § 1.66, 3.3.1) Section 507(b) administrative claims must be treated separately from Class 3 secured claims, and given priority over other section 507(a)(2) claims as required by section 507(b) of the Code - - not simply lumped in with Class 3 secured claims.

18. <u>Prohibited Non-Debtor Releases.</u> The Plan is non-confirmable because it proposes to release and exculpate non-debtor insiders with "exculpation and limitation of liability" terms and "no recourse" terms. (Plan § 7.75, 8.4) Section 8.4 of the Plan provides broad release and exculpation protections to insiders, including Edra Blixseth, her affiliates, BLX Group, Inc., and CrossHarbor (and its affiliates) for, among other things, "any act or omission in connection with, relating to or arising out of the Chapter 11 Cases." There is no consideration or justification here for insider releases.

19. Such releases are strictly forbidden in the Ninth Circuit and grounds for denial of confirmation of the Plan. <u>See</u> <u>Resorts Int'l v. Lowenschuss (In re Lowenschuss)</u>, 67 F.3d 1394 (9th Cir. 1995), *cert. denied*, 517 U.S. 1243 (1996) ("This court has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging liabilities of non-debtors"); <u>In re American Hardwoods</u>, 885 F.2d 621 (9th Cir. 1989); <u>Underhill v. Royal</u>, 769 F.2d 1426 (9th Cir. 1985).

20. <u>Plan Not Feasible in Violation of 11 U.S.C. § § 1129(a)(9) & (11)</u>. The Plan is not feasible (and therefore non-confirmable) if the Court finds the value of the Prepetition Lenders' collateral is significantly less now than it was on the Petition Date (as valued by the Court on December 17, 2008).

6

21. A lower value now of the Prepetition Collateral will give rise to Prepetition Lender superpriority administrative claims under section 507(b) of the Code, for failure of adequate protection. In re LPM Corp. 300 F.3d 1134, 1138 n.3 (9th Cir. 2002) (section 507(b) claims receive super-priority when adequate protection fails); In re Center Wholesale, Inc., 759 F.2d 1440, 1451 (9th Cir. 1985) ("If the debtor in possession . . . fails to provide adequate protection of a creditor's security interest, section 507(b) . . . directs the bankruptcy court to grant the injured creditor a 'superpriority' entitling the creditor to be paid ahead of all other creditors with administrative expense claims."); In re Air Beds, Inc., 92 B.R. 419 (9th Cir. BAP 1988) ("The purpose of section 507(b) is to fund claims arising from the inadequacy of adequate protection to fully compensate a secured creditor for erosion in the value of its property interest during the course of a bankruptcy case.").

22. If the Debtors are unable to pay Prepetition Lender section 507(b) claims on the effective date of the Plan, as required by section 1129(a)(9)(A), the Plan is not feasible under section 1129(a)(11). See In re Peaches Records and Tapes, Inc., 102 B.R. 193, 195 (9th Cir. BAP 1989).

23. <u>Failure to Provide Adequate Means For Implementation in Violation of 11 U.S.C. § 1123(a)(5)</u>. The Plan is non-confirmable because it fails to provide adequate means for implementation under section 1123(a)(5) in the event that the Prepetition Lenders exercise their section 1111(b) election - - or if the Debtors determine to sell substantially all of their Yellowstone Club Project assets. See In re Associated Vintage Group, Inc., 283 B.R. 549, 560 (9th Cir. BAP 2002) (observing that adequate means for

7

plan implementation is "essential element" of a chapter 11 plan). See 11 U.S.C. § 1123(a)(5) (plan shall "provide adequate means for its implementation").

24. The Plan provides no means for implementation if the Prepetition Lenders exercise their section 1111(b) rights. The Plan only provides that the Debtors "may elect to surrender all Collateral (other than any Notes pledged to the First Lien Lenders) securing such Allowed First Lien Lender Claims . . . without representation or warranty by or recourse against the Debtors or the Reorganized Debtors and in full and complete settlement, release and discharge of such Claim." (Plan §3.3.3) Such possible surrender of Prepetition Lender collateral (including ski slopes, lifts and golf course) upon a section 1111(b) election would leave the Reorganized Debtors without their Yellowstone Club assets that presumably are required to operate their businesses as described in the Disclosure Statement. For instance, without ski slopes and lifts, the Reorganized Debtors would be utterly unable to provide adequate assurance of future performance under assumed Yellowstone Club member contracts.

25. The Plan simply does not provide any means for implementing and effectuating a sale of substantially all of the Debtors' Yellowstone Club Project assets if that is the outcome of the Debtors' pending auction process, as is contemplated and permitted by the Court's bidding procedures.

26. <u>Failure To Conduct Proper Solicitation in Violation of 11 U.S.C. § § 1129(a)(2) 1125 and 1126</u>. Confirmation of the Plan should be denied because the Debtors inexplicably failed to distribute the Disclosure Statement to, and solicit the votes of, each Prepetition Lender on or before the April 15, 2009 deadline set by the Court's solicitation procedures order. In this regard, the Debtors' failed to meet their obligations

8

under sections 1125(c) and 1126 of the Code, thereby resulting in failure to satisfy section 1129(a)(2).

27. <u>Substantive Consolidation</u>. Section 8.6 of the Plan is non-confirmable because it provides for substantive consolidation of the Yellowstone Mountain Club, LLC ("YM") and Yellowstone Development, LLC ("YD") estates. The Debtors cannot show "(1) the[ir] creditors dealt with the consolidated entities as if they were the same, or (2) the affairs of the consolidated entities are so entangled that it would not be feasible to identify and allocate all of their assets and liabilities". <u>In re Bonham</u>, 229 F.3d 750, 771 (9th Cir. 2000). Creditors, including the Prepetition Lenders, have treated YM and YC as separate entities, and have asserted independent claims against each of them. Their respective separate assets and liabilities are distinguishable and can be "disentangled."

28. <u>Lack of Good Faith in Violation of 11 U.S.C. § 1129(a)(3)</u>. The Plan is non-confirmable because it was not proposed in good faith by the Debtors. As the record of these chapter 11 cases shows, and will be evidenced at the confirmation hearing, the Plan was proposed to effectuate an inequitable transfer of ownership of the Yellowstone Club to insiders including CrossHarbor and Discovery Land Company. CrossHarbor, who has financially dominated and controlled Edra Blixseth, and through her the Debtors, caused the commencement of these cases and the formulation of the Plan to effectuate a transfer of ownership to CrossHarbor and other insiders - - without permitting credit bidding by the Prepetition Lenders - - and to strip them of their collateral rights and liens.

29. <u>Reservation of Rights</u>. The Agent and Prepetition Lenders do not waive (and expressly reserve) their rights to file and/or assert additional objections to confirmation of the Plan before the conclusion of the hearing thereon.

WHEREFORE, the Agent respectfully requests entry of an order (i) denying confirmation of the Plan; and (ii) granting the Agent and Prepetition Lenders such other and further relief as is just and proper.

Dated: May 11, 2009
      Billings, Montana

                    /s/ Shane P. Coleman
                    Charles W. Hingle
                    Shane P. Coleman
                    HOLLAND & HART LLP
                    401 North 31st Street
                    Suite 1500
                    Billings, Montana 59101
                    (406) 252-2166 (Phone)
                    (406) 252-1669 (Fax)
                    chingle@hollandhart.com (Email)
                    spcoleman@hollandhart.com (Email)

Of Counsel:
Evan R. Levy (NY No. 2720068)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

  - and –

Mark S. Chehi (Del. Bar No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Credit Suisse,
sole administrative agent and collateral agent

578913-Wilmington Server 1A - MSW

**CERTIFICATE OF SERVICE**

 I, the undersigned, certify under penalty of perjury, that on May 11, 2009, or as soon as possible thereafter, copies of the foregoing document were served electronically by the Court's ECF notice to all persons or entities requesting special notice or otherwise entitled to the same and that, in addition, service by mailing a true and correct copy, first class postage prepaid, was made to the following persons or entities as follows:

 James A. Patten
 Ste. 300, The Fratt Bldg.
 2817 2nd Avenue N
 Billings, MT  59101

 Lawrence R. Ream
 Bullivant Houser Bailey PC
 1601 5th Avenue Ste. 300
 Seattle, WA  98101-1618

 J. Thomas Beckett
 Parsons, Behle & Latimer
 201 South Main Street
 Salt Lake City, UT  84111

 James H. Cossitt
 James H. Cossitt, P.C.
 40 2nd St. E., Ste 202
 Kalispell, MT  59901-6112

 Daniel P. McKay
 Office of the U.S. Trustee
 Liberty Center, Suite 204
 301 Central Avenue
 Great Falls, MT  59401

 DATED:  May 11, 2009

             /s/ Shane P. Coleman
            Charles W. Hingle
            Shane P. Coleman
            HOLLAND & HART LLP
            401 North 31st Street
            Suite 1500
            Billings, Montana 59101
            (406) 252-2166 (Phone)
            chingle@hollandhart.com (Email)
            spcoleman@hollandhart.com (Email)

4517485_1.DOC