UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC**,<br><br>Debtor. | Case No. **08-61570-11**<br><br>Jointly Administered with: |
| In re<br><br>**YELLOWSTONE DEVELOPMENT, LLC**,<br><br>Debtor. | Case No. **08-61571-11** |
| In re<br><br>**BIG SKY RIDGE, LLC**,<br><br>Debtor. | Case No. **08-61572-11** |
| In re<br><br>**YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC**,<br><br>Debtor. | Case No. **08-61573-11** |

### *O R D E R*

At Butte in said District this 13th day of May, 2009.

In a related Adversary Proceeding, the Court entered a Partial and Interim Order on May 12, 2009, equitably subordinating Credit Suisse's claim to CrossHarbor's debtor-in-possession financing, the administrative fees and costs of the Debtors' bankruptcy estate and the allowed unsecured claims of non-member creditors.  Based upon the Liquidation Analysis attached as Exhibit 2 to Debtors' Disclosure Statement filed April 3, 2009, at docket entry no. 692, the Court anticipated that Credit Suisse's first lien position would be subordinated to approximately $35.375 million for DIP financing, administrative expenses, priority unsecured claims and unsecured claims.

The Court also concluded in a separate Order entered May 12, 2009, that Credit Suisse would be allowed to credit bid at today's auction of the Yellowstone Club.  For purposes of confirmation and the auction, the Court concluded that the fair market value of Credit Suisse's collateral is $232 million and concluded that the value of the Warren Miller Lodge is $20.4 million.  In other words, for purposes of allocation, Credit Suisse's collateral comprises 91.9 percent of the Yellowstone Club and the Warren Miller Lodge comprises the other 8.1 percent.

To provide further clarification to the parties following entry of the May 12, 2009, Partial and Interim Order, a hearing was held May 13, 2009, in Billings.  The Debtors' counsel of record, James A. Patten of Billings, Montana appeared at the hearing and argued that he thought the total amount of the Debtors' administrative claims, priority claims and unsecured claims was approximately $57,375,000, which amount does not include member rejection claims or a $50 million disputed claim asserted by Yellowstone Club World (YCW").  Mark S. Chehi of Wilmington, Delaware, and Evan R. Levy of New York, New York, appeared at the hearing on behalf of Credit Suisse and argued that it was unreasonable, for purposes of

determining the cash component of Credit Suisse's credit bid, to require Credit Suisse to commit in excess of $57 million in cash to its bid.

The parties agreed at the hearing that given this Court's equitable subordination ruling, that unsecured creditors must be paid prior to any payment to Credit Suisse on its prepetition claim. The parties similarly agree that the allowed unsecured claims will be at least $7.7 million. The Debtors, however, argue that the allowed unsecured claims may substantially exceed $7.7 million and if Credit Suisse submits the winning bid at auction, and thereby takes the assets of the Yellowstone Club, that Credit Suisse will in effect receive its collateral to the detriment of the unsecured creditors.

The Court first clarified at the hearing that its equitable subordination order did not subordinate Credit Suisse's secured claim to claims stemming from membership at the Yellowstone Club, including possible membership rejection damages. The Court also contemplates that Credit Suisse's secured claim is not subordinated to any claims asserted by insiders, such as the Blixseths or related entities, such as the Yellowstone Club World, and is similarly not subordinated to any rejection damages that might be asserted by CrossHarbor Capital Partners, or any of its affiliates. Such ruling will be more fully articulated in the Court's final order and judgment in related adversary proceeding 09-00014. The aforementioned clarification should remove the YCW's disputed claim as a factor to consider at the auction.

What is left is Debtors' assertion that Credit Suisse needs to include in its bid a cash component in excess of $57 million. Credit Suisse counters that a $35.375 million cash component coupled with a note payable should suffice. In an attempt to expeditiously resolve the matter, Credit Suisse agreed to increase the cash component of its bid to approximately

3

$43.075 million and further agreed to execute a note payable up to $14.3 million, secured by the assets of the Yellowstone Club.  The note payable would be senior to Credit Suisse's prepetition claim, but would not have priority over any new money that might be injected by Credit Suisse into the Yellowstone Club in the future.  Counsel for Credit Suisse represented that Credit Suisse contemplates that if it is the successful bidder, it could conceivably inject $80 to $90 million of new money into the Yellowstone Club operations.

    Because Credit Suisse agreed to meet Debtors' projected unsecured debt number of approximately $43.075 million, Debtors were left to quibble over the priority of the $14.3 million note payable vis-a-vis the new money.  In particular, Debtors' counsel argued that subordinating the $14.3 note payable to new money put the unsecured creditors at risk.[1]  To bring finality to the matter and to allow the parties time to proceed with the auction scheduled for later today,

    IT IS ORDERED that Credit Suisse shall be allowed to exercise its right to credit bid, provided such credit bid contains a cash component of not less than approximately $43.075 million ($35.375 million plus $7.7 million) and provided such credit bid includes a note payable of up to $14.3 million for payment of allowed unsecured claims.  Such allowed unsecured claims could also be paid from other assets of the estate, thereby reducing the amount payable under the $14.3 million note.  The $14.3 million note payable shall be secured by the assets that are the subject of the auction and the note payable shall have priority over Credit Suisse's $232 million allowed secured claim.  However, the $14.3 million note payable

---

[1] Interestingly, the Debtors apparently see no risk in taking a $70 million note from CrossHarbor and subordinating the unsecured creditors' claims to CrossHarbor's new money.

will not have priority over any new money that might be injected by Credit Suisse into the Yellowstone Club.

>                       BY THE COURT
>
>                       /s/ Ralph B. Kirscher
>                       _____
>                       HON. RALPH B. KIRSCHER
>                       U.S. Bankruptcy Judge
>                       United States Bankruptcy Court
>                       District of Montana