**SCHEDULE 1.123**

**YELLOWSTONE CLUB SETTLEMENT TERM SHEET**

# YELLOWSTONE CLUB SETTLEMENT TERM SHEET
### Privileged and Confidential
5/17/09

Page 1 of 19

This is a term sheet (this "Term Sheet") proposal transmitted for discussion purposes only until fully executed by the Parties, at which point this Term Sheet shall be binding on all parties hereto subject only to the occurrence of the following (the "Effectiveness Conditions"):  the Effective Date, the entry of an order vacating the Adversary Proceedings Order and the Valuation/Adequate Protection Orders and the dismissal with prejudice of the Adversary Proceedings against the Prepetition Agent and/or the Prepetition Lenders.  Until fully executed by the Parties, this Term Sheet is for **Settlement Discussion Purposes** and shall be subject to Federal Rules of Evidence Section 408 and is being exchanged as a confidential document as part of settlement discussions.  Until fully executed by the Parties, this Term Sheet and the contents hereof are Privileged and Confidential and shall not be distributed or disseminated by any Party other than with the prior consent of all of the Parties.

Terms not defined herein shall have the meanings given them in the Plan.

1.  **Approval.**   The Parties will promptly file a joint motion seeking expedited approval by the Court of the stipulations and agreements contained in this Term Sheet.

2.  **Definitions.**

    a.  "Adversary Proceeding Order" means that certain Partial & Interim Order dated May 13, 2009 entered by the Court.

    b.  "Adversary Proceedings" means Adversary Proceeding Nos. 09-00014 and 09-00017 in case Nos. 08-61570-11, 08-61571-11, 08-61572-11 and 08-61573-11 filed in the Court.

    c.  "BLX" shall mean BLX Group, Inc., f/k/a Blixseth Group, Inc.

    d.  "Bridge Loan" means that certain $35,000,000 secured loan to Edra D. Blixseth and BLX made by CIP Yellowstone Lending LLC ("CIP Lending") on or about August 13, 2008 and secured by real property located in California and Montana.

    e.  "CH DIP Loan" means that certain debtor-in-possession loan made by CIP Lending to Debtors in the principal amount of up to $23,306,701 as approved by the Court pursuant to those certain Orders issued by the Court on November 26, 2008, December 17, 2008 and January 22, 2009.

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 2 of 19

f.  "CrossHarbor" means New CH YMC Acquisition LLC, a Delaware limited liability company.

g.  "Court" means United States Bankruptcy Court for the District of Montana.

h.  "Definitive Agreement" means that certain Definitive Agreement, dated as of March 17, 2009, by and among the Debtors and CrossHabor, as modified by the terms of this Term Sheet.

i.  "Excess Closing Proceeds" means the excess of the Cash Portion (hereinafter defined) over the sum of the Mandatory Payments plus $2,000,000.

j.  "Farcheville" means that certain property located outside of Paris, France and commonly referred to as Chateau de Farcheville.

k.  "Mandatory Payments" means the sum of the Required Plan Payments plus the Priority Tax Claims.

l.  "Modified Plan" means the Plan as modified to reflect the terms provided in this Term Sheet.

m.  "Non-Project Assets" are all assets of the Debtors that do not comprise or concern the Yellowstone Club, including without limitation, Farcheville, St. Andrews and the BGI Notes, but specifically excluding the Debt Portion (hereinafter defined).

n.  "Parties" are (i) Credit Suisse, Cayman Islands Branch (the "Prepetition Agent"), on behalf of itself and as agent for the prepetition lenders (the "Prepetition Lenders"), (ii) the Official Unsecured Creditors Committee (the "UCC"); (iii) the Debtors; and (iv) CrossHarbor.

o.  "Plan" means the Second Amended Joint Plan of Reorganization Proposed by the Debtors and dated as of April 3, 2009 [Docket #691].

p.  "Prepetition Loan" means that certain mortgage loan made to Yellowstone Mountain Club, LLC, Yellowstone Development, LLC and Big Sky Ridge, LLC on or about September 30, 2005 in the original principal amount of $375,000,000 held by the Prepetition Agent and the Prepetition Lenders.

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 3 of 19

q. "Prepetition Loan Collateral" means all the assets of the Debtors that are collateral for the Prepetition Loan as identified in the documents evidencing and securing the Prepetition Loan.

r. "Project Assets" are all assets of the Debtors comprising or concerning the Yellowstone Club.

s. "Valuation/Adequate Protection Orders" means the Memorandum of Decision [Doc. 864] and related orders entered by the Court in the bankruptcy cases of the Debtors.

3. <u>Stipulations.</u> The Parties agree to the following stipulation (collectively, with all other terms of this Term Sheet when fully executed by the Parties, the "<u>Stipulation</u>"), subject to the approval and order of the Court, as follows:

a. The Parties will support the dismissal with prejudice of the pending appeal from the order authorizing the CH DIP Loan and will support confirmation of the Modified Plan. If resolicitation is required with respect to one or more classes of claims under the Modified Plan, the UCC will recommend that all unsecured creditors vote in favor of the confirmation of the Modified Plan, the Prepetition Agent will recommend that all Prepetition Lenders vote in favor of the confirmation of the Modified Plan, and the Debtors will recommend that all stakeholders vote in favor of the confirmation of the Modified Plan.

b. The Parties will support Court approval of the payment of all fees and expenses related to the Interim DIP Loan from payment of the funds reserved from the repayment of the Interim DIP loan.

c. The Debtors, the Reorganized Debtors and the UCC for themselves and the Debtors' estates shall, and shall be deemed to, dismiss, waive and forever release with prejudice all actual, potential or threatened claims, causes of action and challenges that have been, might have been or might be asserted by the UCC, the Reorganized Debtors, the Debtors or their estates against the Prepetition Agent and Prepetition Lenders with respect to any and all acts and omissions occurring prior to the satisfaction of the Effectiveness Conditions excluding, however, enforcement of this Term Sheet and the Modified Plan. The foregoing includes, without limitation, the release of any Reserved Actions, Retained Actions and

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 4 of 19

Transferred Actions, the dismissal with prejudice of all claims, causes of action and challenges asserted in Adversary Proceedings against the Prepetition Lenders and Prepetition Agent or against their claims and liens under the Prepetition Loan and any adequate protection liens of the Prepetition Agent and Prepetition Lenders; and the waiver and release of all possible claims under 11 U.S.C. § 506(c) against the Prepetition Agent, the Prepetition Lenders, the Prepetition Loan Collateral and any adequate protection liens of the Prepetition Agent and Prepetition Lenders. Such dismissals, waivers and releases shall be binding on any chapter 11 or 7 trustee appointed in these chapter 11 cases, the Debtors as reorganized under the Modified Plan, the Reorganized Debtors under the Modified Plan, and any successors to the Debtors and their estates. The foregoing releases shall be incorporated into the Modified Plan and the Confirmation Order.

d. The Parties will support Court approval of the payment of all fees and expenses related to the CH DIP Loan to the extent funded or available to be funded under the CH DIP Loan.

e. CIP Lending, by its joinder to this Term Sheet, agrees not to complete a foreclosure sale as to the property commonly known as Porcupine Creek until the earlier to occur of (x) July 30 and (y) thirty (30) days after the Effective Date.

f. The auction for the Project shall be suspended pending the satisfaction of the Effectiveness Conditions.

4. <u>Modifications to Definitive Agreement</u>.   Each of CrossHarbor and Debtors agrees to modify the Definitive Agreement as follows:

a. to provide that the debt portion of the purchase price being paid under the Definitive Agreement (the "Debt Portion") is increased to Eighty Million Dollars ($80,000,000) and the cash portion of the purchase price being paid under the Definitive Agreement is increased to Thirty-Five Million ($35,000,000) (the "Cash Portion"), thereby increasing the total purchase price under the Definitive Agreement to One Hundred and Fifteen Million Dollars ($115,000,000).

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 5 of 19

b. the definition of the term "Permitted Construction Financing" set forth in the Mortgage and Security Agreement shall be changed to mean "(i) vertical construction financing obtained from an Institutional Lender in the ordinary course of business by Mortgagor for the development of up to fifty (50) Residential Units in the aggregate at any time and from time to time up to an aggregate amount of $45,000,000 at any time, provided that (A) any Residential Unit to which this clause (i) applies shall continue to be counted toward the foregoing 50 Residential Unit aggregate maximum until Mortgagee has been paid the Unit Release Payment on account of such Residential Unit, (B) the relevant Permitted Construction Financing allowed pursuant to this clause (i) shall not encumber any Residential Units or any other collateral for the Debt Portion other than those Residential Units that are the subject of such Permitted Construction Financing and common areas serving such Residential Units (provided that improvement of such common areas is being funded by such Permitted Construction Financing), and (C) the loan to cost ratio of any Permitted Construction Financing allowed under this clause (i) shall not exceed 1.0 based on the aggregate actual cost (including hard and soft costs but excluding any cost or value attributed to the land which is the subject of the relevant Permitted Construction Financing) to complete the construction and pay all costs contemplated by the relevant Permitted Construction Financing and prior to closing of the relevant Permitted Construction Financing Mortgagor shall provide such evidence to Mortgagee as Mortgagee may reasonably request to evidence compliance with the foregoing loan to cost ratio and (ii) up to $25,000,000 in government sponsored infrastructure bonds obtained by Mortgagor at any time and from time to time on terms reasonably acceptable to Mortgagee in connection with horizontal infrastructure improvements at the Premises." Any hard or soft costs, including developer fees, payable to the Reorganized Debtors, CrossHarbor, Discovery Land Company or their respective affiliates that are funded with Permitted Construction Financing shall not exceed the market rate costs or fees that would be payable to an independent third party in an arms-length transaction. With respect to any construction financing that constitutes a Permitted Construction Financing contemplated under clause (i) above, the Mortgagee shall upon the request of Mortgagor execute and deliver to Mortgagor and/or the lender under the relevant Permitted Construction Financing a statement in form and substance reasonably acceptable to Mortgagee that the applicable construction financing constitutes a Permitted Construction Financing. If requested by the lender under any Permitted Construction Financing, the Mortgagee shall enter into an intercreditor agreement in form and substance reasonably acceptable to Mortgagee.

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
**Privileged and Confidential**
5/17/09
Page 6 of 19

c.  the Mortgage and Security Agreement shall be modified to include a definition of the term "Institutional Lender" that is acceptable to both CrossHarbor and Prepetition Agent, each acting reasonably.

d.  the documents evidencing and securing the Debt Portion shall include (x) the credit agreement substantially in the form of <u>Schedule A</u> attached hereto and made a part hereof, the loan documents referenced in the credit agreement and the form of Promissory Note and Mortgage and Security Agreement attached to the Definitive Agreement shall, to the extent applicable, be superseded by such documentation, (y) a non-recourse pledge of 100% of the membership interests in the Reorganized Debtors, and (z) payment by Reorganized Debtors of an annual agent's fee to Prepetition Agent in an amount of $100,000 to cover administrative and reporting costs of Prepetition Agent.

e.  the Promissory Note shall be amended to prohibit equity distributions by the maker thereof to its direct and indirect owners other than distributions on account of (i) tax liabilities and (ii) net proceeds from the sale of Residential Units (after payment of the applicable minimum release price on the Debt Portion) provided that in the case of distributions permitted under this clause (ii) immediately after such distribution the maker has a minimum liquidity (and the calculation thereof shall include, without limitation, unfunded capital commitments from its direct and indirect members and shall be after deduction for obligations more than 60 days past due) of at least $5,000,000 and to the extent any distribution is made under this clause (ii) then an amount equal to any such distribution shall also be paid to the payee of the Promissory Note as a principal prepayment thereof without premium or penalty.  Fees payable to Reorganized Debtors, CrossHarbor, and Discovery Land Company or any of their respective affiliates shall not exceed normal and customary market-rate fees that would be payable to independent third parties in arms-length transactions.

f.  the definition of "Unit Release Price" in the Mortgage and Security Agreement shall be modified in a manner reasonably acceptable to CrossHarbor and Prepetition Agent to reflect varying release prices depending on the nature of the Residential Unit and, if applicable,

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 7 of 19

associated membership in the Yellowstone Club being sold (e.g. land, detached home condominium unit and location) provided that the weighted average release price shall equal $500,000.

g.   Subsequent to the Effective Date, CrossHarbor shall cause Reorganized Debtors to use commercially reasonably efforts to obtain a one-time private rating of the loan for the Debt Portion from either Standard & Poors or Moody's which efforts shall include, without limitation, such modifications to the loan documents evidencing and securing the Debt Portion as may be requested by Prepetition Agent or the rating agency provided that such modifications do not increase the monetary obligations, materially increase the non-monetary obligations or materially decrease the rights of the borrower thereunder.   Each of Reorganized Debtors and Prepetition Agent shall pay their respective legal fees in connection with obtaining such rating letter, and Reorganized Debtors shall be responsible for any fees charged by or costs incurred at the request of the relevant rating agency (e.g. due diligence reports and appraisal) up to a maximum aggregate amount of $200,000 with Prepetition Agent being responsible for all such rating agency costs in excess of $200,000. Prepetition Agent shall reasonably cooperate with Reorganized Debtors to obtain such rating letter.

h.   the closing date under the Definitive Agreement shall be extended to June 30, 2009

5.   Plan Modifications.   The Parties will jointly seek an order of the Court modifying the Plan to provide the following:

a.   The amount of the Trade Creditor Fund shall be increased to Fifteen Million Dollars ($15,000,000) plus the Excess Closing Proceeds and shall be administered by the UCC after consultation with CrossHarbor and the Ad Hoc Committee of Members.

b.   In addition to the $375,000 paid to the Liquidating Trusts as part of the Required Plan Payments, the Disbursing Agent shall contribute to the Liquidating Trusts contemporaneously with the closing under the Definitive Agreement from the Excess Closing Proceeds the sum of $2,000,000 to pay expenses of the Liquidating Trusts.

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 8 of 19

c.  The Liquidating Trusts shall be governed by seven (7) member boards appointed as follows until such time as the Allowed Class 4 Claims are paid in full (and no further Class 4 Claims are pending): four (4) by the Prepetition Agent, two (2) by the UCC and one (1) by the Ad Hoc Class B Members Committee. Holland & Hart LLP shall be designated as the initial legal counsel for the Liquidating Trusts. Decision making by the board shall be by majority vote provided that any change or selection of any additional legal counsel for the Liquidating Trusts shall require a unanimous vote of the boards of the Liquidating Trusts. Settlement of the claims identified on Schedule C attached hereto and made a part hereof (collectively, the "Designated Claims") shall require the vote of at least five (5) members of the board. The UCC shall have the exclusive right for forty-five (45) days after the Effective Date to negotiate proposed terms of any settlement of the Designated Claims for approval by the board. Such board shall appoint the trustees of the Liquidating Trusts. Enforcement of the BGI Notes shall be transferred to the Liquidating Trusts. Following the payment in full of Allowed Class 4 Claims, the boards of the Liquidating Trusts shall have three (3) members appointed by the Prepetition Agent and one (1) member appointed by the Ad Hoc Class B Members Committee.

d.  The distribution provisions of the Liquidation Trusts shall be modified to provide that funds received after the Effective Date (net of reserves for expenses) with respect to Non-Project Assets (excluding Farcheville) shall be paid first, the amount of $2,000,000 to the Trade Creditor Fund; second, up to the amount of $15,000,000 to pay CIP Lending or its assignees on account of Allowed Class 4 Claims paid by the Trade Creditor Fund; third, up to the next $10,000,000 to pay any Allowed Class 4 Claims; and fourth, the balance shall be paid pro rata among all unpaid Allowed Claims including all unpaid Allowed Claims of the Prepetition Agent and Prepetition Lenders after application from the Project Assets and Farcheville, all on a pari passu basis.

e.  The Debt Portion shall be used exclusively to pay Class 3 Claims and shall be the property of the Pre-Petition Agent and Pre-Petition Lenders.

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 9 of 19

f. Similarly, until such time as all Class 3 and Class 8 Claims are paid in full any recovery from Farcheville shall be the exclusive property of the Prepetition Agent and Prepetition Lenders, and the Prepetition Agent shall have all decision-making authority as to the handling of Farcheville (including, without limitation, the marketing and sale thereof).

g. Provide that: (i) the Prepetition Agent and the Prepetition Lenders shall be added as additional "Exculpated Parties" identified in Section 8.4 of the Plan and (ii) subject to the occurrence of and upon the Effective Date, CrossHarbor, CrossHarbor Institutional Partners, L.P., CIP Lending, CrossHarbor Capital Partners LLC (and their affiliates with interests in the Yellowstone Club) (collectively, the "CrossHarbor Entities"), the UCC (and as to the UCC also the members of such committee but solely in their capacities as members thereof for their acts or omissions relating to the UCC), the Debtors, the Reorganized Debtors, the Prepetition Agent and the Prepetition Lenders shall be deemed to have exchanged mutual releases with respect to any and all acts or omissions on or before the Confirmation Date relating to the Yellowstone Club or the Debtors; provided, however, that the foregoing mutual releases shall not (v) apply to any willful misconduct by any individual person with fiduciary duties to the UCC, the Debtors or the Debtors' estates, (w) release the Parties' respective rights and obligations under the Definitive Agreement, this Term Sheet and the Modified Plan, (x) extend to or include any claims, rights or causes of action against BLX, Big Springs Realty, LLC, or Sunrise Ridge at Yellowstone Club, LLC, (y) rights to enforce or defenses to the enforcement of the BGI Notes or the Bridge Loan (including, without limitation, the liens and documents relating thereto), or (z) impair CIP Lending's rights under the CH DIP Loan until such time as such loan is paid in full or the rights of CrossHarbor Institutional Partners, L.P. to receive distributions under the Modified Plan in its capacity as a Prepetition Lender (the matters specified in clauses (x) through (z) collectively, the "Reserved Matters"). Except as to enforcement of the Term Sheet and the Modified Plan, the Reserved Matters shall not include any actions, claims or causes of action (but not defenses) against the Prepetition Agent or Prepetition Lenders.

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 10 of 19

h. The Modified Plan and the Confirmation Order each shall expressly reference, incorporate and approve the Term Sheet and the transactions contemplated thereby as a compromise and settlement under Fed. Rule Bankr. Pro. 9019 and the Modified Plan that is reasonable and in the best interest of creditors.

i. Section 9.1.2 of the Modified Plan shall provide that the Confirmation Order shall be reasonably acceptable to the Prepetition Agent. Section 9.2 of the Modified Plan shall provide that the following shall be a non-waiveable condition precedent to the occurrence of the Effective Date: "The Debtors and UCC shall have filed a dismissal with prejudice of their claims and causes of action asserted against the Prepetition Agent and the Prepetition Lenders (but not their claims and causes of action asserted against Timothy L. Blixseth) in Adversary Proceeding Nos. 09-00014 and 09-00017." Upon the occurrence of the Effective Date, the causes of action asserted against the UCC and the Debtors in the Adversary Proceeding brought by the Prepetition Agent and Prepetition Lenders shall be deemed settled and resolved by the Modified Plan in accordance with this Term Sheet.

j. The Modified Plan shall incorporate the terms of this Term Sheet and shall be in form reasonably acceptable to the Parties.

k. For the purposes set forth in this Term Sheet, the UCC shall remain in existence for sixty (60) days after the Effective Date.

6. **Ability to Co-Invest**. The Prepetition Lenders shall have the right to invest in CrossHarbor's acquisition of the New Membership Interests in an aggregate amount up to 15% of the equity capitalization of the Acquirer (estimated to be approximately $30,000,000) on the same terms as members of the Yellowstone Club, which right shall terminate if not exercised on or before June 22, 2009; provided, however, if CrossHarbor gives Prepetition Agent at least seven (7) business days advance notice that the closing under the Definitive Agreement is to occur prior to June 26, 2009 then such date of June 22, 2009 shall be changed to seven (7) business days after Prepetition Agent's receipt of such notice; provided, further, Prepetition Agent shall request that Prepetition Lenders provide CrossHarbor with non-binding expressions of interest to exercise this right to invest on or before June 1, 2009. Promptly following the execution of this Term Sheet, CrossHarbor shall provide the Prepetition Agent and

## YELLOWSTONE CLUB SETTLEMENT TERM SHEET
### Privileged and Confidential
5/17/09
Page 11 of 19

Prepetition Lenders with copies of all applicable offering and subscription materials subject to execution by the recipients of a reasonable confidentiality agreement.

7. <u>Maturity of CH DIP Loan</u>. The Parties agree to seek such Court approval as may be necessary to cause the maturity date of the CH DIP Loan to be extended to the earlier to occur of (x) June 30, 2009 and (y) the closing under the Definitive Agreement.

8. <u>Orders</u>. This Term Sheet and the agreements contemplated hereby are conditioned upon (i) the Court vacating the Adversary Proceeding Order and the preliminary and interim findings of fact and conclusions of law therein and (ii) the Court vacating or amending the Valuation/Adequate Protection Orders and all rulings, decisions and orders of the Court to the extent they reference or incorporate the findings of fact and conclusions of law against the Prepetition Agent and Prepetition Lenders in the Adversary Proceeding Order. The foregoing shall not prejudice any claims and causes of action asserted against Timothy L. Blixseth.

9. <u>Authority of Prepetition Agent</u>.   Prepetition Agent represents and warrants to the other Parties hereto that (a) it has been directed by Requisite Lenders (as such term is defined in the documents evidencing the Prepetition Loan) to execute and deliver this Term Sheet and (b) Requisite Lenders have informed Prepetition Agent that, to the extent re-voting is required, they intend vote in favor of the Modified Plan. If and to the extent that any Prepetition Lender ever asserts that it is not bound by the terms of this Term Sheet or challenges the validity hereof, then such Prepetition Lender shall not be entitled to any of the benefits of this Term Sheet and the transactions contemplated hereby including, without limitation, any releases set forth or contemplated herein.

10. <u>Additional Documentation</u>.   In order to effectuate the transactions contemplated by this Term Sheet, the Parties shall promptly file a joint emergency motion for immediate Court approval of this Term Sheet and all Parties shall take such actions and enter into such agreements reasonably necessary to effectuate the terms of this Term Sheet.

11. <u>Valuation/Adequate Protection Orders.</u>   This Term Sheet and the agreements contemplated herein are conditioned upon the Court entering

## YELLOWSTONE CLUB SETTLEMENT TERM SHEET

Privileged and Confidential
5/17/09
Page 12 of 19

one or more orders that (i) the Prepetition Lenders' claims are allowed in the amount of $309,376,110.42, (ii) the Prepetition Lenders have a secured claim in the amount of $232,000,000, (iii) the value of the Prepetition Lenders' collateral is set at $232,000,000 and (iv) the Prepetition Lenders' liens, mortgage and security interests extend to the Prepetition Loan Collateral.

12. **Amendments; Miscellaneous.** This Term Sheet may not be modified without the prior written agreement of the Parties. Each of the entities comprising the Parties shall be severally but not jointly liable for the obligations and liabilities of the Parties hereunder. This term sheet shall be governed by Montana law and may be executed in counterparts.

13. **Termination of Term Sheet.** This Term Sheet shall terminate and be of no further force or effect if the Modified Plan is not confirmed by the Court. Each of the Effectiveness Conditions shall be satisfied prior to the effective date of the Modified Plan.

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 13 of 19

YELLOWSTONE MOUNTAIN CLUB, LLC

By:  BLX GROUP, INC., its manager

By: _____
Name: Edra Blixseth
Title:

YELLOWSTONE DEVELOPMENT, LLC

By:  BLX GROUP, INC., its manager

By: _____
Name: Edra Blixseth
Title:

BIG SKY RIDGE, LLC

By: _____
Name: Edra Blixseth
Title:

YELLOWSTONE CLUB CONSTRUCTION
COMPANY LLC

By: _____
Name: Edra Blixseth
Title:

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 14 of 19

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____
Name:
Title:

CREDIT SUISSE, CAYMAN ISLANDS BRANCH,
as Administrative Agent for the Prepetition Lenders

By: _____
Name:   Bryan J. Matthews
Title:   Director

By: _____
Name:   STEPHEN YANKAUER
Title:   MANAGING DIRECTOR

NEW CH YMC ACQUISITION LLC

By: _____
Name:
Title:

For good and valuable consideration and in exchange for the agreements set forth in this Term Sheet, the undersigned on behalf of themselves and each of the CrossHarbor Entities join in this Term Sheet to evidence their consent to, and agreement to be bound by, the release provisions of this Term Sheet:

CIP YELLOWSTONE LENDING LLC

By: _____
Name:
Title:

CROSSHARBOR CAPITAL PARTNERS LLC

By: _____
Name:
Title:

GSDOCS\1913864.9

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 14 of 19

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

Name: Stephen R. Brown

Title: Chair

CREDIT SUISSE, CAYMAN ISLANDS BRANCH,
as Administrative Agent for the Prepetition Lenders

By: _____
Name:
Title:

By: _____
Name: Stephen Yankauer
Title: Managing Director

NEW CH YMC ACQUISITION LLC

By: _____
Name:
Title:

For good and valuable consideration and in exchange for the agreements set forth in this Term Sheet, the undersigned on behalf of themselves and each of the CrossHarbor Entities join in this Term Sheet to evidence their consent to, and agreement to be bound by, the release provisions of this Term Sheet:

CIP YELLOWSTONE LENDING LLC

By: _____
Name:
Title:

CROSSHARBOR CAPITAL PARTNERS LLC

By: _____
Name:
Title:

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
**Privileged and Confidential**
5/17/09
Page 15 of 19

CROSSHARBOR INSTITUTIONAL PARTNERS, L.P

By:  CrossHarbor Institutional Partners GP, L.P.

By:
Name:
Title:

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
**Privileged and Confidential**
5/17/09
Page 16 of 19

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
**Privileged and Confidential**
5/17/09
Page 17 of 19

SCHEDULE A

FORM OF CREDIT AGREEMENT

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 18 of 19

SCHEDULE B

Intentionally Omitted

YELLOWSTONE CLUB SETTLEMENT TERM SHEET
Privileged and Confidential
5/17/09
Page 19 of 19

SCHEDULE C

SETTLEMENT MATTERS FOR COMMITTEE APPOINTEES

1.  The suit commonly known as LeMond 1 (the settlement-related claims of
    Greg LeMond, Jorge V. Jasson, Sacia & David Morris, and Sacia Enterprises,
    Inc.),

2.  The suit commonly known as LeMond 2 (an action currently filed and stayed
    in Madison County, Montana),

3.  Michael Snow's individual lawsuit (an action currently filed and stayed in
    Madison County, Montana),

4.  YCW-deposit claims similar to those held by Yoav Rubinstein,

5.  Those claims made by Eric Ladd.