UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC**,<br><br>Debtor.<br><br>In re<br><br>**YELLOWSTONE DEVELOPMENT, LLC**,<br><br>Debtor.<br><br>In re<br><br>**BIG SKY RIDGE, LLC**,<br><br>Debtor.<br><br>In re<br><br>**YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC**,<br><br>Debtor. | Case No. **08-61570-11**<br><br>Jointly Administered with:<br><br><br><br>Case No. **08-61571-11**<br><br><br><br><br><br>Case No. **08-61572-11**<br><br><br><br><br><br>Case No. **08-61573-11** |

*MEMORANDUM of DECISION*

At Butte in said District this 2nd day of June, 2009.

In the above-referenced Chapter 11 bankruptcies, Robert Sumpter ("Sumpter"), through

1

counsel, filed on May 21, 2009: (1) an Amended Motion to Amend Schedule 1.87 (Membership Assumption Schedule) at docket entry number 934; and (2) an Amended Motion for New Trial or to Alter or Amend Judgment (Rule 9023) and for Relief from Judgment or Order (Rule 9024) at docket entry number 935. The aforementioned motions all stem from this Court's Order of May 18, 2009, wherein the Court overruled Sumpter's objection to confirmation of the Debtors' Chapter 11 Plan.

A hearing on Sumpter's motions was held June 1, 2009, in Butte. Attorney Stephen C. Mackey of Billings, Montana appeared at the June 1, 2009, hearing on behalf of Sumpter; James A. Patten of Billings, Montana appeared on behalf of the Debtors; and Paul D. Moore of Boston, Massachusetts appeared on behalf of CrossHarbor Capital Partners, LLC and CH YMC Acquisition LLC. Sumpter and Matt Kidd testified and Sumpter's Exhibits 1 through 6 and the Debtors' Exhibits A through D were admitted into evidence without objection.

FACTUAL BACKGROUND

On May 18, 2009, a hearing was held in Butte on approval of the Debtors' Second Amended Joint Plan of Reorganization filed April 3, 2009, at docket entry no. 691. In a post-hearing Order entered May 18, 2009, the Court noted that the Debtors were represented at the confirmation hearing by James A. Patten of Billings, Montana and Richard G. Birinyi of Seattle, Washington; Credit Suisse was represented by Mark S. Chehi and Joseph O. Larkin of Wilmington, Delaware, Evan R. Levy of New York, New York, and Shane Coleman of Billings, Montana; the Official Committee of Unsecured Creditors ("UCC") was represented by J. Thomas Beckett of Salt Lake City, Utah, and James H. Cossitt of Kalispell, Montana; CrossHarbor Capital Partners LLC ("CrossHarbor") was represented by Paul D. Moore and Barry D. Green of Boston,

Massachusetts; the Yellowstone World Club ("YCW") and its members were represented by John L. Amsden of Bozeman, Montana; the Ad Hoc Committee of Yellowstone Club members was represented by Jonathan B. Alter of Hartford, Connecticut; the Ad Hoc Group of Class B Unit Holders was represented by Clark T. Whitmore of Minneapolis, Minnesota; the Montana Department of Revenue ("MDOR") was represented by attorney Teresa Whitney of Helena, Montana; the Internal Revenue Service ("IRS") was represented by Assistant U.S. Attorney Victoria L. Francis of Billings, Montana; and Timothy L. Blixseth and Desert Ranch, LLP were represented by Joel E. Guthals of Billings, Montana. Ronald Greenspan, Brad Foster, Samuel T. Byrne, Steve Lehr and Edra Blixseth testified and the Debtors' Exhibit A, B and C were admitted into evidence without objection.

  Prior to the May 18, 2009, confirmation hearing, the Debtors filed a ballot report compiled by Kurtzman Carson Consultants LLC which shows that Classes 4, 6, 9, 10, 12 and 14 voted to accept Debtors' Second Amended Joint Plan of Reorganization, while classes 3, 7, 8 and 13 voted to reject Debtors' Second Amended Joint Plan of Reorganization. However, in the hours leading up to the confirmation hearing, the Debtors; Credit Suisse, Cayman Islands Branch; the UCC; New CH YMC Acquisition LLC; CIP Yellowstone Lending LLC; CrossHarbor Capital Partners LLC; and CrossHarbor Institutional Partners, L.P. agreed in principal to a global settlement termed "Yellowstone Club Settlement Term Sheet" ("STS"). A signed copy of the STS was presented to the Court on May 18, 2009, but was not filed officially until a couple days later. The STS, because it was a settlement that included Credit Suisse, arguably impacted whether Class 3 and Class 8 creditors would accept or reject the Debtors' Plan. Counsel for the Debtors, UCC, CrossHarbor and Credit Suisse thus agreed that the Debtors

should have an opportunity to re-solicit the votes of Class 3 and Class 8 creditors. Moreover, while amendment of the Debtors' proposed joint plan was not required by the STS, the Court, in an effort to alleviate any confusion, directed the Debtors to amend their plan to specifically incorporate the STS.

In addition to the above matter, counsel for YCW, the MDOR and IRS noted that their objections to confirmation were not insurmountable and in fact, counsel for YCW made the statement that YCW may withdraw its objection to confirmation. The Debtors also sought to cure the objections of various other parties and concluded that the three remaining substantive objections to confirmation were those of Robert Sumpter, Timothy L. Blixseth and Desert Ranch, LLP. No appearance was made at the confirmation hearing by or on behalf of Robert Sumpter.

The Debtors thus proceeded to offer evidence with respect to the outstanding objections to confirmation. In a written objection, Sumpter objected to approval of the Debtors' joint plan arguing that his "Membership Agreement is improperly classified, in violation of 11 U.S.C. §1122(a), for the reason that it is placed in Class 14 with Company Memberships, whereas his membership is a Residential Membership. Only claims or interests substantially similar to other claims or interests may be placed into a single class. No vote for or against the Plan should be counted in Class 14 for Robert Sumpter since he is not properly included in that class of claims."

Given the circumstances surrounding Sumpter's Membership Agreement and because Sumpter is never required to pay any dues under his Membership Agreement, the Court concluded at the May 18, 2009, hearing and in its Order of May 18, 2009, that the Debtors had exercised sound business judgment in rejecting Sumpter's Residential Membership Agreement. Sumpter's pending Motions followed shortly thereafter. At the June 1, 2009, hearing, Sumpter

and his counsel argued that the Amended Motion for New Trial or to Alter or Amend Judgment and for Relief from Judgment or Order was based on surprise and mistake and that the Debtors should be compelled to amend Schedule 1.87, attached to the Debtors' plans, to include Sumpter's residential membership.

The evidence presented at the June 1, 2009, hearing shows that Sumpter began working at the Yellowstone Club in 1999. Sumpter's 2007 Employment Agreement at the Yellowstone Club provided that "Sumpter shall be granted Company Membership in Yellowstone Club and shall retain such status so long as he abides by all Yellowstone Club rules and regulations and is not terminated under paragraphs 12 or 13. . . It is also acknowledged that so long as he is the vested owner of residential real property at Club, if this Company Membership is cancelled for any reason, in order to be a member of Club, Sumpter will purchase a Residential Membership with a refundable deposit of no more than $250,000 regardless of what the current Club Residential Membership deposit has increased to, and on that particular Residential Membership, no annual dues shall be owing. Additionally, when Sumpter sells his residential lot to a third party, there will be a Residential Membership reserved for the new buyer, and he shall be allowed to convert to a National Membership for an additional $50,000 deposit and no payment of annual dues." Exhibit 1. Sumpter's Employment Agreement for the period of January 1, 2008, through April 15, 2008, was modified to provide that "Sumpter shall retain his Company Membership in Yellowstone Club until April 15, 2008, so long as he owns a residential unit or lot in the Yellowstone Mountain Club community, . . . and is not terminated prior to the term of this Employment Agreement[.] . . . It is also acknowledged that so long as he is the vested owner of residential real property at Club, upon termination of Company Membership or if this Company

Membership is cancelled for any reason, in order to be a member of Club, Sumpter will purchase a Residential Membership with a refundable deposit of no more than $250,000 regardless of what the current Club Residential Membership deposit has increased to, and on that particular Residential Membership, no annual dues shall be owing. Additionally, when Sumpter sells his residential lot to a third party, there will be a Residential Membership reserved for the new buyer, and he shall be allowed to convert to a National Membership for an additional $50,000 deposit and no payment of annual dues." Exhibit 2. Sumpter's Employment Agreement at Exhibit 2 was amended in April of 2008 by Exhibit 3 to extend Sumpter's employment at the Yellowstone Club to October 15, 2008.

Thereafter, on July 9, 2008, Sumpter, in anticipation of a change in control of the Yellowstone Club solely to Edra Blixseth as a result of a marital settlement agreement, elected to surrender his Company Membership and instead secure a Residential Membership by paying a refundable deposit of $250,000. Exhibits 4 and 5. A month or so after securing his Residential Membership, Sumpter's Employment Agreement was again amended on August 8, 2008, to provide that Sumpter could terminate his Employment Agreement upon a change in control of the Yellowstone Club. A change in control of the Yellowstone Club from Timothy L. Blixseth to Edra Blixseth did in fact occur in mid-August of 2008, and Sumpter terminated his employment at the Yellowstone Club.

Prior to the confirmation hearing, Sumpter filed an objection to confirmation of the Debtors' plan on May 8, 2009, arguing in part that "Mr. Sumpter is the holder of a Residential Membership, an executory contract that should be assumed and treated in the manner of all Residential Membership contracts as provided in ¶5.1.3 of the Second Amended Joint Plan of

Reorganization Proposed by the Debtors. The said membership is not identified in the Member Assumption Schedule (Schedule 1.87). The Disclosure Statement approved by this Court states in paragraph V.F.1.c.(I), p. 65, that all valid Residential and National Membership Agreements in good standing will be assumed." The Debtors' Membership Assumption Schedule, Schedule 1.87 attached to the Debtors' various Chapter 11 plans, provides:

> This Schedule 1.87 contains: (I) a listing of those Membership contracts that are being assumed by the Reorganized Debtors. The Debtors' Membership files are imperfect and certain of the individuals listed on this Schedule 1.87 may not, in fact, possess valid memberships in good standing and certain individuals not listed on this Schedule 1.87 may, in fact, possess valid memberships in good standing (and will be added to this Schedule 1.87 when such memberships have been verified). The Debtors continue to analyze their membership files and the Debtors intend to make future revisions to this Schedule 1.87, as soon as practicable, to ensure the accuracy of the same. Furthermore, certain membership deposit postponement agreements were executed in connection with the purchase of certain residential units with the Yellowstone Club; a number of those postponements agreements have expired (requiring that a membership deposit be provided and a new membership agreement be executed in connection with the relevant residential unit), while others may still be in effect. The Debtors are not assuming any postponement agreements. To the extent that postponement agreements are being rejected or postponement rights are contained in agreements that are otherwise being rejected and CrossHarbor Capital Partners LLC or an affiliate thereof is the Acquirer, the Reorganized Debtors will consider entering into new postponement agreements, subsequent to the Effective Date, with holders of such rejected postponement agreements or holders of such other rejected agreements that contain postponement rights. To the extent new postponement agreements are
> not entered into by the Reorganized Debtors subsequent to the Effective Date, new membership agreements will be required in connection with those lots not owned by the Debtors and that have in place neither a membership agreement nor an assumed postponement agreement. The Debtors will endeavor to provide a completed version of this Schedule 1.87 at the time of filing the Plan Supplement; however, pursuant to Section 5.1.8 of the Plan, the Debtors reserve the right to modify this Schedule 1.87 at any time before the Confirmation Date. To the extent the foregoing is inconsistent with the text of the Plan, it is the Debtors' intent to amend the Plan to render the Plan consistent with this Schedule 1.87.

Sumpter, through counsel, provided the Debtors and CrossHarbor Capital Partners, LLC

with a copy of his Membership Agreement shown in Exhibit 4, but the Debtors never amended Schedule 1.87 to include Sumpter as the owner of an assumed membership. Even though Sumpter's non-standard membership agreement was never specifically assumed and even though Sumpter's name never once appeared on Schedule 1.87, Sumpter elected not to appear at the confirmation hearing. Sumpter claims he was surprised to learn from this Court's Order of May 18, 2009, that the Debtors were rejecting his Membership Agreement because as far as Sumpter was concerned, the Debtors had to assume his Membership Agreement because it was in "good standing."

Matt Kidd ("Kidd") of CrossHarbor testified that Sumpter's Residential Membership was the only Residential Membership at the Yellowstone Club that did not require payment of annual dues. Sumpter countered that other memberships similarly do not require annual dues, such as the Honorary Memberships, but as Kidd explained, the Debtors and CrossHarbor have rejected all Pioneer Memberships, Frontier Memberships, Honorary Memberships and Founders Circle Memberships, and have instead elected to reenter into such membership agreements in a modified form that is acceptable to CrossHarbor.

DISCUSSION

Rule 59, Fed.R.Civ.P., incorporated into the Federal Rules of Bankruptcy Procedure by Rule 9023, provides in pertinent part: "A new trial may be granted to all or any of the parties and on all or part of the issues . . . (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgement if one has been entered, take additional testimony, amend findings of fact and

8

conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Under Rule 59(e), "[a]ny motion to alter or amend a judgment must be filed not later than 10 days after entry of the judgment." Rule 59(e) includes motions for reconsideration. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985); 11 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2nd § 2810.1.

In *Brandt v. Esplanade of Central Montana, Inc., et al.* (*"Brandt"*), 19 Mont. B.R. 401, 403 (D. Mont. 2002), the District Court, in affirming this Court's decision, discussed amendment of an order under Rule 59(e): "Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law. *School Dist. No. 1J, Mutnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)." *See also In re Teigen*, 11 Mont. B.R. 91, 92 (Bankr. D.Mont. 1992). A motion for reconsideration should not be granted if the above test is not met, absent highly unusual circumstances. *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Finally, a Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

In addition to the foregoing, F.R.Civ.P. 60(b)[1] provides relief for such items as mistake,

---

[1] Rule 60(b) provides:

**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.**
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule

9

inadvertence, excusable neglect, newly discovered evidence and fraud. The provisions of Rule 60(b) set forth in subsections (2) through (5) are by their plain terms, not applicable to this proceeding–Sumpter does not claim that he has discovered new evidence that would impact the Court's May 18, 2009, Order; that the Order was procured by fraud, misrepresentation or misconduct by the Debtors or CrossHarbor; that the Order is void; or that the Order has been satisfied or is based on an order that has been reversed or otherwise vacated. Thus, the only other applicable provisions are Rule 60(b)(1) and (6).

Under Rule 60(b)(1), a court may relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect. Courts will not grant relief for an attorney's negligent conduct, however, except in very limited circumstances, such as the attorney's death or the diagnosis of a debilitating medical condition. *See, e.g., United States v. Cirami*, 563 F.2d 26, 34 (2nd Cir. 1977) (attorney's psychological disorder caused professional negligence); *Vindigni v. Meyer*, 441 F.2d 376, 377 (2nd Cir. 1971) (counsel no longer attending to practice and reportedly had "disappeared"). As the Ninth Circuit Court of Appeals has cautioned:

> Counsel for litigants...cannot decide when they wish to appear, or when they will file those papers required in a lawsuit. Chaos would result.... There must be some obedience to the rules of the court; and some respect shown to the convenience and rights of other counsel, litigants, and the court itself.

*Smith v. Stone,* 308 F.2d 15, 18 (9th Cir. 1962) (lawyer's failure to follow court rules not "excusable neglect" under Rule 60(b)). Indeed, courts have opined that where failure to submit

---

59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

10

evidentiary materials arises solely from counsel's carelessness, to grant Rule 60(b) relief would constitute an abuse of the trial court's discretion. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds, *cert. denied*, 510 U.S. 859, 114 S.Ct. 171 (1993); *Lomas and Nettleton Co. v. Wiselley*, 884 F.2d 965, 967 (7th Cir. 1989).

Finally, the Ninth Circuit Court of Appeals recently held that Rule 60(b)(6):

> [D]oes not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), while also cautioning that it should only be applied in "extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988).
>
> Following the admonitions of the Supreme Court, we have used Rule 60(b)(6) "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir* Co., 984 F.2d 1047, 1049 (9th Cir.), *cert. denied*, 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 29 (1993). "The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Id.*

*United States v. State of Washington, et al.*, 98 F.3d 1159, 1163 (9th Cir. 1996).

In addition, "[r]elief under Rule 60(b) requires a party to show 'extraordinary circumstances,' suggesting that the party is faultless in the delay." *Pioneer Inv. Services, Co. v. Brunswick Associated Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993). Such relief "normally will not be granted unless the moving party is able to show both injury and that the circumstances beyond its control prevented timely action to protect its interests." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) *cert. denied*, 510 U.S. 813,114 S.Ct. 60, 126 L.Ed.2d 29 (1993); *see also Ben Sager Chemicals Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977) (holding that Rule 60(b) movant

11

must demonstrate the presence of "'a meritorious defense and that arguably one of the four conditions for relief applies–mistake, inadvertence, surprise or excusable neglect'").

Applying the foregoing to the facts in the instant case, the Court finds that Sumpter has not satisfied his burden under either F.R.B.P. 9023 or F.R.B.P. 9024. First, the Court finds that the facts set forth by Sumpter's counsel in the request for reconsideration do not constitute newly discovered evidence. Furthermore, the facts do not establish that this Court committed clear error nor do they show that this Court made an initial decision that was manifestly unjust, or that there has been an intervening change in controlling law. Thus, amendment of the Court's May 18, 2009, Order is not warranted under Rule 59.

Under Rule 60, the question of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the [other party], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498. The Ninth Circuit has held that the equitable test in *Pioneer* applies in Rule 60(b). *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381-82 (9th Cir. 1997).

The Court is not persuaded by Sumpter's attempts to justify his failure to attend the May 18, 2009, confirmation hearing by arguing that because he provided the Debtors and CrossHarbor with a copy of his Membership Agreement, that he was out of the woods even though Debtors never once listed Sumpter's name on Schedule 1.87. The excerpt of Sumpter's objection to confirmation of the Debtors' plan previously quoted in this Memorandum of Decision, combined with Sumpter's testimony, convinces this Court that Sumpter was aware that his name was not on

12

the residential membership assumption schedule identified as Schedule 1.87. Given Sumpter's actual knowledge that Debtors had not--at least as of May 18, 2009--amended Schedule 1.87 to include Sumpter's Residential Membership, it was incumbent upon Sumpter to appear at the confirmation hearing and prosecute his objection to confirmation. This Sumpter did not do.

The Court notes as this juncture that Sumpter failed to show any extraordinary justification for his failure to appear at the confirmation hearing. The Court in *Pioneer* instructs that "[r]elief under Rule 60(b) requires a party to show 'extraordinary circumstances,' suggesting that the party is faultless in the delay." *Pioneer*, 113 S.Ct. at 1497. It was only after Sumpter obtained an adverse ruling that he decided to prosecute his objection.

The proceedings in this Court would come to a grinding halt if it allowed parties the discretion to prosecute motions, objections and other pleadings at their pleasure. Indeed, as the Supreme Court has aptly noted: "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992). In this case, Sumpter's failure to appear at the May 18, 2009, confirmation hearing has produced unwelcome and unwanted result for Sumpter because the May 18, 2009, confirmation hearing was the time for parties to voice their objections to confirmation of the Debtors' joint plan. It would constitute an abuse of discretion to grant Sumpter's Amended Motion for New Trial or to Alter or Amend Judgment (Rule 9023) and for Relief from Judgment or Order (Rule 9024) at this juncture in this case.

For the reasons discussed above, the Court concludes that Sumpter has failed to sustain his burden with respect to his Amended Motion for New Trial or to Alter or Amend Judgment (Rule 9023) and for Relief from Judgment or Order (Rule 9024). Similarly, because Sumpter did

not timely prosecute his objection to confirmation, the Court will not, at this late date, entertain his Amended Motion to Amend Schedule 1.87 (Membership Assumption Schedule). Consistent with the foregoing, the Court will enter a separate order that provides as follows:

IT IS ORDERED:

1. Robert Sumpter's Amended Motion to Amend Schedule 1.87 (Membership Assumption Schedule) filed May 21, 2009, at docket entry no 934, is DENIED; and

2. Robert Sumpter's Amended Motion for New Trial or to Alter or Amend Judgment (Rule 9023) and for Relief from Judgment or Order (Rule 9024) filed May 21, 2009, at docket entry no. 935, is DENIED.

BY THE COURT

*Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana