UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**YELLOWSTONE MOUNTAIN CLUB, LLC,**

Debtor.

Case No. **08-61570-11**

# *MEMORANDUM of DECISION*

At Butte in said District this 16th day of July, 2009.

In this Chapter 11 bankruptcy, after due notice, a hearing was held July 14, 2009, in Butte on: (1) the Motion for Stay Pending Appeal filed by Robert Sumpter on June 23, 2009 (docket entry no. 1070); (2) the Motion for Stay Pending Appeal filed by Desert Ranch LLLP on June 24 2009 (docket entry no. 1073); and (3) the Motion for Stay Pending Appeal filed by Timothy L. Blixseth on June 24, 2009 (docket entry no. 1076). The aforementioned motions are opposed by the jointly administered estates of the Debtors and by New CH YMC Acquisition, LLC and CrossHarbor Capital Partners, LLC ("CrossHarbor"). Robert Sumpter was represented at the hearing by Stephen Mackey of Billings, Montana; Desert Ranch LLLP and Timothy L. Blixseth ("Blixseth") were represented by Joel Guthals of Billings, Montana; the Debtors were represented by James A. Patten of Billings, Montana; and New CH YMC Acquisition, LLC and CrossHarbor were represented by Paul D. Moore of Boston, Massachusetts and Benjamin P. Hursh of Missoula, Montana. Robert Sumpter ("Sumpter") and Ronald Greenspan

1

("Greenspan") testified. No exhibits were offered into evidence.

## BACKGROUND

The Debtors, up until August of 2008, were controlled by Blixseth as the sole Class A Shareholder through his holding company, Blixseth Group, Inc. ("BGI"). Approximately 13% of the stock in Debtors was owned by Class B Members who were referred to as the Class B Shareholders. BGI was an Oregon sub-S corporation, which was solely owned by Blixseth as President and CEO from 1999 to mid-August of 2008. In August of 2008, Blixseth and his former spouse, Edra Blixseth, settled a long and contentious divorce proceeding, and as part of the marital settlement, Edra Blixseth was awarded BGI. As a consequence of receiving BGI, Edra Blixseth also assumed control of the Debtors in August of 2008.

The Debtors have experienced cash flow problems for numerous years and the evidence presented in this case and the related Adversary Proceedings shows that the Debtors, while under Blixseth's control, secured a $375 million loan from Credit Suisse on September 30, 2005. The burden of the $375 million loan, coupled with the economic downturn, was disastrous for the Debtors and resulted in the Debtors seeking protection under the Bankruptcy Code on November 10, 2008.

The disputes and resulting litigation in this case between the Debtors, the Official Committee of Unsecured Creditors, Credit Suisse and CrossHarbor was of a magnitude never seen before in this Court. The disputes started day one when the Debtors sought to secure debtor-in possession ("DIP") financing. Originally, Credit Suisse was slated to provide DIP financing, but when Credit Suisse was unable to secure the requisite voter approval for the DIP financing, the Debtors turned to CrossHarbor. The Court ultimately approved CrossHarbor's DIP

financing, which financing was modeled after the DIP financing proposed by Credit Suisse. Approval of DIP financing was only the first dispute in a series of disputes, including two Adversary Proceedings that initially involved the Debtors, the Official Committee of Unsecured Creditors and Credit Suisse. Blixseth, upon request, was allowed to intervene in those proceedings.

However, after a lengthy trial and following an incredible number of hearings, many held on an emergency basis, the Debtors, the Official Committee of Unsecured Creditors, Credit Suisse and CrossHarbor, during the eleventh hour of the auction of the Debtors' assets, reached a global resolution of their disputes.[1] That global resolution is reflected in the Debtors' Third Amended Chapter 11 Plan, which Plan was confirmed by Order entered June 2, 2009.

Sumpter seeks a stay of the Court's June 2, 2009, Confirmation Order as it relates to the Debtors' rejection of Sumpter's Residential Membership agreement. Desert Ranch, LLLP seeks a stay of the Order confirming the Debtors' Chapter 11 Plan as it relates to Desert Ranch, LLLP's claim and treatment under the Chapter 11 Plan pending a determination of said appeal. Blixseth seeks an order staying the provisions of the Debtors' Third Amended Chapter 11 Plan, the June 2, 2009, Confirmation Order, including the findings of fact and conclusions of law stated therein, with respect to the effect of the Chapter 11 Plan, and the Court's June 2, 2009, Memorandum of Decision with respect to the following provisions:

> 1. The determinations, findings and conclusions that with respect to Appellant, the bankruptcy case and the Chapter 11 Plan were filed in good faith, and that there was no evidence of bad faith toward Appellant.

---

[1] Credit Suisse and CrossHarbor were the only parties interested in acquiring the Debtors' assets at the auction. Credit Suisse participated in the auction for the sole purpose of protecting its claim.

3

  2. The determinations, findings, conclusions and Chapter 11 Plan provisions concerning the effect and enforceability of pre-petition waivers and releases provided to Appellant by Debtors.

  3. All determinations, findings and conclusions that impact upon or affect issues pending in Adversary Proceeding No. 09-00014.

  4. The effect and enforceability of the exculpatory and release clauses against Appellant that are contained in the Chapter 11 Plan.

  5. The effect and enforceability of the Credit Suisse settlement against Appellant incorporated in the Debtors' Third Amended Chapter 11 Plan.

Sumpter argues that a stay pending appeal as it relates to him is necessary because he cannot presently enjoy the benefits of the Yellowstone Club and each day that is lost, is a day that he cannot get back. Sumpter purchased his unique Residential Membership on July 9, 2008, while the Debtors were under Blixseth's control. Sumpter's Residential Membership is unique from other Residential Membership, excluding Pioneer and Frontier Memberships, in that Sumpter can enjoy all the amenities at the Yellowstone Club without paying any annual membership dues. In addition, if Sumpter elects to sell his residential lot to a third party, Sumpter's Residential Membership provides that a Residential Membership will be reserved for the third party buyer and Sumpter will be allowed to convert his Residential Membership to a National Membership for an additional deposit of $50,000, with no payment of annual dues.

The unique aspects of Sumpter's Residential Membership are a deterrent to any potential buyer of the Debtors' assets because all parties agree that the Yellowstone Club cannot continue to operate at its historical deficits. If members, such as Sumpter, want to enjoy the benefits of the Yellowstone Club, they must be made to pay their fair share. Sumpter disagrees.

4

DISCUSSION

A moving party seeking a stay pending appeal is governed by F.R.B.P. Rule 8005.[2] In the case of *Martinson v. Towe (In re Towe)*, 14 Mont. B.R. 1, 2-3 (Bankr. D. Mont 1994), this Court set forth the standards for evaluating motions filed under Rule 8005:

> Rule 8005 provides that a bankruptcy judge "may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." This Court has explained in construing Rule 8005:
>
>> Such rule incorporates the practice with respect to automatic availability of a stay pending appeal upon approval of a supersedeas bond. The purpose of the bond is to indemnify the party who was successful in the Bankruptcy Court against loss caused by an attempt to reverse the decision upon appeal. *In re Theatre Holding Corp.*, 22 B.R. 884, 885 (Bankr. S.D.N.Y. 1982). *See, also, In re Swift Air Lines, Inc.*, 21 B.R. 12 (9th Cir. BAP 1982). With the posting of sufficient supersedeas bond, under the above authorities, the standard for granting the stay becomes unimportant.

In the instant case, Sumpter, Desert Ranch, LLLP and Blixseth have not filed a

---

[2] Rule 8005 reads:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.

supersedeas bond. In addition, said parties have not offered to file a supersedeas bond.[3] Therefore, Sumpter, Desert Ranch, LLLP and Blixseth must satisfy the same tests required for the granting of an injunction:

> A party seeking relief under Rule 8005 must show (1) that he will suffer irreparable harm unless the stay is granted; (2) a likelihood of success on the merits of the appeal; (3) that the other parties will suffer no substantial harm if the stay is granted; and (4) that the public interest will not be harmed if the stay is granted. *In Matter of Baldwin United Group*, 45 B.R. 385, 11 C.B.C. 1195 (Bankr. S.D.Ohio 1984). The same tests apply for granting of an injunction. *See, Regents of University of California v. ABC, Inc.*, 747 F.2d 515 (9th Cir. 1984) . . . .

*Hoeger v. Teigen (In re Teigen)*, 9 Mont. B.R. 523, 523-25 (Bankr. D. Mont. 1991).

*Metro North State Bank v. Barrick Group, Inc. (In re Barrick Group, Inc.)*, 99 B.R. 513, 515 (Bankr. Conn. 1989), notes that several courts have held that an appellant must clearly establish all four injunction factors. *Id. citing Baldwin United Group, supra*, and *John P. Maguire & Co., Inc. v. Sapir (In re Candor Diamond Corp.)*, 26 B.R. 844, 847 (Bankr.S.D.N.Y.1983). However, the Court in *Barrick Group* goes on to state that "the more authoritative and better approach is that the four factors should be used as guides. *See Hilton* [*v. Braunskill*], *supra*, 481 U.S. [770,] 777, 107 S.Ct. [2113,] 2119, [95 L.Ed.2d 724 (1987)] ("[The] stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."); *In re Marine Pollution Service, supra*, 89 B.R. at 345; *In re Roth American, Inc., supra*, 90 B.R. [94,] 95 [(Bankr. M.D.Pa. 1988)]. This reading of the Rule 8005 is consistent with its plain language." *Id.* The Supreme Court in *Hilton* discussed Fed. Rule App. Proc. 8(a) from which the first, second and fourth sentences of Rule 8005 were adopted.

---

[3] Blixseth requests in his Motion "that the stay order be imposed without a requirement that [Blixseth] post bond in that the stay requested does not effect or create monetary issues or burdens on the bankruptcy estate, the Debtors, or their successors under the Chapter 11 Plan[.]"

One controlling principle is that issuance of a stay pending appeal, like a preliminary injunction, rests with the sound discretion of the trial court. *Hartigan v. Pine Lake Village Apartment Co., (In re Pine Lake Village Apartment Co.*, 21 B.R. 395 (S.D. N.Y. 1982); *Regents of Univ. of Cal. v. American Broad. Companies, Inc.*, 747 F.2d 511, 515 (9th Cir. 1984).

Sumpter, Desert Ranch, LLLP and Blixseth each argue that the Debtors' and the public's interest will not be substantially harmed by granting their motions for stay pending appeal, but the record clearly shows otherwise. If the confirmation of Debtors' Chapter 11 Plan is stayed, even partially, the CrossHarbor sale may very likely be derailed and Debtors will not be able to continue with operations as a going concern. Such result would have a devastating effect on the owner-members, creditors and even the local economy at Big Sky. A stay is not appropriate when the effect of the stay is to stay consummation of a plan. *In re Public Serv. Co. of New Hampshire*, 116 B.R. 347, 350 (Bankr. D.N.H. 1990), instructs that the possible failure of any plan of reorganization as a consequence of a stay constitutes significant injury to creditors. A stay in the case *sub judice* would outweigh any minimal affect on each of the Appellants as the effect of a stay will most likely prevent the closing of the sale to CrossHarbor, causing the cessation of Debtors' business operations, termination of all employees, and complete frustration of the Debtors' confirmed plan. As a corollary to such effect, the Appellants offer no bond to protect the Debtors from the obvious harm that would occur.[4]

Further, it is clear to the Court that none of the Appellants will prevail on appeal. As to Sumpter, CrossHarbor rejected his Residential Membership, which fails to provide annual

---

[4] A bond would have to be filed in an amount of at least $115 million to preserve the status quo.

7

payment of fees to cover operating expenses of the Yellowstone Club, which are being paid by other members of the Yellowstone Club as a condition of their memberships. Thus, there was sound business judgment expressed by the Debtors and CrossHarbor in rejecting Sumpter's unique Residential Membership. As to Blixseth, such Appellant does not seek a stay with respect to enforcement of the entire plan, but only requests that certain plan provisions be stayed. In discussing a request for a "partial stay", the court in *In re Convenience USA, Inc.*, 290 B.R. 558, 561 (Bankr. M.D.N.C. 2003), explained that "it is difficult to conceive of a situation in which such relief would be appropriate because to grant such relief, in effect, is to modify the plan of reorganization that was submitted to the creditors and other parties in interest, who voted to approve the plan submitted to them, and not a plan subsequently tailored to suit a disgruntled appellant. Such an anomalous result is totally inconsistent with the disclosure requirements under § 1125 of the Bankruptcy Code and the right of creditors, pursuant to § 1126, to vote on the plan disclosed to them." The same reasoning applies to Desert Ranch, LLLP's request for a partial stay regarding the Plan's treatment of its claim.

Moreover, Desert Ranch, LLLP's claim is not impaired as the Plan leaves unaltered the contractual rights of the holders of secured claims, particularly where the Debtors have agreed that in the event this Court determined that Desert Ranch, LLLP is in fact entitled to an unsecured deficiency claim, that Class 4 of the Third Amended Plan "governs the treatment of any such claim." In sum, the Plan by its terms does not change Desert Ranch, LLLP's legal rights.

With regard to Sumpter, that Appellant is not likely to prevail on appeal. In accordance with the terms of the membership agreement to purchase equity interests in the Reorganized

8

Debtors, CrossHarbor had the right to designate which executory contracts and unexpired leases would be assumed and which would be rejected. CrossHarbor rejected Sumpter's Residential Membership agreement because it offered no benefit whatsoever to the Reorganized Debtors due to Sumpter's "free ride" in not sharing in payment of annual operating expenses. Thus, rejection was warranted under the "business judgment" rule. *In re Pomona Valley Medical Group*, 476 F.3d 665 (9th Cir. 2007). Rejection was not "manifestly unreasonable". This Court also recognized that Sumpter waived his objection by not appearing at the confirmation hearing and thus, was not entitled to relief under F.R.Civ.P 59 or 60.

Blixseth also challenges the Debtors' good faith in filing the Third Amended Plan. This Court made specific findings that the Plan was filed in good faith and not by any means forbidden by law. In sum, the Plan is not contrary to the Bankruptcy Code. *In re Sylmar Plaza, LP*, 314 F.3d 1070 (9th Cir. 2002). A plan proposed in good faith is defined as one that satisfies the purposes of the Bankruptcy Code. Blixseth's generalized allegations of misconduct of parties prior to the bankruptcy is irrelevant to the test of good faith.

Blixseth also argues that the exculpatory provision of Section 8.4 is wrong under the good faith standard. However, the clause is a standard exculpatory provision and does not impermissibly release any entity or individual from liability for willful misconduct or gross negligence. It merely protects the described entities and individuals from claims arising in connection with the bankruptcy cases and is thus perfectly proper. *In re Enron Corp.*, 326 B.R. 497, 501, 503 (S.D.N.Y. 2005).

Finally, none of the Appellants have shown that they will suffer irreparable injury if the stay is not granted. Indeed, all parties must satisfy each of the four requirements in order to

secure a stay. Failure to satisfy any one of the four prongs dooms the moving party's motion. *In re Irwin*, 338 B.R. 839 (E.D.Cal. 2006). For all the reasons set forth in the Debtors' Opposition to Motion for Stay Pending Appeal, the Court concludes that the Appellants' Motions lack merit and must be denied. Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED:

1. The Motion for Stay Pending Appeal filed by Robert Sumpter on June 23, 2009 (docket entry no. 1070), is DENIED;

2. The Motion for Stay Pending Appeal filed by Desert Ranch LLLP on June 24 2009 (docket entry no. 1073), is DENIED; and

3. The Motion for Stay Pending Appeal filed by Timothy L. Blixseth on June 24, 2009 (docket entry no. 1076), is DENIED.

BY THE COURT

*/s/ Ralph B. Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana