**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

In re

**YELLOWSTONE MOUNTAIN CLUB,**
**LLC, et al.,**

              Debtors.

Case No. **08-61570-11**

Jointly Administered

## *O R D E R*

At Butte in said District this 25th day of August, 2009.

In this Chapter 11 bankruptcy case attorneys for CrossHarbor Capital Partners, LLC ("CrossHarbor") and CIP Yellowstone Lending LLC ("CIP Lending") filed on August 4, 2009, an Application for payment of DIP Loan Fees and Expenses ("Application") (Docket No. 1167). The Application requests awards of professional fees for CIP Lending's fees and expenses relating to the debtor in possession financing ("DIP Loan") provided by CIP Lending to the Debtors-in-Possession ("DIP") under the Court's Orders regarding post-petition financing of the DIP. The Application requests fees and costs including for DIP Lending's general counsel Duane Morris LLP ("Duane Morris") requesting fees of $224,395.50 and costs of $2,385.43; for real estate counsel Goulston & Storrs, P.C. ("Goulston") requesting fees of $469,796.50 and costs of $8,224.58; for local counsel Crowley Fleck PLLP ("Crowley") requesting fees of $21,753.50 and costs of $2,139.46; and expenses incurred by CIP Lending in the sum of $113,932.15. The Application includes a notice granting ten (10) days to respond and request a

1

hearing, and that failure to file an objection and request a hearing shall be deemed an admission that the relief requested should be granted.  No objection and request for hearing has been filed. The U.S. Trustee has not filed a response to this request for fees pursuant to 28 U.S.C. § 586(a)(3)(A).

Notwithstanding the absence of objection, this Court has an independent obligation to review each application to evaluate the propriety of the compensation requested.  *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D. Ill. 1987).  In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*.  The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law....  Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Busy Beaver*, 19 F.3d at 841 (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D.Pa 1993)).

Extensive case law has developed regarding the amount and type of information that applicants must include in their fee applications.  The case of *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990) summarizes:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate.  *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla. 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987).  The burden of proof to show entitlement to all fees requested from the estate is on the applicant.  *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985).  This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for

2

distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:

> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700, 731 (Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731.

The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to determine whether the applicant provides:

1. A description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. The date each service was provided;
3. The amount of time spent performing each task; and
4. The amount of fees requested for performing each task.

The Court's obligation to review fee applications applies to applications submitted by creditors and other professionals.

Attached to the instant Application are billing statements of the Duane Morris, Goulston and Crowley law firms, and the summary of CIP Lending's costs and expenses. With respect to the billing statements submitted by Duane Morris and Crowley firms, the Court finds that most of the entries provide adequate detail of the services provided as required above and, with minor

amounts disallowed for lack of detail, the fees and costs requested will be awarded. However, the Court finds that the magnitude of fees requested and number of deficient billing entries for fees requested by the Goulston firm, which fail to provide the minimum detail of the nature and purpose of phone calls, emails, and conferences involving several members of the Goulston firm, necessitates that Goulston's entire request for fees and costs be disallowed until Goulston provides the minimum detail required explaining the nature and purpose of numerous telephone calls, emails and conferences involving several members of the Goulston firm, for which it requests compensation.

After review of Exhibit 4, the Court finds that the $113,932.15 in costs requested by CIP Lending are supported by actual detail and are actual, reasonable and necessary.

**A. Crowley Firm**.

For the Crowley firm the Court disallows a total of $596[1] in fees for telephone calls or memoranda where the subject matter or purpose of the communication is not explained, which prevents the Court from making its determination whether the task was reasonable and necessary. The disallowed entries are dated 11/25/08 (.1 hour for phone call), 12/4/08 (.3 hr. phone call, .3 hr. phone call, and .4 hr. memo), 12/8/08 (.2 hr. phone call), 12/10/08 (.4 hr. phone call), 12/18/08 (.2 hr. phone call and .2 hr. for memos), 1/9/09 (.6 hr. phone call), and 1/27/09 (.2 hr. phone call). These entries lack adequate detail explaining the nature, subject or purpose of the phone calls or memos, and therefore they are disallowed in the total amount of $596. The Court finds that the $2,139.46 in costs incurred by the Crowley firm are actual, reasonable and necessary.

---

[1]The services were provided by three Crowley attorneys at different billing rates.

**B. Duane Morris.**

With respect to the Duane Morris firm the Court disallows a total of $556.50 for two entries, dated 1/21/2009 (.2 hr. phone call to local counsel by Gottfried) and 12/24/2008 (.7 hr. for lengthy phone call by PD Moore to Chehi). Those 2 entries lacked adequate detail explaining the subject or purpose of the phone calls, and therefore are disallowed in the amount of $556.50. The Court finds that the $2,385.43 in costs requested by the Duane Morris firm are actual, reasonable and necessary.

**C. Goulston Firm.**

For the Goulston Firm the Application requests a total of $469,796.50 in fees and costs in the sum of $8,224.58. In comparison with the other two law firms' billing records, the Goulston billing records includes a much larger number of entries by the Goulston attorneys requesting professional fees for telephone calls, emails, and conferences, which fail to provide any detail explaining the purpose or subject matter of the tasks. Among such entries are those shown on page 1 of the invoice dated 12/10/08 with an entry by James F. Wallack dated 11/26/08 of .3 hours for a "conference with Green" who appears to be another Goulston attorney, Barry D. Green. The Court is unable, due to lack of detail of the purpose of the topic or the subject matter discussed, to determine whether the fee requested for the task is reasonable. Green's entry dated 12/19/08 on page 3 of the 1/27/09 invoice bills 1.8 hours for a telephone call to/from Sam Byrne and Matt Kidd, without any explanation of the subject or purpose of the communication. The same page reflects billing by Pamela Mackenzie dated 12/4/08 (1.0 hours for "various calls"), 12/5/08 (.5 hours for a conference and .5 hours for "calls with client"). Mackenzie billed another 1.0 hour on the following page 5 for conference calls without any detail of the subject or purpose.

5

Paige A. Manning has billing entries on page 6 dated 12/18/08 (.7 hr.) and 12/23/08 (.2 and .5 hr.) for communications without detail of the purpose or nature of the communications.

The most egregious deficiencies on Goulston's billing statement are by Adam T. Curry ("Curry"). Beginning on the 12/10/08 invoice at page 2 for an entry dated 11/25/08 and throughout Goulston's invoices Curry bills for telephone conferences/emails and conferences with several named persons, but without any detail of the nature or purpose of each call/email or conference. Such entries by Curry are found at page 7 of the 1/27/08 invoice (.7 hr on 12/1/08 and .9 hr. and .9 hr. on 12/2/08); in all entries on page 8 of the 1/27/08 invoice; in six entries on page 9 of the 1/27/08 invoice; in all entries on pages 5 and 6 of the 2/9/09 invoice; in 5 entries on page 7 of the 2/9/09 invoice; in 2 entries on page 1 of the 3/8/09 invoice and in entries dated 2/5/09, 2/12/09 on page 2; in all 4 Curry entries on page 2 of the 4/16/09 invoice and in several entries on page 3; and in all 5 entries on page 2 of the 5/29/09 invoice.

This Court's Local Rule, Mont. LBR 2016-1(a) requires that "[p]rofessional fees shall be documented through contemporaneous billing records." The total fees requested for Curry's services in Goulston's billing statements is $107,645.50. Because of the lack of detail of the subject matter or purpose of the numerous entries for phone calls/emails and conferences, it is clear to the Court that a substantial portion of Curry's fees cannot be awarded. Most of Goulston's attorneys included adequate detail of the nature and purpose of the tasks they performed, and in a minority of Curry's later entries some detail is provided. Because of the magnitude of the amount of Goulston's fee request which cannot be awarded because of the lack of detail of the nature or purpose of tasks by Curry and other Goulston attorneys, this Court deems it appropriate to deny approval of all fees and costs requested by Goulston in the instant

6

Application, and to allow Goulston to refile[2] an application for compensation which includes the necessary detail the nature and purpose of the telephone calls, emails and conferences by Curry and other Goulston attorneys.

**IT IS ORDERED** the Application for payment of DIP Loan Fees and Expenses ("Application") filed by CrossHarbor and CIP Lending on August 4, 2009, (Docket No. 1167) is approved in part and denied in part; DIP Lending's general counsel Duane Morris LLP is awarded reasonable fees in the amount of $223,839.00 plus reimbursement for costs of $2,385.43; local counsel Crowley Fleck PLLP is awarded fees in the amount of $21,157.50 and costs of $2,139.46; and CIP Lending is awarded reimbursement for actual, reasonable and necessary expenses incurred by CIP Lending in the sum of $113,932.15.

**IT IS FURTHER ORDERED** the Application is denied with respect to real estate counsel Goulston & Storrs, P.C.; and Goulston is granted leave to refile an Application for compensation in conformity with Mont. LBR 2016-1(a), LBF 17 and the above-cited authority, providing additional detail of the subject matter or purpose of telephone calls, emails and conferences for which Goulston requests compensation for attorney Adam T. Curry and others.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

---

[2]Fees and costs for separate professional firms should be requested in separate applications for compensation.

8