# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **YELLOWSTONE MOUNTAIN CLUB, LLC**, | Case No. **08-61570-11** |
| Debtor. | Jointly Administered with: |
| In re | |
| **YELLOWSTONE DEVELOPMENT, LLC**, | Case No. **08-61571-11** |
| Debtor. | |
| In re | |
| **BIG SKY RIDGE, LLC**, | Case No. **08-61572-11** |
| Debtor. | |
| In re | |
| **YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC**, | Case No. **08-61573-11** |
| Debtor. | |

## *MEMORANDUM of DECISION*

At Butte in said District this 12th day of November, 2009.

In the above-referenced Chapter 11 bankruptcy proceedings, after due notice, a hearing

was held October 6, 2009, in Butte on the Application for Allowance and Payment of

Administrative Expense Claim ("Application") filed August 17, 2009, at docket entry no. 1197, by Greg LeMond, Jorge V. Jasson, David L. Morris, Sacia B. Morris and Sacia Enterprises, Inc. (Collectively the "LeMond Group"), together with the Debtors' objection thereto. James A. Patten of Billings, Montana appeared on behalf of the Debtors and Trent M. Gardner of Bozeman, Montana appeared on behalf of the LeMond Group. The Court heard argument from counsel, but no witness testimony was heard and no exhibits were offered into evidence.

Following the October 6, 2009, hearing, the Debtors and the LeMond Group entered into a Joint Motion for Approval of Compromise Settlement that was filed with the Court on October 16, 2009. The aforementioned Joint Motion states that the Debtors and the LeMond Group "have come to an agreement fixing and allowing LeMond claim for administrative expense in the amount of $50,000. This amount reflects a compromise between the parties of a disputed claim and constitutes neither a concession nor an admission by either as to the merits of claim. This compromise is made to avoid uncertainty, risk, and to allow the administration of the estate to proceed without delay." Local counsel for the Official Committee of Unsecured Creditors, James H. Cossit of Kalispell, Montana, filed an objection to the Joint Motion for Approval of Compromise Settlement on October 25, 2009, and the matter is currently scheduled for hearing on December 10, 2009, in Butte.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

## BACKGROUND and CONTENTIONS of the PARTIES

In the pending Application, the LeMond Group requests approval of an administrative

2

expense claim, under 11 U.S.C. §§ 503(b)(1)(A), (b)(3)(D) and (b)(4), of not less than $400,000 on grounds that the LeMond Group made a "substantial contribution" to the Debtors' jointly administered Chapter 11 bankruptcies. In their Application, the LeMond Group asserts that in May of 2006, some eighteen months or so before the Debtors sought protection under the Bankruptcy Code in November of 2008, it initiated litigation against Yellowstone Mountain Club, LLC, Yellowstone Development, LLC and other parties. The LeMond Group contends that in October of 2007 they reached a settlement of the state court litigation with Timothy L. Blixseth, Blixseth Group, Inc., Yellowstone Mountain Club, LLC, Yellowstone Development, LLC and Yellowstone Club World, LLC. As part of the October 2007 settlement, the LeMond Group received payments totaling $18 million and agreed to release their claims against the settling defendants and assign their respective Class B membership interests to Blixseth Group, Inc., Yellowstone Mountain Club, LLC, and Yellowstone Development, LLC. A separate settlement agreement entered into in August 2008, involved, among other things, the payment by Edra Blixseth, on behalf of herself, Blixseth Group, Inc., Yellowstone Mountain Club, LLC, Yellowstone Development, LLC and Yellowstone Club World, LLC, of $8 million in exchange for a dismissal of the renewed state court litigation. The Debtors have commenced an Adversary Proceeding against the LeMond Group seeking recovery of the $26 million paid to the LeMond Group and the subordination of the LeMond Group's claims.[1]

The LeMond Group contends that through extensive discovery in the state court litigation, they were the first to uncover and make public certain evidence that has been used in

---

[1] Adversary Proceeding 09-00031 is now being prosecuted by Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust, the successor-in-interest to the claims brought by the Debtors.

3

proceedings before this Court.  The LeMond Group asserts that it has incurred over $400,000 of attorneys fees and costs to prosecute its action against Timothy L. Blixseth, Blixseth Group, Inc., Yellowstone Mountain Club, LLC, Yellowstone Development, LLC and Yellowstone Club World, LLC, and that in connection with Adversary Proceeding No. 09-00014, the LeMond Group supplied all of its discovery material, consisting of 45 CD-Rom disks, to the Official Committee of Unsecured Creditors and the Debtors.  The LeMond Group maintains that the use of its evidence by the Debtors and the Official Committee of Unsecured Creditors  "was a significant factor leading to this Court's equitable subordination of Credit Suisse's allowed secured claim to the debtor-in-possession financing, administrative expenses in the Debtors' bankruptcy cases and the allowed claims of unsecured creditors."  The LeMond Group also posits that Jorge V. Jasson, who served on the  Official Committee of Unsecured Creditors, "provided additional and considerable support in the development of the positions and litigation strategy of the [Official Committee of Unsecured Creditors] and the Debtors against Credit Suisse and other defendants in the Credit Suisse Adversary Proceeding."

The Debtors oppose approval of the LeMond Group's Application arguing "that all of the expenses were incurred for the direct benefit of the LeMond Parties and, at most, provided only an incidental benefit of the Debtors or their estates."  Debtors further argue that:

> The LeMond Parties have their own agenda and seek to preserve the return of an extraordinary profit on their investment in the Debtors at the expense of creditors.  They originally invested a relative pittance and like Mr. Blixseth seek court sanction of the distribution of significant funds to them on account of their investment.  They were never creditors of the Debtors until they brought suit and converted their ownership interest into a substantial claim.
>
> Finally, the evidence will ultimately show that the documents they voluntarily provided that were used by the Debtors and admitted into evidence

4

were duplicative of documents produced by other parties to the litigation. Despite the puffing in the Application, there was no significant interaction between the LeMond counsel and the Debtors with respect to the strategy to be used during the litigation. The Court authorized the employment of professionals by the Committee and the Debtor to prosecute the litigation. Those firms conducted significant discovery over the period leading up to the trial. The fact that the LeMond Parties voluntarily turned over documents that were discoverable via requests to produce and/or 2004 Examination can hardly serve to elevate the fees and costs associated with the LeMond Parties efforts to obtain funds from the Debtors to repurchase their membership interests prior to the filing into administrative expense status.

### APPLICABLE LAW and DISCUSSION

Debtors and the LeMond Group, in the Joint Motion for Approval of Compromise Settlement that was filed with the Court on October 16, 2009, seek to resolve the LeMond Group's request for an administrative expense award. This Court generally welcomes, and indeed encourages parties to resolve their disputes by agreement, without Court involvement, because a joint resolution among the parties is generally beneficial to all parties. However, the Court is not willing to approve a resolution when it is contrary to the law.

Debtors and the LeMond Group agree that the LeMond Group should be allowed a $50,000 administrative claim. As discussed in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986),

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:
>
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*See also In re Michael*, 14 Mont. B.R. 363, 365 (1995) (construing *In re A & C Properties*).

In the case *sub judice*, payment of the $50,000 will dilute payment to other legitimate administrative claimants. Also, the proposed settlement of the administrative claim for $50,000 does not settle complex litigation. Indeed, the hearing on the LeMond Group's request for approval of their administrative claim was already held and the matter is ready for decision. Finally, for the reasons the Court will discuss later, the Court finds that the proposed settlement, while in the LeMond Group's best interest, is not in the best interest of any other party and is contrary to applicable law. Therefore, this Court finds that the Joint Motion for Approval of Compromise Settlement is not fair and equitable in satisfaction of F.R.B.P. 9019(a) and is not in the best interest of all parties. Accordingly, the Joint Motion for Approval of Compromise Settlement is denied.

As for the request for approval of an administrative claim, the Bankruptcy Code sections under which the LeMond Group seek payment of not less than $400,000 provide as follows:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-

>> (1)(A) the actual, necessary costs and expenses of preserving the estate including wages, salaries, or commissions for service rendered after the commencement of the case;-

>> * * *

>> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by-

>>> (A) a creditor that files a petition under section 303 of this title;

>>> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the

6

debtor;

(C) creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under Chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee; [and]

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503.

In support of their Application, the LeMond Group summarily argues that "[w]hile pre-petition fees are not explicitly allowed under the Bankruptcy Code, they are implicit in the 'substantial contribution' inquiry: 'the Bankruptcy Code . . . regulates entitlement for pre-petition services simply to a consideration of the matter of benefit conferred on the estate.' *In re Med General, Inc.*, 17 B.R. 13, 14 (Bankr. D. Minn. 1981). Furthermore, the Supreme Court determined that 'pre-petition activities which directly benefitted or tended to preserve the estate of the debtor could claim entitlement to treatment as expense of administration.' *Id.* at 14

7

(referring to *Randolph v. Scruggs*, 190 U.S. 533 (1903)).” Application, p.6.

The LeMond Group references § 503(b)(1)(A) on page 4 of its Application. However, on page 7 of the Application, the LeMond Group appears to abandon its request for fees under § 503(b)(1)(A) as the LeMond Group argues that it made substantial contribution to this case “within the meaning of §§ 503(b)(3)(D) and 503(b)(4).” For purposes of completeness, the Court will address the LeMond Group’s Application under §§ 503(b)(1), 503(b)(3)(D) and 503(b)(4).

In general, 4 COLLIER ON BANKRUPTCY, ¶ 503.05 explains:

> Section 503(b) describes nine general, nonexclusive categories of claims entitled to administrative expense status and, therefore, to first priority under section 507(a). These categories, discussed separately in the following paragraphs, generally include all costs and expenses incurred by the estate after the entry of the order for relief. It also includes one category of costs incurred prior to entry of the order for relief, the value of goods received by the debtor within 20 days before the commencement of the case.

With respect to § 503(b)(1), COLLIER ON BANKRUPTCY goes on to explain that “[t]he principal that an administrative expense can arise only from a transaction with the trustee (or debtor in possession) of the estate is derived from the reference in section 503(b)(1)(A) to the ‘estate.’ The earliest a bankruptcy estate exists is on the petition date.” *Id*. at ¶ 503.06[3][a]. *See also In re Kadjevich*, 220 F.3d 1016, 1019 (9th Cir. 2000) (“Critically, [under § 503(b)(1)(A),] only post-petition debts can be treated as administrative expenses; pre-petition debts may not be granted administrative-expense priority.”) Subsection 503(b)(1)(A)(I) specifically pertains to “wages, salaries, and commissions for services rendered *after* the commenced of the case” and subsection 503(b)(1)(A)(ii) pertains to “back pay attributable to any period of time occurring *after* commencement of the case[.]” (Emphasis added). It is clear from the plain language of §

8

503(b)(1)(A), that the LeMond Group is not entitled to an award of administrative fees and costs under § 503(b)(1)(A).

The LeMond Group, however, also seeks approval of their administrative expense claim under 11 U.S.C. §§ 503(b)(3)(D) and (b)(4).  Because § 503(b)(4) authorizes awards of legal and accounting fees only in situations coming within the scope of § 503(b)(3), and because subsection (D) is the only portion of § 503(b)(3) arguably applicable here, the Court turns its focus to § 503(b)(3)(D).

The members of the LeMond Group were equity security holders and as a result of various settlements in the state court litigation, now assert that they are creditors of the bankruptcy estate.  The administrative expenses that they seek consist of attorney fees. Therefore, the LeMond Group is entitled to their requested administrative expenses if they incurred them as a result of activities which (1) made a "substantial contribution," (2) "in a case under chapter 9 or 11."

As a threshold issue, the Court would generally have to determine whether pre-petition attorney fees can be afforded administrative expense priority under § 503(b)(3)(D).  The only reported Ninth Circuit Court of Appeals case that this Court could find dealing with pre-petition services and § 503(b)(3)(D) was *Christian Life Center Litigation Defense Committee v. Silva (In re Christian Life Center)*, 821 F.2d 1370, 1373-74 (9th Cir. 1987), which held that "[c]laims that arise from a creditor's pre-petition services to the debtor are not entitled to administrative expense treatment. . . .  It makes no difference that the duty to indemnify [a corporate officer of the debtor] for litigation expenses, if such duty exists, did not accrue until after the petition was filed when [the corporate officer] incurred those expenses; the critical fact is that the claim for

indemnity arose from pre-petition services [the corporate officer] provided the corporation."  The Court, however, can leave the pre-petition issue to another day because the Court concludes that the LeMond Group's attorney fees did not provide a substantial contribution to the Debtors' jointly administered Chapter 11 bankruptcy cases.

Whether an applicant has rendered a substantial contribution which entitles him or her to an administrative claim is a question of fact for the court to determine.  *Lebron v. Mechem Financial, Inc.,* 27 F.3d 937, 946 (3rd Cir. 1994); *In re Flight Transp. Corp. Sec. Litig.*, 874 F.2d 576, 582 (8th Cir. 1989).  "The burden of proving an administrative expense claim is on the claimant."  *Microsoft v. DAK Indust. (In re DAK Indust.)*, 66 F.3d 1091, 1094 (9th Cir. 1995). The applicant bears the burden because as aptly explained by one court:

> Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings. Compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate ... The integrity of Section 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or the estate.

*In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 690 (Bankr. S.D. Cal. 1988).

This Court has broad discretion to grant administrative expense requests, but is required to construe § 503(b) narrowly to keep costs to a minimum and preserve the limited assets of the estate for the benefit of unsecured creditors.  *DAK Indus.*, 66 F.3d at 1094; *In re Central Idaho Forest Products*, 317 B.R. 150, 155 (Bankr. D. Idaho 2004).  Applying this burden and construing § 503(b) narrowly, the Court finds that the LeMond Group failed its burden of showing that its pre-petition actions were extraordinary or provided a tangible benefit to the Debtors, their bankruptcy estates or the creditors.

10

The Ninth Circuit Court of Appeals, in *In re Cellular 101, Inc.*, 377 F.3d 1092, 1097-98 (9th Cir. 2004), recognized the split among the circuits regarding whether the motivation behind a creditor's actions in a case should disqualify the creditor from receiving administrative fees. For instance, in *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 944, the Third Circuit Court of Appeals wrote that:

> Inherent in the term "substantial" is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection.

The Court in *Lebron* went on to explain that "[a] creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate." Absent such a finding, the Third Circuit in *Lebron* concluded that pre-petition litigation expenses "would not be reimbursable under § 503(b)(3)(D) even if information disclosed in that litigation subsequently turned out to be helpful to the trustee." *Id*.

The LeMond Group's request for an administrative expense award does not satisfy the *Lebron* test for "substantial contribution." In particular, the LeMond Group failed to overcome the *Lebron* presumption that they undertook the state court litigation against Yellowstone Mountain Club, LLC, Yellowstone Development, LLC and other parties for any reason other than to serve their own interests.

In contrast to *Lebron*, the Eleventh Circuit Court of Appeals in *In re Celotex*, 227 F.3d 1336, 1339 (11th Cir. 2000), held "that the motive of the petitioner should not be a factor in determining whether a substantial contribution has been made in the bankruptcy proceeding." In

*Celotex*, the applicant sought an award of attorneys' fees, arguing he had made a substantial contribution to the approval of a consensual plan of reorganization. The bankruptcy court and the district court denied the applicant's request for fees under § 503(b)(3) and (4) on grounds that the administrative expense applicant and his clients had an interest adverse to the debtors and that the services were performed for the applicant's clients and not for the particular benefit of the bankruptcy estate.

> On appeal, the Eleventh Circuit considered such evidence as the following:
>
> [Applicant] testified that his actions went beyond simple representation of his clients when he worked to create a consensual plan of reorganization, and that, without his involvement, achievement of a consensual reorganization plan would not have been accomplished. *See id.* at 86-88. This testimony was supported by testimony from other parties. Kozyak testified that [applicant]'s knowledge, experience and the respect that [applicant] had earned from other parties made progress toward reorganization possible. *See id.* at 91-94. The Debtors' counsel, Mr. Warren, testified that the Debtors, while opposed to most petitions for fee awards, supported S&R's application. *See id.* at 98-99. The Debtors supported it because "the role that [applicant] played provide[d] the tangible and demonstrative benefit to the estate and the creditors of the estate. Again, not just [applicant's] creditors."

Based upon the "phenomenally unique" aspect of the case, and the fact that parties in the case were "doing some really unique . . . energetic activities[,]" the Court in *Celotex* reversed the lower Courts' denial of the administrative fee request. The Court agreed with the Fifth Circuit Court of Appeals that "nothing in the Bankruptcy Code requires self-deprecating, altruistic intent as a prerequisite to recovery of fees and expenses under section 503." *Id*. at 1338 (quoting *In re DP Partners, Ltd.*, 106 F.3d 667, 673 (5th Cir. 1997).

*Celotex* is distinguishable from the instant case. First, the debtors and other parties-in-interest agreed that the administrative fee applicant *Celotex* had provided a substantial benefit to

the debtors. In this case, the Debtors oppose the LeMond Group's request for an administrative fee award. Moreover, the unsubstantiated claims of the LeMond Group are that their involvement included providing their state court litigation discovery to counsel for the Debtors and for the Official Committee of Unsecured Creditors, and having one of their members serve on the Official Committee of Unsecured Creditors. Most, if not all of the discovery information that the LeMond Group supplied to the Debtors and the Official Committee of Unsecured Creditors should have been in the Debtors' possession, particularly since the Debtors were involved in the state court litigation and indeed, in their opposition to the pending Application, Debtors argue that "[a]ll admitted exhibits used by Debtors at the trial with an original source from the LeMond litigation were also produced by other parties during the course of discovery." In addition, the LeMond Group failed to show that Jorge V. Jasson's participation on the Official Committee of Unsecured Creditors benefitted the Debtors or the bankruptcy estates.

The Official Committee of Unsecured Creditors and the Debtors spent a tremendous amount of time on discovery, depositions and trial preparation. The LeMond Group's participation in this case was, if anything, merely duplicative of the "unique" and "energetic" activities born by the Official Committee of Unsecured Creditors and the Debtors. The LeMond Group simply is not entitled to an administrative fee award for the monies it spent litigating its state court action against the Debtors, Blixseth and other parties because such efforts did not make a substantial contribution to the Debtors' reorganization efforts.

Because this Court concludes that the LeMond Group is not entitled to any administrative award, the Court cannot approve the Joint Motion for Approval of Compromise Settlement that allows the LeMond Group a $50,000 administrative claim. Accordingly, the Court will enter a

13

separate order providing as follows:

IT IS ORDERED that the Joint Motion for Approval of Compromise Settlement filed October 16, 2009, is DENIED; and the hearing on said Motion scheduled for December 10, 2009, is VACATED.

IT IS ORDERED that the Application for Allowance and Payment of Administrative Expense Claim filed August 17, 2009, at docket entry no. 1197, by Greg LeMond, Jorge V. Jasson, David L. Morris, Sacia B. Morris and Sacia Enterprises, Inc. is DENIED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

14