UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re  **YELLOWSTONE MOUNTAIN CLUB, LLC**,  Debtor. | Case No. **08-61570-11**  Substantively Consolidated with: |
| In re  **YELLOWSTONE DEVELOPMENT, LLC**,  Debtor. | Case No. **08-61571-11** |
| In re  **YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC**,  Debtor. | Case No. **08-61573-11**  and Jointly Administered with: |
| In re  **BIG SKY RIDGE, LLC**,  Debtor. | Case No. **08-61572-11** |

# MEMORANDUM of DECISION

At Butte in said District this 24th day of March, 2010.

In the above-referenced Chapter 11 bankruptcy cases, after due notice, a hearing was held February 11, 2010, in Butte on Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust's ("YCLT"), Motion for Approval of Post-Effective Date Agreement with

1

Certain B Equity Interest Holders for Modification of Payment Priority and Other Relief filed on December 11, 2009, at dkt. 1366, together with the objection thereto filed by Timothy L. Blixseth.[1]  John G. Turner, III of Amarillo, Texas, and Charles W. Hingle of Billings, Montana, appeared at the hearing on behalf of the Trustee and YCLT; Joel E. Guthals of Billings, Montana, appeared at the hearing on behalf of Timothy L. Blixseth; and Ronald A. Bender of Missoula, Montana, appeared at the hearing on behalf of the 7 Non-Settling Class B Members.  The Trustee, Marc S. Kirschner, testified and Exhibits 1, 2, 3, 4 and 5 were admitted into evidence without objection.

The 7 Non-Settling Class B Members are Michael Snow, Greg C. Branch, A.C. and Linda Markkula, Spano Yellowstone Holdings Limited Partnership, Robert P. and Katharine M. Watson, Bankers Financial Corporation and Mountain Vista Properties BG.  *See* Exhibit A to the Term Sheet attached to YCLT's Motion at dkt. 1366.  The 7 Non-Settling Class B Members ("Class B Members") are Class B Shareholders who hold a 7.1428% equity interest in Yellowstone Mountain Club, LLC and Yellowstone Development Company, LLC.  The Class B Members commenced Adversary Proceeding No. 09-00018 against BLX Group, Inc., f/k/a Blixseth Group, Inc. ("BLX"), Timothy L. Blixseth ("Blixseth") and Edra D. Blixseth on March 3, 2009.  YCLT, in its pending motion, seeks approval of the terms of an agreement with the Class B Members which would allow the Class B Members a general unsecured claim with the same priority as the Prepetition Lenders in the amount of $22 million in exchange for the assignment by the Class B Members of their claims or the proceeds thereof against the majority

---

[1] Ross P. Richardson, Chapter 7 Trustee of Yellowstone Club World, LLC, filed an objection to YCLT's motion on December 22, 2009, but later withdrew such objection on February 15, 2010.

2

owners of the Debtor entities, past and present, including their pending claims in Adversary Proceeding No. 09-00018, to YCLT.[2] YCLT argues that the agreement between it and the Class B Members is contemplated by Debtors' confirmed Third Amended Joint Plan of Reorganization and the Trust Agreement that governs the work of YCLT.

Blixseth opposes approval of the agreement between YCLT and the Class B Members arguing that the agreement impermissibly steps up the priority of distribution to the Class B Members, the Class B Members cannot assign their claims to YCLT under Montana law, that YCLT is impermissibly seeking modification of Debtors' confirmed Plan, that the pending Motion is based on an invalid Settlement Agreement and Trust Agreement and that YCLT is seeking to liquidate the amount of the Class B Members' claims against Blixseth, Edra Blixseth and BLX without any reasonable basis.

YCLT persuasively counters Blixseth's first objection arguing that the Class B Members are not assigning their equity interests in the Debtors to YCLT in exchange for a right to participate in distributions from YCLT. Rather, the Class B Members are assigning their claims, or the proceeds thereof, against the majority owners of the Debtor entities in exchange for a right to participate in distribution from YCLT as unsecured creditors in Class 4. YCLT is not seeking, and the Class B Members are not trading their Class 8 equity interest claims for Class 4 claim status.

As for whether the Class B Members can assign their claims to YCLT, YCLT argues that

---

[2] Paragraph 4 of the Term Sheet explains that the "7 B's have alleged claims against the Blixseths arising out of their Class B minority equity ownership in Debtors, Yellowstone Mountain Club LLC and Yellowstone Development LLC, which were controlled by one or more of the Blixseths prior to their bankruptcy cases. Michael Snow also claims to have an enforceable settlement agreement with one or more of the Blixseths."

the Debtors' confirmed Third Amended Joint Plan in this case contemplates assignment of the Class B Members' claims to YCLT. Even if the Class B Members' claims themselves are not assignable, the proceeds are assignable as the Term Sheet attached as Exhibit A to the Motion clearly contemplates.³ The Court agrees with YCLT that the fact that an assignment of some property interests may be precluded by non-bankruptcy law does not preclude the assignment or distribution of proceeds from such an interest under bankruptcy law. *See, e.g., MLQ Investors, L.P. v. Pacific Quadracasting, Inc.,* 146 F.3d 746, 747-49 (9th Cir. 1998) (affirming a district court's order to distribute the proceeds from the sale of a radio stations' FCC broadcast licenses over objection that a security interest cannot be created in such licenses because of federal laws limiting the transfer of the licenses). Blixseth himself recognizes that even when a "personal tort" claim is not assignable, the proceeds of such a claim may validly be assigned. *Alpine Buffalo, Elk and Llama Ranch, Inc. v. Andersen*, 2001 MT 307, ¶ 17, 307 Mont. 509, 38 P.3d 815, 817- 18.

Blixseth suggests, without support, that the Class B Members' claims are "personal" and, therefore, could not be "property of the estate" of the Debtors under 11 U.S.C. § 541. The Ninth Circuit long ago made it clear that assignability of a claim under state law has no impact on

---

³ Paragraph 3 of the Term Sheet provides that the purpose of the agreement "is to transfer any and all claims of the 7 B's . . . against Tim Blixseth, Edra Blixseth, BLX Group, Inc., f/k/a Blixseth Group, Inc. and their agents and controlled entities (the 'Blixseths') or the proceeds thereof, without representations or warranties, to the Trust in consideration of an allowed unsecured claim in favor of the 7 B's in a specified aggregate amount that would entitle them to receive distributions from the Trust if the Trust's recoveries are sufficient." Paragraph 7 goes on to provide that "[t]he 7 B Claims or the proceeds thereof will be transferred by assignment instrument to the Trust or by such other method as to which the parties may agree, and the 7 B's will work with the Trustee and its counsel to avoid the loss of legal rights in the process of assigning such claims to the Trust."

4

whether a claim becomes part of the bankruptcy estate.  *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 709 (9th Cir. 1986) (holding personal injury claims are property of a bankruptcy estate "regardless of whether a personal injury claim is transferable or assignable under state law").  Here, any implication the Class B Members' claims have been adjudicated as "personal" in nature for assignability purposes is incorrect and a red herring.

      YCLT is also not seeking to substantively modify the Debtors' confirmed Third Amended Joint Plan.  The Debtors' Third Amended Joint Plan specifically incorporates a form of Liquidation Trust Agreement (Schedule 1.85) to be adopted and which was eventually entered into in substantially the same form.  Section 5.3.3 of the Trust Agreement confers on the Trustee the power "to enter into post-Effective Date agreements with the holders of B Equity Interests whereby holders of B Equity Interests may contribute valuable consideration to Trust (including their direct cause of action, if any, against insiders/affiliates or the proceeds thereof) in return for rights to participate in distribution from the Liquidating Trust of proceeds of litigation claims against insiders/affiliates."  The Debtors' confirmed Plan contemplates that YCLT could enter into the type of agreement with the Class B Members as that proposed in the instant Motion.

      YCLT next persuasively argues that although Blixseth has appealed confirmation of the Debtors' Third Amended Joint Plan to the United States District Court for the District of Montana, implementation of the Debtors' Third Amended Joint Plan has not been stayed and Blixseth concedes that Debtors' Third Amended Joint Plan has been "confirmed . . [and] substantially consummated[.]" Response of Timothy L. Blixseth, dkt no. 1407, p.5.  Ninth Circuit law is clear that, even after the timely filing of a notice of appeal, "[t]he bankruptcy court retains jurisdiction over all other matters that it must undertake to implement or enforce the

5

judgment or order . . . ." *In re Sherman*, 491 F.3d 948, 967 (9th Cir. 2007). Because the Debtors' confirmed Plan provides for an agreement with the Class B Members such as that proposed by YCLT, this Court retains jurisdiction to implement the Plan, including transfer of the Class B Members' claims to YCLT. *Semi-Tech Litigation, LLC v. Bankers Trust Company*, 272 F.Supp.2d 319, 325 (S.D. N.Y. 2003) (finding the court "necessarily had before it in determining whether to approve the Plan the question whether it had authority to work an assignment of claims" to a liquidating trustee).

The Court also disagrees with Blixseth that YCLT is seeking to liquidate the amount of the Class B Members' claims against Blixseth, Edra Blixseth and BLX without any reasonable basis. The test for determining whether to approve a compromise and settlement under F.R.B.P. Rule 9019(a) was discussed by this Court in *In re Schrock*, 9 Mont. B.R. 414, 416-417 (Bank. D. Mont. 1991):

> "Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.'" *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988) (Citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d1377, 1380-81 (9th Cir.) *cert. denies sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986). In evaluating a settlement, the Court must consider:
>
>> '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views of the premises.' *A & C Properties*, 784 F. 2d at 1381.
>
> *Woodson*, 839 F. 2d at 620 (additional citation omitted).
>
> *See also, In re MGS Marketing*, 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976). In

>accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D.Ga. 1981). *See also, In re Lions Capital Group*, 49 B.R. 163, 175-76 (Bankr. S.D. N.Y. 1985).

Considering the foregoing and giving deference to the Trustee's business judgment, the Court finds that liquidation and consolidation of the Class B Members' claims against Blixseth, Edra Blixseth and BLX is appropriate. *See In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415, 420 (9th Cir. BAP 2003).

Blixseth also argues that the Class B Members are releasing claims against YCLT without providing any analysis of the validity of those claims. The particular provision of the Term Sheet provides: "Upon the effectiveness of the Settlement Agreement . . ., each of the 7 B's shall provide a general release, and shall be deemed to have, dismissed, waived and forever released with prejudice each and every actual, potential or threatened claim, cause of action and challenge that have been, might have been or might be asserted by the 7 B's or their estates against First Lien Agent, and of the First Lien Lenders or any of their respective affiliates (collectively the 'Released Parties'), with respect to any and all claims, and acts or omissions relating to the Debtors, the Blixseths or any of their respective affiliates arising prior to the date of the Settlement Agreement, in a form of release acceptable to the parties." YCLT's counter-argument is not persuasive. YCLT states that "the entire purpose of the proposed settlement is to consolidate the Trust's and the 7 B's causes of action against Blixseth to eliminate competition between competing complex lawsuits and to manage them more effectively so that it is more likely that all general unsecured creditors will benefit."

This Court cannot rubber stamp the Trustee's proposed agreement with the Class B Members. Blixseth objects to the proposed settlement arguing that the Prepetition Agent in this case, Credit Suisse, controls YCLT. Under the terms of Debtors' Third Amended Joint Plan, Credit Suisse was permitted to appoint four members to YCLT's Advisory Board. YCLT states that two of the designees are independent investment companies and Prepetition lenders that presumably vote in their own firm's interests. The other two designees are independent businessmen who are not current employees of the Prepetition Agent. YCLT states that "any influence the Prepetition Lenders enjoy is justified since it is their participation in the Trust that will be most heavily diluted if the Motion is granted. Their consent in return for a release from the 7 B's–consideration that costs the Trust nothing–is surely justified but did not drive the negotiations." The parties in this case have argued from the start that this case demands transparency. Under such transparency, the Court sees no legitimate business justification in these bankruptcy cases to bootstrap the release of claims by the Class B Members against Credit Suisse into the agreement now before the Court. In other words, the Court does not see how the release of the Class B Members' potential claims against Credit Suisse furthers the purpose of the proposed settlement, which is "to consolidate the Trust's and the 7 B's causes of action against Blixseth to eliminate competition between competing complex lawsuits and to manage them more effectively so that it is more likely that all general unsecured creditors will benefit." While such release benefits Credit Suisse, the Court does not see how paragraph 9 of the Term Sheet provides any benefit to the Debtors or their bankruptcy estates, yet certainly some part of the Class B Members' $22 million allowed Class 4 unsecured claim is attributable to the release. Therefore, this Court will not approve paragraph 9 of the Term Sheet. But for provision 9 of the

Term Sheet attached to YCLT's Motion, this Court would approve the same.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that Timothy L. Blixseth's objection to approval of the Motion for Approval of Post-Effective Date Agreement with Certain B Equity Interest Holders for Modification of Payment Priority and Other Relief is overruled in part and sustained in part; the Motion for Approval of Post-Effective Date Agreement with Certain B Equity Interest Holders for Modification of Payment Priority and Other Relief filed on behalf of Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust on December 11, 2009, at dkt. 1366, is DENIED; and Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust, is granted leave to refile the Motion for Approval of Post-Effective Date Agreement with Certain B Equity Interest Holders for Modification of Payment Priority and Other Relief in accordance with the Court's Memorandum of Decision entered this same date.

        BY THE COURT

        /s/ Ralph B. Kirscher
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana