## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**YELLOWSTONE MOUNTAIN CLUB, LLC**,

Debtor.

Case No.  **08-61570-11**

## MEMORANDUM of DECISION

At Butte in said District this 15th day of June, 2010.

In this Chapter 11 bankruptcy, Marc S. Kirschner, as Trustee of the Yellowstone Club

Liquidating Trust, filed on September 14, 2009, an Objection to Proof of Claim No. 531 filed by

Greg LeMond.  Thereafter, Marc S. Kirschner ("Trustee"), as Trustee of the Yellowstone Club

Liquidating Trust and Greg LeMond ("LeMond"), through their respective counsel, entered into a

"Stipulation and Joint Motion for Allowance of Claim, [and] Partial Compromise of Adversary

Proceeding No. 09-00031" which was filed on January 26, 2010, at docket entry no. 1504.

Overlook Partners, LLC ("Overlook") and Timothy L. Blixseth ("Blixseth") filed a Response and

Objection to approval of the Stipulation between the Trustee and LeMond on February 10, 2010.

After due notice, a hearing on approval of the Stipulation between the Trustee and LeMond,

together with Overlook and Blixseth's objection thereto, was held June 7, 2010, in Butte.  Shane

P. Coleman of Billings, Montana appeared at the hearing on behalf of the Trustee, Trent M.

Gardner of Bozeman, Montana appeared on behalf of LeMond and Joel E. Guthals of Billings,

1

Montana appeared on behalf of Overlook and Blixseth.  Marc Kirschner and Michael Doyle

testified.  The Trustee's Exhibits 1 through 4 and Blixseth's Exhibits A through O were admitted

into evidence without objection.

### FACTUAL BACKGROUND

In 2000, LeMond was negotiating an agreement with the Debtors whereby LeMond

would promote the Yellowstone Club in an attempt to bring purchasers to the Club.  Under the

proposed agreement, LeMond was to receive a credit of $100,000.00 for every purchaser he

brought into the Yellowstone Club.  LeMond would receive a Lot of his choosing at the

Yellowstone Club, using the credits earned under the agreement, if he brought in 10 purchasers.

LeMond chose Lot 11 as the subject Lot.  Lot 11 is now described as "Lot 11A of the Amended

Plat of Lot 11 of the Yellowstone Mountain Club Subdivision, Phase 1".  LeMond asserts that he

had the option, if he had brought in less than 10 people after five years, of paying the difference

at the rate of $100,000.00 per person and receiving Lot 11.  The Debtor entities held Lot 11 off

the market for numerous years in accordance with the agreement with LeMond.  LeMond did not

receive Lot 11 but asserts he bought purchasers to the Yellowstone Club.  Accordingly, LeMond

filed Proof of Claim No. 531 on March 10, 2009, asserting an unsecured claim of $15 million

against the Debtors.

After much research and negotiation, the Trustee determined that LeMond's Claim

should be allowed in the amount of $650,000.00.  LeMond agrees.  In addition, the Trustee and

LeMond agree that LeMond may prosecute pending Civil Cause No. 29-2007-5 in the Montana

Fifth Judicial District Court, Madison County, against the Defendants named in the Third

Amended Complaint (Yellowstone Development, LLC Claim No. 131, Part 2), including the

Yellowstone LLCs, to judgment but execution of any such judgment shall be limited to declaratory, specific or other appropriate relief regarding title to the so-called "Overlook Lots" currently identified by LeMond's notice of lis pendens.  The parties agree that LeMond shall not be entitled to any personal judgment or execution against the Defendants in the Madison County Case, or any further amendment thereof or action parallel thereto, except to the extent necessary to execute on or quiet title to LeMond's interest, if any, in the Overlook Lots.

The Trustee further consents to modification of the automatic stay in this case to allow LeMond to reinitiate the Madison County Case and prosecute it to a judgment regarding LeMond's right to the Overlook Lots.  The Trustee, in his discretion, may choose to defend against such efforts or may allow such efforts to proceed without objection. Upon modification of the stay, LeMond and the Trustee will dismiss all claims and counterclaims between LeMond and the Yellowstone LLCs in the Madison County Case, except for LeMond's claim to title of the Overlook Lots, and LeMond will not pursue any other remedy against the Yellowstone LLCs.

LeMond's Claim is one of the Designated Claims set forth in Schedule C to the Yellowstone Club Settlement Term Sheet dated May 17, 2009, and, pursuant to Section 5.13 of the Yellowstone Club Liquidating Trust Agreement (Dkt. 995, Schedule 1.85), settlement of LeMond' Claim as discussed above was approved by an affirmative vote of five of the six members of the Trust Advisory Board present at a meeting held January 25, 2010.

The Trustee and LeMond believe that their proposed settlement of LeMond's claim is fair, reasonable and adequate, and satisfies *Martin v. Kane (In re A & C Properties)*, 784 F. 2d 1377, 1380-81 (9th Cir. 1986).  Blixseth counters that the Trustee and LeMond's proposed settlement and motion do not satisfy the *A & C Properties* factors because the parties failed

provide any evidence or information from which this Court can determine if the alleged material terms regarding LeMond's underlying claim are correct or that there even was an agreement between the Yellowstone Club entities and LeMond as stated in the motion. Blixseth argues that the Settlement Agreement fails to provide information as to why and on what basis the Trustee decided on the recited material terms of the alleged agreement between LeMond and the Yellowstone Club. It is the position of Overlook and Mr. Blixseth that the material terms recited in the Settlement Agreement are not correct in that there never was such an agreement between LeMond, the Yellowstone Club entities and Blixseth, as there was never a meeting of the minds on terms. Moreover, even if there was an agreement, Blixseth maintains that it was not performed by LeMond and was not enforceable for a number of legal reasons.

Blixseth explains that Overlook is the owner of five development lots in the Yellowstone Club consisting of Lots 201, 202, 203, 204, and 205 of the Yellowstone Mountain Club Subdivision, which Overlook purchased for $15 million under an agreement with two of the Debtor entities on or about April 4, 2008 (the "Overlook Lots"). These lots are subject to a lis pendens filed by LeMond in the Madison County litigation, claiming that LeMond had an interest in the Overlook Lots. Blixseth contends that the Overlook Lots were sold to Overlook subject to an agreement between Yellowstone Development, LLC and Overlook entered into on May 5, 2008, that provided that Yellowstone Development, LLC would indemnify and hold harmless Overlook for the lis pendens and be responsible for all the litigation costs in getting it removed.

## DISCUSSION

This Court addressed the test for compromise and settlement under F.R.B.P. Rule 9019(a) in *In re Schrock*, 9 Mont. B.R. 414, 416-417 (Bank. D. Mont. 1991) as follows:

"Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.'" *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988) (Citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d1377, 1380-81 (9th Cir.) *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986). In evaluating a settlement, the Court must consider:

> '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views of the premises.' *A & C Properties*, 784 F. 2d at 1381.

*Woodson*, 839 F. 2d at 620 (additional citation omitted).

*See also In re MGS Marketing*, 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976). In accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D.Ga. 1981). *See also, In re Lions Capital Group*, 49 B.R. 163, 175-76 (Bankr. S.D. N.Y. 1985).

The first factor to evaluate whether a settlement is fair and equitable is the probability of success in the litigation. *A & C Properties*, 784 F. 2d at 1381. A precise or exact judicial determination of the likely outcome is not required because that would defeat the purpose of compromising the litigation. *In re Telesphere Communications, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill 1994); *In re Energy Co-op., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989), quoting *In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3rd Cir. 1979). In the Ninth Circuit a bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim, but rather "[i]t is sufficient that, after apprising itself of all facts necessary for an intelligent and

objective opinion concerning the claim's validity, the court determines that either (1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the claim's litigation is doubtful." *United States of America v. Alaska National Bank, et al. (Matter of Walsh Const., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982) (citing cases).  The Ninth Circuit cited *Walsh* approvingly in *A & C Properties,* 784 F.2d at 1380-81, noting that the purpose of a compromise agreement is to allow the trustee and creditors "to avoid the expenses and burdens associated with litigating sharply contested and dubious claims," and that the "law favors compromise and not litigation for its own sake." *See also Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976).

The first *A & C Properties* factor favors approval of the settlement.  The probability of the Trustee's success in litigation against LeMond is uncertain.  Both  parties firmly believe that their respective positions are strong and LeMond has spent years litigating this issue, both at the state court level and in this Court.

The second factor is the difficulties, if any, to be encountered in the matter of collection. *A & C Properties*, 784 F. 2d at 1381.   The second standard is inapplicable here given that the Joint Motion is intended to settle claims objections and the Trustee would not have to attempt to collect from LeMond.  LeMond has asserted $15 million dollar claims in both the Yellowstone Mountain Club case (Case No. 08-61570) and the Yellowstone Development case (Case No. 09-61571).

The third factor is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.  *A & C Properties*, 784 F. 2d at 1381.  The history of this litigation establishes conclusively that further litigation between the Trustee and

LeMond would be complex and expensive.  LeMond's claims revolve around a complicated

agreement involving multiple properties and large sums of money, which LeMond alleges was

finalized ten years ago.

The fourth and final factor is the paramount interest of the creditors and a proper

deference to their reasonable views in the premises.  *A & C Properties*, 784 F. 2d at 1381.  The

interests of the remaining creditors in this case are represented by the Trustee and the

Yellowstone Club Liquidating Trust.  Five of the six members of the Trust Advisory Board voted

to accept the negotiated settlement with LeMond.  Given the foregoing, the Court finds that

factor four weighs in favor or approving the settlement.

Having determined that three of the four *A & C Properties* factors support approval of the

settlement, the Court will overrule Overlook and Blixseth's objections, grant the Trustee's

Motion and approve his settlement with LeMond.

### CONCLUSIONS OF LAW

1.  This Court has original and exclusive jurisdiction in the Debtors' Chapter 11 cases

under 28 U.S.C. § 1334(a), and has jurisdiction in Adv. No. 09-31 under 28 U.S.C. § 1334(b).

2.  The Trustee's Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

3.  The Trustee satisfied his burden of proof under Rule 9019(a), F.R.B.P., of showing

that three of the four factors listed *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377,

1380-81 (9th Cir. 1986) weigh in favor of approval of the proposed settlement with Greg LeMond

resolving the Trustee's Objection to Proof of Claim No. 531.

4.  This Court exercises its discretion as provided in *Woodson v. Fireman's Fund Ins. Co.*

*(In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988), and approves the Trustee's settlement with

Greg LeMond.

Accordingly, consistent with the Court's oral ruling made June 7, 2010, the Court will enter a separate order providing as follows:

**IT IS ORDERED** Overlook Partners, LLC and Timothy L. Blixseth's Objection (Docket No. 1687) to the Stipulation and Joint Motion for Allowance of Claim, [and] Partial Compromise of Adversary Proceeding No. 09-00031 (Docket No. 1504), is OVERRULED; and the Stipulation and Joint Motion for Allowance of Claim, [and] Partial Compromise of Adversary Proceeding No. 09-00031 is APPROVED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

8