UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC**,<br><br>       Debtor. | Case No. **08-61570-11** |
| In re<br><br>**YELLOWSTONE DEVELOPMENT, LLC**,<br><br>       Debtor. | Case No. **08-61571-11** |
| In re<br><br>**YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC**,<br><br>       Debtor. | Case No. **08-61573-11** |
| In re<br><br>**BIG SKY RIDGE, LLC**,<br><br>       Debtor. | Case No. **08-61572-11** |

## MEMORANDUM of DECISION

At Butte in said District this 12th day of October, 2011.

Pending in the above Chapter 11 bankruptcy cases is a portion of the Yellowstone Club Liquidating Trust's ("YCLT") Third and Fourth Omnibus Objections to Claims filed December 29, 2009, in which YCLT objects to Proof of Claim Nos. 695, 696, 698, 699, 702, 703, 704 and

1

705.  A hearing on YCLT's objection to Proof of Claim Nos. 695, 696, 698, 699, 702, 703, 704 and 705 was scheduled for February 5, 2010, but was continued to April 6, 2010, and then June 23, 2010, September 20, 2010, October 7, 2010, and November 2, 2010.

In a joint motion filed October 29, 2010, YCLT and each of the claimants who filed Proof of Claim Nos. 695, 696, 698, 699, 702, 703, 704 and 705 agreed to continue the November 2, 2010, hearing without date, to permit YCLT to file a motion for summary judgment and for the Court to rule on said motion.  As contemplated in the joint motion, YCLT filed a Motion for Summary Judgment, Docket No. ("dkt.") 1998, of Dolan Family Proof of Claim Nos. 695, 696, 698, 699, 702, 703, 704 and 705.  YCLT's Motion for Summary Judgment is accompanied by a Memorandum in Support of Motion for Summary Judgment, dkt. 1999, a Declaration of Robert L. Sterup, dkt. 2002, and a Statement of Uncontroverted Facts, dkt. 2000.  The Dolan Family, through counsel, filed a response to the Motion for Summary Judgment, dkt. 2057.

Pursuant to an Order entered December 3, 2010, the Court has held YCLT's aforementioned objections in abeyance while various parties appealed Judge Haddon's November 2, 2010, Memorandum and Order to the Ninth Circuit Court of Appeals.  The appeal was dismissed and this Court has since entered a subsequent Memorandum of Decision and Order, dkt. 2352, in response to Judge Haddon's November 2, 2010, Memorandum and Order. In addition, YCLT filed on July 6, 2011, a Reply Memorandum in support of its Motion for Summary Judgment, dkt. 2200.  YCLT's Motion for Summary Judgment is ready for decision.

### STATEMENT OF UNCONTROVERTED FACTS

YCLT provided the following Statement of Uncontroverted Facts:

1.  Six of the Dolan claimants, each a child of claimant James J. Dolan, have made

2

claims under Yellowstone Mountain Club ("YMC") "Company Membership Agreements" issued to them in June 2008.

- o  James J. Dolan, Jr. was party to Membership Agreement for Company Members dated July 3, 2008. Exh. 1.
- o  Charles D. Dolan was party to Membership Agreement for Company Members dated June 28, 2008. Exh. 2.
- o  Michael A. Dolan, II was party to Membership Agreement for Company Members dated June 28, 2008. Exh. 3.
- o  Brian P. Dolan was party to Membership Agreement for Company Members dated June 28, 2008. Exh. 4.
- o  Gregory F. Dolan was party to Membership Agreement for Company Members dated June 28, 2008. Exh. 5.
- o  Peter J. Dolan was party to Membership Agreement for Company Members dated June 28, 2008. Exh. 6.

2.  Unlike other categories of YMC Membership, Company Members were not required to pay a membership deposit.

> Member further acknowledges that as a Company Member, Member is entitled to the same membership privileges as a Resident Member in accordance with the Yellowstone Mountain Club Membership Plan and Rules and Regulations, but without the payment of a membership deposit or dues.

Exhs. 1-6 at p. 2 §. I.

3.  Each of the Company Membership Agreements expressly provided for "recall" of the Company Membership, at the "sole discretion" of YMC, "at any time for any or no reason

3

whatsoever":

> The Club reserves the right, in its sole discretion, … to recall any membership at any time for any or no reason whatsoever….

Exhs. 1-6 at p. 2, § II .

4. Under the Company Membership Agreements, the Dolans agreed to be bound by YMC's Membership Plan:

> Member acknowledges receipt of the Yellowstone Mountain Club Membership Plan, this Agreement, and the Rules and Regulations… and represents that **Member has read and understood** the Documents, and **agrees to be bound** by the terms and conditions thereof….

Exhs. 1-6 at p. 2, § III (emphasis supplied).

5. YMC's Membership Plan provided for termination and surrender of the Company memberships upon written notice:

> Company Memberships will not be assignable or transferable by the Company Members and will **terminate and be surrendered** to the Company **upon** receipt of **written notice** from the Company.

Exh. 7 at p. 16 (emphasis supplied).

6. The Company Membership agreements further precluded any claim of "equity" or "ownership" or "investment" interest in YMC:

> Membership is **not an investment** in the Company referred to below, or the Club Facilities and does not give a member a vested or prescriptive right or easement to use the Club Facilities. Membership in the Club **does not provide a member with an equity or ownership interest** or any other property interest in the Club Facilities or the Company.

Exhs. 1-6. at p. 2, § II (emphasis supplied). YMC's Membership Plan also expressly provided that members did not hold an equity or ownership or investment interest in YMC. Exh. 7 at p. 14.

7.  On May 29, 2209, Debtors filed their Third Amended Joint Plan of Reorganization, at [dkt.] 995 (hereinafter the "Plan of Reorganization"). Exh. 8.

8.  The Plan of Reorganization included a schedule of Members whose memberships were being assumed (the "Member Assumption Schedule"). Exh. 10. The Dolans' Company Memberships were not listed on the Member Assumption Schedule. Exh 10. Section 5.1 of the Plan provided: "On the Effective Date, all executory contracts … to which any of the Debtors is a party shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those executory contracts … that … (iv) are Assumed Obligations listed in the Member Assumption Schedule." Exh. 8. By virtue of Section 5.1, the Dolans' Company Memberships were deemed rejected.

9.  James J. Dolan ("Jim Dolan") was a party to a membership Agreement for Pioneer Members. Exh. 11.

10. The Pioneer Membership Agreement expressly provided for "recall" of the company membership, at the "sole discretion" of YMC, "at any time for any or no reason whatsoever":

> The Club reserves the right, in its sole discretion, … to recall any membership at any time for any or no reason whatsoever….

Exh. 11 at p. 4, § I . Jim Dolan agreed to be bound by YMC's Membership Plan. Exh. 11 at p. 4 §. J. The Membership Plan provided that the Club reserved the right, in its sole discretion, to "recall any membership at any time for any or no reason whatsoever…." Exh. 7 at p. 14.

11. The Pioneer Membership Agreement and the Membership Plan precluded any claim of "equity" or "ownership" or "investment" interest in YMC:

5

> Membership is not an investment in the Company referred to below, or the Club Facilities and does not give a member a vested or prescriptive right or easement to use the Club Facilities. Membership in the Club does not provide a member with an equity or ownership interest or any other property interest in the Club Facilities or the Company.

Exh. 11 at p. 4, § I emphasis supplied); Exh. 7 at p. 14.

12. Jim Dolan paid a $250,000.00 membership deposit.

13. The Plan of Reorganization, Schedule 1.94, included a roster of Pioneer Members "whose membership contracts (which shall be treated as executory for purposes of Section 365 of the Bankruptcy Code) are being rejected under the Plan as of the Effective Date…." Exh. 12. The Jim Dolan Pioneer Membership was included in the roster of rejected Pioneer Memberships. *Id*. Rejected Pioneer members were given an opportunity to apply for Pioneer Replacement Member Contract. *Id*. Under the replacement form of Pioneer membership, YMC reserved the right in its sole discretion to recall any membership "at any time for any reason or no reason whatsoever." Exh. 16 at p. 7 §. I.

14. All "Replacement" contracts expressly provided that YMC retained discretion to recall a membership "at any time in its sole and absolute discretion."

> Member further acknowledges that, notwithstanding anything to the contrary contained herein, Yellowstone Mountain Club, LLC may recall the Company Membership at any time in its sole and absolute discretion.

Exh. 13 § 1 (Company membership). *See also* Exh. 14 § E (Founders Circle membership; Exh. 15 § 2 (Honorary membership); Exh. 16 § I (Pioneer membership); Exh. 17 § G (Frontier membership).

## STATEMENT OF GENUINE ISSUES

6

Creditors and Claimants James J. Dolan, James J. Dolan, Jr., Brian P. Dolan, Charles D. Dolan, Gregory F. Dolan, Michael D. Dolan II, and Peter J. Dolan (collectively, the "Dolan Family"), filed a Response to YCLT's Motion for Summary Judgment on November 30, 2010. While the Dolan Family did not file a separate statement of genuine issues, their Response contains a section setting forth the following facts under a heading designated as: "Statement of Genuine Issues[:]"

1. James J. Dolan, Sr., exercised his right to apply for a Pioneer Replacement Member Contract. Since the date that James J. Dolan, Sr., exercised his right to apply for a Pioneer Replacement Member Contract, Yellowstone Club has treated him as a Pioneer Replacement Member with all rights afforded to other Pioneer Replacement Members. Declaration James J. Dolan ¶¶ 5-6 (Nov. 30, 2010).

2. Yellowstone Club has not issued any notice to James J. Dolan, Sr., recalling his Pioneer Membership. Decl. Dolan ¶ 6.

3. Even though the Dolan Family Company Members were not required by Yellowstone Mountain Club to pay a cash membership deposit, the Company Members paid valuable consideration for these memberships in the form of divestiture of rights in Big Sky Ridge, LLC prior to the time that Big Sky Ridge, LLC sold any property. The Dolan Family's divestiture eliminated the need by Big Sky Ridge, LLC to distribute profits to the Dolan Family, thereby providing a benefit to Big Sky Ridge, LLC far in excess of the value of membership deposits that otherwise would have been paid. Decl. Dolan ¶¶ 11-13.

4. The Company memberships issued by the Yellowstone Club to the Dolan Family never have been "recalled" as that term commonly is understood in the resort industry. Even if

7

they were recalled, no consideration was given for the recall. Decl. Dolan ¶ 15.

    5.    Each of the Company memberships had a value of at least $250,000 as of the date of the filing of the Yellowstone Club bankruptcy. Decl. Dolan ¶ 16.

## SUMMARY JUDGMENT

Summary judgment is governed by F.R.B.P. 7056. Rule 7056, incorporating FED.R.CIV.P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986)

8

(Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); F$_{\text{ED}}$. R. C$_{\text{IV}}$. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S.

at 248, 106 S.Ct. at 2510).  "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied.  *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986).  Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.  *T.W. Elec. Serv.*, 809 F.2d at 631.  In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

**DISCUSSION**

Proof of Claim Nos. 695, 696, 698, 699, 702 and 703 filed March 18, 2009, show that Peter J. Dolan, Michael A. Dolan, Brian P. Dolan, James J. Dolan, Jr., Charles D. Dolan and Gregory F. Dolan are asserting unsecured claims of $300,000 each for "contract-membership" stemming from their Company Membership Agreements with the Yellowstone Mountain Club, which Membership Agreements are dated June 28, 2008, except for James J. Dolan, Jr.'s Membership Agreement, as reflected in the attachment to Proof of Claim No. 699, that is dated July 3, 2008.  In contrast to Proofs of Claim Nos. 695, 696, 698, 699, 702 and 703, which each assert a claim of $300,000, the Dolan Family claimants now assert in their Statement of Genuine Issues that "[e]ach of the Company memberships had a value of at least $250,000 as of the date

10

of the filing of the Yellowstone Club bankruptcy."

In Proof of Claim No. 704, James J. Dolan asserts a claim of $250,000 for "Contract - Refund of Pioneer Membership Deposit[.]" In Proof of Claim No. 705, James J. Dolan asserts an unsecured claim of $529,450.00 for "Contract - Pioneer Member No Annual Dues Rights[.]"

The nature of the Dolan Family claims and YCLT's objections thereto is remarkably similar to YCLT's objection to Proof of Claim No. 741 filed by Robert Sumpter ("Sumpter"). Sumpter, in his Proof of Claim No. 41, asserted an unsecured claim stemming from a membership for which Sumpter paid a $250,000 membership deposit. Based on almost indistinguishable facts, the Court entered a Memorandum of Decision and Order on October 14, 2010, sustaining YCLT's objection and allowing Sumpter an unsecured nonpriority claim in the amount of his membership deposit of $250,000. Sumpter appealed this Court's decision and in a March 31, 2011, Memorandum and Order, United Stated District Court Judge Sam E. Haddon affirmed this Court's decision regarding Sumpter's claim:

> The Bankruptcy Court was correct in its determination that the only damages available to Sumpter under the clear terms of the Agreement were $250,000 for the deposit. Damages for claims beyond the deposit either presumed the existence of an investment or that the breach was not on the date immediately prior to the Debtors' filing of bankruptcy. Both are incorrect assumptions under the clear terms of the Agreement and 11 U.S.C. §§ 365(g) and 502(g). Claims for additional amounts were correctly denied. The Liquidating Trustee was entitled to judgment as a matter of law.

The Court's analysis concerning Sumpter's claim is applicable here, particularly with respect to Proof of Claim Nos. 695, 696, 698, 699, 702 and 703. As discussed in the Memorandum of Decision addressing YCLT's objection to Sumpter's claim, under the Bankruptcy Code, a debtor may assume or reject executory contracts. 11 U.S.C. § 362(a). If a debtor rejects an executory contract prior to assumption, such rejection "constitutes a breach . . .

immediately before the [petition date]." 11 U.S.C. § 362(g)(1). A claim arising from a § 365 rejection shall be allowed or disallowed pursuant to the provisions of 11 U.S.C. § 502(g)(1).

> Rejection does not, . . ., cause an executory contract to vanish or become unenforceable against the debtor, and is not a matter of the "debtor reject[ing] its obligation." It is the estate's decision to decline the asset, leaving the liabilities of the debtor intact to form the basis of a claim.
>
> ***
>
> Rejection establishes that the estate will not become obligated on the contract; it does not affect the continued existence of the debtor's obligations, which form the basis of the non-debtor's claim.

Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection," 59 U. Colo. L. Rev. 845, 888 (1988). *See also In re Bergt*, 241 B.R. 17 (Bankr. D. Alaska 1999). Additionally,

> [r]ejection's effect is to give rise to a remedy in the non-debtor party for breach of the rejected contract, typically a right to money damages assertable as a general unsecured claim in the bankruptcy case. Rejection has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated.

Michael T. Andrew, EXECUTORY CONTRACTS REVISITED: A REPLY TO PROFESSOR WESTBROOK, 62 U. Colo. L. Rev. 1, 16 (1991).

In this case, under the terms of the Debtors' confirmed Third Amended Joint Plan of Reorganization, the Debtors rejected all Dolan Family Company Memberships. The Debtors' Plan of Reorganization included a schedule of Members whose memberships were being assumed, Schedule 1.87, Member Assumption Schedule. None of the Dolan Family claimants are listed on the Member Assumption Schedule. Additionally, Section 5.1 of the Debtors' Plan provided: "On the Effective Date, all executory contracts … to which any of the Debtors is a party shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those executory contracts … that … (iv) are

12

Assumed Obligations listed in the Member Assumption Schedule." Furthermore, Schedule 1.27 to the Plan "contains a listing of those Company members whose membership contracts are being rejected under the Plan[.]" Schedule 1.27 found at dkt. 947-1 recites that it "contains: (i) a listing of those Company members whose membership contracts (which contracts shall be treated as executory for purposes of section 365 of the Bankruptcy Code), whether written or oral, are being rejected under the Plan as of the Effective Date[.]" Schedule 1.27 does not identify any of the Dolan Family as persons or entities whose membership contracts were rejected.[1] However, Schedule 1.27 continues: "*In an abundance of caution and with the intention that all Company membership contracts be rejected*, this Schedule 1.27 therefore lists all individuals thought to be claiming, correctly or not, Company memberships. The Debtors continue to analyze their membership files and the Debtors intend to make future revisions to this Schedule 1.27, as soon as practicable, to ensure the accuracy of the same. The Debtor will endeavor to provide a completed version of this Schedule 1.27 at the time of filing the Plan Supplement; however, pursuant to Section 5.1.8 of the Plan, the Debtors reserve the right to modify this Schedule 1.27 at any time before the Confirmation Date."

By Debtors' rejection of the Company Memberships under 11 U.S.C. § 365(a), a breach occurred under § 365(g)(1), thus allowing the Company Membership claimants to file a rejection claim under § 502(g)(1). The Dolan Family claimants are thus entitled any rejection damages permitted under the Company Membership Agreements.

---

[1] The Yellowstone Club's Rules and Regulations provide that the Yellowstone Club could only issue "[a] total of fifteen (15) Company Memberships[.]" Schedule 1.27 identifies 15 Company Members. The Dolan Family Company Memberships may have been issued in violation of the Rules and Regulations.

13

Under Montana law, "[t]he construction and interpretation of a contract is a question of law." *Ophus v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 447, ¶ 19, 11 P.3d 1192, ¶ 19. When interpreting a contract Montana courts give priority to the parties' intent. *Id*, ¶ 20. To determine the parties' intent, the court examines the contractual language and interprets clear and unambiguous terms according to their ordinary and usual meaning. *Id.*; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 202(3)(a)(1981) ("Unless a different intention is manifested, . . . where language has a generally prevailing meaning, it is interpreted in accordance with that meaning."). If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity. *Morning Star Enterprises v. R.H. Grover*, 247 Mont. 105, 111, 805 P.2d 553, 557 (1991).

The "Membership Agreement for Company Members" attached to the applicable proofs of claim all provide:

> Member further acknowledges that as a Company Member, Member is entitled to the same membership privileges as a Resident Member in accordance with the Yellowstone Mountain Club Membership Plan and Rules and Regulations, but without the payment of a membership deposit or dues.
>
> * * *
>
> A member only acquires a revocable license to use the Club Facilities in accordance with the terms and conditions of the Membership Plan and Rules and Regulations as the same may be amended from time to time, and this Membership Agreement. The Club reserves the right, in its sole discretion, to modify the Membership Plan and the Rules and Regulations, to reserve memberships, to sell, lease or otherwise dispose of the Club Facilities in any manner whatsoever and to any person whomsoever, to issue, add, modify or terminate any type of category of membership, to recall any membership at any time for any or no reason whatsoever, to convert the Club into a member-owned club, and to make any other changes in the terms and conditions of the membership or the Club Facilities available for use by members.

While the above language makes no provision for damages, the above language grants

14

Company Members the same privileges as a Resident Member. Under the Residential Membership Agreements, Resident Members are, in the event of recall of a membership, entitled to a refund of the Membership Deposit. The Dolan Family claimants, under the plain language of the Company Membership Agreements, did not pay any Membership Deposit. As such, the Dolan Family claimants asserting damages for rejection of their Company Memberships are not entitled to any damage claim.

The foregoing is consistent with the Rules and Regulations, which provide that "Company Memberships will not be assignable or transferable by the Company Members and will terminate and be surrendered to the Company upon receipt of written notice from the Company." The above treatment stands in contrast to those members who paid membership deposits. Specifically, the Rules and Regulations provide that "Pioneer Members, Frontier Members and Ranch Members will be entitled to a refund [of their Membership Deposit] in accordance with the terms of their Membership Agreement." No such similar provision is made for Company Members, presumably because they are not required to pay a Membership Deposit.

For the reasons discussed above, YCLT's objection to Proof of Claim Nos. 695, 696, 698, 699, 702 and 703, are sustained and the allowance of said claims is denied. This leaves remaining the issue of damages with respect to Proof of Claim Nos 704 and 705 filed by James J. Dolan ("Dolan").

Dolan's rejection and membership claims are governed and limited by his Pioneer Membership Agreement. Nothing in any of the exhibits before the Court permits Dolan to recover contract rejection damages. Dolan's claim for damages above and beyond his $250,000 membership deposit is simply speculative and not provided for under the Membership

Agreement. Therefore, Dolan's Proof of Claim No. 705 in the amount of $529,450 is denied in its entirety.

Finally, YCLT objects to Dolan's Proof of Claim No. 704 arguing the claim has been satisfied in that Dolan's membership agreement was accepted by the party who acquired substantially all the Debtors' assets and the claim should, therefore, be expunged in its entirety. Consistent with the objection, Dolan contends he exercised his right to apply for a Pioneer Replacement Membership Contract as permitted under the terms of the Debtors' confirmed Plan. Dolan further contends that the Yellowstone Club has since treated Dolan as a Pioneer Replacement Member with all the rights afforded other Pioneer Replacement Members. The fact that Dolan might have exercised his right to apply for a Pioneer Replacement Membership may preclude Dolan from pursuing any membership deposit claim against the Debtors' bankruptcy estate. If Dolan's Pioneer Replacement Membership Contract was approved by the entity acquiring substantially all the Debtors' assets and if Dolan was indeed treated as a Pioneer Replacement Member, Dolan's claim of damages, if any, would arguably be against the acquiring entity and not the bankruptcy estate. Whether Dolan did indeed elect a replacement membership and whether his replacement membership contract was accepted are material issues of fact that preclude a summary judgement ruling.

If, on the other hand, Dolan's Pioneer Membership was rejected, rather than assumed, Dolan's damages will be governed by his Pioneer Membership Agreement, which like other membership agreements at the Yellowstone Club, provides for recall of Dolan's membership to the Yellowstone Club:

> The Club reserves the right, in its sole discretion, . . . to recall any membership at any time for any or no reason whatsoever . . . .

Membership Agreement for Pioneer Members, dkt. 2000-11, para. I.  Dolan's Membership Agreement further states that "[m]embership is not an investment in the Company . . . .  A member only acquires a revocable license to use the Club Facilities in accordance with the terms and conditions of the Membership Plan and Rules and Regulations."  Membership Agreement for Pioneer Members, dkt. 2000-11, para. I.

Dolan's membership, described as a privilege, a revocable license and a non-investment, could be recalled by the Club at anytime and for any or no reason whatsoever.  The Debtors' rejection of Dolan's Membership Agreement is nothing more than a recall of the Membership Agreement.  Indeed, Webster's Dictionary defines "recall" as "to call back" or "the act of revoking[.]"

The Rules and Regulations found at dkt. 2000-7 provide that "[e]ach person who desires to acquire a membership will be required to pay a refundable membership deposit to the Club in the amount in effect at the time the person applies for membership as set forth in the Membership Agreement."  The Rules and Regulations go on to provide that "Pioneer Members . . . will be entitled to a refund [of their Membership Deposit] in accordance with the terms of their Membership Agreement."  Dolan's Pioneer Membership Agreement provides an express remedy in the event Dolan's Pioneer Membership Agreement is recalled:

> In the event of recall of a membership, the Club will refund the membership deposit to the affected member within thirty (30) days.

Membership Agreement for Pioneer Members, dkt. 2000-11, para. I.  Dolan's potential allowable damages under § 502(b) are $250,000, which corresponds to the amount specified in the agreement if the Club recalled or revoked the membership.

As discussed earlier, the Court declines to enter a summary judgment ruling on YCLT's objection to Dolan's Proof of Claim No. 704 because a material fact exists as to whether Dolan's membership agreement was accepted by the party who acquired substantially all the Debtors' assets.  Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED that Yellowstone Club Liquidating Trust's Motion for Summary Judgment of Dolan Family Proof of Claim Nos. 695, 696, 698, 699, 702, 703, and 705, is GRANTED; the Yellowstone Club Liquidating Trust's objections to Proof of Claim Nos. 695, 696, 698, 699, 702, 703, and 705 are SUSTAINED; and the allowance of Proof of Claim Nos. 695, 696, 698, 699, 702, 703, and 705 is DENIED.

IT IS FURTHER ORDERED that the Yellowstone Club Liquidating Trust's Motion for Summary Judgment of Dolan Family Proof of Claim No. 704 is DENIED; and a hearing on the Yellowstone Club Liquidating Trust's Objection to Proof of Claim No. 704 filed by James Dolan shall be held **Tuesday, December 6, 2011, at 10:00 a.m.**, or as soon thereafter as the parties can be heard, in the 2ND FLOOR COURTROOM, FEDERAL BUILDING, 400 N. MAIN, BUTTE, MONTANA.

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana