UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC**,<br><br>Debtor. | Case No. **08-61570-11** |

## *MEMORANDUM of DECISION*

At Butte in said District this 9th day of March, 2012.

In this Chapter 11 bankruptcy, after due notice, a hearing was held March 6, 2012, in Butte on Timothy L. Blixseth's ("Blixseth") Motion for Reconsideration of Allowance of Claim in Favor of the 7 Non-Settling Class B Shareholders filed November 11, 2011, at docket entry no. 2387.  Michael J. Flynn of Boston, Massachusetts, Patrick T. Fox of Helena, Montana, Philip H. Stillman of Miami Beach, Florida and Christopher J. Conant of Denver, Colorado appeared at the hearing on behalf of Blixseth and in support of the Motion for Reconsideration; Shane P. Coleman and Charles W. Hingle of Billings, Montana appeared at the hearing on behalf of Marc S. Kirschner ("Trustee"), Trustee of the Yellowstone Club Liquidating Trust ("YCLT"); and Clark T. Whitmore of Minneapolis, Minnesota and Ronald A. Bender of Missoula, Montana appeared at the hearing on behalf of the 7 Class B Shareholders, namely Michael L. Snow, Greg Branch, Robert P. Watson and Katharine M. Watson, A. C. Markkula and Linda K. Markkula, as trustees of the Arlin Trust, Bankers Financial Corporation, a Florida corporation, Spano Yellowstone Holdings Limited Partnership and Mountain Vista Properties AG.  The Court heard

1

attorney argument regarding Blixseth's pending Motion for Reconsideration, but none of the parties offered any exhibits or called any witnesses.

## BACKGROUND

The Yellowstone Club entities, consisting of Yellowstone Mountain Club, LLC, Yellowstone Development Club, LLC, Big Sky Ridge, LLC and Yellowstone Club Construction Company, LLC, sought protection under chapter 11 of the Bankruptcy Code on November 10, 2008. On June 2, 2009, the Court confirmed the Debtors' Third Amended Joint Plan of Reorganization. Attached to and incorporated into the confirmed Third Amended Joint Plan of Reorganization is Schedule 1.85, which is the form of Liquidation Trust Agreement to be adopted in connection with the prosecution of claims and administration of non-Project Assets of the Debtors. YCLT was formed through the confirmed Third Amended Joint Plan of Reorganization and on July 17, 2009, the Reorganized Estates of the Debtors and the Trustee entered into the Yellowstone Club Liquidating Trust Agreement. Section 5.3.3 of the Trust Agreement confers on the Trustee the power "to enter into post-Effective Date agreements with the holders of B Equity Interests whereby holders of B Equity Interests may contribute valuable consideration to the Trust their direct causes of action, if any, against insiders/affiliates of the former Debtors or the proceeds thereof, in return for rights to participate in distributions from the Liquidating Trust of proceeds of litigation claims against such insiders/affiliates." Section 4.2.5 of the Trust Agreement makes an agreement to modify payment priorities subject to the approval of this Court. At the time the Court confirmed Debtors' Third Amended Joint Plan of Reorganization, the 7 Class B shareholders were plaintiffs in Adversary Proceeding 09-00018, commenced March 3, 2009.

On December 11, 2009, YCLT filed a motion for approval of post-effective date agreement with the 7 Class B Shareholders for modification of payment priority. The "Term Sheet for Arrangement among the Liquidating Trust, the 7 Non Settling Class B Members and First Lien Agent, on behalf of the First Lien Lenders," attached to YCLT's motion essentially provided that the 7 Class B Shareholders would transfer any and all their claims against Blixseth, Edra D. Blixseth and BLX Group, Inc., or the proceeds thereof, to YCLT and in turn, the 7 Class B Shareholders would be allowed an unsecured claim in the collective amount of $22 million to be paid at the fourth level of priority in accordance with Section 7.17 of the Debtors' confirmed Third Amended Joint Plan of Reorganization.

In accordance with Mont. LBR 9013-1, YCLT attached a "Notice of Opportunity to Respond" to its motion advising parties in interest that they had fourteen (14) days within which to respond to YCLT's motion for approval of post-effective date agreement with the 7 Class B Shareholders for modification of payment priority. Ross P. Richardson, Chapter 7 Trustee of the Estate of Yellowstone Club World, LLC, and Blixseth filed objections to YCLT's motion and scheduled the matter for hearing. Following a hearing held February 11, 2010, the Court entered a Memorandum of Decision and Order on March 24, 2010, sustaining Blixseth's objection in part and granted YCLT leave to refile its motion in accordance with the Court's March 24, 2010, Memorandum of Decision. The Court's March 24, 2010, Memorandum of Decision and Order are found at docket entry nos. 1728 and 1729.

YCLT refiled its motion on March 30, 2010. Again, YCLT's motion was accompanied by a "Notice of Opportunity to Respond" advising parties in interest that they had fourteen (14) days within which to respond to YCLT's motion for approval of post-effective date agreement

with the 7 Class B Shareholders for modification of payment priority. After receiving no further objections, the Court, on April 19, 2010, at docket entry no. 1806, granted YCLT's March 30, 2010, motion filed at docket entry no. 1774. The Court's Order of April 19, 2010, specifically provided that: "(1) The Amended Term Sheet is approved and the Trustee may enter into the Definitive Agreement without further proceedings; and (2) The payment priority set forth in Section 7.17 of the Plan is modified to include the 7 Bs in the fourth distributional priority with an allowed claim of $22,000,000.00." The Court's Order of April 19, 2010, was not appealed and is now final.

During the same period of time YCLT was negotiating with the 7 Class B Shareholders, YCLT was also participating in the second phase of trial in Adversary Proceeding 09-00014, wherein YCLT was seeking an award against Blixseth in the amount of $286.4 million for funds Blixseth allegedly took from the Yellowstone Club entities. In August of 2010, the Court entered a Memorandum of Decision finding the evidence supported the claims asserted by YCLT against Blixseth. However, the Court was not willing to award YCLT its requested judgment of $286.4 million, and instead awarded YCLT an amount sufficient to pay Class 1, 2, 4, 5, 6, 9, 10, 11, 12, 13, and 14 claims and those claims that Blixseth identified as "not classified" on Exhibit A attached to his Post-Trial Brief filed March 19, 2010, at docket entry no. 571 in Adversary Proceeding 09-00014. While YCLT put on ample evidence to support its claim of $286.4 million, YCLT could not have anticipated this Court's ultimate ruling, and thus, YCLT did not put on evidence as to the total of the claims in Class 1, 2, 4, 5, 6, 9, 10, 11, 12, 13, and 14. Based upon an affidavit, the Court set that number at $40,067,962.43 and entered judgment accordingly on September 7, 2010. The 7 Class B Shareholders' claim of $22 million, as allowed pursuant to

4

the Court's April 19, 2010, Order, is an amount that is included and contemplated by the Court's September 7, 2010, judgment.

## DISCUSSION

Relying on 11 U.S.C. § 502(j), Blixseth, in his Motion filed November 11, 2011, "moves the Court for reconsideration of the allowance of the so-called '7 Non-Settling Class B Shareholders' of a Class 4 general unsecured claim of $22 million pursuant to this Court's March 24, 2010 Order [Docket No. 1729], and on reconsideration, that the claim be disallowed in its entirety." Blixseth argues in the motion that:

> Despite the YCLT's testimony that the allowance of a $22 million general unsecured claim in favor Class B shareholders was not intended to liquidate the value of the Class B Shareholders' Adversary Proceeding 09-0018, after this Court ruled in AP 14 that the distribution from the Debtors was a fraudulent transfer – requiring dismissal of AP 18 – the YCLT claimed that the Class B allowed claim of $22 million was part of the damages (more than half) that MR. Blixseth should pay. Thus, contrary to the YCLT's testimony in support of the allowance of the claim, YCLT is attempting to make Mr. Blixseth pay $22 million to the B shareholders as damages in an adversary proceeding on which judgment must enter in Mr. Blixseth's favor.

Blixseth's pending Motion is defective in the first instance because Blixseth seeks reconsideration of an Order that did nothing more than grant YCLT leave to file an amended motion. The Order Blixseth arguably wants this Court to reconsider is the Order entered April 19, 2010, at docket entry no. 1806, and not the Court's Order entered March 24, 2010, at docket entry no. 1729.

Putting aside the obvious defect with Blixseth's motion, the Court also agrees with YCLT and the 7 Class B Shareholders that § 502(j) is not, under the facts presented in this case, the proper procedural vehicle to seek reconsideration of the 7 Class B Shareholders' allowed claim.

5

Section 502(j) reads:

> A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

While § 502(j) is silent as to when a motion for reconsideration should be made, this Court concludes that the allowance of the 7 Class B Shareholders' claim was a contested matter that was decided by a final order that was immediately appealable. As persuasively explained by the Fifth Circuit Court of Appeals:

> The bankruptcy court has power to reconsider the allowance or disallowance of proofs of claim "for cause". 11 U.S.C. § 502(j); Bankruptcy Rule 3008. As the Advisory Committee Note to Bankruptcy Rule 3008 evidences, the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary, as the court may decline to reconsider without a hearing or notice to the parties involved. If reconsideration is granted, the court may readjust the claim in any fashion "according to the equities of the case." 11 U.S.C. § 502(j).
>
> The court's broad discretion should not, however, encourage parties to avoid the usual rules for finality of contested matters. Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60 into all matters governed by the Bankruptcy Rules except, *inter alia*, "the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b)...." We interpret Rule 9024 to provide that, when a proof of claim has in fact been litigated between parties to a bankruptcy proceeding, the litigants must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim. The elaboration of Section 502(j)'s requirement of "cause" for reconsideration by the Rule 60 criteria substantially eliminates the "tension with the right of an appeal

>  from an erroneous final order." 3 COLLIER ON BANKRUPTCY (15th ed.) ¶ 502.10 at
>  502–107.  *See also In re W.F. Hurley, Inc., supra.*

*In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987), *cert. denied*, 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987).

Rule 9024[1] limits requests for reconsideration to matters involving mistake, inadvertence, excusable neglect, newly discovered evidence and fraud.  The provisions of Rule 60(b) set forth in subsections (3) through (5) are by their plain terms, not applicable to this proceeding because Blixseth does not claim that he has discovered new evidence that would impact the Court's April 19, 2010, Order; that the Order was procured by fraud, misrepresentation or misconduct; that the Order is void; or that the Order has been satisfied or is based on an order that has been reversed or otherwise vacated.  Thus, the only other applicable provisions are Rule 60(b)(1) and (6).

Under Rule 60(b)(1), a court may relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect.  Blixseth does not assert any mistake, inadvertence, surprise or excusable neglect.  Similarly, the Court does not consider the judgment in Adversary Proceeding 09-00014 newly discovered evidence.  Rather, such judgment would merely provide

---

[1] Fed.R.Civ.P. 60(b), incorporated into bankruptcy by Rule 9024, provides:

**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.**  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

further authority for Blixseth to contest approval of YCLT's post-effective date agreement with the 7 Class B Shareholders for modification of payment priority. As stated above, the Court did not preclude Blixseth from objecting to either YCLT's original or modified post-effective date agreement with the 7 Class B Shareholders for modification of payment priority.

Rule 60(b)(6) permits reopening when the movant shows "any ... reason justifying relief from the operation of the judgment" other than the more specific circumstances set out in Rules 60(b)(1)-(5). *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, n. 11, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *Klapprott v. United States*, 335 U.S. 601, 613, 69 S.Ct. 384, 93 L.Ed. 266 (1949). The Ninth Circuit Court of Appeals held that Rule 60(b)(6):

> [D]oes not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), while also cautioning that it should only be applied in "extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988).
>
> Following the admonitions of the Supreme Court, we have used Rule 60(b)(6) "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.), *cert. denied*, 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 29 (1993). "The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Id.*

*United States v. State of Washington, et al.*, 98 F.3d 1159, 1163 (9th Cir. 1996). In addition, "[r]elief under Rule 60(b) requires a party to show 'extraordinary circumstances,' suggesting that the party is faultless in [any] delay." *Pioneer Inv. Services, Co. v. Brunswick Associated Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993). Such relief "normally will not be granted unless the moving party is able to show both injury and that the circumstances

beyond its control prevented timely action to protect its interests." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) *cert. denied*, 510 U.S. 813,114 S.Ct. 60, 126 L.Ed.2d 29 (1993); *see also Ben Sager Chemicals Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977) (holding that Rule 60(b) movant must demonstrate the presence of "'a meritorious defense and that arguably one of the four conditions for relief applies–mistake, inadvertence, surprise or excusable neglect'").

In this case, Blixseth did not timely appeal the Court's April 19, 2010, Order, even though Blixseth opposed approval of YCLT's original motion. Furthermore, even after learning in September of 2010 of the Court's amended judgment in Adversary Proceeding 09-00014, Blixseth took no action until over a year later. Blixseth provides no explanation for such delay.

Rather, Blixseth merely argues that the claims asserted in Adversary Proceeding 09-00018, commenced by the 7 Class B Shareholders, is moot given the Court's judgment in Adversary Proceeding 09-00014. Such argument provides no justification for Blixseth's pending request for reconsideration. Moreover, had the Court awarded YCLT its requested claim of $286.4 million, Blixseth may have an argument that Adversary Proceeding 09-00018 would, in all likelihood, be moot. However, the Court did not award YCLT the requested $286.4 million. Blixseth clearly received funds in the neighborhood of $286.4 million from the Debtors. This Court's September 2010 amended judgment only required that Blixseth repay roughly $40 million of said funds. Thus, by this Court's calculation, Blixseth still has funds in excess of $240 million that at one time, rightfully belonged to the Debtors. Adversary Proceeding 09-00018 may indeed address the $240 million that is not the subject of the amended judgment in Adversary Proceeding 09-00014. Whether the claims asserted in Adversary Proceeding 09-

00018 may be duplicative of the claims asserted in Adversary Proceeding 09-00014 is unknown at this time as Adversary Proceeding 09-00018 has sat dormant for over a year because of YCLT's approved agreement with the 7 Class B Shareholders and because YCLT was waiting for a ruling on an appeal, and now entry of a final judgment in Adversary Proceeding 09-00014.

In sum, Blixseth has failed to satisfy the requirements of Rule 60(b). Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED that Timothy L. Blixseth's Motion for Reconsideration of Allowance of Claim in Favor of the 7 Non-Settling Class B Shareholders filed November 11, 2011, at docket entry no. 2387, is denied.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana