# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**YELLOWSTONE MOUNTAIN CLUB, LLC,**

              Debtor.

Case No.  **08-61570-11**

In re

**YELLOWSTONE DEVELOPMENT, LLC,**

              Debtor.

Case No.  **08-61571-11**

In re

**YELLOWSTONE CLUB CONSTRUCTION COMPANY, LLC,**

              Debtor.

Case No.  **08-61573-11**

In re

**BIG SKY RIDGE, LLC,**

              Debtor.

Case No.  **08-61572-11**

# MEMORANDUM of DECISION

At Butte in said District this 15th day of March, 2013.

In this Chapter 11 bankruptcy, after due notice, a hearing was held October 9, 2012, in

Butte on the Amended Motion for Leave to Sue Stephen R. Brown and the Law Firm of

1

Garlington Lohn & Robinson, PLLP in the U.S. District Court for the District of Montana filed by Timothy Blixseth on March 28, 2012, at docket entry no. 2445. Andrew E. Hawes and Michael J. Ferrigno of Boise, Idaho, and Christopher J. Conant of Denver, Colorado appeared at the hearing on behalf of Timothy Blixseth ("Blixseth"); Mikel L. Moore and Dale R. Cockrell of Kalispell, Montana appeared at the hearing on behalf of Stephen R. Brown ("Brown") and Garlington, Lohn & Robinson, PLLP ("GLR"); Robert F. James of Great Falls, Montana and Robert C. Weaver of Portland, Oregon, appeared at the hearing on behalf of Thomas Hutchinson and Bullivant, Houser, Bailey, P.C.; Trent Gardner of Bozeman, Montana appeared at the hearing on behalf of J. Thomas Beckett and Parsons Behle & Latimer; and Michael F. McMahon of Helena, Montana appeared at the hearing on behalf of James A. Patten and Patten Peterman Bekkedahl & Green, PLLC. The Court heard argument from counsel for Blixseth, Brown and GLR.

## BACKGROUND

In the late 1990s, Blixseth and his former spouse, Edra Blixseth, began developing the "Yellowstone Club," which was, and still is, a members only master-planned unit development, situated on 13,500 acres of private land in Madison County near Big Sky, Montana. Until August of 2008, the Yellowstone Club was owned and operated by Blixseth through four companies, namely, Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC. From their inception to August 12, 2008, Yellowstone Mountain Club, LLC and Yellowstone Development, LLC were controlled by Blixseth through his holding company, Blixseth Group, Inc. ("BGI"). Between August of 2001 and August of 2008, BGI owned 82.6532 percent of the Class A stock in

Yellowstone Mountain Club, LLC and Yellowstone Development, LLC.

In late 2004 or early 2005, Blixseth and Credit Suisse began discussing the possibility of the Yellowstone Club borrowing money from Credit Suisse. The loan amount, which initially started out around $125 to $150 million, eventually increased to $375 million and in September of 2005, Credit Suisse loaned Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, and Big Sky Ridge, LLC $375 million.

On the day the loan funded, Blixseth transferred $209 million of the loan proceeds from the Yellowstone Club entities to their parent company, BGI. The following day, Blixseth transferred $209 million from BGI to accounts in Blixseth's name.

Blixseth contends he transferred the $209 million to himself based upon the advice of counsel, namely Brown. The advice upon which Blixseth relies is set forth in a letter dated September 30, 2005. The September 30, 2005, letter was written by Brown of the Garlington, Lohn & Robinson, PLLP law firm, and was addressed to Credit Suisse. In the letter, Brown states that "as of [September 30, 2005] . . . [e]ach Loan Party has the requisite power and authority to execute, deliver and perform its obligations under the Loan Documents[;] . . . [and] [e]xecution and delivery by the Loan Parties, and performance of their respective obligations under, the Loan Documents does not: violate any of their organizational documents; violate any laws; to the best of our knowledge violate any orders, judgments, or decrees; to the best of our knowledge, breach any material contract or create liens or encumbrances; or require filing or registration with any governmental agency." The letter provides that "[t]he foregoing opinion is being delivered solely to the addressees (*i.e.*, the Administrative Agent and the Lenders) names in this letter . . . and may not be relied upon by any other person or entity and may not be

3

disclosed, quoted, filed with a governmental agency or otherwise referred to without our written consent."

Blixseth and Edra separated on or about December 1, 2006, and a Petition for dissolution was filed on or about December 15, 2006, in the Superior Court of California. Following a contentious divorce, Blixseth and Edra finally reached an agreement as to the division of marital property.  As part of their agreement, Edra was, in August of 2008, awarded BGI and the Yellowstone Club entities.  Edra caused the four Yellowstone Club entities to file voluntary Chapter 11 bankruptcy petitions on November 10, 2008.  The Debtors were represented by Thomas Hutchinson and other attorneys from the Bullivant, Houser, Bailey, P.C. law firm, and by James A. Patten and other attorneys from the Patten Peterman Bekkedahl & Green, PLLC law firm.

Brown represented Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, and Big Sky Ridge, LLC in various matters between the late 1990s through 2008, including a state court matter filed by Greg LeMond against Yellowstone Mountain Club, LLC and Yellowstone Development, LLC.  Brown also represented Blixseth personally from June of 2008 to sometime in the fall of 2008 in connection with Blixseth's divorce, but only as it pertained to the division of Montana assets.

As of November 10, 2008, the date the Yellowstone Club entities sought protection under the Bankruptcy Code, Brown and his law firm, GLR, were owed a substantial sum for unpaid legal fees.  As a result of their prepetition claim, GLR filed in Yellowstone Mountain Club, LLC's bankruptcy case, on February 25, 2009, Proof of Claim No. 372 asserting an unsecured claim of $16,569.66 and filed Amended Proof of Claim No. 738 on July 23, 2009,

4

asserting a claim of $345,590.00 for unpaid legal fees. In the Yellowstone Development, LLC bankruptcy case, GLR filed Proof of Claim No. 101 on February 25, 2009, asserting an unsecured claim of $386,582.29 and amended said claim on July 23, 3009, to assert an unsecured claim of $65,291.00 for unpaid legal fees. In all, GLR claimed that as of November 10, 2008, it was owed in excess of $410,000.00 from Yellowstone Mountain Club, LLC and Yellowstone Development, LLC for unpaid legal fees.

Because of GLR and Brown's substantial unsecured claim, Brown agreed to serve as Chairman of the Unsecured Creditors Committee. In connection with Brown agreeing to serve on the Unsecured Creditors Committee, the Yellowstone Club entities explicitly waived the attorney-client privilege and Brown withdrew as the Debtors' counsel in the fall of 2008. Also, because Brown had also represented Blixseth in certain matters, Brown did not, while serving as Chair of the Unsecured Creditors Committee, participate in matters involving Blixseth.

Brown was one member on an eleven member committee and served as a layperson on the Committee, performing no legal work for the Unsecured Creditors Committee. The Unsecured Creditors Committee was represented by J. Thomas Beckett and other attorneys from Parsons, Behle & Latimer of Salt Lake City, Utah and by attorney James H. Cossitt of Kalispell, Montana.

The Unsecured Creditors Committee eventually filed a lawsuit against Credit Suisse. Blixseth intervened in that action and this Court has since entered a Judgment against Blixseth in the amount of $40,992,210.81on grounds Blixseth fraudulently misappropriated the proceeds from the Credit Suisse loan.

In response, Blixseth filed on June 8, 2011, a complaint in the United States District

Court for the District of Montana.  The aforementioned complaint for: (1) legal malpractice; (2) breach of fiduciary duty; (3) fraud; (4) breach of contract; (5) equitable indemnification; (6) comparative indemnity; (7) contribution; (8) malpractice for failing to disclose conflict of interest; (9) conspiracy; (10) aiding and abetting commission of torts; and (11) aiding and abetting commission of torts named Brown, GLR, James A. Patten, Patten Peterman Bekkedahl & Green, PLLC, J. Thomas Beckett, Parsons Behle & Latimer, Thomas L. Hutchinson, Bullivant, Houser, Bailey, P.C., Samuel T. Byrne, CrossHarbor Capital Partners, LLC, and John Does 1 - 100 as defendants.

On March 5, 2012, United States District Court Judge Donald W. Molloy concluded that all Blixseth's claims were subject to the *Barton* Doctrine, and that no exceptions applied. Judge Molloy thus entered an Order dismissing Blixseth's complaint for lack of subject matter jurisdiction.  Judge Molloy explained in the Order entered March 5, 2012,

> The *Barton* Doctrine is derived from the United States Supreme Court's decision in *Barton v. Barbour*, 104 U.S. 126 (1881).  It requires a party to "first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity."  *Crown Vantage, Inc. v. Fort James Corp.*, 421 F.3d 963, 970 (9th Cir. 2005) (discussing *Barton*).  If the Bankruptcy Court has not granted leave, then other courts do not have subject matter jurisdiction.  *Id*. at 971; *see also McDaniel v. Blust*, ___ F.3d ___, 2012 WL 401591 at *1–*3 (4th Cir. Feb. 9, 2012).

> The purpose of the *Barton* Doctrine is to centralize bankruptcy litigation, which helps avoid inconsistent rulings from different courts and ensures that the forum most familiar with the case—the bankruptcy court—presides over related claims.  *See generally Crown Vantage*, 421 F.3d 963. That concern is particularly relevant here, since the Bankruptcy Court has addressed or is addressing issues that are similar (if not the same) to those presented in Blixseth's complaint. If this Court were to now intercede and decide the merits of Blixseth's claims, it would run the risk of frustrating the bankruptcy proceedings through a collateral attack.

6

The *Barton* Doctrine also enables the bankruptcy court to keep a watchful eye on court-appointed or -approved officers. As Judge Posner described:

> Just like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. If he is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.
>
> This concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then very great . . . . Without the [*Barton* Doctrine], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.

*Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *see also Crown Vantage*, 421 F.3d at 970–71; *McDaniel*, __ F.3d __, 2012 WL 401591 at *3–*4; *Carter v. Rodgers*, 220 F.3d 1249, 1252–53 (11th Cir. 2000).

The *Barton* Doctrine generally applies if three conditions are met: (1) the plaintiff must be attempting to "initiate[ ] an action in another forum" (2) "against a bankruptcy trustee or other officer appointed by the bankruptcy court" (3) "for acts done in the officer's official capacity." *Crown Vantage*, 421 F.3d at 970. Each of these conditions is met here.

In dismissing Blixseth's complaint, Judge Molloy concluded that this Court was a different forum than the District Court; that Brown, who served as the Chair of the Unsecured Creditors Committee, was a "court-approved" officer; and that all of Blixseth's claims were either "based on Brown's alleged misconduct as Chair of the Unsecured Creditors Committee" or did not accrue until Brown became Chair of the Unsecured Creditors Committee.

7

Blixseth appealed Judge Molloy's decision to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"). On August 7, 2012, the Ninth Circuit dismissed Blixseth's appeal for lack of jurisdiction, concluding the order appealed from was not a final order.[1]

For purposes of the pending motion, counsel for Blixseth argues that the proposed complaint attached to Blixseth's motion, is substantially similar to the complaint Blixseth filed with the District Court. However, counsel also argues that the proposed complaint is different and that Blixseth's counsel went "to great lengths to delineate between what happened, you know, malpractice . . .legal malpractice that occurred prepetition and legal malpractice that occurred postpetition."

DISCUSSION

In *Crown Vantage*, 421 F.3d 963, the Ninth Circuit adopted a series of factors for a court "to consider in exercising its discretion" to enjoin a party from proceeding with an action against a court appointed officer, including (i) whether the acts or transactions at issue "relate to the carrying on of the business connected with the property of the bankruptcy estate"; (ii) whether the claims pertain to actions of the trustee while administering the estate"; (iii) whether "the claims involve the individual acting within the scope of his or her authority under the

_____

[1] Because Blixseth appealed Judge Molloy's decision to the Ninth Circuit, Brown and GLR argued in their objection to Blixseth's motion that this Court did not have jurisdiction to decide the pending matter. That argument is moot because the Ninth Circuit dismissed Blixseth's appeal. Brown and GLR also argued that this Court did not have jurisdiction to decide Blixseth's motion because Blixseth had appealed this Court's June 2, 2009, Order confirming the Debtors' Third Amended Plan of Reorganization. On March 6, 2013, United Stated District Court Judge Sam Haddon entered a Memorandum and Order dismissing Blixseth's appeal on grounds Blixseth lacked standing to challenge this Court's Order confirming the Debtor's Plan. Consequently, this latter objection is also moot.

statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity"; (iv) whether movants are "seeking to surcharge the trustee, that is, seeking a judgment against the trustee personally"; and (v) whether "the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct." *Crown Vantage*, 421 F.3d at 976 (quoting *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886–87 (9th Cir. BAP 1995)).

 Judge Molloy has already determined that Brown, in his capacity as the Chair of the Unsecured Creditors Committee, was an officer of this Court. As an officer of this Court, Brown "is entitled to a form of derivative judicial immunity from liability for actions carried out within the scope" of his official duties. *Kashani*, 190 B.R. at 883.

 The majority of the allegations in Blixseth's proposed complaint stem from Brown's involvement with the Unsecured Creditors Committee. Other of Blixseth's allegations complain that Brown served as counsel for both the Debtors and Blixseth and then divulged information that was protected by Blixseth's attorney-client privilege. The Debtors expressly waived their attorney-client privilege and thus, Blixseth cannot complain that Brown violated the Debtors' attorney-client privilege. As for Blixseth's privilege, this Court has previously concluded that Brown did not violate Blixseth's attorney-client privilege and further concluded that the "plethora of emails [sic] communications" referenced by Blixseth were between Brown, as a member of the Unsecured Creditors Committee, and the Unsecured Creditors Committee's counsel. As such, the email communications, which did not divulge any of Blixseth's privileged information, were in fact protected by the Unsecured Creditors Committee's attorney-client privilege.

It is also important to recognize that Brown did not serve as legal counsel for the Unsecured Creditors Committee, so this is not a case of adverse representation. Brown served on the Unsecured Creditors Committee, as a layperson, in an effort to collect a sizeable sum that was due Brown and GLR. The Unsecured Creditors Committee had separate legal counsel who had no prior involvement with Blixseth.

Blixseth also complains in several instances that Brown and GLR violated the Montana Rules of Professional Conduct and the Montana Rules of Professional Responsibility. The Montana Supreme Court has recognized that violation of the Montana Rules of Professional Conduct does not create a private cause of action or a presumption that a legal duty has been breached. *See Carlson v. Morton*, 229 Mont. 234, 237–38, 745 P.2d 1133, 1135–36 (1987).

Next, Blixseth takes issue with a legal opinion letter that Brown wrote in September of 2005 in connection with the Credit Suisse loan. At that time, Brown was listed as "counsel to Borrower[,]" and the Borrower was identified as Yellowstone Mountain Club, LLC, Yellowstone Club Development, LLC and Big Sky Ridge, LLC. The opinion letter was addressed to Credit Suisse. "As a general rule, an attorney's duty of loyalty runs to his client, and not to third parties with whom he has no agency relationship." *In Crane Creek Ranch, Inc. v. Cresap*, 324 Mont. 366, ¶ 11, 103 P.3d 535 (2004). Brown was retained by Yellowstone Mountain Club, LLC, Yellowstone Club Development, LLC and Big Sky Ridge, LLC to give an opinion to Credit Suisse. Yellowstone Mountain Club, LLC, Yellowstone Club Development, LLC, Big Sky Ridge, LLC and Credit Suisse have released any claims each had against the other. Blixseth has thus failed to show that Brown owed an independent duty of care to Blixseth on that matter.

10

Portions of Blixseth's proposed complaint also complain about Brown's participation and involvement in the Debtors' bankruptcy cases and in the confirmation of the Debtors' Joint Third Amended Plan of Reorganization.  While the release provision in the Debtors' confirmed Plan is narrow in both scope and time, and applies only to an "act or omission in connection with, relating to or arising out of the Chapter 11 cases, the formulation, negotiation, implementation, confirmation or consummation of this Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into during the Chapter 11 Cases or otherwise created in connection with this Plan[,]" the Court finds that the release provision releases Brown from any liability stemming from his participation in the confirmation process.

Finally, Blixseth's proposed complaint takes issue with advice provided by Brown to Blixseth during his divorce from Edra.  The problem with Blixseth's arguments on such matter is that they, like the other arguments raised by Blixseth, are all crafted in such a fashion that they are tied to Brown's actions as a member of the Unsecured Creditors Committee.

In sum, Blixseth continues to complain that Brown has violated Blixseth's attorney-client privilege.  This Court has found that Brown did not violate Blixseth's attorney-client privilege.  Blixseth also seeks to assert claims that more appropriately belong to the Debtors.  Finally, all the allegations in Blixseth's proposed complaint are so intertwined with and dependent upon Brown's actions as a member of the Unsecured Creditors Committee that it makes it impossible for this Court to isolate Blixseth's so-called "pre-petition malpractice and malfeasance" claims from Brown's activities as a member of the Unsecured Creditors Committee.  For the reasons discussed above, the Court will enter a separate order providing as

follows:

IT IS ORDERED that the Amended Motion for Leave to Sue Stephen R. Brown and the

Law Firm of Garlington Lohn & Robinson, PLLP in the U.S. District Court for the District of

Montana filed by Timothy Blixseth on March 28, 2012, at docket entry no. 2445, is denied.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana